## INDEX TO ATTACHMENTS

| Attachment | Date | Description |
|---|---|---|
| A. | 6/22/04 | Civil Action Cover Sheet – Middlesex County |
| B. | 6/22/04 | Complaint and Jury Claim |
| C. | 6/24/04 | Tracking Order – F Track |
| D. | 9/7/04 | Amended Complaint and Jury Demand |
| E. | 9/9/04 | Summons to Brush Wellman |
| F. | 9/9/04 | Summons to Kyocera America, Inc. |
| G. | 9/9/04 | Summons to Kyocera Industrial Ceramics Corp. |
| H. | 9/15/04 | Affidavit of Proof of Service - Kyocera Industrial Ceramics Corp. |
| I. | 9/22/04 | Affidavit of Proof of Service – Kyocera America, Inc. |

# Attachment A



| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 04-2520 D | Trial Court of Massachusetts Superior Court Department County: MIDDLESEX |
|---|---|---|

| PLAINTIFF(S)  Suzanne Genereux and Barry Genereux, Individually and as Parents and Natural Guardians of Angela Genereux and Krista Genereux | Brush Wellman, Inc., Brush Wellman Ceramics, Inc. , Brush Wellman Ceramic Products Inc., Cabot Corporation, Kyocera America, Inc., Kyocera Industrial Ceramics Corp., and Raytheon Co. |
|---|---|
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Leo V. Boyle, Esq., Meehan, Boyle, Black & Fitzgerald, P.C. Two Center Plaza, Suite 600, Boston, MA 02108 617-523-8300 Board of Bar Overseers    052700 | ATTORNEY (if known) |

Origin code and track designation

Place an x in one box only:

[x] 1. F01 Original Complaint

[ ] 2. F02 Removal to Sup.Ct. C.231, s.104 (Before trial) (F)

[ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[ ] 4. F04 District Court Appeal c.231, s. 97 & 104 (After trial) (X)

[ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P.60) (X)

[ ] 6. E10 summary Process Appeal(X)

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B04 | Other Negligence-personal injury/prop | ( F ) | ( x ) Yes  ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages.
For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses........................................ $ Approx.  5,000.00
2. Total doctor expenses............................................ $ Approx.  5,000.00
3. Total chiropractic expenses.................................... $
4. Total physical therapy expenses............................. $
5. Total other expenses                                               Subtotal $ 10,000.00

B. Documented lost wages and compensation to date.......... $ Approx. 250,000.00
C. Documented property damages to date......................... $
D. Reasonably anticipated future medical and hospital expenses...... $ Approx.  50,000.00
E. Reasonably anticipated lost wages.............................. $ Approx. 800,000.00
F. Other documented items of damages (describe)............. $
$ 1,100,000.00

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

Plaintiff Suzanne Genereux was exposed to toxic, respirable beryllium dust, fumes and particulate matter and as a result suffers from chronic beryllium disease rendering her totally disabled, suffering serious injury of body and mind, and in need of life-long medical care. Plaintiffs Barry, Angela and Krista Genereux have suffered the loss of Suzanne Genereux's consortium and have also, themselves, been exposed to toxic beryllium dust and particulate matter.

$
**TOTAL $ 1,110,000.00**

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR ...
JUN 22 2004
Edward J. Sullivan
CLERK

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

TOTAL $

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods

Signature of Attorney of Record _____    DATE: June 22, 2004

AOTC-6 mtc005-11/99    A.O.S.C. 1-2000

## CIVIL ACTION COVER SHEET
### INSTRUCTIONS
### TYPE OF ACTION AND TRACK DESIGNATION (See Reverse Side)
**(A) = Average      (F) = Fast      (X) = Accelerated**
**Select only one of the following Types of Actions:**

### CONTRACT
| | | |
|---|---|---|
| A01 | Services, labor and material | (F) |
| A02 | Goods sold and delivered | (F) |
| A03 | Commercial Paper | (F) |
| A08 | Sale or lease of real estate | (F) |
| A12 | Construction Dispute | (A) |
| A99 | Other (specify) | (F) |

### REAL PROPERTY
| | | |
|---|---|---|
| C01 | Land taking (eminent domain) | (F) |
| C02 | Zoning appeal, G.L. c.40A | (F) |
| C03 | Dispute concerning title | (F) |
| C04 | Foreclosure of mortgage | (X) |
| C99 | Other (Specify) | (F) |

### MISCELLANEOUS
| | | |
|---|---|---|
| E02 | Appeal from administrative agency, G.L. c30A | (X) |
| E03 | Action against Commonwealth or municipality, G.L..c258 | (A) |
| E04 | Taxpayer suit, G.L. c.40 s.53 | (A) |
| E05 | Confirmation of arbitration awards, G.L. c.251 | (X) |
| E06 | Massachusetts Antitrust Act G.L. c.93 | (A) |
| E07 | c.112, s.12S (Mary Moe) | (X) |
| E08 | Appointment of receiver | (X) |
| E09 | General contractor's surety bond, G.L. c.149, §29, 29a | (X) |
| E11 | Workman's Compensation | (X) |
| E13 | Labor Dispute | (X) |
| E14 | Chapter 123A Petition-SDP | (X) |
| E15 | Abuse Petition, G.L. c.209A | (X) |
| E16 | Auto surcharge Appeal | (X) |
| E17 | Civil Rights Act, G.L.c.12 §11H-1 | (A) |
| E99 | Other (specify) | (X) |

### TORT
| | | |
|---|---|---|
| B03 | Motor vehicle negligence - personal injury/property damage | (F) |
| B04 | Other negligence - personal injury/property damage | (F) |
| B05 | Products liability | (A) |
| B06 | Malpractice - medical | (A) |
| B07 | Malpractice - other (specify) | (A) |
| B08 | Wrongful death, G.L.c.229, s2A | (A) |
| B15 | Defamation (libel-slander) | (A) |
| B19 | Asbestos | (A) |
| B99 | Other (specify) | (F) |

### EQUITABLE REMEDIES
| | | |
|---|---|---|
| D01 | Specific performance of contract | (A) |
| D02 | Reach and apply, G.L. c.214 s.3(6)-(9) | (A) |
| D06 | Contribution or indemnification | (A) |
| D07 | Imposition of trust | (A) |
| D08 | Minority stockholder's suit | (A) |
| D10 | Accounting | (A) |
| D12 | Dissolution of partnership | (F) |
| D13 | Declaratory judgment, G.L..c.231A | (A) |
| D99 | Other (specify) | (F) |

### TRANSFER YOUR SELECTION TO THE FACE SHEET

### EXAMPLE:

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence - Personal injury | (F) | ☒ Yes    ☐ No |

### SUPERIOR COURT RULE 29

**DUTY OF THE PLAINTIFF:** The plaintiff or his counsel shall set forth, on the face sheet, a statement specifying in full and itemized detail the facts upon which the plaintiff then relies as constituting money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served on the defendant together with the com-plaint. If a statement of money damages, where appropriate is not filed, the Clerk-Magistrate shall transfer the action as provided in Rule 29(5)(C).

**DUTY OF THE DEFENDANT:** Should the defendant believe the statement of damages filed by the plaintiff in any respect inadequate, he or his counsel may file with the answer a statement specifying in reasonable detail the potential damages which may result should the plaintiff prevail. Such statement, if any, shall be served with the answer.

**A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT, BUFF COLOR PAPER.**

**FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY MAY RESULT IN DISMISSAL OF THIS ACTION.**

# Attachment B

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                              SUPERIOR COURT DEPT

SUZANNE GENEREUX and BARRY          :
GENEREUX, Individually and as Parents and    :
Natural Guardians of their minor children,   :
ANGELA GENEREUX and KRISTA         :
GENEREUX                                         :        CIVIL ACTION NO. 04-2520
                                                   :
          v.                                      :
                                                   :
BRUSH WELLMAN, INC.,                :
BRUSH WELLMAN CERAMICS INC., BRUSH    :
WELLMAN CERAMIC PRODUCTS INC.,     :
CABOT CORPORATION,                  :
KYOCERA AMERICA, INC.,              :
KYOCERA INDUSTRIAL CERAMICS CORP.,  :
and RAYTHEON COMPANY                :



FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY

JUN 2 2 2004

/04  13:25#0000 8546 CLERK ᴀ
                           43    240
CIVIL          960
SURCHARGE    15
SECC            20
042520 #
SUBTTL         995
TOTAL 995 - C
CHECK          995

### COMPLAINT AND JURY CLAIM

1.      Plaintiffs, Suzanne Genereux and Barry Genereux are individuals, wife and

husband, residing at 10 Fry Pond Road, West Greenwich, Rhode Island.

2.      Plaintiffs, Suzanne Genereux and Barry Genereux are the parents and natural

guardians of minor Plaintiffs, Angela Genereux and Krista Genereux, residing at 10 Fry Pond

Road, West Greenwich, Rhode Island.

3.      Defendant, Brush Wellman, Inc. ("Brush") is an Ohio corporation with its

principal office and corporate headquarters located at 17876 St. Clair Avenue, Cleveland, Ohio.

Brush regularly conducts business in Massachusetts in part through its wholly owned

subsidiaries, Brush Wellman Ceramics Inc. and Brush Wellman Ceramic Products Inc. located at

Newburyport Industrial Park, 22 Graf Road, Newburyport, Massachusetts.  Brush maintains an

1

agent for acceptance of service in Massachusetts located at that address and/or c/o CT Corporation System, 101 Federal Street, Boston, Massachusetts.

4.    Defendant Brush Wellman Ceramics Inc. is a ("BWCI") is a Massachusetts corporation and is the wholly owned subsidiary of Brush. Its principal address in Massachusetts and address for service of process is Newburyport Industrial Park, 22 Graf Road, Newburyport, Massachusetts. BWCI also maintains an address for service of process c/o CT Corporation System, 101 Federal Street, Boston, Massachusetts.

5.    Defendant Brush Wellman Ceramic Products Inc. ("Brush Ceramics") is a Massachusetts corporation and is the wholly owned subsidiary of Brush. Its principal address in Massachusetts and address for service of process is Newburyport Industrial Park, 22 Graf Road, Newburyport, Massachusetts.

6.    Defendant, Cabot Corporation ("Cabot") is a Delaware corporation licensed to do business in Massachusetts with its principal office and corporate headquarters located at Two Seaport Lane, Suite 1300, Boston, Massachusetts. Cabot maintains an address for service of process c/o CT Corporation System, 101 Federal Street, Boston, Massachusetts. Cabot is being sued individually and as to the assets and liabilities of and continued trade, business, operations and good will of its predecessors, Cabot Berylco, Inc., Kawecki Berylco Inc., also known as KBI, Kawecki Berylco Industries, Inc. and The Beryllium Corporation.

7.    Defendant, Kyocera America, Inc. ("Kyocera") is a California Corporation with its principal office and corporate headquarters at 8611 Balboa Avenue, San Diego, California. Kyocera regularly conducts business in Massachusetts through its wholly owned subsidiary, Kyocera Industrial Ceramics Corp. at 24 Prime Park Way, Natick, Massachusetts. It maintains

2

an address for service of process at the Prentice-Hall Corporation System, Inc., 84 State Street, Boston, Massachusetts.

8.     Defendant, Kyocera Industrial Ceramics Corp. ("Industrial") is a Washington corporation with its principal office and headquarters located at 5713 East Fourth Plain Boulevard, Vancouver, Washington. Industrial is a wholly owned subsidiary of Kyocera which regularly conducts business in Massachusetts and has offices at 24 Prime Park Way, Natick, Massachusetts. It maintains an address for service of process at the Prentice-Hall Corporation System, Inc., 84 State Street, Boston, Massachusetts.

9.     Raytheon Company ("Raytheon") is a Delaware corporation with its principal office and corporate headquarters located at 870 Winter Street, Waltham, Massachusetts. Raytheon maintains an address for service of process c/o CT Corporation System, 101 Federal Street, Boston, Massachusetts.

10.     Brush is one of the world's largest manufacturers of beryllium-containing products including beryllium ceramics, and operates manufacturing and other facilities throughout the world including locations in Cleveland Ohio, Delta Utah, Tucson Arizona, Newburyport Massachusetts, Shoemakersville Pennsylvania, Fairfield New Jersey, Elmore Ohio, California, Florida, Japan, the United Kingdom, Singapore, Taiwan, and South Korea.

11.     For more than 50 years, Cabot, as successor-in-interest to its predecessors, Cabot Berylco, Inc., Kawecki Berylco Inc., also known as KBI, Kawecki Berylco Industries, Inc. and The Beryllium Corporation, has been involved in the manufacture, sale and distribution of beryllium-containing products, including beryllium ceramics, until approximately 1986 when Cabot sold its beryllium operations to NGK Metals Corporation.

3

12.    Kyocera is the parent company of its wholly owned subsidiary, Industrial and, upon information and belief, was actively involved in the manufacture, sale and distribution of beryllium-containing products, including but not limited to beryllium ceramics at all times relevant hereto.

13.    Industrial is the wholly owned subsidiary of Kyocera which, upon information and belief, was actively involved in the manufacture, sale and distribution of beryllium-containing products, including but not limited to beryllium ceramics at all times relevant hereto.

14.    At all times relevant hereto, Raytheon, among other things, owned and operated a plant in Waltham, Massachusetts which utilized beryllium-containing products, including beryllium ceramics and metals, in the manufacture of a variety of aviation products and communication systems and other, consumer products.

15.    Hereinafter in this Complaint, Defendants Brush, BWCI, Brush Ceramics, Cabot, Kyocera and Industrial are individually and collectively referred to as "the manufacturing Defendants."

16.    From 1982 through 1990, Plaintiff, Suzanne Genereux was employed by Raytheon and worked exclusively for Raytheon at its plant located at 190 Willow Street, Waltham, Massachusetts ("the Waltham plant"). During her employment, she performed operations, including, but not limited to, sandblasting, welding, filing and/or brazing of beryllium ceramics, beryllium copper and other beryllium-containing products, which activities produced respirable beryllium dust, fumes and particulate matter.

17.    Plaintiff Suzanne Genereux's spouse, Barry Genereux, also worked at the Waltham plant. Neither minor Plaintiff ever worked at the Waltham plant but occasionally

4

visited their parents at the Waltham plant.

18.    At all times material hereto, all Defendants acted by and through their respective officers, directors, agents, principals, employees, servants or workers, any and all of whom were actively engaged and serving within the course and scope of their authority, duties, office and/or employment.

19.    At all times relevant hereto, the manufacturing Defendants and their predecessors distributed, sold, supplied, and/or shipped beryllium-containing products, including, but not limited to, beryllium ceramics to Raytheon's Waltham plant.

20.    All of the beryllium-containing products and materials distributed, sold, supplied and/or shipped by the manufacturing Defendants and their predecessors to the Waltham plant have, at all material times, introduced respirable beryllium dust, fumes and particulate matter into the workplace including the ambient air at the Waltham plant.

21.    The operations at the Waltham plant included, among other things, sandblasting, metalizing, welding, filing, grinding, machining and/or brazing of beryllium ceramics and metals for use in a variety of operations, including but not limited to, manufacturing aviation products, communication systems and other consumer products. All of these operations introduced respirable beryllium into the workplace.

22.    Depending upon the amount, form, and route of exposure to beryllium, various diseases may result, ranging from acute to chronic lung disease, dermatologic disease and/or cancer.

23.    Respiratory diseases are most commonly seen from exposure to beryllium and manifest themselves on a continuum from acute inhalational injury to acute pneumonitis to

5

beryllium sensitization and the chronic indolent form of chronic beryllium disease ("CBD").

24.     CBD is known to develop even many years after exposure has ceased, and

typically has an indolent course and insidious onset of symptoms; on average CBD develops six

(6) to ten (10) years after exposure has ceased, but has been reported to occur with a latency

greater than thirty (30) years and as early as four (4) months after initial exposure.

25.     CBD most commonly, though not exclusively, affects the lung and is

characterized by one or more combination of symptoms including nonproductive cough,

gradually progressive shortness of breath, chest pain, fatigue, anorexia, weight loss, fevers, night

sweats and arthralgias; other organ involvement is known to occur including liver or myocardial

involvement, hypercalcemia and/or nephrolithiasis; CBD is a granulomatous disease of the lung

causing characteristic scarring of the lung.

26.     During Plaintiff Suzanne Genereux's employment at the Waltham plant, she was

exposed to unlawful, dangerous and unhealthful levels of beryllium dust, fumes and particulate,

resulting in serious and permanent injury described more particularly elsewhere herein.

27.     All of Plaintiffs' exposures to beryllium occurred as a direct and proximate result

of contact with the beryllium-containing products distributed, sold, supplied and/or shipped by

Defendants to Raytheon's Waltham plant.

28.     Plaintiff, Barry Genereux, makes a claim against all Defendants herein for his

exposure to respirable beryllium brought home to the Genereux residence by Suzanne Genereux

upon her clothing and person as the result of her employment at the Waltham plant, and minor

Plaintiffs Angela Genereux and Krista Genereux make a claim against all Defendants herein for

6

their exposure to respirable beryllium brought home to the Genereux residence by Barry

Genereux upon his clothing and person as the result of his employment at the Waltham plant.

29.    At all times relevant to the period of time in which the manufacturing Defendants

and their predecessors distributed, sold, supplied and/or shipped beryllium-containing products to

the Waltham plant, these Defendants knew or should have known that Waltham plant employees,

including Plaintiffs Suzanne Genereux and Barry Genereux among others, would be exposed to

unhealthful levels of beryllium dust, fumes and particulate matter, and that the families of

Waltham workers would also be exposed to beryllium dust and particulate matter on the clothing

and persons of the Waltham plant workers which dust would be carried home by said workers.

30.    At all times material hereto, all Defendants and their predecessors, knew or should

have known that the sale and use of beryllium-containing materials at the Waltham plant

involved or entailed the handling, machining, storage, processing, manufacturing and disposal of

toxic and hazardous substances and materials which presented a serious risk of injury to workers

and their families at the Waltham plant, including Plaintiffs herein.

31.    At all such times, all Defendants and their predecessors knew or should have

known that their distribution, sale and use of beryllium-containing products at the Waltham plant

presented a serious risk of harm and injury to workers at the Waltham plant, and their families,

including Plaintiffs herein, which required the utilization and employment of proper analytical,

monitoring, pollution, emission and/or process controls, equipment facilities and/or techniques

and effective warnings.

32.    Notwithstanding their knowledge of the risks and hazards involved, entailed,

inherent and/or presented in the sale, distribution and use of beryllium-containing products, all

7

Defendants and their predecessors did carelessly, recklessly, negligently and/or grossly

negligently cause or allow to occur the emission, discharge and/or carriage of poisonous, toxic

and hazardous levels of beryllium from beryllium-containing products at the Waltham plant,

exposing Raytheon's Waltham plant workers and their families, including Plaintiffs, to

unhealthful levels of beryllium dust and particulate matter and failed to properly and/or timely

warn of these known dangers or take any steps to remedy or abate any pollution or contamination

resulting from said emissions, discharge and/or carriage, all of which thereby caused Plaintiffs to

come in contact with and be exposed to deleterious, hazardous, poisonous and toxic amounts of

beryllium to Plaintiffs' great detriment, loss and harm, both physical and emotional.

33.    As the direct and proximate result of all of the Defendants' and their

predecessors' sale, distribution and use of beryllium-containing products at Raytheon's Waltham

plant, the air at the Waltham plant and at workers' homes, including that of Plaintiffs, became

polluted and contaminated and caused the harm alleged herein.

## COUNT I

### SUZANNE GENEREUX v. BRUSH WELLMAN, INC., BRUSH WELLMAN CERAMICS INC., BRUSH WELLMAN CERAMIC PRODUCTS INC., CABOT CORPORATION, KYOCERA AMERICA, INC. and KYOCERA INDUSTRIAL CERAMICS CORP.

### NEGLIGENCE

34.    Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1

through 33 as though fully set forth herein.

35.    As a direct and proximate result of the negligence, gross negligence, carelessness

and recklessness of Defendants and their predecessors as aforementioned, Plaintiff Suzanne

Genereux developed chronic beryllium disease ("CBD") as well as severe shock to her nerves and nervous system, and was caused to suffer other serious physical, mental and emotional injuries and damages, many of such injuries being permanent in nature; Suzanne Genereux was diagnosed with CBD in August, 2002.

36.    As a result of the aforesaid negligence, gross negligence, carelessness and recklessness, Plaintiff Suzanne Genereux has suffered serious physical and emotional injuries as well as the loss of, and the loss of the enjoyment of, her usual occupations, usual duties, life's pleasures and activities, to her great detriment and loss.

37.    The negligence, gross negligence, carelessness and recklessness of the manufacturing Defendants consists, among other things, of the following:

(a)    Manufacturing, packaging and selling a beryllium-containing product which was dangerous and which would likely cause harm;

(b)    Failing to adequately test, research and develop safety guidelines and methods for the protection of users and bystanders from the toxic beryllium dust, particles and fumes emitted by their beryllium products;

(c)    Failing to adhere to industrial hygiene, emission and pollution control instructions for the purchasers of the products in connection with the manufacture, packaging and sale of such products;

(d)    Improperly entrusting the supervision of manufacturing processes and the shipping of beryllium-containing products to unqualified, untrained or inappropriate personnel;

(e)    Carelessly producing beryllium-containing products which would emit dangerous and unhealthful emissions, discharges and/or carriage of beryllium dust, fumes and particulate matter;

(f)    Failing to employ proper architectural, engineering and/or other design measures in connection with their manufacturing of beryllium products so as to limit and/or eliminate the risk of exposure to beryllium by the purchaser and the purchaser's employees and others exposed to dust,

9

particulate matter and fumes from such products;

(g)     Failing to timely and/or properly conduct and/or implement appropriate and necessary pollution or contamination cleanup, remediation, abatement or recall measures or to advise their purchasers to undertake same in connection with Defendants' beryllium-containing products;

(h)     Violating applicable local, state and federal laws, statutes, regulations, codes and ordinances concerning air pollution and/or the sale, distribution, transportation and use of hazardous, poisonous and/or toxic substances;

(i)     Failing to conform to all applicable trade and industry customs, procedures, standards and requirements.

38.     As a further result of Defendants' negligence, gross negligence, carelessness and recklessness, Plaintiff Suzanne Genereux suffered the injuries aforementioned and is reasonably expected in the future to suffer mental anguish, emotional distress, pain and suffering, impairment of physical activity, and to continue to suffer same for an indefinite time.

39.     As a result of Defendants' negligence, gross negligence, carelessness and recklessness, Plaintiff Suzanne Genereux has been and will be obliged to expend various and considerable sums of money, and is expected to continue to incur such expenses in the future to her great financial loss and detriment.

40.     Further, Plaintiff Suzanne Genereux has been and may in the future be unable to work due to her injuries, resulting in a loss of earnings and impairment of her earning capacity.

WHEREFORE, Plaintiff, Suzanne Genereux prays that judgment enter against the Defendants in an amount which will fairly and adequately compensate her plus interest, costs and such other relief as the Court may deem appropriate.

10

## COUNT II

### SUZANNE GENEREUX v. BRUSH WELLMAN, INC., BRUSH WELLMAN CERAMICS INC., BRUSH WELLMAN CERAMIC PRODUCTS INC., CABOT CORPORATION, KYOCERA AMERICA, INC. and KYOCERA INDUSTRIAL CERAMICS CORP.

### BREACH OF WARRANTY

41.    Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1 through 40 as though fully set forth herein.

42.    The manufacturing Defendants' beryllium products were manufactured and sold in a defective condition and/or were unreasonably dangerous to users of the products and to people working in the Waltham plant, specifically to Plaintiff Suzanne Genereux, in their design, manufacture, warnings and marketing. The manufacturing Defendants and their predecessors knew that their beryllium products contained toxic, harmful and inherently and latently dangerous beryllium that would emit invisible airborne dust, particles and fumes capable of causing a permanent, severe and disabling lung disease known as berylliosis or chronic beryllium disease and that beryllium exposure could unreasonably endanger the life and health of the ultimate user and individuals working in areas where the beryllium products are used, including the Plaintiff.

43.    The manufacturing Defendants and their predecessors placed their beryllium products on the market when they knew or reasonably should have known that these products would be used by, or exposed to, industrial workers without inspection for, and without knowledge of, such defects, hazards and/or unreasonably dangerous conditions.

44.    Plaintiff Suzanne Genereux's use of and contact with the manufacturing Defendants' beryllium products was in a manner and for the purposes for which the products

11

were intended.

45.     The defective and unreasonably dangerous condition of the manufacturing Defendants' beryllium-containing products proximately caused Plaintiff's injuries and damages.

46.     At all material times, the manufacturing Defendants' hazardous beryllium-containing products were expected to and did reach Plaintiff Suzanne Genereux in a condition without substantial change from that in which the hazardous and unreasonably dangerous beryllium was when it left the possession and control of Defendants.

47.     The manufacturing Defendants and their predecessors knew, or in the exercise of reasonable care should have known, that persons employed in a plant where beryllium, beryllium ceramic and beryllium metal products were processed, machined and otherwise handled, would be exposed to hazardous and toxic beryllium fumes, particulate and dust which were health- and life-threatening.

48.     The manufacturing Defendants and their predecessors knew that beryllium-containing products would emit invisible airborne dust, particles and fumes capable of causing a permanent, severe and disabling lung disease known as chronic beryllium disease (CBD), and yet notwithstanding their knowledge, the manufacturing Defendants failed to adequately test, research and develop safety guidelines and methods for the protection of users and bystanders from the toxic beryllium dusts, particles and fumes emitted by their beryllium products.

49.     Each of these failures constituted breaches of implied and/or express warranties, and caused the manufacturing Defendants' products to be defective and/or unreasonably dangerous to the Plaintiffs.

50.     The use and processing of the beryllium and beryllium-containing products sold

12

by the manufacturing Defendants was at all relevant times an ultra-hazardous or abnormally

dangerous activity given the nature of the products. As a direct and proximate result of exposure

to beryllium from the defective and unreasonably dangerous beryllium-containing products,

Plaintiff Suzanne Genereux has developed chronic beryllium disease and an increased risk of

developing cancer and other diseases.

WHEREFORE, Plaintiff, Suzanne Genereux prays that judgment enter against the

Defendants in an amount which will fairly and adequately compensate her plus interest, costs and

such other relief as the Court may deem appropriate.

## COUNT III

### SUZANNE GENEREUX v. BRUSH WELLMAN, INC.,
### BRUSH WELLMAN CERAMICS INC., BRUSH WELLMAN CERAMIC
### PRODUCTS INC., CABOT CORPORATION, KYOCERA AMERICA, INC.
### and KYOCERA INDUSTRIAL CERAMICS CORP.

### FAILURE TO WARN

51.     Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1

through 50 as though fully set forth herein.

52.     The manufacturing Defendants and their predecessors knew, or in the exercise of

reasonable care should have known, that persons employed in a plant where beryllium, beryllium

ceramic and beryllium metal products were processed, machined and otherwise handled, would

be exposed to hazardous and toxic beryllium fumes, particulate and dust which were health-and

life-threatening. Therefore, the manufacturing Defendants were under a duty to warn the

ultimate users and bystanders, such as the Plaintiffs, of these health hazards; their failure to fulfill

this duty caused the products to be defective and/or unreasonably dangerous.

13

53.    The manufacturing Defendants and their predecessors knew that beryllium-containing products would emit invisible airborne dust, particles and fumes capable of causing a permanent, severe and disabling lung disease known as chronic beryllium disease (CBD), and yet notwithstanding their knowledge, the manufacturing Defendants failed among other things to:

(a)    Warn and advise users of the hazards and toxicity of their beryllium products of which they had knowledge;

(b)    Provide users with instructions and information for the safe use of their beryllium products and sufficient safeguards to prevent her from suffering from beryllium exposure and developing chronic beryllium disease;

(c)    Provide users with knowledge concerning safe and sufficient safeguards to prevent beryllium exposure;

(d)    Package, label and contain their beryllium products in a manner so as to adequately warn users of the hazards attendant to their use and the necessary safeguards to take in using them;

(e)    Adequately test, research and develop safety guidelines and methods for the protection of users and bystanders from the toxic beryllium dust, particles and fumes emitted by their beryllium products;

(f)    Adhere to industrial hygiene, emission and pollution control instructions for the purchasers of the products in connection with the manufacture, packaging and sale of such products;

(g)    Advise their purchasers to timely and/or properly conduct and/or implement appropriate and necessary pollution or contamination cleanup, remediation, abatement or recall measure in connection with Defendants' beryllium-containing products;

(h)    Adhere to applicable local, state and federal laws, statutes, regulations, codes and ordinances concerning air pollution and/or the sale, distribution, transportation and use of hazardous, poisonous and/or toxic substances;

(i)    Conform to all applicable trade and industry customs, procedures, standards and requirements.

54.    Each of these failures caused the manufacturing Defendants' products to be

defective and/or unreasonably dangerous to the Plaintiffs.

55.    As a direct and proximate result of Defendants' failure to warn of the hazards of beryllium, Plaintiff Suzanne Genereux has developed chronic beryllium disease and an increased risk of developing cancer and other diseases.

WHEREFORE, Plaintiff, Suzanne Genereux prays that judgment enter against the Defendants in an amount which will fairly and adequately compensate her plus interest, costs and such other relief as the Court may deem appropriate.

## COUNT IV

### SUZANNE GENEREUX v. BRUSH WELLMAN, INC., BRUSH WELLMAN CERAMICS INC., BRUSH WELLMAN CERAMIC PRODUCTS INC., CABOT CORPORATION, KYOCERA AMERICA, INC. and KYOCERA INDUSTRIAL CERAMICS CORP.

### STRICT LIABILITY FOR ULTRAHAZARDOUS AND/OR ABNORMALLY DANGEROUS ACTIVITIES

56.    Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1 through 55 as though fully set forth herein.

57.    The actions and activities of the manufacturing Defendants as alleged herein, constitute the miscarriage of ultrahazardous and/or abnormally dangerous activities warranting the imposition of strict liability, to wit: the activities of manufacturing and processing beryllium containing products with resulting dust and particulate emissions. Because the manufacturing Defendants engaged in such ultrahazardous and/or abnormally dangerous activities, they owed the highest duty of care to Plaintiffs and others similarly situated, which duty they breached.

58.    As the direct and proximate result of the manufacturing Defendants' miscarriage of an ultrahazardous activity, Plaintiff suffered losses for which Defendants are strictly liable.

15

WHEREFORE, Plaintiff, Suzanne Genereux prays that judgment enter against the Defendants in an amount which will fairly and adequately compensate her plus interest, costs and such other relief as the Court may deem appropriate.

## COUNT V

### SUZANNE GENEREUX v. BRUSH WELLMAN, INC. and KYOCERA AMERICA, INC.

### BREACH OF CONSUMER PROTECTION STATUTE

59.    Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1 through 58 as though fully set forth herein.

60.    As a result of the aforementioned unfair and deceptive acts and practices and breach of express and implied warranties, the Defendants Brush Wellman, Inc. and Kyocera America, Inc. violated M.G.L. c. 93A.

61.    The Defendants were on actual notice of the unfair and deceptive acts and practices, the defectiveness of their products and the inadequacies of the warnings associated with their products, but failed to correct such defects or to warn Plaintiffs of those conditions making their violation of c. 93A knowing and willful.

Wherefore, the Plaintiff Suzanne Genereux demands actual and multiple damages against Brush Wellman, Inc. and Kyocera America, Inc. pursuant to M.G.L. c. 93A, including costs and attorneys' fees.

## COUNT VI

**BARRY GENEREUX and SUZANNE GENEREUX, Individually and
as Parents and Natural Guardians of their
Minor Children, ANGELA GENEREUX and KRISTA GENEREUX
v. BRUSH WELLMAN, INC., BRUSH WELLMAN CERAMICS INC., BRUSH
WELLMAN CERAMIC PRODUCTS INC., and CABOT CORPORATION**

### FRAUDULENT CONCEALMENT OR NONDISCLOSURE

62.    Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1
through 61 as though fully set forth herein.

63.    Brush Wellman, Inc., Brush Wellman Ceramics, Inc., Brush Wellman Ceramic
Products, Inc. and Cabot Corporation and their predecessors have fraudulently concealed the
dangers and risks involved in the beryllium emissions and discharges from the Waltham Plant in
that they:

(a)    Knew or should have known that Plaintiff Suzanne Genereux was being
exposed to serious risks of beryllium disease;

(b)    Knew or should have known that beryllium emissions were enveloping the
Waltham plant and being contacted by the Plaintiff; and,

(c)    Negligently, knowingly, deliberately and/or intentionally failed to issue
appropriate warnings regarding the contamination and emissions as
aforementioned.

64.    As a direct and proximate result of the fraudulent concealment and/or non-
disclosure of the above-mentioned facts, Plaintiffs were exposed to harmful levels of beryllium
resulting in injuries and damages alleged and described elsewhere herein.

WHEREFORE, Plaintiffs pray that judgment enter against Brush Wellman, Inc., Brush
Wellman Ceramics, Inc., Brush Wellman Ceramic Products, Inc. and Cabot Corporation in an
amount which will fairly and adequately compensate them, plus interest, costs and such other

17

relief as the Court may deem appropriate.

## COUNT VII

**SUZANNE GENEREUX and BARRY GENEREUX, Individually
and As Parents and Natural Guardians of their Minor Children, ANGELA GENEREUX
and KRISTA GENEREUX v. BRUSH WELLMAN, INC.,
BRUSH WELLMAN CERAMICS INC., BRUSH WELLMAN CERAMIC
PRODUCTS INC. and CABOT CORPORATION**

### CONSPIRACY

65.     Plaintiffs hereby incorporate by reference the allegations set forth in Paragraph 1

through 64 as though fully set forth herein.

66.     Since at least as early as 1948 and continuing thereafter, Brush Wellman, Inc.,

Brush Wellman Ceramics, Inc., Brush Wellman Ceramic Products, Inc. and Cabot Corporation

(collectively "Brush and Cabot") actually knew or reasonably should have known that an

airborne concentration of beryllium that was substantially below the Atomic Energy

Commission's and/or Occupational Safety and Health Administration's permissible exposure

level (of 2 micrograms per cubic meter of air over an 8 hour period in an occupational setting,

and .01 micrograms per cubic meter of air averaged over 30 days in a non-occupational or

residential setting), was unsafe and that workers, and in turn those in the neighboring community,

exposed to such concentrations of airborne beryllium could and would develop chronic beryllium

disease. Notwithstanding this knowledge, Brush and Cabot, acting in combination, unlawfully

failed to warn and instruct the purchasers and users of their beryllium-containing products, and

those in neighboring communities exposed to discharges of beryllium-containing dust, as alleged

above.

67.     Notwithstanding the fact that Brush and Cabot knew or reasonably should have

18