known that the aforementioned permissible exposure levels of 2 micrograms of beryllium per

cubic meter of air averaged over eight hours per day would not protect all workers (and in turn

those in the neighboring community under the ambient standard) exposed to such airborne

concentrations of beryllium from developing chronic beryllium disease, Brush and Cabot, acting

in combination, continued to unlawfully claim and assert to users and other exposed to their

beryllium products, and to government regulators and private agencies which recommended

maximum permissible airborne exposure levels for beryllium, that such airborne concentrations

of beryllium were safe even for the most sensitive individuals.

68.    Beginning at least as early as 1951, Brush and Cabot, acting in combination and

through their predecessors, and others within the U.S. and international beryllium processing

community and/or trade, consciously conspired and deliberately pursued a common plan to

conceal the true hazards and risks of airborne beryllium dust from those workers and members of

the public who would be exposed to airborne beryllium dust, including the Plaintiffs. The

conspiracy manifested in the following series of events, among others:

(a)    In the 1950s, Brush Beryllium (as Brush was then called) and Cabot
through its predecessors concealed from the public and from workers the
true health risks of beryllium. During this period, the conspirators agreed
to advocate and implement in their own plants a "tentative" occupational
safety standard (the 2 microgram standard) that they did not believe would
protect workers and others from disease. In furtherance of this agreement,
they did not advise workers or the public of the full state of industry
knowledge about the health risks of beryllium and did not tell workers or
the public that the safety standards were "tentative" and left some workers
and others at risk.

(b)    On December 13, 1961, Brush and Cabot through its predecessors formed
an "Industry Wide Health and Safety Committee" to control and
standardize the safety information provided in the labeling and packaging
of their beryllium-containing products, to conduct public relations

19

campaigns to distribute the companies' propaganda about the hazards of beryllium, and to advocate less stringent regulatory standards. In the words of one of its members, this Committee kept the beryllium "health problem ... under control from a public relations standpoint." Among other things, the companies began to publicly represent that since the imposition of the AEC standard, "industry experience" had proven the 2 microgram standard to be completely effective in preventing beryllium disease. They also disseminated false information to undermine an earlier scientific study that had shown that CBD could develop at levels far below 2 micrograms.

(c)     Beginning in the 1960s, Brush and Cabot agreed to cooperate and did cooperate in joint efforts to defend litigation even in suits brought only against one of the conspirators, so that they could control what information became publicly available about the health risks of beryllium.

(d)     When the Environmental Protection Agency and the Occupational Safety & Health Administration were created in the early 1970s, Brush and Cabot agreed to cooperate in a joint plan to persuade EPA and OSHA to adopt and reaffirm the existing Atomic Energy Commission standards for beryllium exposure, based on false information about the health risks of beryllium. Since the initial adoption of such standards and well into the 1990s, the conspirators have continued to jointly oppose efforts to change them and agreed to coordinate the information that would be presented to the agencies, so as to perpetuate false information about the health risks of beryllium. For example, from 1975 through approximately 1979, Brush and Cabot agreed to jointly oppose the Occupational Health and Safety Administration's effort to impose a stricter occupational safety standard and jointly funded expert testimony that presented false and incomplete information about the health risks of beryllium disease.

(e)     In the 1980s, Brush and Cabot agreed to jointly oppose European efforts to impose labeling requirements on beryllium and presented false and incomplete information about the health risks of beryllium.

(f)     In 1989, Brush and NGK Metals Corporation (successor to Cabot) agreed to fund and did fund (along with "such other companies as may wish to participate") a Scientific Advisory Committee to conduct industry-approved research that would counteract mounting scientific evidence that beryllium was more dangerous than the companies wished to acknowledge. The Committee remained active through the 1990s.

(g)     Beginning in the 1970s and up to the present, Brush and Cabot jointly

20

retained and funded the work of purported scientific experts to attack and rebut the work of certain governmental agencies that had established that beryllium is a human carcinogen at a time when the Defendants and their co-conspirators knew or reasonably should have known that such attacks were entirely without merit or basis and were intended to advance false and misleading information to the scientific, industrial hygiene and public health community.

(h)     Beginning at least as early as the 1970s, NGK Insulators, Ltd. of Nagoya, Japan's own medical director discovered, and subsequently published in the Japanese medical literature, that workers could and were developing beryllium disease at levels below 2 micrograms of exposure and, in turn, advocated for the reduction of such permissible exposure levels; however, Brush and Cabot actively and in combination suppressed this discovery, the scientific findings of the medical director of NGK Insulators, Ltd. and his contributions to the literature including the medical director's advocacy of correcting the standard for permissible exposure and continue to do so to this date.

69.     In furtherance of said conspiracy and common plan to conceal the true hazards, risks and toxicity of airborne beryllium, Brush and Cabot expressly or tacitly agreed that beryllium workers and the public would not be told that those who were susceptible to beryllium would develop the disease at airborne concentrations below 2 micrograms of beryllium dust per cubic meter of air. Rather, Brush and Cabot agreed to tell beryllium workers and the public, that so long as the eight hour average airborne concentration of beryllium dust remained below 2 micrograms of beryllium per cubic meters of air, workers, and in turn those in neighboring communities, would be protected from developing chronic beryllium disease.

70.     Notwithstanding the fact that Brush and Cabot were publicly stating that those exposed to airborne concentrations of beryllium dust were safe so long as the eight hour average airborne concentration remained below 2 micrograms of beryllium dust per cubic meter of air, Brush and Cabot knew that those statements were false and that those who were susceptible to

21

the toxic effects of beryllium dust would develop chronic beryllium disease at airborne concentrations substantially below that which they stated were safe and protective.

71.    The ambient air standard of .01 was derived from the 2 microgram standard and all allegations of conspiracy, fraud, concealment and tainting the scientific and medical literature apply equally to the conduct of Brush and Cabot with respect to this standard.

72.    As a result of the conspiracy between and among Brush and Cabot as alleged above, Plaintiffs sustained damages as hereinafter set forth.

WHEREFORE, Plaintiffs pray that judgment enter against Brush Wellman, Inc., Brush Wellman Ceramics, Inc., Brush Wellman Ceramic Products, Inc. and Cabot Corporation in an amount which will fairly and adequately compensate them, plus interest, costs and attorneys' fees, as well as for exemplary and/or punitive damages and for such other relief as the Court may deem appropriate.

## COUNT VIII

### BARRY GENEREUX Individually and SUZANNE GENEREUX and BARRY GENEREUX As Parents and Natural Guardians of Their Minor Children, ANGELA GENEREUX and KRISTA GENEREUX v. BRUSH WELLMAN, INC. CABOT CORPORATION, KYOCERA AMERICA, INC. and KYOCERA INDUSTRIAL CERAMICS CORP. and RAYTHEON COMPANY

### MEDICAL MONITORING

73.    Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1 through 72 as though fully set forth herein.

74.    For many years, it has been well-described in medical and industrial hygiene literature that beryllium dust and particulate matter may be carried on the clothing and person of

22

beryllium workers, thereby exposing all people coming into contact with said worker, especially the immediate family members of said worker, to unhealthful levels of beryllium.

75. As a result of his marriage to and residence with Plaintiff Suzanne Genereux, Plaintiff Barry Genereux has been exposed to greater than normal background levels of beryllium.

76. As a result of their residency with their parents, the minor Plaintiffs Angela Genereux and Krista Genereux have been exposed to greater than normal background levels of beryllium.

77. Beryllium is a proven hazardous substance.

78. As a proximate result of Plaintiffs' exposure to Defendants' beryllium as described above, Plaintiffs have an increased risk of contracting beryllium sensitization and/or CBD.

79. A monitoring procedure exists that makes early detection of the disease possible.

80. The prescribed monitoring regime is different from that normally recommended in the absence of the exposure.

81. The prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

82. The Defendants had a duty to exercise reasonable care in the sale, distribution and use of beryllium products, including a duty to assure that the sale, distribution and use of such products did not result in harmful exposures of beryllium dust and particulates to Plaintiff Suzanne Genereux's spouse and children.

83. The Defendants failed to exercise reasonable care in the manufacturing,

23

production, sale and distribution of their products and in assuring that their beryllium-containing products did not result in exposures of beryllium dust and particulates to Plaintiff Suzanne Genereux's spouse and children.

84.     At all times relevant hereto, Raytheon failed to implement, install and maintain appropriate industrial hygiene controls, ventilation controls and systems, and/or adequate air control and monitoring equipment.

85.     As the direct and proximate result of the aforesaid acts and omissions, the Defendants polluted and contaminated the air at the Waltham plant and, in turn, the residences of said workers, thereby exposing Plaintiff Suzanne Genereux and her family to the poisonous, toxic and/or hazardous effects of beryllium.

86.     A monitoring program exists which ascertains and informs of the presence of injury and aids in the treatment and thereby can prevent the greater harms which may not occur immediately, or for which there may be no noticeable symptoms, and that may be treatable if proper screening is conducted and the health risks are diagnosed and treated before they occur or become worse.

87.     In light of the health risks associated with the exposures to Plaintiff Suzanne Genereux's family as described above, said Plaintiffs are entitled to a medical monitoring program funded by the Defendants including, but not limited to, testing, and preventative screening, in addition to costs and reasonable attorneys' fees.

88.     By reason of the foregoing, the Defendants are liable to Plaintiffs for the relief sought herein, including periodic medical monitoring and/or monetary damages for the cost of monitoring.

24

WHEREFORE, Plaintiffs pray that judgment enter against the Defendants in an amount which will fairly and adequately compensate them plus interest, costs and such other relief as the Court may deem appropriate, including but not limited to periodic medical monitoring and/or monetary damages for the cost of monitoring.

## COUNT IX

### BARRY GENEREUX, Individually, and SUZANNE GENEREUX and BARRY GENEREUX as Parents and Natural Guardians of their Minor Children, ANGELA GENEREUX and KRISTA GENEREUX v. BRUSH WELLMAN, INC., BRUSH WELLMAN CERAMICS INC., BRUSH WELLMAN CERAMIC PRODUCTS INC., CABOT CORPORATION, KYOCERA AMERICA, INC. and KYOCERA INDUSTRIAL CERAMICS CORP.

### NEGLIGENCE (LOSS OF CONSORTIUM)

89.     Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1 through 88 as though fully set forth herein.

90.     As a result of the negligence of the Defendants, Plaintiffs, Barry Genereux, Angela Genereux and Krista Genereux have been, and will in the future be, deprived of Suzanne Genereux's services, companionship, care, comfort, consortium and society and hereby claim loss of consortium to their great detriment and loss.

WHEREFORE, Plaintiffs pray that judgment enter against the Defendants in an amount which will fairly and adequately compensate them plus interest, costs and such other relief as the Court may deem appropriate.

25

## COUNT X

**BARRY GENEREUX, Individually, and SUZANNE GENEREUX
and BARRY GENEREUX as Parents and Natural Guardians of their
Minor Children, ANGELA GENEREUX and KRISTA GENEREUX
v. BRUSH WELLMAN, INC., BRUSH WELLMAN CERAMICS INC., BRUSH
WELLMAN CERAMIC PRODUCTS INC., CABOT CORPORATION, KYOCERA
AMERICA, INC. and KYOCERA INDUSTRIAL CERAMICS CORP.**

### BREACH OF WARRANTY (LOSS OF CONSORTIUM)

91.     Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1

through 90 as though fully set forth herein.

92.     As a result of the breach of warranty of the Defendants, Plaintiffs, Barry

Genereux, Angela Genereux and Krista Genereux have been, and will in the future be, deprived

of Suzanne Genereux's services, companionship, care, comfort, consortium and society and

hereby claim loss of consortium to their great detriment and loss.

WHEREFORE, Plaintiffs pray that judgment enter against the Defendants in an amount

which will fairly and adequately compensate them plus interest, costs and such other relief as the

Court may deem appropriate.

## COUNT XI

**BARRY GENEREUX, Individually, and SUZANNE GENEREUX
and BARRY GENEREUX as Parents and Natural Guardians of their
Minor Children, ANGELA GENEREUX and KRISTA GENEREUX
v. BRUSH WELLMAN, INC., BRUSH WELLMAN CERAMICS INC., BRUSH
WELLMAN CERAMIC PRODUCTS INC., CABOT CORPORATION, KYOCERA
AMERICA, INC. and KYOCERA INDUSTRIAL CERAMICS CORP.**

### FAILURE TO WARN (LOSS OF CONSORTIUM)

93.     Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1

through 92 as though fully set forth herein.

26

94.     As a result of the failure of the Defendants to provide adequate warnings of the hazards of beryllium, Plaintiffs, Barry Genereux, Angela Genereux and Krista Genereux have been, and will in the future be, deprived of Suzanne Genereux's services, companionship, care, comfort, consortium and society and hereby claim loss of consortium to their great detriment and loss.

WHEREFORE, Plaintiffs pray that judgment enter against the Defendants in an amount which will fairly and adequately compensate them plus interest, costs and such other relief as the Court may deem appropriate.

## COUNT XII

**BARRY GENEREUX, Individually, and SUZANNE GENEREUX
and BARRY GENEREUX as Parents and Natural Guardians of their
Minor Children, ANGELA GENEREUX and KRISTA GENEREUX
v. BRUSH WELLMAN, INC., BRUSH WELLMAN CERAMICS INC., BRUSH
WELLMAN CERAMIC PRODUCTS INC., CABOT CORPORATION, KYOCERA
AMERICA, INC. and KYOCERA INDUSTRIAL CERAMICS CORP.**

### STRICT LIABILITY (LOSS OF CONSORTIUM)

95.     Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1 through 94 as though fully set forth herein.

96.     As a result of the ultrahazardous and/or abnormally dangerous activity of the Defendants, Plaintiffs, Barry Genereux, Angela Genereux and Krista Genereux have been, and will in the future be, deprived of Suzanne Genereux's services, companionship, care, comfort, consortium and society and hereby claim loss of consortium to their great detriment and loss.

WHEREFORE, Plaintiffs pray that judgment enter against the Defendants in an amount which will fairly and adequately compensate them plus interest, costs and such other relief as the

Court may deem appropriate.

## COUNT XIII

**BARRY GENEREUX, Individually, and SUZANNE GENEREUX
and BARRY GENEREUX as Parents and Natural Guardians of their
Minor Children, ANGELA GENEREUX and KRISTA GENEREUX
v. BRUSH WELLMAN, INC. and KYOCERA AMERICA, INC.**

### BREACH OF CONSUMER PROTECTION STATUTE

97.    Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1 through 96 as though fully set forth herein.

98.    As a result of the aforementioned unfair and deceptive acts and practices and breach of express and implied warranties, the Defendants Brush Wellman, Inc. and Kyocera America, Inc. violated M.G.L. c. 93A.

99.    The Defendants were on actual notice of the unfair and deceptive acts and practices, defectiveness of their products and the inadequacies of the warnings associated with their products, but failed to correct such defects or to warn Plaintiffs of those conditions making their violation of c. 93A knowing and willful.

WHEREFORE, the Plaintiffs Barry Genereux, Angela Genereux and Krista Genereux demand actual and multiple damages against Brush Wellman, Inc. and Kyocera America, Inc. pursuant to M.G.L. c. 93A, including costs and attorneys' fees.

### DEMAND FOR TRIAL BY JURY

THE PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY OF EACH CLAIM ASSERTED OR HEREAFTER ASSERTED BY THE PLAINTIFFS AND OF EACH

28

DEFENSE ASSERTED BY ANY DEFENDANTS.

The Plaintiffs,
By their Attorneys,
MEEHAN, BOYLE, BLACK &
FITZGERALD, P.C.

Leo V. Boyle
B.B.O. No. 052700
Two Center Plaza, Suite 600
Boston, Massachusetts  02108
(617) 523-8300

DATE:

29

# Attachment C

# Commonwealth of Massachusetts
## County of Middlesex
## The Superior Court

CIVIL DOCKET# **MICV2004-02520-D**

RE:  **Genereux, Individually & Parent et al v Brush Wellman, Inc. et al**

TO:Leo V Boyle, Esquire
    Meehan Boyle Black & Fitzgerald
    2 Center Plaza
    Suite 600
    Boston, MA 02108-1922

### TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 09/20/2004 |
| Response to the complaint filed (also see MRCP 12) | 11/19/2004 |
| All motions under MRCP 12, 19, and 20 filed | 11/19/2004 |
| All motions under MRCP 15 filed | 11/19/2004 |
| All discovery requests and depositions completed | 04/18/2005 |
| All motions under MRCP 56 served and heard | 05/18/2005 |
| Final pre-trial conference held and firm trial date set | 06/17/2005 |
| Case disposed | 08/16/2005 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**
This case is assigned to session D sitting in **Rm 7A (Cambridge) at Middlesex Superior Court.**

Dated: 06/24/2004

Edward J. Sullivan
Clerk of the Courts

BY: Leona Kusmirek
Assistant Clerk

Location: Rm 7A (Cambridge)
Telephone: 617-494-4010 EXT 4251

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130

Check website as to status of case: http://ma-trialcourts.org/tcic

cvdvtracf_2 wpd 2583873 inidoc01 dipacee

# Attachment D

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                          SUPERIOR COURT DEPT

SUZANNE GENEREUX and BARRY        :
GENEREUX, Individually and as Parents and   :
Natural Guardians of their minor children,    :
ANGELA GENEREUX and KRISTA        :
GENEREUX                          :     CIVIL ACTION NO.
                                  :     CV2004-02520-D
          v.                      :
                                  :
AMERICAN BERYLLIA CORP.,
BRUSH WELLMAN, INC.,              :
BRUSH WELLMAN CERAMICS INC., BRUSH  :
WELLMAN CERAMIC PRODUCTS INC.,
HARDRIC LABORATORIES, INC.,       :
KYOCERA AMERICA, INC.,            :
KYOCERA INDUSTRIAL CERAMICS CORP.,  :
and RAYTHEON COMPANY              :

## AMENDED COMPLAINT AND JURY CLAIM

1.    Plaintiffs, Suzanne Genereux and Barry Genereux are individuals, wife and

husband, residing at 10 Fry Pond Road, West Greenwich, Rhode Island.

2.    Plaintiffs, Suzanne Genereux and Barry Genereux are the parents and natural

guardians of minor Plaintiffs, Angela Genereux and Krista Genereux, residing at 10 Fry Pond

Road, West Greenwich, Rhode Island.

3.    Defendant American Beryllia Corp. ("American") is a New Jersey Corporation

with its principal office and corporate headquarters located at 16 First Avenue,

Haskell, New Jersey. At all times relevant hereto, American regularly conducted business as

American Beryllia Corp. or under its prior name, National Beryllia Corp., and all references to

American in this Amended Complaint also refer to the conduct of business under the name

1

National Beryllia Corp.

3.    Defendant Brush Wellman, Inc. ("Brush") is an Ohio corporation with its principal office and corporate headquarters located at 17876 St. Clair Avenue, Cleveland, Ohio. At all times relevant hereto, Brush regularly conducted business in Massachusetts on its own and through its wholly owned subsidiaries, Brush Wellman Ceramics Inc. and Brush Wellman Ceramic Products Inc. located at Newburyport Industrial Park, 22 Graf Road, Newburyport, Massachusetts. Brush maintains an agent for acceptance of service in Massachusetts located at that address and/or c/o CT Corporation System, 101 Federal Street, Boston, Massachusetts.

4.    Defendant Brush Wellman Ceramics Inc. is a ("BWCI") is a Massachusetts corporation and is the wholly owned subsidiary of Brush. Its principal address in Massachusetts and address for service of process is Newburyport Industrial Park, 22 Graf Road, Newburyport, Massachusetts. BWCI also maintains an address for service of process c/o CT Corporation System, 101 Federal Street, Boston, Massachusetts.

5.    Defendant Brush Wellman Ceramic Products Inc. ("Brush Ceramics") is a Massachusetts corporation and is the wholly owned subsidiary of Brush. Its principal address in Massachusetts and address for service of process is Newburyport Industrial Park, 22 Graf Road, Newburyport, Massachusetts.

6.    Defendant Hardric Laboratories Inc. ("Hardric") is a Massachusetts corporation with its principal place of business in Massachusetts located at 70 Princeton Street North Chelmsford, Massachusetts.

7.    Defendant Kyocera America, Inc. ("Kyocera") is a California Corporation with its principal office and corporate headquarters at 8611 Balboa Avenue, San Diego, California. At

2

all times relevant hereto, Kyocera regularly conducted business in Massachusetts on its own and through its wholly owned subsidiary, Kyocera Industrial Ceramics Corp. at 24 Prime Park Way, Natick, Massachusetts. It maintains an address for service of process at the Prentice-Hall Corporation System, Inc., 84 State Street, Boston, Massachusetts.

8.    Defendant Kyocera Industrial Ceramics Corp. ("Industrial") is a Washington corporation with its principal office and headquarters located at 5713 East Fourth Plain Boulevard, Vancouver, Washington. Industrial is a wholly owned subsidiary of Kyocera which regularly conducts business in Massachusetts and has offices at 24 Prime Park Way, Natick, Massachusetts. It maintains an address for service of process at the Prentice-Hall Corporation System, Inc., 84 State Street, Boston, Massachusetts.

9.    Raytheon Company ("Raytheon") is a Delaware corporation with its principal office and corporate headquarters located at 870 Winter Street, Waltham, Massachusetts. Raytheon maintains an address for service of process c/o CT Corporation System, 101 Federal Street, Boston, Massachusetts.

10.    American is a leading manufacturer and distributor of beryllium-containing products, including beryllium ceramics, and operates a major manufacturing facility in New Jersey.

11.    Brush is one of the world's largest manufacturers of beryllium-containing products including beryllium ceramics, and operates manufacturing and other facilities throughout the world including locations in Cleveland Ohio, Delta Utah, Tucson Arizona, Newburyport Massachusetts, Shoemakersville Pennsylvania, Fairfield New Jersey, Elmore Ohio, California, Florida, Japan, the United Kingdom, Singapore, Taiwan, and South Korea.

3

12.     Hardric is one of the world's leading manufacturers of beryllium-containing products, including beryllium optics, ceramics and unusual metals.

13.     Kyocera is the parent company of its wholly owned subsidiary, Industrial and, upon information and belief, was actively involved in the manufacture, sale and distribution of beryllium-containing products, including but not limited to beryllium ceramics at all times relevant hereto.

14.     Industrial is the wholly owned subsidiary of Kyocera which, upon information and belief, was actively involved in the manufacture, sale and distribution of beryllium-containing products, including but not limited to beryllium ceramics at all times relevant hereto.

15.     At all times relevant hereto, Raytheon, among other things, owned and operated a plant in Waltham, Massachusetts which utilized beryllium-containing products, including beryllium ceramics and metals, in the manufacture of a variety of aviation products and communication systems and other consumer products.

16.     Hereinafter in this Complaint, Defendants American, Brush, BWCI, Brush Ceramics, Hardric, Kyocera and Industrial are individually and collectively referred to as "the manufacturing Defendants."

17.     From 1982 through 1990, Plaintiff, Suzanne Genereux was employed by Raytheon and worked exclusively for Raytheon at its plant located at 190 Willow Street, Waltham, Massachusetts ("the Waltham plant"). During her employment, she performed operations, including, but not limited to, sandblasting, welding, filing and/or brazing of beryllium ceramics, beryllium copper and other beryllium-containing products, which activities produced respirable beryllium dust, fumes and particulate matter.

4

18.     Plaintiff Suzanne Genereux's spouse, Barry Genereux, also worked at the

Waltham plant. Neither minor Plaintiff ever worked at the Waltham plant but occasionally

visited their parents at the Waltham plant.

19.     At all times material hereto, all Defendants acted by and through their respective

officers, directors, agents, principals, employees, servants or workers, any and all of whom were

actively engaged and serving within the course and scope of their authority, duties, office and/or

employment.

20.     At all times relevant hereto, the manufacturing Defendants and their predecessors

distributed, sold, supplied, and/or shipped beryllium-containing products, including, but not

limited to, beryllium ceramics to Raytheon's Waltham plant.

21.     All of the beryllium-containing products and materials distributed, sold, supplied

and/or shipped by the manufacturing Defendants and their predecessors to the Waltham plant

have, at all material times, introduced respirable beryllium dust, fumes and particulate matter into

the workplace including the ambient air at the Waltham plant.

22.     The operations at the Waltham plant included, among other things, sandblasting,

metalizing, welding, filing, grinding, machining and/or brazing of beryllium ceramics and metals

for use in a variety of operations, including but not limited to, manufacturing aviation products,

communication systems and other consumer products. All of these operations introduced

respirable beryllium into the workplace.

23.     Depending upon the amount, form, and route of exposure to beryllium, various

diseases may result, ranging from acute to chronic lung disease, dermatologic disease and/or

cancer.

5

24.    Respiratory diseases are most commonly seen from exposure to beryllium and manifest themselves on a continuum from acute inhalational injury to acute pneumonitis to beryllium sensitization and the chronic indolent form of chronic beryllium disease ("CBD").

25.    CBD is known to develop even many years after exposure has ceased, and typically has an indolent course and insidious onset of symptoms; on average CBD develops six (6) to ten (10) years after exposure has ceased, but has been reported to occur with a latency greater than thirty (30) years and as early as four (4) months after initial exposure.

26.    CBD most commonly, but not exclusively, harms the lung and is characterized by one or more combinations of symptoms including nonproductive cough, gradually progressive shortness of breath, chest pain, fatigue, anorexia, weight loss, fevers, night sweats and arthralgias; other organ involvement is known to occur including liver or myocardial involvement, hypercalcemia and/or nephrolithiasis; CBD is a granulomatous disease of the lung causing characteristic scarring of the lung.

27.    During Plaintiff Suzanne Genereux's employment at the Waltham plant, she was exposed to unlawful, dangerous and unhealthful levels of beryllium dust, fumes and particulate, resulting in serious and permanent injury described more particularly elsewhere herein.

28.    All of Plaintiffs' exposures to beryllium occurred as a direct and proximate result of contact with the beryllium-containing products distributed, sold, supplied and/or shipped by the manufacturing Defendants to Raytheon's Waltham plant.

29.    Plaintiff, Barry Genereux, makes a claim against all Defendants herein for his exposure to respirable beryllium brought home to the Genereux residence by Suzanne Genereux upon her clothing and person as the result of her employment at the Waltham plant, and minor

6

Plaintiffs Angela Genereux and Krista Genereux make a claim against all Defendants herein for their exposure to respirable beryllium brought home to the Genereux residence by Barry Genereux upon his clothing and person as the result of his employment at the Waltham plant.

30.    At all times relevant hereto, the Defendants and their predecessors knew or should have known that Waltham plant employees, including Plaintiffs Suzanne Genereux and Barry Genereux among others, would be exposed to unhealthful levels of beryllium dust, fumes and particulate matter, and that the families of Waltham workers would also be exposed to beryllium dust and particulate matter on the clothing and persons of the Waltham plant workers which dust would be carried home by said workers.

31.    At all times relevant hereto, the Defendants and their predecessors, knew or should have known that the sale and use of beryllium-containing materials at the Waltham plant involved or entailed the handling, machining, storage, processing, manufacturing and disposal of toxic and hazardous substances and materials which presented a serious risk of injury to workers and their families at the Waltham plant, including Plaintiffs herein.

32.    At all such times, the Defendants and their predecessors knew or should have known that their distribution, sale and use of beryllium-containing products at the Waltham plant presented a serious risk of harm and injury to workers at the Waltham plant, and their families, including Plaintiffs herein, which required the utilization and employment of proper analytical, monitoring, pollution, emission and/or process controls, equipment facilities and/or techniques and effective warnings.

33.    Notwithstanding their knowledge of the risks and hazards involved, entailed, inherent and/or presented in the sale, distribution and use of beryllium-containing products, the

7

Defendants and their predecessors did carelessly, recklessly, negligently and/or grossly

negligently cause or allow to occur the emission, discharge and/or carriage of poisonous, toxic

and hazardous levels of beryllium from beryllium-containing products at the Waltham plant,

exposing Raytheon's Waltham plant workers and their families, including Plaintiffs, to

unhealthful levels of beryllium dust and particulate matter and failed to properly and/or timely

warn of these known dangers or take any steps to remedy or abate any pollution or contamination

resulting from said emissions, discharge and/or carriage, all of which thereby caused Plaintiffs to

come in contact with and be exposed to deleterious, hazardous, poisonous and toxic amounts of

beryllium to Plaintiffs' great detriment, loss and harm, both physical and emotional.

     34.     As the direct and proximate result of all of the Defendants' and their

predecessors' sale, distribution and use of beryllium-containing products at Raytheon's Waltham

plant, the air at the Waltham plant and at workers' homes, including that of Plaintiffs, became

polluted and contaminated and caused the harm alleged herein.

## COUNT I

### SUZANNE GENEREUX v. AMERICAN BERYLLIA CORP., BRUSH WELLMAN, INC., BRUSH WELLMAN CERAMICS INC., BRUSH WELLMAN CERAMIC PRODUCTS INC., HARDRIC LABORATORIES, INC., KYOCERA AMERICA, INC. and KYOCERA INDUSTRIAL CERAMICS CORP.

### NEGLIGENCE

     35.     Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1

through 34 as though fully set forth herein.

     36.     As a direct and proximate result of the negligence, gross negligence, carelessness

and recklessness of the manufacturing Defendants and their predecessors as aforementioned,

8

Plaintiff Suzanne Genereux developed chronic beryllium disease ("CBD") as well as severe shock to her nerves and nervous system, and was caused to suffer other serious physical, mental and emotional injuries and damages, many of such injuries being permanent in nature; Suzanne Genereux was diagnosed with CBD in August, 2002.

37.    As a result of the aforesaid negligence, gross negligence, carelessness and recklessness, Plaintiff Suzanne Genereux has suffered serious physical and emotional injuries as well as the loss of, and the loss of the enjoyment of, her usual occupations, usual duties, life's pleasures and activities, to her great detriment and loss.

38.    The negligence, gross negligence, carelessness and recklessness of the manufacturing Defendants consists, among other things, of the following:

    (a)    Manufacturing, packaging and selling a beryllium-containing product which was dangerous and which would likely cause harm;

    (b)    Failing to adequately test, research and develop safety guidelines and methods for the protection of users and bystanders from the toxic beryllium dust, particles and fumes emitted by their beryllium products;

    (c)    Failing to adhere to industrial hygiene, emission and pollution control instructions for the purchasers of the products in connection with the manufacture, packaging and sale of such products;

    (d)    Improperly entrusting the supervision of manufacturing processes and the shipping of beryllium-containing products to unqualified, untrained or inappropriate personnel;

    (e)    Carelessly producing beryllium-containing products which would emit dangerous and unhealthful emissions, discharges and/or carriage of beryllium dust, fumes and particulate matter;

    (f)    Failing to employ proper architectural, engineering and/or other design measures in connection with their manufacturing of beryllium products so as to limit and/or eliminate the risk of exposure to beryllium by the purchaser and the purchaser's employees and others exposed to dust,

particulate matter and fumes from such products;

(g)   Failing to timely and/or properly conduct and/or implement appropriate and necessary pollution or contamination cleanup, remediation, abatement or recall measures or to advise their purchasers to undertake same in connection with Defendants' beryllium-containing products;

(h)   Violating applicable local, state and federal laws, statutes, regulations, codes and ordinances concerning air pollution and/or the sale, distribution, transportation and use of hazardous, poisonous and/or toxic substances;

(i)   Failing to conform to all applicable trade and industry customs, procedures, standards and requirements.

39.   As a further result of Defendants' negligence, gross negligence, carelessness and recklessness, Plaintiff Suzanne Genereux suffered the injuries aforementioned and is reasonably expected in the future to suffer mental anguish, emotional distress, pain and suffering, impairment of physical activity, and to continue to suffer same for an indefinite time.

40.   As a result of Defendants' negligence, gross negligence, carelessness and recklessness, Plaintiff Suzanne Genereux has been and will be obliged to expend various and considerable sums of money, and is expected to continue to incur such expenses in the future to her great financial loss and detriment.

41.   Further, Plaintiff Suzanne Genereux has been and may in the future be unable to work due to her injuries, resulting in a loss of earnings and impairment of her earning capacity.

WHEREFORE, Plaintiff, Suzanne Genereux prays that judgment enter against the manufacturing Defendants in an amount which will fairly and adequately compensate her plus interest, costs and such other relief as the Court may deem appropriate

10

## COUNT II

## SUZANNE GENEREUX v. AMERICAN BERYLLIA CORP., BRUSH WELLMAN, INC., BRUSH WELLMAN CERAMICS INC., BRUSH WELLMAN CERAMIC PRODUCTS INC., HARDRIC LABORATORIES, INC., KYOCERA AMERICA, INC. and KYOCERA INDUSTRIAL CERAMICS CORP.

### BREACH OF WARRANTY

42.     Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1 through 41 as though fully set forth herein.

43.     The manufacturing Defendants' beryllium products were manufactured and sold in a defective condition and/or were unreasonably dangerous to users of the products and to people working in the Waltham plant, specifically to Plaintiff Suzanne Genereux, in their design, manufacture, warnings and marketing.

44.     The manufacturing Defendants and their predecessors knew that their beryllium products contained toxic, harmful and inherently and latently dangerous beryllium that would emit invisible airborne dust, particles and fumes capable of causing a permanent, severe and disabling lung disease known as berylliosis or chronic beryllium disease and that beryllium exposure could unreasonably endanger the life and health of the ultimate user and individuals working in areas where the beryllium products are used, including the Plaintiff.

45.     The manufacturing Defendants and their predecessors placed their beryllium products on the market when they knew or reasonably should have known that these products would be used by, or exposed to, industrial workers without inspection for, and without knowledge of, such defects, hazards and/or unreasonably dangerous conditions.

46.     Plaintiff Suzanne Genereux's use of and contact with the manufacturing Defendants' beryllium products was in a manner and for the purposes for which the products

11

were intended.

47.    The defective and unreasonably dangerous condition of the manufacturing

Defendants' beryllium-containing products proximately caused Plaintiff's injuries and damages.

48.    The manufacturing Defendants and their predecessors knew, or in the exercise of

reasonable care should have known, that persons employed in a plant where beryllium, beryllium

ceramic and beryllium metal products were processed, machined and otherwise handled, would

be exposed to hazardous and toxic beryllium fumes, particulate and dust which were health- and

life-threatening.

49.    The manufacturing Defendants and their predecessors knew that beryllium-

containing products would emit invisible airborne dust, particles and fumes capable of causing a

permanent, severe and disabling lung disease known as chronic beryllium disease (CBD), and yet

notwithstanding their knowledge, the manufacturing Defendants failed to adequately test,

research and develop safety guidelines and methods for the protection of users and bystanders

from the toxic beryllium dusts, particles and fumes emitted by their beryllium products.

50.    Each of these failures constituted breaches of implied and/or express warranties,

and caused the manufacturing Defendants' products to be defective and/or unreasonably

dangerous to the Plaintiffs.

51.    The use and processing of the beryllium and beryllium-containing products sold

by the manufacturing Defendants was at all relevant times an ultra-hazardous or abnormally

dangerous activity given the nature of the products.  As a direct and proximate result of exposure

to beryllium from the defective and unreasonably dangerous beryllium-containing products,

Plaintiff Suzanne Genereux has developed chronic beryllium disease and an increased risk of