UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
SUZANNE GENEREUX, et al.,      )
     Plaintiffs,               )    C.A. NO. 04-12137-JLT
                               )
v.                             )
                               )
AMERICAN BERYLLIA CORP.,       )
et al.,                        )
     Defendants.               )
_____)
```

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RAYTHEON
COMPANY'S MOTION TO DISMISS COUNT VIII OF THE COMPLAINT**

**INTRODUCTION**

The sole count in the Amended Complaint against the
defendant Raytheon Company, Count VIII, purports to state a
claim for "Medical Monitoring."  In this Count, three of the
four plaintiffs (a father and his two daughters) assert that,
notwithstanding that they have yet suffered no injury or
illness, they should be awarded the cost of participating in a
program that monitors their health in the future because of
their alleged "increased risk" of contracting disease caused by
exposure to beryllium allegedly brought home from work by their
wife and mother, the fourth plaintiff, and/or by the
father/husband.  This count, however, fails to state a claim
upon which relief can be granted, and should therefore be
dismissed.

First, no Massachusetts court, state or federal, has
recognized "Medical Monitoring" as a viable cause of action.
The one such Court that has addressed its viability, this Court
in Anello v. Shaw Industries, Inc., 2000 WL 1609831 (D. Mass.)
(Freedman, Senior District Judge), rejected medical monitoring
as an independent cause of action as it is presented here.
Second, recognition of a medical monitoring cause of action on
the facts alleged here would be inconsistent with the basic tort
principle followed in Massachusetts that any cause of action
sounding in tort must be accompanied by actual, present harm,
which is not alleged here.  The increased risk of contracting
disease in the future that is alleged here does not satisfy the
harm element under Massachusetts law.  Third, rejection of a
medical monitoring claim under these circumstances is consistent
with views expressed by the United States Supreme Court and is
the law in the majority of jurisdictions that have addressed the
issue.

## FACTS[1]

Raytheon is a defense contractor.  Plaintiff Suzanne
Genereux worked at Raytheon's Waltham plant (the "Waltham
Plant") from 1982 through 1990.  (C. at 17).  During her
employment at the Waltham Plant, she contends that she worked

---

[1]     All references herein to "C. at__" are to the Amended Complaint and
Jury Claim.  Raytheon accepts the facts alleged therein as true solely for
the purposes of the present motion.

with beryllium ceramics and as a result was "exposed to unlawful, dangerous and unhealthful levels of beryllium dust, fumes and particulate, resulting in serious and permanent injury." (C. at 17, 27).

Her husband, plaintiff Barry Genereux, also worked at the Raytheon plant at some unspecified time.  (C. at 1, 18). Suzanne and Barry Genereux's minor children, plaintiffs Angela and Krista Genereux, never worked at the Waltham Plant.  (C. at 2, 18).  Plaintiffs Barry, Angela and Krista Genereux do not allege direct exposure to beryllium.  Rather, Barry Genereux alleges that he was exposed to respirable beryllium brought home to the Genereux residence by his wife Suzanne Genereux upon her clothing and person as a result of her employment at the Waltham Plant.  (C. at 29).  Minor plaintiffs Angela and Krista Genereux allege that they were exposed to respirable beryllium brought to the Genereux residence by Barry Genereux upon his clothing and person as the result of his employment at the Waltham Plant. (C. at 29).

Of the plaintiffs, only Suzanne Genereux claims to suffer any present symptoms allegedly attributable to beryllium exposure.  Plaintiffs Barry, Angela and Krista Genereux do not claim to have any past or present injuries from beryllium exposure.  Rather, they allege only that they have "an increased

risk of contracting beryllium sensitization and/or [chronic beryllium disease]." (C. at 80).

Consequently, plaintiffs Barry, Angela, and Krista Genereux do not seek compensation for injuries (which they have not suffered and do not allege to have suffered), but rather "periodic medical monitoring and/or monetary damages for the cost of monitoring." (C. at 90).

**ARGUMENT**

Independent claims for the cost of medical monitoring without any present manifestation of illness or injury, brought as separate causes of action (rather than as an additional damage item where there is present harm), are relatively new. In such claims, plaintiffs who allegedly have been exposed to a toxic substance but do not manifest any present injury or disease seek to recover the cost of periodic, ongoing monitoring or testing that purportedly detects the onset of what those plaintiffs might characterize as latent injury or disease. (See, e.g., C. at 81-83, 88-90). Because the law in Massachusetts does not recognize such a claim, the medical monitoring count in this complaint (Count VIII) must be dismissed.

I.   **MEDICAL MONITORING HAS NOT BEEN RECOGNIZED AS A COGNIZABLE CLAIM IN MASSACHUSETTS.**

No state or federal court in Massachusetts has recognized "medical monitoring" as an independent cause of action. Raytheon's research has uncovered only one such Court addressing its viability, this Court in <u>Anello v. Shaw Industries, Inc.</u>, 2000 WL 1609831 (D. Mass. 2000) (Freedman, Senior District Judge). In <u>Anello</u>, this Court characterized plaintiffs' medical monitoring claim as an aspect of damages, not an independent cause of action, and dismissed it. <u>Anello</u>, 2000 WL 1609831 at *7.

The husband and wife plaintiffs in <u>Anello</u> alleged that carpets in their newly built home were off-gassing toxic chemicals. They contended that this caused a flare-up of some pre-existing health problems in the wife as well as new sensitivities to chemicals and additional autoimmune dysfunction, and further that it resulted in various health maladies in the previously healthy, active husband, all of which dissipated when they moved out of the house. The plaintiffs included a claim for medical monitoring, and the defendant moved for summary judgment on this and other issues. This Court gave scant attention to the claim, writing as follows: "Because the plaintiffs do not respond to defendant's motion for summary

judgment on Count VI, medical monitoring, <u>and the Court views</u>
<u>this claim as an aspect of plaintiffs' damages, as opposed to an</u>
<u>independent cause of action</u>, the Court concludes that Shaw is
entitled to summary judgment on this count." <u>Id.</u> (emphasis
added).  While the <u>Anello</u> plaintiffs did not oppose the summary
judgment motion as to the medical monitoring claim, this Court
appears to have nonetheless considered, and rejected, its
general viability as a stand-alone cause of action.

    If this Court were to recognize medical monitoring as an
independent cause of action, it would significantly expand tort
liability in Massachusetts, something this Court is generally
reluctant to do.  <u>See</u> <u>Dow v. Donovan</u>, 150 F.Supp.2d 249 (D.
Mass. 2001) (ordinarily inappropriate for federal court to
predict trailblazing decisions of state court); <u>Dushkin v.</u>
<u>Desai</u>, 18 F.Supp.2d 117 (D. Mass. 1998) (federal court should
not blaze new and unprecedented jurisprudential trails to expand
existing state doctrine).  <u>See</u> <u>also</u> <u>Bergeron v. Franchi</u>, 783 F.
Supp. 713, 717 (D. Mass. 1992) (courts are hesitant to create a
new common law cause of action).  Nor is this a circumstance
where creation of a federal common law medical monitoring claim
would be appropriate.  <u>See</u> <u>United States v. Swiss Bank American</u>
<u>Limited</u>, 191 F.3d 30, 43 (1st Cir. 1999) (power to create federal
common law to be used sparingly, so as not to intrude upon
areas, such as tort, traditionally within state's bailiwick).

These principles of federal jurisprudence should lead this Court
to conclude that the plaintiffs cannot maintain a cause of
action for medical monitoring, and that Raytheon is entitled to
dismissal of the sole claim against it, Count VIII for medical
monitoring.

## II.  PLAINTIFFS' INJURY ALLEGED HERE -- INCREASED RISK OF FUTURE DISEASE -- DOES NOT SATISFY THE ACTUAL, PRESENT INJURY REQUIREMENT OF MASSACHUSETTS TORT LAW.

The only "injury" alleged by plaintiffs Barry, Angela, and
Krista Genereux is "an increased risk of contracting beryllium
sensitization and/or [chronic beryllium disease]."  (C. at 80).
They allege no actual, present injury.  A claim based on such
allegations does not satisfy the well-established requirement in
Massachusetts that there be an actual, present injury in order
to maintain a tort action.

This Court, applying Massachusetts law, has addressed
analogous circumstances where, as here, plaintiffs seek to
maintain a cause of action based on the increased risk of future
illness based on a past exposure, and the law is clear:  a tort
plaintiff must allege and prove "that a cause of action for that
harm has accrued at the time recovery is sought."  Anderson v.
W.R. Grace & Co., 628 F. Supp. 1219, 1231 (D. Mass. 1986)
(Skinner, D.J.) (applying Massachusetts law).[2]  See also USM

---

[2]    In Anderson, the Court set forth other considerations militating
against an award of damages based on the alleged possibility of future harm.

<u>Corp. v. Marson Fastener Corp.</u>, 392 Mass. 334, 348 (1984) (in

the typical tort action, "damages accrue at the time of

injury").  Under Massachusetts law, a tort cause of action based

on exposure does not accrue until the disease manifests itself.

<u>See</u> <u>In re Massachusetts Asbestos Cases</u>, 639 F. Supp. 1, 2-3 (D.

Mass. 1985) (Zobel, D.J.) (holding that the time of injury in

the context of Massachusetts breach of warranty claims is when

symptoms attributable to the harmful substance first appear);

<u>Payton v. Abbott Labs</u>, 551 F. Supp. 245, 246 (D. Mass. 1982)

(Skinner, D.J.) (same); <u>Olsen v. Bell Telephone Laboratories,</u>

<u>Inc.</u>, 388 Mass. 171, 174-175 (1983) (cited in <u>Anderson</u>, <u>supra</u>,

for the proposition that a "cause of action accrues when

insidious disease manifests itself"); <u>Gore v. Daniel O'Connell's</u>

<u>Sons, Inc.</u>, 17 Mass. App. Ct. 645, 649 (1984) (action accrues,

for statute of limitation purposes, when disease becomes

manifest).

    While plaintiffs may maintain that what they are really

seeking is medical monitoring as damages, they still need to be

able to state a present, underlying cause of action.  "[T]o view

the risk of a future illness as part of damages is to ignore the

question of whether a cause of action has accrued." <u>Anderson</u>,

628 F. Supp. at 1231.  "With no injury there can be no cause of

---

<u>Anderson</u>, 628 F. Supp. at 1230-1232.  These considerations apply equally
here.

action, and with no cause of action there can be no recovery.
It is not the remedy that supports the cause of action, but
rather the cause of action that supports a remedy." <u>Wood v.</u>
<u>Wyeth-Ayerst Laboratories</u>, 82 S.W.3d 849, 855 (Ky. 2002)
(discussed in detail in the following section).

Consistent with these principles, this Court has refused to
apply an "exposure theory," instead requiring actual, present
injury to maintain a tort cause of action.  In <u>Caputo v. Boston</u>
<u>Edison Co.</u>, 1990 WL 98694 (D. Mass) (Zobel, D.J.) (applying
Massachusetts law), plaintiffs alleged "cellular damage" from
exposure to radiation.  This Court held that "cellular damage
does not rise to the level of physical injury as a matter of
law" -- rather, a tort plaintiff must show "<u>present objective</u>
<u>symptoms</u> of illness or disease." <u>Id</u>. at *11-12 (emphasis
added).  <u>See also</u> <u>Eagle-Picher Industries, Inc. v. Liberty</u>
<u>Mutual Ins. Co.</u>, 682 F.2d 12, 19-21 (1st Cir. 1982)
(distinguishing between manifestation theory and exposure
theory).  Given the need to plead and prove some present injury,
it follows that a mere increased risk of contracting beryllium
sensitization of chronic beryllium disease does not support a
tort claim for damages.  <u>See</u> <u>Caputo</u>, 1990 WL 98694 at *12
("increased risk of developing cancer or some other disease in
the future does not by itself give rise to a claim for damages")
(citing <u>Anderson v. W.R. Grace & Co.</u>, 628 F. Supp. 1219, 1230-32

(D. Mass. 1986)); Laswell v. Brown, 683 F.2d 261, 269 (8th Cir. 1982) (rejecting claims for "cellular damage" and noting that a "lawsuit for personal injury cannot be based on the mere possibility of future harm").

Thus, even if plaintiffs had alleged some asymptomatic or sub-clinical injuries -- and while the complaint is quite detailed they have not -- plaintiffs would still fail to state a cognizable claim for medical monitoring. Sub-clinical effects (i.e., not evident) "do not cause loss, pain, distress, or impairment until, if ever, they accumulate to become clinically evident or manifest." Eagle-Picher, 682 F.2d at 19.[3] Therefore, "sub-clinical injury resulting from exposure . . . is insufficient to constitute the actual loss or damage to a plaintiff's interest required to sustain a cause of action under generally applicable principles of tort law." Schweitzer v. Consolidated Rail Corp., 758 F.2d 936, 942 (3d Cir. 1985) (emphasis added).

The United States Supreme Court has spoken directly to this issue, rejecting the notion that sub-clinical effects can support a cause of action. In Buckley v. Metro-North Commuter

---

[3]    While Eagle-Picher was applying Ohio and Illinois law, Eagle-Picher, 682 F.2d at 18, n. 2, subsequent cases applying Massachusetts law have relied on it. See Caputo v. Boston Edison Co., 1990 WL 98694, *3 (D. Mass) (Zobel, D.J.) (applying Massachusetts law and relying on Eagle-Picher for the proposition that an injury "must be clinically evident with manifest symptoms of loss, pain, distress or impairment"); In re Massachusetts Asbestos Litigation, 639 F. Supp. at 2-3 (characterizing Eagle-Picher as the law of the First Circuit and relying on it)

10

R.R., 79 F.3d 1337, 1343-44 (2d Cir. 1996), rev'd sub nom.
Metro-North Commuter Railroad v. Buckley, 521 U.S. 424 (1997),
the plaintiff sought medical monitoring based on alleged "sub-
clinical" and "subcellular" injuries arising from his exposure
to asbestos dust.  The Supreme Court reasoned that such alleged
injury "amounts to no more than an exposure" to a potentially
hazardous substance, which cannot support a tort claim.  Metro-
North, 521 U.S. at 432, 438-444.

    As the Massachusetts Appeals Court has stated, "it is
unsound judicial policy to encourage the initiation of law suits
in anticipation that a grave disease will manifest itself . .
.." Gore, 17 Mass. App. Ct. at 648.  Rather, "plaintiffs must
wait until the disease has manifested to sue." Anderson, 628 F.
Supp. at 1231.  Plaintiffs Barry, Angela, and Krista Genereux do
not allege any present manifestation of injury or disease, only
an increased risk of disease at some unspecified future time.
Thus, they fail to state a claim under Massachusetts (and
traditional) tort law.

    Another federal court dismissed a medical monitoring class
action against Brush Wellman, Inc. (one of the other defendants
here) that was materially indistinguishable from this case, on
the ground that Tennessee law -- like Massachusetts law --
requires an actual personal injury.  In Jones v. Brush Wellman
Inc., 2000 WL 33727733, *8 (N.D. Ohio 2000), the plaintiffs

11

alleged beryllium exposure but no present, actual injury.  They

sought medical monitoring on behalf of themselves and other

employees who were allegedly exposed to beryllium and beryllium-

containing products.  The plaintiffs claimed that Brush-

Wellman's conduct placed them "at substantially increased risk

of developing [chronic beryllium disease]." Id. at *4 (internal

quotation marks omitted).  The Jones court rejected plaintiffs'

medical monitoring claims as inconsistent with settled tort

principles:

> In this case, plaintiffs are not even seeking to
> recover for the future effects of an existing injury.
> They are seeking to recover for testing for the
> development of a possible future injury.  It is clear
> that under Tennessee law, a plaintiff must allege a
> present injury or loss to maintain an action in tort.
> No Tennessee cases support a cause of action for
> medical monitoring in the absence of a present injury.
> Although plaintiffs point to cases in several other
> jurisdictions which allow such a cause of action, in
> the absence of Tennessee case law or a statute
> authorizing this relatively new and controversial type
> of claim, this Court will not create a new cause of
> action for Tennessee plaintiffs.  As such, plaintiffs
> fail to state a claim upon which relief can be
> granted.

Id. at *22 (emphasis added).  Consistent with this reasoning,

this Court, too, should decline to create a new cause of action

for Massachusetts plaintiffs and should dismiss the medical

monitoring claim against Raytheon (and the other defendants) for

failure to state a claim upon which relief can be granted.

III. **THE UNITED STATES SUPREME COURT HAS STRONGLY SUGGESTED THAT PLAINTIFFS SUCH AS THOSE HERE, WHO DO NOT SUFFER ACTUAL, PRESENT INJURY, SHOULD NOT BE ENTITLED TO RECOVER MEDICAL MONITORING COSTS, AND THE MAJORITY OF JURISDICTIONS THAT HAVE ADDRESSED THE ISSUE ARE IN ACCORD.**

The United States Supreme Court and the weight of the authority across the country supports the dismissal of the medical monitoring claim here, where plaintiffs have not suffered and do not allege actual, present injury. In Metro-North Commuter Railroad v. Buckley, 521 U.S. 424, 438 (1997), the United States Supreme Court was considering whether the Federal Employers' Liability Act permitted a plaintiff without symptoms or disease (like Barry, Angela, and Krista Genereux here) to recover medical monitoring costs as damages in the form of a lump sum. Upon extensive treatment of the subject, including prior state and federal case law and policy considerations, the Court refused to recognize a traditional, unqualified tort cause of action where there has been alleged exposure but no symptoms or disease, characterizing such a cause of action as "beyond the bounds of currently evolving common law." Metro-North, 521 U.S. at 439-440.

Moreover, the majority of the jurisdictions that have addressed the issue have ruled that there is no medical monitoring cause of action, at least in the absence of proof of actual, present harm. A minority of jurisdictions, on the other

hand, have allowed maintenance of such a cause of action even in
the absence of any such harm.  Raytheon has listed on Exhibit A
hereto and described in summary fashion cases from federal
courts and state appellate courts in both the majority and
minority jurisdictions.

The majority position is better reasoned, and is consistent
with the state of the law in Massachusetts, which requires
actual, present injury as an indispensable element of a tort
cause of action, as discussed in depth in Section II, above.
The Kentucky Supreme Court in Wood v. Wyeth-Ayerst Laboratories,
82 S.W.3d 849 (Ky. 2002), wrote an especially comprehensive
opinion, which is instructive here.  The material allegations
are analogous.  The injury alleged was a "significantly
increased risk of serious injury and disease" as a result of the
ingestion of fenfluramine, an appetite suppressing diet
medication.  Wood, 82 S.W.3d at 850 and 851.[4]  The trial court
had dismissed the medical monitoring claim (and other claims)
for failure to state a claim upon which relief can be granted,
and the intermediate appellate court upheld the dismissal.
Kentucky's Supreme Court affirmed, reasoning that recovery for a
tort requires some present physical injury, and upheld the
intermediate appellate court.  Id. at 851-852.

---

[4]    In Paragraph 80 of the Amended Complaint, plaintiffs Barry, Angela, and
Krista Genereux allege "an increased risk of contracting" beryllium
sensitization and/or [chronic beryllium disease]."

The Court, relying on <u>Metro-North</u>, <u>supra</u>, and a "cadre of authors from academia," discussed the many public policy considerations militating against recovery for medical monitoring absent present injury or illness, including the following:

- tens of millions of individuals may have suffered some exposure justifying some sort of medical monitoring, which, combined with the uncertainty as to the amount of liability, could lead both to a flood of less important cases, draining resources better left to those more seriously harmed, as well as the systemic harms associated with unlimited and unpredictable liability;

- the inherently limitless and endless scope of such claims;

- vague parameters for its application, and inconsistent prerequisites from jurisdiction to jurisdiction;

- such a remedy is best left to legislatures, which are in a better position to make such a complex, sweeping change to tort law, could provide fair notice to potential tortfeasors, and engage in the careful consideration that claims involving collateral compensation require;

- allowing recovery in the absence of present injury raises the issue of claim preclusion with respect to a subsequent claim for personal injury if an injury or illness later develops from the prior exposure.

<u>Id.</u> at 857-859 (citations and internal quotation marks omitted). Ultimately, the Court wrote that it was "convinced that this court has little reason to allow such a remedy without a showing

of present physical injury.  Traditional tort law militates against recognition of such claims, and we are not prepared to step into the legislative role and mutate otherwise sound legal principles."  Id. at 859.  This is consistent with Massachusetts tort law principles.

Thus, in light of the failure of plaintiffs Barry, Angela, and Krista Genereux to allege actual, present injury, dismissal of their medical monitoring claim would be consistent with Massachusetts tort principles and precedent from the United States Supreme Court and the majority of jurisdictions that have addressed the issue.  This Court should therefore dismiss Count VIII as to defendant Raytheon Company.

<u>**CONCLUSION**</u>

For the reasons set forth above, Raytheon respectfully requests that the Court dismiss Count VIII of the Amended Complaint and Jury Claim as to defendant Raytheon Company pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

RAYTHEON COMPANY
By its attorneys,


　　/s/  Ronald M. Jacobs
James F. Kavanaugh, Jr. BBO#262360
Ronald M. Jacobs BBO# 561555
CONN KAVANAUGH ROSENTHAL PEISCH
　& FORD, LLP
Ten Post Office Square
Boston, MA 02109
617-482-8200

Dated:  November 10, 2004


212950.1