UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUZANNE GENEREUX and BARRY GENEREUX, Individually and as Parents and Natural Guardians of their minor children, ANGELA GENEREUX and KRISTA GENEREUX,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN BERYLLIA CORP., BRUSH WELLMAN, INC., BRUSH WELLMAN CERAMICS, INC., BRUSH WELLMAN CERAMIC PRODUCTS INC., HARDRIC LABORATORIES, INC., KYOCERA AMERICA, INC., KYOCERA INDUSTRIAL CERAMICS CORP., and RAYTHEON COMPANY,<br><br>Defendants. | Case No. 04-CV-12137 JLT |

## AFFIDAVIT OF KEVIN GAUGHAN IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

1. My name is Kevin Gaughan and I have been employed by Kyocera since 1976. I am currently the North American Product Sales HTCC Product Manager. I have personal knowledge of the facts attested to herein.

2. From my work as a production supervisor, and later roles in sales and program management, I have personal knowledge regarding the only beryllium-containing products that Kyocera sold to Raytheon between 1982 and 1990. Kyocera's in-house legal team confirmed by conducting a diligent search of Kyocera records that the products I worked with were the only beryllium-containing products sold to Raytheon between 1982 and 1990 for the United States Navy's Trident Missile Program.

Based upon this search and my personal knowledge and experience, the only beryllium-containing products that Kyocera delivered to Raytheon between 1982 and 1990 were semiconductor chip packages.

    3.    The semiconductor chip packages were manufactured for the United States Navy for its Trident I and Trident II Missile programs. Raytheon was responsible for the guidance system electronics portion of the Trident missiles for the Navy. Raytheon subcontracted to Kyocera the manufacture of the semiconductor chip packages. The Navy created the specifications and Source Control Drawings (SCDs) which specified the materials to be used in the manufacture of the packages. Kyocera did not participate in selecting nor defining the package materials, or the package design. Kyocera's role was strictly to produce packages in accordance with the Navy's SCDs and specifications on a build-to-print basis. The Navy also entered into a "Class I" agreement with Kyocera under which the Navy reviewed and approved Kyocera's exact manufacturing processes. Kyocera was not permitted to deviate from the approved manufacturing processes without review and approval. At all times, Kyocera's manufacture of the semiconductor chip packages was to Navy specifications.

    4.    The semiconductor chip packages contained a beryllium oxide disc that was about the size of a penny. The disc was in place to insulate other materials. The discs were ordered from Brush Wellman, Inc., who made the discs to the precise size required in the Navy specifications and sold to Kyocera who used them as part of a chip package without altering the size or shape of the disc.

5. When the semiconductor chip package reached Raytheon for installation into the guidance portion of the missiles, the beryllium oxide disc was an integral part of the chip package housing. If anyone further processed the beryllium oxide disc, such as by grinding, the disc would be changed and the product would no longer meet Navy specifications.

6. Because the beryllium disc in the semiconductor chip package was not to be dismantled or manipulated in any way by Raytheon or their semiconductor chip suppliers, there were no known risks to warn Raytheon or the government about. Kyocera never withheld any information from Raytheon or the Navy regarding any potential health risks of working with the semiconductor chip packages.

Signed under the pains of perjury this 9th day of November 2004.

_____
Kevin Gaughan