UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Suzanne Genereux, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 04-CV-12137 JLT |
| | ) |
| American Beryllia Corp., et al. | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS BRUSH WELLMAN, INC., BRUSH WELLMAN CERAMICS INC., AND BRUSH WELLMAN CERAMIC PRODUCTS INC. TO DISMISS COUNTS IV, V, VI, VII, VIII, XII, AND XIII OF PLAINTIFFS' AMENDED COMPLAINT FOR FAILURE TO STATE CLAIMS UPON WHICH RELIEF MAY BE GRANTED.**

I.   **ALLEGATIONS OF THE COMPLAINT**

Brush Wellman is a manufacturer of beryllium and beryllium-containing products. (Am. Compl. ¶11.) Beryllium is a "light strong brittle toxic bivalent metallic element," Webster's Ninth New Collegiate Dictionary (1990), number 4 on the periodic table. Like copper, iron, or aluminum, it is widely present in nature. As the fourth-lightest element, it is much lighter than aluminum, yet six times stiffer than steel. Beryllium has a wide variety of applications -- it is used, for example, in aerospace, medical and defense technologies, automobiles, cell phones, and computers.

In a small percentage of the population, inhalation of sufficient amounts of airborne beryllium particles can lead to the development of chronic beryllium disease ("CBD"), a "granulomatous disease of the lung" that stems from an immune response (akin to an allergic reaction) to beryllium. (Am. Compl. ¶¶ 25-26.) Most people do not develop an immune response to beryllium, and cannot get this disease from any exposure.

CLI-1233607v1

Plaintiffs allege that they were exposed to airborne beryllium at or from defendant Raytheon Company's facility in Waltham, Massachusetts (the "Waltham plant"). Plaintiff Suzanne Genereux alleges that she worked exclusively for Raytheon at the Waltham plant from 1982 through 1990. (Am. Compl. ¶ 17.) Plaintiff Barry Genereux, Suzanne Genereux's husband, also claims to have worked at the Waltham plant. (Am. Compl. ¶ 18.) Suzanne and Barry Genereux's minor children, plaintiffs Angela and Krista Genereux, never worked at the Waltham plant. (Am. Compl. ¶ 18.) Plaintiff Suzanne Genereux claims to have been exposed to hazardous levels of airborne beryllium while at work in the Waltham plaint. Plaintiffs Barry, Angela, and Krista Genereux allege that they were exposed to hazardous levels of beryllium in the plaintiffs' residence, which they claim was carried home in Barry and Suzanne Genereux's clothing. (Am. Compl. ¶ 29.)

Plaintiffs purport to state thirteen direct and derivative claims for negligence, breach of warranty, failure to warn, strict liability in tort, breach of M.G.L Chapter 93A, fraudulent concealment, conspiracy, medical monitoring, and loss of consortium. Plaintiffs seek compensatory damages, punitive damages, periodic medical monitoring, and attorneys' fees.

Only Plaintiff Suzanne Genereux claims to suffer any present symptoms that allegedly are attributable to airborne beryllium exposure. Plaintiffs Barry, Angela, and Krista Genereux do not claim to have any real past or present physical injuries from beryllium. In addition to consortium claims deriving from their relationship with Suzanne Genereux, these three plaintiffs allege that they were "exposed to greater than normal background levels of beryllium," resulting in "an increased risk of contracting beryllium sensitization and/or [chronic beryllium disease]."

_467304_1/

(Am. Compl. ¶¶ 76-78.) They purport to state a claim for "medical monitoring," a controversial cause of action that has never been recognized in Massachusetts.

II. **COUNTS IV, V, VI, VII, VIII, XII, AND XIII OF PLAINTIFFS' AMENDED COMPLAINT FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal where plaintiffs fail to state a claim upon which relief can be granted. "Like a battlefield surgeon sorting the hopeful from the hopeless, a motion to dismiss invokes a form of legal triage, a paring of viable claims from those doomed by law." Iacompo v. Hasbro, Inc., 929 F. Supp. 562, 567 (D.R.I. 1996).

Although the court must view the facts as pleaded in the light most favorable to the nonmoving party, the Court is not required to "accept every allegation made by the complainant, no matter how conclusory or generalized." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). "'[E]mpirically unverifiable' conclusions, not 'logically compelled, or at least supported, by the stated facts,' deserve no deference." Id. (quoting Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989)).

Plaintiffs' complaint purports to state thirteen separate direct and derivative claims stemming from the same alleged exposures to beryllium. Each of Counts IV, V, VI, VII, VIII, XII, and XIII lacks a legal basis in Massachusetts law, given the facts as pleaded, and should be dismissed.

A. **COUNTS IV AND XII FAIL TO STATE CLAIMS FOR STRICT LIABILITY BECAUSE THE MANUFACTURE OF A PRODUCT IS NOT AN ULTRAHAZARDOUS ACTIVITY AS A MATTER OF LAW**

Massachusetts tort law recognizes that those who engage in ultrahazardous or abnormally dangerous activities may be held strictly liable for resulting harms in a few limited

circumstances. See Clark-Aiken Co. v. Cromwell-Wright Co., 367 Mass. 70, 73, 323 N.E.2d 876, 878 (Mass. 1975). "[T]his form of tort has been applied to man-made flooding, explosive blasting, and escaped wild animals, but it has not been applied in the domain of products liability." Wajda v. R.J. Reynolds Tobacco Co., 103 F. Supp. 2d 29, 35 (D. Mass. 2000) (emphasis added) (granting defendant's motion to dismiss). No Massachusetts court has applied Clark-Aiken's common law "unreasonably dangerous" cause of action to a products liability action. Courts in other jurisdictions have similarly rejected invitations to apply the "unreasonably dangerous" cause of action to products liability cases. This Court should do the same.

"Absolute liability attaches only to ultrahazardous or abnormally dangerous activities and not to ultrahazardous or abnormally dangerous materials." Splendorio v. Bilray Demolition Co., 682 A.2d 461, 465-66 (R.I. 1996) (emphasis in original). Courts have uniformly rejected attempts to blur the distinction between activities and products. "[U]ltrahazardousness or abnormal dangerousness is, in the contemplation of the law at least, a property not of substances, but of activities . . ." Indiana Harbor Belt RR Co. v. American Cyanamid Co., 916 F.2d 1174, 1181 (7th Cir. 1990) (Posner, J.).

"[T]he manufacture of a product or substance will not be considered, as a matter of law, an ultra-hazardous activity." Akee v. Dow Chem. Co., 293 F. Supp. 2d 1140, 1144 (D. Haw. 2002) (granting chemical manufacturers' motion to dismiss); Copier ex rel. Lindsey v. Smith & Wesson Corp., 138 F.3d 833, 838 (10th Cir. 1998) (holding that gun manufacturing is not an ultrahazardous activity). Brush Wellman's allegedly tortious conduct was the manufacture and

supply of beryllium and beryllium-containing products to defendant Raytheon. As a matter of law, these activities are not ultrahazardous.

An "ultrahazardous activity" claim must allege that the defendant's actual <u>activity</u> (not its product) caused the plaintiff's injury. See <u>Akee</u>, 293 F. Supp. at 1144. In the case of a chemical manufacturer, causation is only satisfied where the plaintiff alleges that his or her injury resulted from the <u>act of manufacturing</u> the chemical. Causation is not satisfied where a plaintiff challenges some subsequent exposure to the product. "[T]he manufacturer of a product is not considered to be engaged in an abnormally dangerous activity merely because the product becomes dangerous when it is handled or used in some way after it leaves his premises, even if the danger is foreseeable." <u>Indiana Harbor Belt</u>, 916 F.2d at 1181.

In <u>Akee</u>, the court granted dismissal of an "ultrahazardous activity" claim against the manufacturers of insecticides used by Hawaiian pineapple plantations. The <u>Akee</u> plaintiffs' complaint contained no allegation that the chemical manufacturers themselves used or applied the chemicals on the plantation where the alleged harmful exposures occurred. The court held that "the absence of any allegation that the Manufacturing Defendants were, at the time of the Plaintiffs' claimed injuries, actually engaged in the injury producing activity, compels as a matter of law, dismissal . . . ." <u>Akee</u>, 293 F. Supp. 2d at 1144.

Brush Wellman's manufacture of beryllium thus cannot be considered "ultrahazardous" merely because beryllium may pose a risk of injury when it is handled or used after it leaves Brush Wellman's factory. (There is and could be no claim here that plaintiffs were exposed to beryllium at Brush Wellman's factory.) The Court should accordingly dismiss Counts IV and VII.

B.  **COUNTS V AND XIII FAIL TO COMPLY WITH THE DEMAND LETTER REQUIREMENTS OF CHAPTER 93A AND SHOULD BE DISMISSED.**

Plaintiffs bring claims under the Massachusetts consumer protection statute, M.G.L Chapter 93A, alleging unfair and deceptive trade practices. These claims should be dismissed for failure to comply with Chapter 93A's notice requirements.

1.  *Plaintiffs' Chapter 93A claims should be dismissed because plaintiffs' demand letters fail to comply with the thirty-day notice requirement.*

The statute requires that "[a]t least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent." G.L. c. 93A § 9(3) (emphasis added). "[T]he thirty-day requirement, as part of the requirement of a written demand for relief, is a prerequisite to suit, to be alleged and proved." York v. Sullivan, 369 Mass. 157, 163, 338 N.E.2d 341 (1975).

Plaintiffs filed this action in Superior Court for the County of Middlesex, on June 22, 2004. (Compl. p. 1.) Not until August 5, 2004, did counsel for plaintiffs send Brush Wellman a formal demand letter. (Am. Compl. ¶ 61.) On September 9, 2004, plaintiffs then amended their complaint.

Plaintiffs obviously did not comply with the thirty-day requirement. The court should enforce this "prerequisite to suit" and dismiss Counts V and XIII.

2.  *Plaintiffs' Chapter 93A claims should be dismissed because plaintiffs' demand letters fail to satisfy other statutory notice requirements.*

Even if the court refuses to enforce the thirty-day notice requirement, Counts V and XIII should be dismissed due to the plaintiffs' failure to satisfy the other notice requirements of Chapter 93A. Chapter 93A requires the delivery of a written demand for relief which

"reasonably describ[es] the unfair or deceptive act or practice relied upon and the injury suffered." G.L. c. 93A, § 9(3). A proper demand letter will "give[] the addressee an opportunity to review the facts and the law involved to see if the requested relief should be granted or denied." <u>Slaney v. Westwood Auto, Inc.</u>, 366 Mass. 688, 704, 322 N.E.2d 768 (1975). Specificity is required. <u>See</u> 35 Mass. Prac., Consumer Law § 4:53 (2d ed.) (2001 & Supp. 2004) (demand letter should provide prospective defendant with an "adequate basis . . . to appraise the value of the claim or frame a settlement offer"). "An adequate demand letter therefore must recite <u>facts and circumstances</u> that make the cause and extent of the injury reasonably apparent to the defendant." <u>Moynihan v. Life Care Ctrs. of Am., Inc.</u>, 60 Mass. App. Ct. 1102, 798 N.E.2d 1045 (Table), 2003 WL 22717663 at *1 (Mass. App., November 18, 2003) (emphasis added).

Plaintiffs' letters, which are attached as Exhibit A, do not meet these requirements. Critically important "facts and circumstances" are missing.

<u>First</u>, plaintiffs do not identify any "beryllium-containing product" that Brush Wellman sold to Raytheon and to which plaintiffs allegedly were exposed. Brush Wellman sells a wide variety of pure beryllium, beryllium oxide, and beryllium alloy materials and parts; some are sold as raw materials, while others are manufactured to customer specifications, often as finished component parts that in the ordinary course would not be subject to any machining or other abrasive operations that might generate airborne particulate. Plaintiffs' letters say nothing about what products plaintiffs were using, or how. Indeed, whatever products they worked with may not have come from Brush Wellman.

<u>Second</u>, plaintiffs' letters allege that they were exposed to dangerous levels of beryllium, but provide no facts or data related to the alleged exposures. The letters do not even say what

kinds of work Mr. and Mrs. Genereux did at Raytheon, or what they were doing when the alleged exposures took place. The letters provide absolutely no information, indeed not even any contentions, about the amount or duration of any workplace exposure that Mr. or Mrs. Genereux had, or any "greater than normal levels" of beryllium to which plaintiffs claim Barry, Angela, or Krista Genereux were exposed at home.

Third, plaintiffs' letters do not provide any factual basis for the allegation that Brush Wellman failed adequately to warn of the hazards associated with beryllium. There is no mention of what if any information plaintiffs received from Raytheon or Brush Wellman; what if anything they relied upon; what information or warnings Raytheon had from Brush Wellman or other sources; what safety procedures were in place at Raytheon to protect against known beryllium risks; what steps the plaintiffs took to protect themselves against known beryllium risks; or any other critical facts and circumstances that would allow Brush Wellman to investigate and assess plaintiffs' warnings claim.

Fourth, plaintiffs' letters provide no factual support at all for a whole variety of vague and conclusory allegations, such as that Brush Wellman knew its products "would be used by industrial beryllium workers ignorant as to the products' unreasonably dangerous condition;" that it "failed to adequately test, research and develop methods for protection of users and bystanders from the toxic beryllium emissions;" that it "manufactured, fabricated, packaged, sold and distributed beryllium-containing products that were dangerous and likely to cause harm without instructing purchasers and users of proper industrial hygiene, emission and pollution control measures and without minimizing Suzanne's and Barry's risk of exposure to beryllium dust and

particles by using an alternative safer design or product composition;" and that it engaged in "knowing concealment" of beryllium's hazards.

Fifth, plaintiffs' demand letters fail to provide Brush with any information from which Brush could attempt to evaluate the injuries and damages Mrs. Genereux has allegedly suffered. Plaintiffs offer nothing to substantiate a diagnosis of CBD, the alleged severity of Mrs. Genereux's condition, or its causation by exposure to any Brush product. Plaintiffs' letters allege that Mr. Genereux has experienced a "diminution in her lung function and vital capacities", but present no pulmonary function or other data to support this vague allegation.

Plaintiffs' failure to include necessary, basic information regarding Brush Wellman's alleged misconduct and Mrs. Genereux's injuries constitutes a failure to satisfy the requirements of Section 9 of Chapter 93A. See Thorpe v. Mutual of Omaha Ins. Co., 984 F.2d 541, 544 (1st Cir. 1993). In effect, the letters constitute no Chapter 93A demand at all, and plaintiffs' Chapter 93A claims should be dismissed for their failure to comply with the notice requirements.

### C. COUNT VI FAILS TO STATE A CLAIM FOR FRAUDULENT CONCEALMENT OR NONDISCLOSURE.

Count VI purports to state a claim for fraudulent concealment or nondisclosure that is separate from and in addition to Count III, Failure to Warn. This allegation fails to state a claim for fraudulent concealment or nondisclosure under established Massachusetts law.

"Usually, 'nondisclosure does not amount to fraud and is not a conventional tort of any kind.'" Rood v. Newberg, 48 Mass. App. Ct. 185, 192, 718 N.E.2d 886, 893 (1999) (quoting from Greenery Rehabilitation Group, Inc. v. Antaramian, 36 Mass. App. Ct. 73, 77, 628 N.E.2d 1291 (1994)). To the extent that nondisclosure and fraudulent concealment remain common law torts, they exist only as rare business torts that arise in the context of business transactions. See

Restatement (Second) of Torts §§ 550, 551 (1977) (defining the torts of nondisclosure and fraudulent concealment in terms of business transactions).

A further limitation on these torts is that they are applicable only where the law imposes on the nondisclosing party a special duty to speak, such as a fiduciary relationship. In the absence of a special duty to speak, Massachusetts has a "long standing 'rule of nonliability for bare nondisclosure.'" Kannavos v. Annino, 356 Mass. 42, 47, 247 N.E.2d 708, 711 (1969) (emphasis omitted) (quoting from Swinton v. Whitinsville Sav. Bank, 311 Mass. 677, 679, 42 N.E.2d 808 (1942)). "[N]ondisclosure can be actionable only where there is a duty to disclose, and a duty arises only in a number of discrete situations described in § 551 [of Restatement (Second) of Torts]." Greenery Rehabilitation Group, 36 Mass. App. Ct. at 78, 628 N.E.2d at 1294.[1]

In Swinton, the plaintiff alleged that the seller in a real estate transaction knew that the house was infested with termites but failed to disclose that information to the purchaser. The

---

[1] Restatement (Second) of Torts § 551 (1977) provides in relevant part:

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

(a) matters known to him that the other is entitled to know because of a fiduciary duty or other similar relation of trust and confidence between them; and

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

(d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Supreme Judicial Court held that those facts warranted demurrer because they failed to state a claim for nondisclosure:

> There is no allegation of any false statement or representation, or of the uttering of a half truth which may be tantamount to a falsehood. . . . The charge is concealment and nothing more; and it is concealment in the simple sense of mere failure to reveal, with nothing to show any peculiar duty to speak.

Swinton, 311 Mass. at 678, 42 N.E.2d at 808.

In Count VI of the complaint, plaintiffs do not allege any false statement or representation, nor do they allege that Brush Wellman had any of the special duties to disclose delineated in the Restatement. The plaintiffs purport to assert a claim for fraudulent concealment based solely on Brush Wellman's alleged "failure to issue appropriate warnings regarding the contamination and emissions." (Am. Compl. ¶ 63(c).) The Supreme Judicial Court already has ruled that such an assertion of bare nondisclosure fails to state a claim. The court should dismiss Count VI.

### D.  COUNT VII FAILS TO STATE A CLAIM FOR CONSPIRACY.

Massachusetts law labels two different causes of action "civil conspiracy." Aetna Cas. Sur Co. v. P & B Autobody, 43 F.3d 1546, 1563 (1st Cir. 1994). One cause of action relates to coercive conspiracies. The other "civil conspiracy" resembles common law joint liability in tort. Id. at 1563-65. The plaintiffs do not specify which cause of action they wish to invoke, but neither "conspiracy" theory applies to this case. The court should dismiss Count VII for failure to state a claim upon which relief can be granted.

Coercive "[c]ivil conspiracy is a very limited cause of action in Massachusetts. In order to state a claim of civil conspiracy, plaintiff must allege that defendants, acting in unison, had 'some peculiar power of coercion' over plaintiff that they would not have if acting

independently." Jurgens v. Abraham, 616 F. Supp. 1381, 1386 (D. Mass. 1985) (quoting Fleming v. Dane, 304 Mass. 46, 50, 22 N.E.2d 609 (1939). See also, Norman v. Brown, Todd & Heyburn, 693 F. Supp. 1259, 1265 (D. Mass. 1988) (granting dismissal where "[t]he complaint [did] not include any allegation that defendants possessed, by force of numbers, any unique power over plaintiffs"). There is no such allegation here.

The other "civil conspiracy" cause of action is limited both in its applicability and in its effects. "The averment of a conspiracy does not ordinarily change the nature of the cause of action nor add to its legal force." Phelan v. Atlantic Nat'l Bank, 301 Mass. 463, 467, 17 N.E.2d 697, 700 (1938). In this type of civil conspiracy, an underlying tort serves as the basis for the cause of action; the conspiracy merely apportions liability among joint tortfeasors for the concerted action. See New England Foundation Co. v. Reed, 209 Mass. 556, 560, 95 N.E. 935, 935 (1911) (noting that the conspiracy allegation is made "merely for the purpose of fixing joint liability on the defendants."); Aetna Cas. Sur. Co., 43 F.3d at 1564; Restatement (Second) Torts § 876 cmt. b (1977); cf. Santiago v. Sherwin-Williams Co., 794 F.Supp. 29, 31 (D. Mass. 1992), aff'd by 3 F.3d 546 (1st Cir. 1993) ("Courts typically apply the [concert of action] theory when 'a particular defendant is already identified as causing the plaintiff's harm, and the plaintiff desires to extend liability to those acting in league with that defendant.'") (citations omitted).

To state a cause of action for this type of "civil conspiracy" a plaintiff must plead three elements: (1) express or tacit agreement; (2) between at least two separate entities; (3) to engage in some underlying tort in furtherance of the agreement. See Aetna, 43 F.3d at 1564. The plaintiffs' complaint contains many allegations of historical behavior designed to paint Brush in a negative light. But it does not contain any substantive allegation that Brush Wellman engaged in

any concerted <u>tortious</u> conduct. Nor does the complaint name entities with which Brush Wellman possibly could conspire.

Plaintiffs allege that beginning in the 1950s -- thirty years before the plaintiffs' alleged exposures to airborne beryllium at issue in this case -- Brush worked with others to conceal information from the general public about the possible health risks posed by beryllium and influenced an OSHA workplace beryllium standard. Even if these statements were true, this historical "conspiracy" to conceal information fails for the same reason as plaintiffs' fraudulent concealment claim. Concealment or nondisclosure is not a tort. None of the conduct alleged in this Count is tortious in itself, and there is accordingly no underlying tort on which a conspiracy claim could be based.

Furthermore, no conspiracy can exist because plaintiffs allege no agreement between or among distinct corporate entities. Originally, plaintiffs alleged a conspiracy between Brush and the Cabot Corporation. (Compl. ¶ 66.) Plaintiffs amended their complaint and dropped all references to any alleged conspiracy between Cabot and Brush. The Amended Complaint recycles the same conspiracy allegations found in the original Complaint, only it now alleges that Brush Wellman Inc. conspired with "Brush Wellman Ceramics, Inc." and "Brush Wellman Ceramic Products, Inc." rather than with Cabot Corporation. (<u>Compare</u> Compl. ¶ 66 <u>with</u> Am. Compl. ¶ 68.) But "Brush Wellman Ceramics, Inc." and "Brush Wellman Ceramic Products, Inc." do not exist and have not existed since 1981. <u>See</u> Affidavit of Michael Hasychak (attached as Exhibit C). Obviously Brush Wellman Inc. could not conspire with entities that did not exist.[2]

---

[2] Even if these were properly named subsidiaries there would still be no basis for a conspiracy claim. Brush Wellman cannot, as a matter of law, conspire with its own corporate affiliates. <u>Cf. Copperweld Corp. v. Independence Tube Corp.</u>, 467 U.S. 752, 777 (1984) ("We hold that Copperweld and its wholly owned subsidiary Regal are incapable of conspiring with each other for purposes of §1 of the Sherman Act. To the extent that prior decisions of this Court are to the contrary, they are disapproved and overruled.")

_467304_1/

### E.   NO INDEPENDENT CAUSE OF ACTION EXISTS IN MASSACHUSETTS FOR MEDICAL MONITORING

Plaintiffs Barry, Angela, and Krista Genereux seek "medical monitoring" as a separate cause of action. They claim that exposures to beryllium have put them at "increased risk" of injury. They allege no actual present injury. Instead they seek to be monitored for possible (but very unlikely) future injuries.

Massachusetts case law has repeatedly insisted on the presence of an actual present injury before a plaintiff may proceed with a civil action in tort. Plaintiffs' purported claim for "medical monitoring" is therefore not actionable.[3]

Massachusetts law is clear: a tort plaintiff must allege and prove "that a cause of action for that harm has accrued at the time recovery is sought." Anderson v. W.R. Grace & Co., 628 F. Supp. 1219, 1231 (D. Mass. 1986). A tort cause of action for exposure does not accrue until the disease manifests itself. In re Massachusetts Asbestos Cases, 639 F. Supp. 1, 3 (D. Mass. 1985); Payton v. Abbott Labs, 551 F. Supp. 245, 246 (D. Mass. 1982). Plaintiffs Barry, Angela, and Krista Genereux do not claim to suffer any present symptoms from their alleged exposure to beryllium, and thus have no tort claim.

Even if plaintiffs had alleged some asymptomatic or subclinical injuries -- and they have not -- the complaint would still fail to state a claim upon which relief can be granted. Subclinical effects "do not cause 'loss, pain, distress, or impairment' until, if ever, they accumulate to become clinically evident or manifest." Eagle-Picher Indus., Inc. v. Liberty Mut. Ins. Co., 682 F.2d 12, 19 (1st Cir. 1982). Therefore, "subclinical injury resulting from exposure . . . is insufficient to

---

[3] This Court previously has viewed a claim for medical monitoring "as an aspect of plaintiffs' damages, as opposed to an independent cause of action." Anello v. Shaw Industries, Inc., Civ. No. 95-30234-FHF, 2000 U.S. Dist. LEXIS 6835, *21-22 (D. Mass. March 30, 2000).

_467304_1/

constitute the actual loss or damage to a plaintiff's interest required to sustain a cause of action under generally applicable principles of tort law." Schweitzer v. Consolidated Rail Corp., 758 F.2d 936, 942 (3d Cir. 1985) (emphasis added); accord Eagle-Picher Indus., Inc., supra, 682 F.2d at 19-20.

In Caputo v. Boston Edison Co., 1990 U.S. Dist. LEXIS 8546 (D. Mass, July 9, 1990), plaintiffs alleged "cellular damage" from exposure to radiation. This court held that "cellular damage does not rise to the level of physical injury as a matter of law" -- rather, a tort plaintiff must show "present objective symptoms of illness or disease." Id. at *11-12 (emphasis added); see also Laswell v. Brown, 683 F.2d 261, 269 (8th Cir. 1982) (rejecting claims for "cellular damage" and noting that a "lawsuit for personal injuries cannot be based only upon the mere possibility of some future harm"). Given the need to plead and prove some present injury, it follows that a mere "increased risk of developing cancer or some other disease in the future does not by itself give rise to a claim for damages." Caputo, at *12 (citing Anderson v. W.R. Grace & Co., 628 F. Supp. 1219, 1230-32 (D. Mass. 1986) ("plaintiffs must wait until the disease has manifested itself to sue")).

Plaintiffs Barry, Angela and Krista Genereux claim no more than a "mere possibility of harm" from exposure to beryllium, and thus have no claim for "medical monitoring."

The United States Supreme Court has spoken directly to this issue. In Buckley v. Metro-North Commuter Railroad, the plaintiff sought medical monitoring based on alleged "subclinical" and "subcellular" injuries arising from his exposure to asbestos dust. Buckley v. Metro-North Commuter R.R., 79 F.3d 1337, 1343-44 (2d Cir. 1996), rev'd, 521 U.S. 424 (1997). The Supreme Court held that such alleged injury "amounts to no more than an exposure" to a

potentially hazardous substance, and that exposure alone cannot support a tort claim. 521 U.S. at 432; accord Bocook v. Ashland Oil, Inc., 819 F. Supp. 530, 534 (S.D. W. Va. 1993) (holding that there is no practical distinction between alleged "exposure as injury" and sub-clinical injury).

A federal court dismissed a medical monitoring class action against Brush Wellman that was materially indistinguishable from this case, on the ground that Tennessee law -- like Massachusetts law -- requires an actual personal injury. In Jones v. Brush Wellman Inc., No. 1:00 CV 0777, 2000 U.S. Dist. LEXIS 21897 (N.D. Ohio Sep. 13, 2000) (attached as Exhibit B) the plaintiffs sought medical monitoring on behalf of themselves and other employees who were allegedly exposed to beryllium and beryllium-containing products. The plaintiffs claimed that Brush's conduct placed them "at substantially increased risk of developing CBD." Id. at *4 (internal quotation marks omitted). The Jones court rejected plaintiffs' medical monitoring claims as inconsistent with settled tort principles:

> In this case, plaintiffs are not even seeking to recover for the future effects of an existing injury. They are seeking to recover for testing for the development of a possible future injury. It is clear that under Tennessee law, a plaintiff must allege a present injury or loss to maintain an action in tort. No Tennessee cases support a cause of action for medical monitoring in the absence of a present injury. Although plaintiffs point to cases in several other jurisdictions which allow such a cause of action, in the absence of Tennessee case law or a statute authorizing this relatively new and controversial type of claim, this Court will not create a new cause of action for Tennessee plaintiffs. As such, plaintiffs fail to state a claim upon which relief can be granted.

Id. at *22-23 (emphasis added).

These claims should be dismissed for the same reasons.

III. **CONCLUSION**

For the foregoing reasons, the court should grant Brush Wellman's motion and dismiss counts IV, V, VI, VII, VIII, XII, and XIII in their entirety.

|  |  |
|---|---|
|  | BRUSH WELLMAN INC., BRUSH WELLMAN CERAMICS INC., and BRUSH WELLMAN CERAMIC PRODUCTS INC. |
|  | By their attorneys, |
| Dated: November 10, 2004 | *(signature)* |
|  | Alan M. Spiro BBO # 475650 Edwards & Angell, LLP 101 Federal Street Boston, MA 02110 Tel: 617.951.2204 Fax: 617.439.4170 |
|  | Jeffery D. Ubersax Jones Day North Point 901 Lakeside Ave. Cleveland, Ohio 44114-1190 Tel: (216) 586-3939 Fax: (216) 579-0212 |
|  | (Application for Admission *Pro Hac Vice* pending) |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of November, 2004, a true and correct copy of the foregoing **Memorandum in Support of Motion of Defendants Brush Wellman Inc., Brush Wellman Ceramics Inc., and Brush Wellman Ceramic Products Inc. to Dismiss Counts IV, V, VI, VII, VIII, XII, AND XIII of Plaintiffs' Amended Complaint for Failure to State Claims Upon Which Relief May be Granted** was served via U.S. mail, first class postage prepaid, to the following:

**Attorney for Plaintiffs**

Leo V. Boyle, Esq.
Bradley M. Henry, Esq.
Meehan, Boyle, Black & Fitzgerald, PC
Two Center Plaza
Suite 600
Boston, MA 02108
617-523-8300

**Attorneys for Defendant American Beryllia**

Robert P. Sharon, Esq.
Robert P. Sharon P.C.
225 Broadway
Suite 2600
New York, New York  10007
212-227-5550

**Attorneys for Defendant Raytheon**

Ronald M. Jacobs, Esq.
James F. Kavanaugh, Jr., Esq.
Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP
Ten Post Office Square,
4th Floor
Boston, MA 02109
617-482-8200

**Attorney for Defendants Kyocera America, Inc. and Kyocera Industrial Ceramics Corp.**

John C. Wyman
Murtha Cullina, LLP
20th Floor
99 High Street
Boston, MA 02110-2320
617-457-4041

**Attorney for Defendant Hardric Laboratories, Inc.**

Robert Nadeau, Esq.
Nadeau & Associates
1332 Post Road, Suite 4A
Wells, Maine  04090
207-324-3500

Alan M. Spiro BBO # 475650
Attorney for Brush Wellman Inc.,
Brush Wellman Ceramics Inc., and
Brush Wellman Ceramic Products Inc.

_467304_1/