**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| Suzanne Genereux, et al. | ) | |
| | ) | |
|      Plaintiffs, | ) | Case No. 04-CV-12137 JLT |
| v. | ) | |
| | ) | |
| American Beryllia Corp., et al. | ) | |
| | ) | |
|      Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO**
**MOTION TO DISMISS OF DEFENDANT RAYTHEON COMPANY**

Plaintiffs, Barry Genereux, individually, and Suzanne Genereux and Barry Genereux, as parents and natural guardians of their minor children, Angela Genereux and Krista Genereux, have asserted claims against Defendant, Raytheon Company, arising out of its use, release and failure to warn about the dangers of respirable beryllium, a toxin which may cause severe illness or death. Specifically, Raytheon failed "to implement, install and maintain appropriate industrial hygiene controls, ventilation controls and systems, and/or adequate air control and monitoring equipment" which resulted in  the pollution and contamination of "the air at the Waltham plant and, in turn, the residences of ... workers, thereby exposing Plaintiff Suzanne Genereux and her family to the poisonous, toxic and/or hazardous effects of beryllium." *Amended Complaint*, ¶¶ 86-87. In addition, Raytheon "failed to properly and/or timely warn of these known dangers ..." *Id.,* ¶ 33. The plaintiffs seek the establishment of a medical monitoring trust fund due to the reasonable certainty that they require diagnostic testing to detect the onset of any illness arising from their tortious exposure to the dangers of respirable beryllium dust, fumes and particulate matter. As discussed below, such claims present a viable cause of action under Massachusetts law and, therefore, Raytheon's motion should be denied.

**INTRODUCTION**

This is a case involving take-home exposure of toxins, where Suzanne Genereux, a former employee of Raytheon working with toxic beryllium at the plant, transported these toxins on her person from her workplace to her home, where she resides with her husband and children. As stated in the 2002 National Institute of Occupational Safety and Health report, *Protecting Workers' Families*, "Prominent examples of take-home exposures include lead, beryllium, and asbestos. Many reports represent anecdotal accounts of hazardous take-home exposures and subsequent illness among workers' family members."[1] A 1999 study, discussed in the article "Workplace toxins can kill at home " (USA Today, 10/11/2000), reported that researchers tested the hands and cars of beryllium plant workers at the end of their shifts, and found that many employees were carrying beryllium home with them on their hands, clothing and shoes.[2]

Although the Supreme Judicial Court of Massachusetts has not directly addressed the specific issue of whether a defendant that has failed to satisfy its duty of care may be liable for the costs of medical monitoring without a showing of physical harm to those requiring such monitoring, such liability is consistent with principles of Massachusetts law generally and with the weight of authority in other jurisdictions. "[M]edical monitoring [is] simply the extension of traditional tort theory to modern medical practice." *Day v. NLO* , 851 F.Supp. 869, 880 (S.D. Ohio 1994). "It is the combination of the traditional tort policy of compensation for reasonable diagnostic procedures and the medical understanding of diseases with protracted latency periods that have led courts to order prospective medical monitoring." *Id.*

---

[1] *See* www.cdc.gov/niosh/docs/2002-113/pdfs/2002-113.pdf.

[2] *See* usatoday.com/money/bighits/toxin1.htm.

Medical monitoring serves the public health interest in encouraging and fostering access to early medical testing for those exposed to hazardous substances. Medical monitoring levels financial inequities by requiring a defendant to pay for examinations necessitated by defendant's wrongful conduct. Medical monitoring promotes the conventional goals of the tort system - the deterrence of tortfeasors and elemental justice.

Defendant seeks dismissal of this action because plaintiffs are without physical injury at this time. Defendant's argument defies logic because it requires plaintiffs to already possess the physical injury that plaintiffs are seeking to detect and prevent through medical monitoring. Defendant seeks to subvert the public policy concerns which require medical monitoring to be available to permit early diagnosis of toxic related medical conditions.

I.    **Under Massachusetts Law, A Defendant That Has Failed To Satisfy Its Duty of Care May Be Liable for the Costs of Medical Monitoring.**

This court may predict that the Supreme Judicial Court "would adopt the view which, consistent with its precedent, seems best supported by the force of logic . . . the better-reasoned authorities" and "public policy imperatives." *See Ryan v. Royal Ins. Co. of America*, 916 F.2d 731, 735, 739 (1st Cir. 1990). *See also Liberty Mutual Ins. Co. v. Metropolitan Life Ins. Co.*, 260 F.3d 54, 65 (1st Cir. 2001); *F.D.I.C. v. Ogden Corp.*, 202 F.3d 454 (1st Cir. 2000). Based on that standard, it is clear that, consistent with its precedent, the Supreme Judicial Court would recognize that a defendant may be held liable for the cost of medical monitoring without a showing of physical injury to the person who requires such monitoring. Massachusetts case law, logic, the better-reasoned authorities and public policy imperatives compel such a conclusion. In fact, as Defendant has conceded, *see* Raytheon Memo, at 5-6, this Court has already recognized

the viability of medical monitoring, albeit as an item of damages.  *See Anello v. Shaw Industries, Inc.*, 2000 WL 1609831, \*7 (D. Mass. 2000). Because the *Anello* Court denied summary judgment as to other theories of liability, it was not necessary to maintain a separate claim of medical monitoring, because those damages were recoverable in connection with the remaining claims. In the present case, *Raytheon seeks dismissal of the only claim brought against it*, which would preclude recovery of medical monitoring costs. The *Anello* decision is directly to the contrary, as it implied that medical monitoring costs could be recovered as damages.[3]

As discussed below, whether the cost of medical monitoring is viewed as an item of damages resulting from the negligence of the defendant, or as a unique cause of action, the Amended Complaint adequately states a claim upon which relief can be granted against Raytheon based upon Raytheon's negligence and, therefore, its motion should be denied.

**II.    In Medical Monitoring Jurisprudence, an Injury Arises When Significant Economic Harm is Inflicted on Those Tortiously Exposed to Toxic Substances Where it is Reasonably Certain That They Require Ongoing Medical Testing, Notwithstanding the Fact that the Physical Harm Resulting from Such Exposure is Often Latent.**

Medical monitoring jurisprudence has developed out of the need to address the reality of toxic tort exposure, the latent nature of the physical harm caused by such exposure, and the

---

[3] The other cases defendant cites do not support dismissal under Massachusetts law. Under *Bergeson v. Franchi*, 783 F. Supp. 713, 717 (D. Mass. 1992), courts may create new common law causes of action "when there is no other way to vindicate such public policy." Medical monitoring vindicates important public policy issues. *Dow v. Donovan*, 150 F. Supp. 2d 249, 260 (D. Mass. 2001), involved several complex issues of state law, leading the Court to state in *dicta* that it is "ordinarily inappropriate for a federal court to predict 'trailblazing' decisions of state courts," but the court did not dismiss the action. In *Dushkin v. Desai*, 18 F. Supp. 2d 117, 122 (D. Mass. 1998), the court felt it inappropriate to "blaze new and unprecedented jurisprudential trails," quoting *Kotler v. American Tobacco Co.*, 926 F.2d 1217, 1224 (1st Cir.1990), which relied on cases chastising plaintiffs for rejecting a state court forum in favor of a federal forum and subsequently complaining when the federal court did not support their interpretation of state law. No such circumstances are presented in the case at bar.

significant present economic harm inflicted on those who have been so exposed and, as a result, require long-term diagnostic testing to detect the onset of these latent diseases. *See Bower v. Westinghouse Electric Corp.*, 206 W. Va. 133, 138, 522 S.E.2d 424, 429 (W. Va. 1999); *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 852 (3d Cir. 1990), *cert. denied sub nom. General Elec. Co. v. Knight*, 499 U.S. 961, 111 S. Ct. 1584, 113 L. Ed.2d 649 (1991).

The widespread use of toxic substances in workplaces across the country and the increasing public awareness of their danger and potential to cause injury have led many courts to recognize medical monitoring as a remedy or cause of action. With approximately 50,000 hazardous waste sites nationwide, over 65,000 chemicals in commercial use which have not been tested for their effects on human health or the environment, and workplace exposure to hazardous substances alone accounting for from five percent to as much as thirty-eight percent of all cancers, today's society is increasingly aware of the danger and potential injury caused by the widespread use of toxic substances. *See In re Paoli*, 916 F.2d at 851-52. However, "the physical injury resulting from exposure to toxic substances usually manifests itself years after exposure." *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 977 (Ut. 1993). Consequently, medical monitoring has developed precisely because of the latent nature of the physical injury arising from exposure to toxic substances and the need to test for early diagnosis and treatment. Thus, the "public policy imperatives" support this court's recognizing the viability of the claims for medical monitoring asserted against Raytheon. *Ryan v. Royal Ins. Co. of Amer.*, 916 F.2d at 735.

A.   **The Very Nature of a Medical Monitoring Action Presupposes the Absence of a Present Physical Harm.**

The purpose of medical monitoring is early diagnosis and detection of disease. Defendant

urges dismissal of this action because plaintiffs are without physical injury at this time. Yet,

defendant's argument defies logic because it requires plaintiffs to already possess the physical

injury that plaintiffs are seeking to detect and prevent.

A plaintiff in a medical monitoring action states a claim for injury, but not physical

injury. As *Bower* states, "[t]he 'injury' that underlies a claim for medical monitoring – just as

with any other cause of action sounding in tort – is 'the invasion of any legally protected

interest.' Restatement (Second) of Torts sec. 7(1) (1964)." *Id.* The Third Circuit commented in

*Paoli*, 916 F.2d at 851 (citation omitted), that "[d]efining injury in this way is not novel ... 'It is

difficult to dispute that an individual has an interest in avoiding expensive diagnostic

examinations just as he or she has an interest in avoiding physical injury. . . When a defendant

negligently invades this interest, the injury which is neither speculative nor resistant to proof, it is

elementary that the defendant should make the plaintiff whole by paying for the examinations.'"

*See Lewis v. Lead Industries Ass'n, Inc.*, 342 Ill. App. 3d 95, 101-2, 793 N.E.2d 869, 874 (Ill.

App. 1st Dist. 2003) ("If a defendant's breach of duty makes it necessary for a plaintiff to incur

expenses to determine if he or she has been physically injured, we find no reason why the

expense of such an examination is any less a present injury compensable in a tort action than the

medical expenses that might be incurred to treat an actual physical injury caused by such a breach

of duty."); *Bocook v. Ashland Oil, Inc.*, 819 F. Supp. 530, 538 (S.D. W.Va. 1993) ("this court

cannot discern the purpose for requiring a [medical monitoring] plaintiff to also be seeking

compensation for present manifest physical injuries. The very essence of toxic exposure cases is

the contention that physical injuries therefrom are ... indiscernible ... the effects are latent.").

The most-quoted hypothetical in medical monitoring jurisprudence illustrates how an

injury can arise without a physical injury:

> Jones is knocked down by a motorbike which Smith is riding through a red light.
> Jones lands on his head with some force. Understandably shaken, Jones enters a
> hospital where doctors recommend that he undergo a battery of tests to determine
> whether he has suffered any internal head injuries. The tests prove negative, but
> Jones sues Smith solely for what turns out to be the substantial cost of the
> diagnostic examinations. . .
>
> [I]it is clear that even in the absence of physical injury Jones ought to be able to
> recover the cost for the various diagnostic examinations proximately caused by
> Smith's negligent action.. . . The motorbike rider, through his negligence, caused
> the plaintiff, in the opinion of medical experts, to need specific medical services--
> a cost that is neither inconsequential nor of a kind the community generally
> accepts as part of the wear and tear of daily life. Under these principles of tort law,
> the motorbiker should pay.

*Friends for All Children*, 746 F.2d at 825.

Massachusetts law is consistent with medical monitoring jurisprudence as it follows the

definition of "injury" found in the Restatement (Second) of Torts section 7 (1965):

> According to the Restatement (Second) of Torts § 7 (1965), the term "injury"
> denotes "the invasion of any legally protected interest of another." Moreover,
> "[t]he most usual form of injury is the infliction of some harm; but there may be
> an injury although no harm is done." Restatement (Second) of Torts § 7,
> comment a (1965). As Professor McCormick has explained, "What the law always
> requires as a basis for a judgment for damages is not loss or damage, but 'injuria,'
> and hence damages are allowed, though there has been no loss or damage."
> McCormick, Damages § 20 (1935).

*Leardi v. Brown,* 394 Mass. 151, 159-160, 474 N.E.2d 1094, 1101 (Mass. 1985).[4]

 Defendant's attacks on plaintiffs' claims are without merit.  Defendant first seeks to

"analogize" plaintiffs' medical monitoring cause of action to that of a claim for increased risk of

future harm.  *See* Raytheon Memorandum, at 7, citing to *Anderson v. W.R. Grace & Co.*, 628 F.

---

[4]Although *Leardi* involved the Consumer Protection Act, its definition of the term
"injury" was based on the "interpretation of well-defined words and phrases in the common
law..." *Leardi v. Brown,* 394 Mass. at 159 (citing Sutherland Statutory Construction § 50.03).

Supp. 1219, 1231 (D. Mass. 1986).  That is not the case. In predicting that Pennsylvania would

recognize a cause of action for medical monitoring, the court in *Paoli I,* 916 F.2d at 850-51

(footnote omitted) (emphasis added) explained the distinction between these claims:

> [A]n action for medical monitoring seeks to recover only the quantifiable costs of
> periodic medical examinations necessary to detect the onset of physical harm,
> whereas an enhanced risk claim seeks compensation for the anticipated harm
> itself, proportionately reduced to reflect the chance that it will not occur....
>
> ... *The injury in an enhanced risk claim is the anticipated harm itself. The injury
> in a medical monitoring claim is the cost of the medical care that will, one hopes,
> detect that injury.* The former is inherently speculative because courts are forced
> to anticipate the probability of future injury. The latter is much less speculative
> because the issue for the jury is the less conjectural question of whether the
> plaintiff needs medical surveillance.

Defendant also seeks to support its concept of injury-as-physical injury by citing to cases

on the accrual of a cause of action for physical injury.  *See* Raytheon Memorandum, at 7-8.  Yet,

courts have found that cases on the accrual of a personal injury action are inapplicable in the

context of a medical monitoring action.  *See Bocook v. Ashland Oil, Inc.*, 819 F. Supp. 530, 537

(S.D. W.Va. 1993). Nor is plaintiffs' claim an exposure-as-injury claim.  *See* Raytheon

Memorandum, at 9.  *See Hansen v. Mountain Fuel Supply*, 858 P.2d at 978 ("exposure to an

allegedly harmful substance ... is not enough for recovery. Courts have set forth several criteria

for determining whether a plaintiff is entitled to recover the costs of medical monitoring.").

Defendant also refers to an unpublished decision by a federal district court in Ohio

construing Tennessee law, *Jones v. Brush Wellman*, *see* Raytheon Memo, at 11-12. However, it

failed to mention a published decision by a federal district court in Tennessee also construing

Tennessee law which certified a medical monitoring class of women and children exposed to

radioactive iron isotope. *Craft v. Vanderbilt University*, 174 F.R.D. 396, 406 (M. Tenn. 1996).

The plaintiffs alleged that they suffered an "increased risk of contracting beryllium sensitization and/or CBD" as a result of Raytheon's negligence in failing "to implement, install and maintain appropriate industrial hygiene controls, ventilation controls and systems, and/or adequate air control and monitoring equipment" and to "properly and/or timely warn of these known dangers." *Amended Complaint*, ¶¶ 33, 80, 86-87. Such allegations adequately identify an injury for which medical monitoring relief can be granted.

**III.    Common Law Principles Support The Theory of A Plaintiff's Right to Recover Medical Monitoring in the Absence of Present Physical Injury.**

In addition to medical monitoring jurisprudence itself, two common law principles underlie the theory of a plaintiff's right to recover medical monitoring.  *See Hagerty v. L & L Marine Servs., Inc.*, 788 F.2d 315, 319 (5th Cir.), *modified on other grounds*, 797 F.2d 256 (5th Cir. 1986); *Friends For All Children v. Lockheed Aircraft Corp., Inc.*, 746 F.2d 816 (D.C. Cir. 1984); Cook v. Rockwell Int'l Corp., 755 F. Supp. 1468, 1478 (D. Colo. 1991); *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 976 (Utah 1993).

First, the doctrine of "avoidable consequences" mandates that the plaintiff submit to medically advisable treatment.  The positive element of the avoidable consequences rule is that a plaintiff is permitted to recover, in addition to the normal elements of damages, any sums reasonably spent to minimize his or her damages.  *Hagerty, supra*; *Dobbs, Handbook on the Law of Remedies* p. 579 sec. 8.9.

Second, the rule allowing prospective medical damages supports a plaintiff's right to recover for reasonably anticipated medical expenses, including periodic diagnostic examinations. "'A plaintiff ordinarily may recover reasonable medical expenses, past and future, which he

incurs as a result of a demonstrated injury.'" *Hagerty, supra* (citation omitted).

Recognizing both of these doctrines, Massachusetts law is again quite consistent with medical monitoring jurisprudence. *See Burnham v. Mark IV Homes, Inc.,* 387 Mass. 575, 586, 441 N.E.2d 1027 (1982) ("The general rule with respect to mitigation of damages is that a plaintiff may not recover for damages that were avoidable by the use of reasonable precautions on [its] part."); *Casillo v. Worcester Area Transp. Co., Inc.*, 2001 WL 639149, *2 (Mass. App. Div. 2001) ("[t]he plaintiff in a personal injury case generally is entitled to recover for reasonable expenses incurred for past and future medical care").

## IV.    Public Policy Imperatives Support A Right To Recover Medical Monitoring Costs Without a Showing of Present Physical Injury.

Raytheon's motion to dismiss the claims against it runs contrary to the applicable public policy issues raised in connection with medical monitoring. The claims satisfy a number of sound policy concerns including the (1) public health interest in fostering access to early medical testing for those exposed to hazardous substances; (2) economic savings realized by the early detection and treatment of disease; (3) deterrence of tortfeasors; and (4) elemental justice.

In *Redland Soccer Club, Inc. v. Dept. of the Army and Dept. of Defense of the U.S.*, 548 Pa. 178, 194-195, 696 A.2d 137, 145 (Pa.1997) (citation and footnote omitted), the court provided a number of public policy reasons to recognize claims for medical monitoring:

> [M]edical surveillance damages promote early diagnosis and
> treatment of disease or illness resulting from exposure to toxic
> substances caused by a tortfeasor's negligence. *Ayers,* 525 A.2d at
> 311. Allowing recovery for such expenses avoids the potential
> injustice of forcing an economically disadvantaged person to pay
> for expensive diagnostic examinations necessitated by another's
> negligence. Indeed, in many cases a person will not be able to
> afford such tests, and refusing to allow medical monitoring

damages would in effect deny him or her access to potentially life-saving treatment. It also affords toxic-tort victims, for whom other sorts of recovery may prove difficult, immediate compensation for medical monitoring needed as a result of exposure. Additionally, it furthers the deterrent function of the tort system by compelling those who expose others to toxic substances to minimize risks and costs of exposure. Allowing such recovery is also in harmony with "the important public health interest in fostering access to medical testing for individuals whose exposure to toxic chemicals creates an enhanced risk of disease." *Ayers,* 525 A.2d at 311.

**V.      This Court's Decision, Finding that Subcellular Changes Alone Are Sufficient Injury to Be Compensable, Supports Plaintiffs' Claim for Medical Monitoring without a Showing of Physical Injury**.

Contrary to defendant's argument that a physical harm requirement cannot be met by subcellular or subclinical injury, this Court, in *Anderson v. W.R. Grace & Co.*, 628 F. Supp. 1219, 1228 (D. Mass. 1986), found that subcellular changes alone may be enough injury to support a claim for fear of cancer if substantiated by expert medical testimony.  According to this Court, the Supreme Judicial Court had not ruled that the physical harm should be immediately apparent as compared to subcellular.  Thus, the court held that T-cell damage could prove the physical injury requirement for negligent infliction of emotional distress.  *Id.* at 1226-27.

Defendant's reliance upon *Caputo v. Boston Edison Co.*, 1990 WL 98694 (D. Mass.) for the proposition that cellular damage does not rise to the level of physical injury as a matter of law, is misplaced as that statement was made in an unpublished opinion, in reliance upon *Eagle-Picher Industries, Inc. v. Liberty Mutual Ins. Co.*, 682 F.2d 12 (1st Cir. 1982), which itself was based on Ohio and Illinois law.  In any event, *Caputo* and *Anderson* did not address or even involve the issue of recovery of the costs of medical monitoring.

11

VI.     **Both the Weight of Authority, and the Better-Reasoned Decisions, Recognize Medical Monitoring as a Cause of Action or Form of Damages without Requiring a Showing of Present Physical Injury**.

Presumably because of the numerous cases which have recognized medical monitoring as a form of damages without a showing of physical injury, defendant did not include these cases in the list of cases it provided to the court.  *See* Raytheon Memorandum, Exhibit A.  Yet, when these jurisdictions are added to a nationwide survey, it is clear that the great majority of courts that have addressed this issue have recognized or predicted a medical monitoring cause of action *or* form of damages, without requiring a showing of present physical injury[5]. As stated in *Bocook*

---

[5] Arizona: *Burns v. Jaquays Min. Corp.*, 752 P.2d 28, 33-34 (Az. Ct. App. 1987); Arkansas: *Baker v. Wyeth-Ayerst Labs Div.*, 992 S. W. 2d 797 (Ark. 1999); California: *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795 (Cal. 1993); Colorado: *Cook v. Rockwell Int'l Corp.*, 755 F. Supp. 1468 (D. Colo. 1991); Connecticut: *Doe v. City of Stamford*, 241 Conn. 692, 699 n.8 (1997), *Martin v. Shell*, 180 F. Supp.2d 313, 323 (D. Conn. 2002); District of Columbia, *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816 (D.C. Cir. 1984); Florida: *Petito v. A.H. Robins*, 750 So.2d 103, 107-08 (Fla. Ct. App. 2000); Guam: *Abuan v. General Electric Co.*, 3 F.3d 329 (9th Cir. 1993); Illinois: *Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109 (N.D. Ill. 1998); Kansas: *Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp. 1515 (D. Kan. 1995); Kentucky: *Bocook v. Ashland Oil, Inc.*, 819 F. Supp. 530 (S.D. W. Va. 1993) (though "some present physical harm, however slight" is required, proof could likely be made by showing plaintiff had suffered "a significantly increased risk of contracting a serious latent disease."); Missouri: *Elam v. Alcolac, Inc.*, 765 S.W. 2d 42, 209 (Mo. Ct. App. 1988) (dictum), Montana: *Lamping v. American Home Products*, DV-97-85786 (Mont. 4th Dist., Feb. 2, 2000); New Jersey: *Ayers v. Township of Jackson*, 106 N.J. 557, 525 A.2d 287 (1987); New York: *Patton v. General Signal Corp.*, 984 F. Supp. 666, 674 (W.D.N.Y. 1997); *Askey v. Occidental Chem. Corp.*, 102 A.D.2d 130 (N.Y. 4th Dep't 1984); Ohio: *Day v. NLO*, 851 F. Supp. 869 (S.D. Ohio 1994); *Verbryke v. Owens-Corning*, 616 N.E.2d 1162 (Ohio Ct. App. 1992); Pennsylvania: *Redland Soccer Club, Inc. v. Department of the Army*, 696 A.2d 137, 143-46 (Pa. 1997), *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829 (3d Cir. 1990), *cert. denied sub nom. General Electric Co. v. Knight*, 499 U.S. 961, 11 S. Ct. 1584, 13 L.Ed.2d 649 (1991); Tennessee, *Craft v. Vanderbilt Univ.*, 174 F.R.D. 396 (M.D. Tenn. 1996), but *see Jones v. Brush Wellman, Inc.*, 2000 WL 33727733, *8 (N.D. Ohio 2000) (Tennessee law), holding to the contrary; Texas:  *Earthman v. American Home Products*, 97-10-03790 (9th Dist. Texas 1998); Utah: *Hansen v. Mountain Fuel Supply*, 858 P.2d 970, 979-80 (Utah 1993); Vermont: *Stead v. F.E. Myers Co.*, 785 F. Supp. 56 (D. Vt. 1990); Virgin Islands, *Josephat v. St. Croix Alumina, LLC*, 2000 WL 1679502, *1 (D. Virgin Islands 2000), but *see Purjet v. Hess Oil Virgin Island*

*v. Ashland Oil, Inc.*, 819 F.Supp. at 534, a "majority of the courts" have "allowed recovery of

such costs upon proof of exposure to the toxins without requiring proof of a physical injury also."

By contrast, a much smaller number of courts have not recognized or predicted such a cause of

action *or* form of damages.[6]

    In medical monitoring jurisprudence, it is far less significant whether a court endorses

---

*Corp.*, 1986 WL 1200 (D. Virgin Islands 1986); West Virginia, *Bower v. Westinghouse*, 522 S.E.2d 424, 426 (W. Va. 1999).

[6]Alabama: *Hinton v. Monsanto Co.*, 813 So.2d 827 (Ala. 2001); Delaware: *Mergenthaler v. Asbestos Corp. of Am.*, 480 A.2d 647 (Del. 1984); Kentucky: *Wood v. Wyeth-Ayerst Labs.*, 82 S.W.3d 849 (Ky. 2002); Louisiana: Civil Code 2315 (2000); Minnesota: *Weirlein v. U.S.*, 746 F. Supp. 887 (D. Minn. 1990), *vacated in part on other grounds*, 793 F. Supp. 898 (1992) (though physical injury required, court could not rule as a matter of law that plaintiffs' alleged injuries are not "real" simply because they are subcellular, and noted expert testimony of likelihood of chromosome breakage sufficient to establish present injury); *Bryson v. Pillsbury Co.*, 573 N.W.2d 718 (Minn. Ct. App. 1998) (question of fact whether asymptomatic chromosomal damage constituted "present injury" to sustain claim); Nebraska: *Trimble v. Asarco, Inc.*, 232 F.3d 946 (8th Cir. 2000); Tennessee: *Jones v. Brush Wellman, Inc.*, 2000 WL 33727733, *8 (N.D. Ohio 2000) (Tennessee law), but *see Craft v. Vanderbilt Univ.*, 174 F.R.D. 396 (M.D. Tenn. 1996) to the contrary; Virginia: *Ball v. Joy Tech., Inc.,* 958 F.2d 36 (4th Cir. 1991); Virgin Islands: *Purjet v. Hess Oil Virgin Island Corp.*, 1986 WL 1200 (D. Virgin Islands 1986), but *see Josephat v. St. Croix Alumina*, LLC, 2000 WL 1679502, *1 (D. Virgin Islands 2000) to the contrary; Washington: *Duncan v. Northwest Airlines, Inc.*, 203 F.R.D. 601 (W.D. Wash. 2001).

    For the following reasons, these decisions, which had been included by defendant in its Exhibit A, should not be on this list of cases that have not recognized or predicted a medical monitoring cause of action *or* form of damages: *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795 (Cal. 1993), because the court recognized medical monitoring as an item of damages without a showing of personal injury; *Witherspoon v. Philip Morris Inc.*, 964 F. Supp. 455, 467 (D.D.C. 1997), due to the contrary and controlling holding of *Friends for All Children, Inc. v. Lockheed Aircraft Corp.,* 746 F.2d 816 (D.C. Cir. 1984); *Anello v. Shaw Industries, Inc.*, 2000 WL 1609831 (D. Mass. 2000), because this Court did not state that the recognition of medical monitoring as an item of damages requires a finding of physical injury; *Thomas v. FAG Bearings Corp.*, 846 F. Supp. 1400 (W.D. Mo. 1994), because the significance of its prediction of Missouri law is called into question by contrary dicta in the state appellate court in *Elam v. Alcolac, Inc.*, 765 S.W.2d 42 (Mo. Ct. App. 1988); *Badillo v. American Brands, Inc.*, 16 P.3d 435 (Nev. 2001), because the court did not comment, in recognizing medical monitoring as a form of damages, as to whether or not personal injury was required.

medical monitoring as a cause of action or a form of damages, because the elements in either

approach are fairly uniform, than whether it requires a showing of present physical injury in order

to obtain recovery.  Where medical monitoring has been recognized as an independent cause of

action, a plaintiff must nevertheless prove a defendant's wrongful conduct to meet the

requirements of the cause of action.  *See, e.g., Redland Soccer Club,* 696 A.2d at 145; *Bower v.*

*Westinghouse*, 522 S.E.2d 424, 426 (W. Va. 1999).  Similarly, where medical monitoring is

considered an element of damages, a plaintiff is not entitled to these damages unless the plaintiff

can show, through reliable medical expert testimony, that the need for future medical monitoring

is a reasonably foreseeable consequence of exposure to toxic chemicals and that monitoring is

reasonable.  *See, e.g,, Potter,* 6 Cal.4th at 1006, 25 Cal.Rptr.2d 550, 863 P.2d 795.

Even defendant's limited survey of cases, which omitted cases recognizing medical

monitoring as an item of damages without a showing of personal injury, is in error because

defendant excluded cases that should have been included on the list of authorities which

recognize a medical monitoring cause of action in the absence of physical injury[7] and included

cases that should have been omitted from the list of authorities which found no medical

---

[7] Defendant's list of authorities recognizing a medical monitoring cause of action in the absence of physical injury failed to include: in D.C., *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816 (D.C. Cir. 1984); in Kansas, *Burton v. R.J. Reynolds Tobacco Co.,* 884 F. Supp. 1515, 1523 n. 6 (D. Kan. 1995);  in Montana, *Lamping v. American Home Products,* DV-97-85786 (Mont. 4th Dist., Feb. 2, 2000) ("patient's independent claim for medical monitoring accrues when the patient can meet all of the elements of the claim, which notably does not include an actual physical injury element."); in Tennessee, *Craft v. Vanderbilt Univ.,* 174 F.R.D. 396, 406 (M.D. Tenn.1996) (group of women and children exposed to radioactive iron isotope met the requirements of Rule 23(b)(2) and would be certified as a class on their medical monitoring claims); in Texas, *Earthman v. American Home Products,* 97-10-03790 (9th Dist. Texas 1998) (conditionally certifying a class of individuals who had ingested certain prescription diet drugs on several causes of action including medical monitoring).

monitoring cause of action in the absence of physical injury[8].

Defendant is mistaken in its contention that the United States Supreme Court supports the

dismissal of the medical monitoring claim here, *see* Raytheon's Memo at 13. *See Petito v. A.H.*

*Robins Co.*, 750 So.2d 103, 106 (Fla. App. 3 Dist. 1999). First, the holding of *Metro-North*

*Commuter Railroad Co. v. Buckley*, 521 U.S. 424 (1997), was limited to its construction of the

Federal Employers' Liability Act. Second, the alarm *Buckley* sounded of a flood of litigation,

which post-*Buckley* courts and defendant here have echoed, is according to *Buckley* itself,

entirely irrelevant in this case where plaintiff seeks a medical monitoring program, not a lump-

sum damage award. *Id.* at 444.

*Buckley*, in fact, praised the various limitations that medical monitoring advocates have

placed on the claims, *id.* at 440-441, such as a court-supervised fund, rather than a lump-sum

damages award, and stated that the reason the Court even raised the concern of unlimited liability

was to "explain why we consider the limitations and cautions to be important - and integral- parts

of the state-court decisions that permit asymptomatic plaintiffs a separate tort claim for medical

monitoring costs." 521 U.S. at 424.

Indeed, the Court's statement that the Second Circuit decision "went beyond the bounds

of currently evolving common law" was made with specific reference to the lump-sum recovery

provided by that court, which plaintiffs do not seek here. *Buckley*, 521 U.S. at 439-440. *Buckley*

---

[8] Defendant's list of authorities that found against a medical monitoring cause of action in the absence of physical injury mistakenly included *Witherspoon v. Philip Morris, Inc.*, 964 F. Supp. 455, 467 (D.D.C. 1997), notwithstanding that the D.C. Circuit, *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816 (D.C. Cir. 1984) holds to the contrary. The Court in *Friends for All Children* predicted that the tort law of the District of Columbia would recognize an action for medical monitoring in the absence of physical injury. *Id.* at 824-25.

repeated that its conclusion of denying medical monitoring recovery in the FELA action was

limited to cases seeking lump-sum damages, or "full-blown" tort liability of the "unqualified"

kind, and that it does not "express any view about the extent to which the FELA might

accommodate medical cost recovery rules more finely tailored than the rule we have considered."

Defendant next relies on *Wood v. Wyeth-Ayerst Laboratories*, 82 S.W.3d 849 (Ky. 2002),

for its attack on the allegedly "vague parameters" of the medical monitoring cause of action.

Yet, even the law review article cited by *Wood* for this proposition credits the advocates of

medical monitoring with the creation of "meaningful requirements that plaintiffs must meet

before imposing such liability." 53 S.C.L. Rev. 815, 845. The article discusses *Bower* and the

numerous prerequisites which must be met in order to state a cause of action for medical

monitoring, including a significant exposure to "a proven hazardous substance," creating an

increased risk of "a serious latent disease," requiring monitoring that is "different from what

would be prescribed in the absence of the exposure."[9]

Finally, defendant cites *Wood* for its warning that allowing recovery in the absence of

present injury can lead to claim preclusion. However, that is not a concern in Massachusetts

which has followed the majority of jurisdictions in adopting the separate disease rule. *See Cigna*

*Ins. Co. v. Oy Saunatec, Ltd.*, 241 F.3d 1, 10 (1st Cir. 2001) (applying Massachusetts law in

interpreting *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29 (1st Cir. 2000), and stating that *Nicolo*

stands for the proposition that in multiple injury cases in which the second injury is latent, a

second cause of action exists for the second injury).

---

[9] *Wood* also contends that the medical monitoring remedy should best be left to
legislatures rather than courts. However, courts in over 20 jurisdictions have recognized medical
monitoring and thus have demonstrated they believe otherwise.

The *Paoli* court's well reasoned support for medical monitoring recognized that:

> [the tort of medical monitoring] does not require courts to speculate about the probability of future injury. It merely requires courts to ascertain the probability that the far less costly remedy of medical supervision is appropriate. Allowing plaintiffs to recover the cost of this care deters irresponsible discharge of toxic chemicals by defendants and encourages plaintiffs to detect and treat their injuries as soon as possible.

*In re Paoli*, 916 F.2d at 852

> As the Court in *Day v. NLO*, 851 F. Supp. 869, 879-80 (S.D. Ohio 1994) stated:

> When liability has been established courts have allowed for compensation for reasonable medical procedures incurred in an attempt to establish whether a plaintiff has been injured, even when those procedures prove that the plaintiff has not in fact been injured. . . . Responsibility for procedures required to discover whether an injury has occurred are a reasonable consequence of tort liability. It is from this well accepted allowance for recovery of diagnostic procedures subsequent to a tort that courts have developed the remedy of medical monitoring. . . . [T]he court's concerns over damages which are uncertain, speculative, or conjectural are overcome by the reasonableness of compensation for diagnostic tests in cases where liability has been established. The safeguard against speculative recovery is the reasonableness of the procedures ordered in light of the tortious act. . . In any case, the reasonableness of the tests is one the court can adequately adjudicate in light of expert testimony, with minimal risks of uncertain, speculative or conjectural recoveries.

In sum, as succinctly stated in *Ayers*, it "is inequitable for an individual wrongfully exposed to dangerous toxic chemicals but unable to prove that disease is likely, to have to pay his own expenses when medical intervention is clearly reasonable and necessary.*" Ayers v. Township of Jackson*, 525 A.2d 287, 312 (N.J.1987).

## VIII.    The Elements of A Cause of Action for Medical Monitoring in Massachusetts

The elements of a claim for medical monitoring are straightforward. "The various state and federal courts addressing this issue have moved toward relative consensus on the elements necessary to establish a claim for medical monitoring." *Bower*, 206 W. Va. at 141, 522 S.E.2d at

432. According to *Bower*, *id.* at 432-33, the elements the plaintiff must prove are that:

(1)     He or she has, relative to the general population, been significantly exposed.[10]

(2)     To a proven hazardous substance.

(3)     Through the tortious conduct of the defendant.

(4)     As a proximate result of the exposure, plaintiff has suffered an increased risk of contracting a serious latent disease.[11]

(5)     The increased risk of disease makes it reasonably necessary for the plaintiff to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of the exposure. [12]

(6)     Monitoring procedures exist that make the early detection of disease possible.

All of the allegations necessary to satisfy these elements of a claim for medical

monitoring are included in the Amended Complaint at ¶¶ 75-90.

## IX.    CONCLUSION

Plaintiffs respectfully request this Court to predict that the Supreme Judicial Court would

not dismiss the claims against Raytheon based on the allegations of the Amended Complaint.  To

---

[10]    *Redland Soccer Club, Inc.*, *supra*, 55 F.3d 827 (defining the term significant exposure as requiring exposure "beyond what would normally be encountered by a person in everyday life, so that the plaintiff's risk of being injured from the exposure is greater, in some way, than the risks all of us encounter in our everyday lives").

[11]    "[T]he plaintiff is not required to show that a particular disease is certain or even likely to occur as a result of exposure ... All that must be demonstrated is that the plaintiff has a significantly increased risk of contracting a particular disease relative to what would be the case in the absence of exposure. Importantly, '[n]o particular level of quantification is necessary to satisfy this requirement.' *Hansen,* 858 P.2d at 979; *see also Bourgeois,* 716 So.2d at 360." *Bower v. Westinghouse Elec. Corp.*, 206 W. Va. at 142, 42 S.E.2d at 433 (W. Va. 1999).

[12]    "[T]he appropriate inquiry is not whether it is reasonably probable that plaintiffs will suffer [physical] harm in the future, but rather whether medical monitoring is, to a reasonable degree of medical certainty, necessary in order to diagnose properly the warning signs of disease."*Paoli I,* 916 F.2d at 851.

paraphrase this Court in *Bergeson v. Franchi*, 783 F. Supp. 713, 717 (D. Mass. 1992), without

permitting a medical monitoring cause of action, there is no other way to vindicate public policy.

Following exposure to toxic torts, there is a gap of many years or decades before a disease may

manifest itself.  During this period, periodic testing may lead to early diagnosis and detection of

disease, and to early treatment.  An individual wrongfully exposed to dangerous toxic chemicals

should not have to pay for diagnostic testing when medical intervention is reasonable and

necessary.

The majority of courts that have predicted or recognized a medical monitoring cause of

action or remedy impose a series of parameters and limitations on the action.  Expert testimony is

required to prove the elements of the cause of action; the standard of proof requires reasonable

certainty of the need for specific monitoring beyond that which an individual should pursue in

the absence of exposure; the remedy is usually limited to a medical monitoring program which

may consist of a medical monitoring trust fund or court-supervised program.  This structure

limits defendant's funds to payment only for the tests taken.

Defendant raises the specter of a flood of litigation based on speculative claims, and urges

that the medical monitoring issue be left to the legislature and not the courts.  Yet, the costs of

the medical tests that would be prescribed in this instance are certain and no speculation

whatsoever is involved.  Further, over 20 federal and state courts have predicted or adopted

medical monitoring as a cause of action or item of damages, without a finding of present physical

injury, and thus have decided that this is an issue that the courts are competent to resolve.

Medical monitoring is consistent with the precedent of the Supreme Judicial Court.  The

Court follows the definition of "injury" which denotes the invasion of any legally protected

interest and recognizes the existence of an injury although no harm is done.  Applying this

definition to the context of medical monitoring, courts have stated that an individual has an

interest in avoiding expensive diagnostic examinations just as he or she has an interest in

avoiding physical injury.

The public policy imperatives served by medical monitoring include the public health

interest in encouraging and fostering access to early medical testing for those exposed to

hazardous substances, promotion of the conventional goals of the tort system of deterrence of

tortfeasors, and elemental justice.  Without medical monitoring, there is no other way to

vindicate public policy.  *Bergeson.*

Accordingly, Plaintiffs respectfully request that Raytheon's motion be denied.

Respectfully submitted, this 22nd day of December, 2004.
**MEEHAN, BOYLE, BLACK & FITZGERALD, P.C.**

*/s/ Leo V. Boyle*

_____
Leo V. Boyle (B.B.O. 052700)
Two Center Plaza, Suite 600
Boston, Massachusetts 02108
617.523.8300

OF COUNSEL (motions for admission *pro hac vice* pending):

**GOLOMB & HONIK, P.C.**
Ruben Honik, Sherrie J. Cohen, Stephan Matanovic
121 S. Broad Street, Ninth Floor
Philadelphia, PA 19107

CERTIFICATE OF SERVICE

I, Bradley M. Henry, certify that on December 22, 2004, I served the foregoing
PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS OF DEFENDANT RAYTHEON
COMPANY by electronic filing and mailing an exact copy postage prepaid to counsel of record.
*/s/ Bradley M. Henry*
Bradley M. Henry