UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Suzanne Genereux, et al.            ) | |
|                                     ) | |
|    Plaintiffs,       ) | |
|                                     ) | Case No. 04-CV-12137 JLT |
| v.                                  ) | |
|                                     ) | |
| American Beryllia Corp., et al.     ) | |
|                                     ) | |
|    Defendants.       ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS KYOCERA AMERICA, INC. AND
KYOCERA INDUSTRIAL CERAMICS CORP.'S MOTION TO DISMISS AMENDED
COMPLAINT OR FOR SUMMARY JUDGMENT**

     Plaintiffs Suzanne Genereux, Barry Genereux, Angela Genereux, and Krista Genereux hereby submit their Opposition to the Motion of Defendants Kyocera America, Inc. and Kyocera Industrial Ceramics Corp.'s to Dismiss Amended Complaint or for Summary Judgment. As discussed below, Kyocera has failed to satisfy the requirements for invoking the protection of the "government contractor defense." In addition, significant material issues of fact remain in dispute. Therefore, Kyocera's Motion to Dismiss should be denied in its entirety.

**I.     FACTUAL BACKGROUND**

     Plaintiffs' Amended Complaint and Jury Claim seeks damages against Defendants as a result of Plaintiffs' exposure to the use of products and materials containing beryllium, which emitted toxic and hazardous beryllium dust and particulate matter at the Waltham, Massachusetts plant owned and operated by Defendant Raytheon Company ("Raytheon"). See Amended Complaint, at ¶¶ 1-21.

*The Dangers of Exposure to Beryllium*

Beryllium is an exceptionally hard metal that is used in commercial and military

applications.  Exposure to beryllium can cause Chronic Beryllium Disease ("CBD"), an irreversible, largely untreatable, chronic scarring of the lungs. *See* Amended Complaint, at ¶¶ 22-26.  CBD causes a painful, progressive decline in lung function leading to impairment, and often suffocation and death.  *Id.*  CBD has a slow, insidious onset, and a long latency period, i.e., initial symptoms may not become manifest until thirty or forty years after exposure. *Id.*  While there is presently no known cure for CBD, early detection allows for a range of treatments that can delay and diminish the debilitation caused by the disease.  *Id.*

The beryllium products at issue in this case were processed and manufactured by the several defendants, including, but not limited to the Kyocera defendants. *Id.*, at ¶¶ 20-21.

***The Parties***

The causes of action brought by Plaintiffs in this litigation are based upon exposure to respirable beryllium dust, fumes and particulate matter.  Amended Complaint, at ¶¶ 17-18, 27-29.  From 1982 through 1990, Plaintiff, Suzanne Genereux was employed by Raytheon and worked exclusively for Raytheon at its plant located at 190 Willow Street, Waltham, Massachusetts ("the Waltham plant").  During her employment, she performed operations, including, but not limited to, sandblasting, welding, filing and/or brazing of beryllium ceramics, beryllium copper and other beryllium-containing products, which activities produced respirable beryllium dust, fumes and particulate matter. *See* Amended Complaint, at  ¶17.  Plaintiff Suzanne Genereux's spouse, Barry Genereux, also worked at the Waltham plant.  Neither minor Plaintiff ever worked at the Waltham plant but occasionally visited their father at the Waltham plant.  *See* Amended Complaint, at ¶ 8.

During Plaintiff Suzanne Genereux's employment at the Waltham plant, she was exposed

to unlawful, dangerous and unhealthy levels of beryllium dust, fumes and particulate, resulting in serious and permanent injury described more particularly in the Amended Complaint. All of Plaintiffs' exposures to beryllium occurred as a direct and proximate result of contact with the beryllium-containing products distributed, sold, supplied and/or shipped by the manufacturing Defendants to Raytheon's Waltham plant. *See* Amended Complaint, at ¶¶27-28.

Plaintiff, Barry Genereux, makes a claim against all Defendants herein for his exposure to respirable beryllium brought home to the Genereux residence by Suzanne Genereux upon her clothing and person as the result of her employment at the Waltham plant, and minor Plaintiffs Angela Genereux and Krista Genereux make a claim against all Defendants herein for their exposure to respirable beryllium brought home to the Genereux residence by Barry Genereux upon his clothing and person as the result of his employment at the Waltham plant. *See* Amended Complaint, at ¶29.

Defendant Kyocera America, Inc. is a California Corporation with its principal office and corporate headquarters at 8611 Balboa Avenue, San Diego, California. At all times relevant hereto, Kyocera regularly conducted business in Massachusetts on its own and through its wholly owned subsidiary, Kyocera Industrial Ceramics Corp. at 24 Prime Park Way, Natick, Massachusetts. It maintains an address for service of process at the Prentice-Hall Corporation System, Inc., 84 State Street, Boston, Massachusetts. Amended Complaint, at ¶7. Kyocera America, Inc. manufactures a broad line of semiconductor package products and services based on advanced ceramic and plastic material technologies, including beryllium-containing

materials.[1]

Defendant Kyocera Industrial Ceramics Corp. is a Washington corporation with its principal office and headquarters located at 5713 East Fourth Plain Boulevard, Vancouver, Washington. Kyocera Industrial Ceramics, Inc. is a wholly owned subsidiary of Kyocera which regularly conducts business in Massachusetts and has offices at 24 Prime Park Way, Natick, Massachusetts.  It maintains an address for service of process at the Prentice-Hall Corporation System, Inc., 84 State Street, Boston, Massachusetts.  Amended Complaint, at ¶ 8.  Kyocera Industrial Ceramics Corporation manufactures and markets advanced ceramic products for industrial and automotive applications.[2]

Kyocera acknowledged that it supplied beryllium-containing semiconductor chip packages for the Trident Missile Program, but claimed that these chip packages produced no respirable beryllium.  *See* Affidavit of Kevin Gaughan, attached to Kyocera's Motion to Dismiss. These chip packages were not the only product that Kyocera supplied to the Waltham plan, however. Kyocera also supplied beryllium-containing products used as high-voltage insulators that **did** produce respirable beryllium dust and particles.  Discovery will reveal that a former senior manufacturing engineer at Raytheon with personal knowledge of the Waltham plant will testify regarding the Kyocera products used at Waltham, as follows:[3]

---

[1] *See* Kyocera America, Inc.'s website, available on the internet at http://americas.kyocera.com/kai/semiparts/About/index.htm.

[2] *See* Kyocera Ceramic Products, Inc.'s  website, available on the Internet at http://americas.kyocera.com/kicc/About/index.htm.

[3] Plaintiffs cannot attach this employee's affidavit to this Response because a confidentiality agreement may apply to areas about which this likely deponent may testify.  If the Court so desires, Plaintiffs can produce for *in camera* inspection an affidavit from this retired

- He was senior manufacturing engineer for the production of several products, including guidance and communication systems in numerous missile projects, and jamming devices used on bombers;

- He never worked on any projects and/or components related to the Trident I and II missile programs, nor did he do any work relating to semiconductor chip packages for missile guidance systems;

- As a senior manufacturing engineer, he was responsible for overseeing the assembly of each device, ensuring compliance with all specifications, and the testing of completed devices;

- Ceramics, including beryllium ceramics, were used as insulators between high-voltage components in each of the four projects for which he was senior manufacturing engineer. These ceramics underwent sand blasting, which produced respirable beryllium dust;

- Kyocera supplied beryllium and/or beryllium ceramics used as insulating material for one or more of the four product lines on which he worked;

- He recalls seeing Kyocera packaging and materials on several occasions in conjunction with his work missile and jamming device projects. Kyocera beryllium ceramics were used as insulators in one or more of the projects for which he was senior manufacturing engineer.

The Kyocera beryllium-containing products and materials distributed, sold, supplied, and/or shipped to the Waltham plant introduced respirable beryllium dust, fumes and particulate matter into the workplace including the ambient air at the Waltham plant, thereby causing or contributing to Plaintiffs' injuries. *See* Amended Complaint, at ¶¶ 22, 28.

### *Kyocera's Untimely Filing Of A Request for Summary Judgment*

Kyocera's filing of a motion for summary judgment at this early stage in the litigation is a violation of the spirit, if not the letter, of this Court's Order of December 9, 2004 prohibiting depositions and other forms of discovery. As a result, Plaintiffs have been unable to seek from

---

Raytheon employee supporting Plaintiffs' allegations.

Kyocera evidence responding to its request for summary judgment. *See* December 9, 2004 Discovery Order. Under these circumstances, it is simply untimely and improper to even attempt to develop a summary judgment record before discovery has taken place and before the Plaintiffs have been permitted an opportunity to review and investigate Kyocera's allegations in connection with the its affirmative defense of governmental contractor immunity. Instead, at this early stage in this litigation, and until such time as Plaintiffs are permitted to undertake discovery, all of Plaintiffs' factual allegations are to be accepted as true for purposes of the motion to dismiss, which is the only motion properly asserted at this stage. *See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir.2001).[4]

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that dismissal is appropriate only where a plaintiff fails to state a claim upon which relief may be granted. "In ruling on a motion to dismiss... a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc.*, 267 F.3d at 33. "When presented with a motion to dismiss, the district court must take as true the well-pleaded facts as they appear in the complaint, extending the plaintiff every reasonable inference in his favor." *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 34 (1st Cir. 2002) (internal citation omitted). The standard for dismissal is very high. A defendant is entitled to dismissal for failure to state a claim only if "it appears to a certainty that the plaintiff would be unable to recover

---

[4] Insofar as Rule 56 motions are premature and inconsistent with this Court's Order of December 9, 2004, Kyocera's only motion properly pending before the Court is its motion under Fed. R. Civ. P. 12(b)(6), and therefore the provisions of Local Rule 56.1 are inapplicable at this stage of the litigation (i.e the Rule's reference to the use of "page references to ... depositions").

under any set of facts." *State St. Bank & Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 87 (1st Cir. 2001); *see also Reppert v. Marvin Lumber and Cedar Co.*, 359 F.3d 53 (1st Cir. 2004).

A motion for summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate only when there is no genuine question as to any material facts at issue in the case, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Gadson v. Concord Hospital*, 966 F.2d 32 (1st Cir. 1992). In *Celotex Corp. v. Catrett*,[5] the United States Supreme Court articulated its standard for summary judgment:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, **after adequate time for discovery and upon motion**, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex*, 477 U.S. at 322 (emphasis added).

The moving party bears the burden of proving that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law. *See Strahan v. Frazier*, 156 F.Supp.2d 80, 89 (D. Mass. 2001). Where, as in this case, questions of fact abound, summary judgment cannot be granted. *See Celotex*, 477 U.S. at 325; *Henry v. National Geographic Society, et al.*, 147 F.Supp.2d 16, 20 (D. Mass. 2001) (Tauro, J.) (questions of fact precluded entry of summary judgment). Because a summary judgment motion addresses factual issues, it is inappropriate until "after adequate time for discovery," *Celotex*, 477 U.S. at 322, and is therefore improper at the present stage of this litigation.

---

[5] 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)

III.  **ARGUMENT**

    A.  **Kyocera Is Not Entitled To Assert The Government Contractor Defense**

Kyocera has invoked the government contract defense as a basis for seeking the dismissal of this action. *See* Kyocera's Motion to Dismiss, at p. 1. Kyocera's claim relies on *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), which formalized federal common law in order to recognize the so-called government contractor defense. *Boyle* held that a government contractor cannot be subject to liability under state law for design defects in military equipment under certain specific circumstances:

    (1)  the United States approved reasonably precise specifications;

    (2)  the equipment conformed to those specifications; and

    (3)  the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Id.* 487 U.S. at 512.

This standard was crafted to protect the government in its exercise of discretionary functions from the application of state tort law. *Id.* 487 U.S. at 511-12. The first two conditions establish whether the government's discretionary functions have been implicated in the suit. "[T]hey assure that the design feature in question was considered by the Government officer, and not merely by the contractor itself." *Id.* 487 U.S. at 512. The third requires manufacturers to pass along their knowledge of any risks, thereby (theoretically) increasing the flow of information available to the government in making its discretionary decisions. *Id.* 487 U.S. at 512-13. Kyocera has failed to satisfy all of the *Boyle* prongs, and therefore cannot claim the immunity of the government contractor defense.

1. **The Government Did Not Exercise The Requisite Control Over The Manufacture Of and Warnings On Kyocera's Beryllium-Containing Products So As To Satisfy *Boyle***

Kyocera has not shown that the government exercised discretion and dictated the design and contents of the warnings accompanying the Kyocera beryllium-containing materials used at the Waltham plant, the first prong in the *Boyle* test. In order to determine whether the government exercised the level of discretion required by *Boyle's* first condition in approving warnings, the Court should focus on whether the contractor could have complied with both its state law duty to warn and its duty under the military contract. The government's exercise of discretion in choosing a product's design does not by itself establish that the government also exercised discretion in the selection of accompanying warnings. *See Tate v. Boeing Helicopters*, 55 F.3d 1150, 1156 (6th Cir.1995); *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806, 812-13 (9th Cir.1992); *Dorse v. Eagle-Picher Indus.*, 898 F.2d 1487, 1489-90 (11th Cir.1990); *In re Joint Eastern & Southern Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 630-32 (2d Cir.1990). If the contract does not prohibit or otherwise conflict with the defendant's ability to place safety warnings on the product, the federal contractual duty does not absolve the defendant of the duty to warn imposed by state law. *In re Hawaii*, 960 F.2d at 812; *Dorse*, 898 F.2d at 1489-90.

> "Stripped to its essentials, the military contractor's defense under *Boyle* is to claim, 'The Government made me do it.' *Boyle* displaces state law only when the Government, making a discretionary, safety-related military procurement decision contrary to the requirements of state law, incorporates this decision into a military contractor's contractual obligations, thereby limiting the contractor's ability to accommodate safety in a different fashion."

*In re Hawaii*, 960 F.2d at 813 (quoting *In re New York Asbestos*, 897 F.2d at 632).

In addition, satisfying *Boyle's* first condition requires evidence that the government

meaningfully and substantively approved and evaluated warnings proposed by the contractors, in this case Kyocera. *See Tate*, 55 F.3d at 1157. Such approval must go beyond rubber-stamping,[6] so that it can be fairly said that the warning ultimately selected "reflect[s] a significant policy judgment by Government officials." *Boyle*, 487 U.S. at 513.

      The First Circuit has addressed the issue of when the government's failure to warn can be a "discretionary function." To be discretionary, the government's conduct must include the making of a policy judgment or choice. *Dube v. Pittsburgh Corning*, 870 F.2d 790, 796 (1st Cir.1989) (*citing Berkovitz v. U.S.*, 486 U.S. 531, 536 (1988)); *see also Ayer v. United States*, 902 F.2d 1038, 1044 (1st Cir.1990) (a discretionary function "'often involves not merely engineering analysis but judgment as to the balancing of many technical, military, and even social considerations, including specifically the trade-off between greater safety and greater combat effectiveness'") (*quoting Boyle*, 487 U.S. at 511). The mere failure to consider whether or not a warning should be given does not establish that the government exercised discretion. *Dube*, 870 F.2d at 796-97. Rather, it is critical that the government's failure to warn represented an affirmative decision, including consideration of whether the risks posed by a product justify a warning.

      Kyocera first argues that it is entitled to the dismissal of the Amended Complaint because "the only Kyocera products sold to Raytheon were manufactured in accordance with precise United States Navy specification." Kyocera's Memorandum, at p.5. Kyocera contends that because the complete development of the beryllium-containing components was dictated by the Navy, the court can determine as a matter of law that the decision regarding warnings was solely

---

[6]*See Tate*, 55 F.3d at 1157.

within the government's discretion. *Id*. Kyocera attempts to establish the government's discretion regarding warnings by showing the extent to which the government was involved in aspects of certain components' design. To support this argument, Kyocera looks to a case holding that *Boyle's* first criteria is satisfied by evidence of the government's continuous participation at various stages in the design and development of the offending military equipment. *See Quiles v. Sikorsky Aircraft*, 84 F.Supp.2d 154 (D. Mass. 1999) (*Boyle's* first element established by evidence of a "continuous back and forth" review process).

Kyocera's argument fails for several reasons. First, and most obviously, Kyocera's basic premise--that the government's involvement in the provision of warnings can be inferred by its participation in the design--is simply incorrect. *See, e.g., Tate*, 55 F.3d at 1156 ("Simply because the government exercises discretion in approving a design does not mean that the government considered the appropriate warnings, if any, that should accompany the product."); *see also Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 799 (5th Cir. 1993) ("Boyle makes clear that the requirements of 'reasonably precise specifications' and conformity with them refer to the particular feature of the product claimed to be defective." (*quoting Boyle*, 487 U.S. at 512)) (emphasis in *Bailey)*.

At best, the record at this early stage in this litigation raises conflicting inferences as to whether the warnings supplied with the Kyocera beryllium-containing products and materials "reflect a significant policy judgment by Government officials,"[7] and as to whether the government controlled or significantly limited Kyocera's ability to provide a warning. *See, e.g., In re New York Asbestos*, 897 F.2d at 632. Plaintiff's Amended Complaint alleges that, *inter*

---

[7] *See Boyle*, 487 U.S. at 513.

*alia*, Kyocera failed to provide Plaintiffs with adequate warnings regarding the dangers of their beryllium-containing products and materials. *See* Amended Complaint, at ¶¶ 52-56.

There is no evidence of a reasoned, affirmative decision by the government to forego warning of the dangers posed by respirable beryllium from Kyocera's beryllium-containing products and materials, and there is no evidence that the government exercised discretion. *See Dube*, 870 F.2d at 796-801 (before failure to warn can constitute discretionary function, government must make affirmative decision, based on policy concerns). Moreover, there is no evidence that the government prohibited or in any way limited Kyocera's ability to provide adequate warnings to Plaintiffs, or that the Navy itself dictated the contents of such warnings. Kyocera has clearly failed to satisfy the first prong of the *Boyle* test, and this Court should therefore deny Kyocera's Motion to Dismiss.

> **2.  Without Discovery, Kyocera Cannot Show That The Beryllium-Containing Products That They Supplied To The Waltham Plant Conformed To The Government's Specifications**

Kyocera has failed to satisfy the second prong of the *Boyle* test, which requires that Kyocera show that their products and materials conformed to the government specifications at issue. *See Boyle*, 487 U.S. at 507-08. Kyocera has alleged that its semiconductor chip packages conformed to the Navy's stringent specifications regarding only those products. *See* Affidavit of Kevin Gaughan, attached to Kyocera's Motion to Dismiss. However, Kyocera's Motion to Dismiss does not even mention the beryllium and/or beryllium ceramics used as insulating material between high-voltage components involving guidance and communications systems, and make no mention of warnings whatsoever. *See* pp. 4-5, above. The normal course of discovery will establish the exact nature of Kyocera's products at issue. At this stage of the litigation,

however, Plaintiffs' allegations are sufficient to overcome Kyocera's motion to Dismiss. *See Alternative Energy,* 267 F.3d at 33.

Plaintiffs' Amended Complaint alleges that Kyocera failed to provide Plaintiffs with adequate warnings, training, testing, and safety protections regarding beryllium, when it knew or should have known that employees of the Waltham plant, including Plaintiff Suzanne Genereux, would be exposed to hazardous and toxic beryllium fumes, particulate, and dust, which were health-and-life-threatening. *See* Amended Complaint, at ¶ 53. Kyocera has offered no "notes, cautions, warnings or safety notices regarding the hazards of" beryllium and beryllium-containing materials. *Chicano v. General Electric Company, et al.*, 2004 WL 2250990, *13 (E.D.Pa. October 5, 2004) (holding that a genuine issue of material fact existed as to whether the defendant complied with Navy specifications, where there was no evidence that the defendant provided warnings about hazardous materials). Consequently, at best, a material issue of genuine fact exists as to whether Kyocera complied with government specifications regarding the beryllium-containing products and materials that they supplied to the Waltham plant. While Plaintiffs believe that discovery will support their allegations, this Court has ordered that all discovery in this matter is stayed, and therefore Plaintiffs have been unable to obtain from Kyocera additional evidence proving these allegations. *See* December 9, 2004 Discovery Order At this early stage in this litigation, and until such time as Plaintiffs are permitted to undertake discovery, Plaintiffs' factual allegations are to be deemed true. *Alternative Energy,* 267 F.3d at 33. Kyocera has therefore failed to satisfy the second prong of the *Boyle* test, and this Motion to Dismiss must therefore be denied.

### 3. Kyocera Provided No Warnings To The Government Regarding The Dangers Of Respirable Beryllium

Kyocera has failed to satisfy the third prong of the *Boyle* test, which requires that Kyocera demonstrate that it warned the government about the dangers of exposure to respirable beryllium from the use of its beryllium containing products and materials. *Boyle*, 487 U.S. at 507-08; *Chicano*, 2004 WL 2250900, *13. Plaintiffs' Amended Complaint alleges that Kyocera failed to provide Plaintiffs with adequate warnings, training, testing, and safety protections regarding beryllium, when it knew or should have known that employees of the Waltham plant, including Plaintiff Suzanne Genereux, would be exposed to hazardous and toxic beryllium fumes, particulate, and dust, which were health-and-life-threatening. *See* Amended Complaint, at ¶ 53. Kyocera states that it did not provide the government with any information regarding the dangers posed to Plaintiff Suzanne Genereux and her coworkers by beryllium fumes, particulate, and dust. *See* Kyocera's Memorandum of Law. Kyocera does not address the beryllium-containing insulation materials that Plaintiffs allege produced respirable beryllium dust, and takes the position that "there were no known risks to warn Raytheon or the government about." *See* Affidavit of Kevin Gaughan, attached to Kyocera's Motion to Dismiss, at ¶ 6. By their own admission, Kyocera failed to provide the government with the warnings required to satisfy the third prong of the *Boyle* test and, therefore, Kyocera is not entitled to the protection of the government contractor immunity. Kyocera's Motion to Dismiss should be dismissed in its entirety.

### B. Plaintiffs Have Properly Stated Causes of Action Upon Which Relief May Be Granted

In addition to seeking dismissal based upon the government contractor defense, Kyocera

seeks dismissal of Counts IV, V, VII, VIII and XIII of the Amended Complaint for failure to state a cause of action, and relies on arguments and authorities set forth in Brush Wellman, Inc.'s Motion to Dismiss Counts IV, V, VII, VIII and XIII. *See* Kyocera's Memorandum of Law in support of its Motion to Dismiss. In turn, Plaintiffs hereby incorporate as if fully set forth herein the arguments addressed in Plaintiffs' Opposition to Brush Wellman, Inc.'s Motion to Dismiss.

## IV.    CONCLUSION

Before discovery has even been permitted in this case, the Kyocera defendants seek dismissal or summary judgment, based upon Kyocera's view of the facts. However, as stated in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), summary judgment is to be decided "after adequate time for discovery." As described above, discovery will support the allegations of the Amended Complaint and will establish that Kyocera failed to satisfy its burden of proving the three prong-test articulated by the United States Supreme Court in *Boyle* for protection under the government contractor affirmative defense. Moreover, the Plaintiffs' allegations properly state claims upon which relief can be granted, as they allege negligence and breach of warranty in connection with Kyocera's manufacture and distribution of beryllium products, and in connection with Kyocera's failure to provide adequate warnings. Kyocera has not even attempted to satisfy the elements of the government contractor defense in connection with its failure to provide adequate warnings. In addition, at this stage of the litigation, the request for summary judgment is premature, as significant issues of material fact remain, thereby precluding the entry of judgment as a matter of law. Kyocera's Motion to Dismiss or For Summary Judgment should be denied in its entirety.

WHEREFORE, Plaintiffs Suzanne, Genereux, Barry Genereux, Angela Genereux, and

Krista Genereux respectfully request that this Court deny Defendants Kyocera America, Inc. and Kyocera Industrial Ceramics Corp.'s Motion to Dismiss Amended Complaint or for Summary Judgment.

Respectfully submitted, this 22nd day of December, 2004.
**MEEHAN, BOYLE, BLACK & FITZGERALD, P.C.**

*/s/ Leo V. Boyle*
_____
Leo V. Boyle (B.B.O. 052700)
Two Center Plaza, Suite 600
Boston, Massachusetts 02108
617.523.8300

OF COUNSEL (motions for admission *pro hac vice* pending):

**GOLOMB & HONIK, P.C.**
Ruben Honik
Sherrie J. Cohen
Stephan Matanovic
121 S. Broad Street, Ninth Floor
Philadelphia, PA 19107

CERTIFICATE OF SERVICE

I, Bradley M. Henry, certify that on December 22, 2004, I served the foregoing Opposition to the Motion of Defendants Kyocera America, Inc. and Kyocera Industrial Ceramics Corp.'s to Dismiss Amended Complaint or for Summary Judgment by electronic filing and mailing an exact copy postage prepaid to counsel of record.

*/s/ Bradley M. Henry*

Bradley M. Henry