# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

Suzanne Genereux, et al.                    )
                                            )
     Plaintiffs,                            )
                                            )
v.                                          )     Case No. 04-cv-12137 JLT
                                            )
American Beryllia Corp., et al.             )
                                            )
     Defendants.                            )

## REPLY OF DEFENDANTS BRUSH WELLMAN INC., BRUSH WELLMAN CERAMICS INC. AND BRUSH WELLMAN CERAMIC PRODUCTS INC. TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs' opposition regarding Counts V, VI, VII, VIII, and XIII of the Amended

Complaint only underscores the propriety of dismissing each of those counts.[1]

I.    **Counts V And XIII Should Be Dismissed Because Plaintiffs Failed To Comply With Chapter 93A's Notice Requirements**

    A.    ***Plaintiffs Did Not Comply with the Thirty-Day Notice Requirement of G.L. c. 93A, § 9(3)***

Plaintiffs' first argument is based on the incorrect assertion that the original Complaint

"had no c. 93A claims." (Pls. Opp. at 3) (emphasis in original). In fact, Count V of the original

Complaint did assert a Chapter 93A claim:

> 60.    As a result of the aforementioned unfair and deceptive acts and practices and breach of express and implied warranties, the Defendants Brush Wellman, Inc. and Kyocera America, Inc. violated M.G.L. c. 93A.

Complaint ¶ 60. The original Complaint specifically sought "actual and multiple damages

against Brush Wellman, Inc. . . . pursuant to M.G.L. c. 93A . . . " Id. ¶ 61.

---

[1] Because plaintiffs have agreed to dismiss Counts IV and XII, this Reply does not address those counts.

CLI-1260115v1
190170 - 011223

Plaintiffs filed their original Complaint, including its Chapter 93A claim, on June 22, 2004, but did not send the purported demand letters until six weeks later, on August 5, 2004. Their Chapter 93A claims are therefore barred.[2]

B.    *Plaintiffs' Late Demand Letters Were In Any Event Grossly Inadequate*

Plaintiffs' opposition does nothing more than restate the contents of the purported demand letters. It does not show that the letters were proper demands under Chapter 93A. Nor could it, because completely missing from plaintiffs' purported demand letters were any facts that could serve the purpose of a Chapter 93A demand letter: to put Brush Wellman in a position to evaluate plaintiffs' claims and their settlement value.

Nothing in the letters, for example, gave Brush Wellman any information about the source or nature of the beryllium products to which Suzanne Genereux was allegedly exposed, or about the amount or duration of any exposure that she had. Nothing in the letters gave any information about the basis for her diagnosis, any tests that she had been given, or even the identity of any physician who diagnosed her. There were no facts about Ms. Genereux's current medical condition or her ability to work. In this warnings case, there was no information at all about the beryllium warnings and training that Raytheon or others provided to Ms. Genereux. And the letters gave no information about the measures that Raytheon (or plaintiff herself)

---

[2] In a footnote, plaintiffs make the specious argument that the demand letter requirement does not apply to their claim against Brush Wellman because "Brush Wellman is a [sic] Ohio corporation with a principal place of business in Ohio." (Pls. Opp. at 4, n.1). Those facts are immaterial to the demand letter requirement.

Chapter 93A provides that "[t]he demand requirements of this paragraph shall not apply if the claim is asserted by way of counterclaim or cross-claim, or if the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth . . . ." M.G.L. c. 93A § 9(3) (emphasis added). Plaintiffs themselves allege that Brush Wellman Inc. "regularly conducts business in Massachusetts in part through its wholly owned subsidiaries, Brush Wellman Ceramics Inc. and Brush Wellman Ceramic Products Inc. located at Newburyport Industrial Park, 22 Graf Road, Newburyport, Massachusetts," and that Brush Wellman maintains an agent in Boston. (Pls. Compl. ¶ 3.) They can hardly escape their own allegations that Brush Wellman Inc. has a place of business in the Commonwealth, and keeps assets (i.e. subsidiaries) in Massachusetts.

adopted to protect plaintiff against beryllium exposures, or about whether and to what degree Raytheon complied with applicable laws concerning workplace exposure to beryllium.

In short, the letters simply provided no inkling as to the merits or value of plaintiffs' claims against Brush Wellman. There is certainly no information in them on which Brush Wellman could responsibly base a settlement offer. Brush Wellman cannot even tell from the letters whether plaintiff was exposed to any of its products, or whether she really has beryllium disease -- much less what caused any such disease, or how serious it may be.

These letters, even if they had been timely, therefore did not come close to meeting the requirements of Chapter 93A. Brush Wellman was simply not given "an adequate basis to appraise the value of the claim or frame a settlement offer." <u>Thorpe v. Mutual of Omaha Ins. Co.</u>, 984 F. 2d 541, 544 (1st Cir. 1993).

## II.    Count VI Does Not State A Claim For Concealment Or Nondisclosure

In Count VI, plaintiffs purport to state a claim for the business torts of fraudulent concealment and nondisclosure. Plaintiffs assert that in this count they allege "that the defendants attempted to conceal the dangers of their products by providing false information and/or uttering 'half truths'" (Pls. Opp. at 8.) In fact, their claim is based <u>solely</u> on allegations that: (a) Brush Wellman knew or should have known that Suzanne Genereux was being exposed to serious risks of beryllium disease, (b) beryllium emissions existed at the Waltham Plant, and (c) Brush Wellman "failed to issue appropriate warnings" regarding those emissions. (Am. Comp. ¶ 65.)

Count VI thus faults Brush Wellman for allegedly "failing to issue" any warning of the dangers of beryllium. (Am. Compl. ¶ 65.) It is simply and purely a nondisclosure claim, and

cannot survive dismissal because there is and could be no allegation of any special relationship between Brush Wellman and the plaintiffs.

Moreover, even had plaintiffs alleged in Count VI that Brush Wellman somehow provided "false information," they would still have failed to state a claim for relief, because nowhere in Count VI do plaintiffs allege that they ever heard, let alone relied, on any false statement or "half truth" from Brush Wellman.

## III.    Plaintiffs Have No Conspiracy Claim

In the original Complaint, plaintiff alleged that Brush Wellman conspired with <u>Cabot Corp.</u>, Complaint ¶¶ 66-72, and said nothing about any conspiracy among Brush Wellman and its subsidiaries. Plaintiffs then dropped Cabot altogether from the Amended Complaint, and substituted Brush Wellman Ceramic Products Inc. and Brush Wellman Ceramics, Inc. for Cabot in the "conspiracy" claim -- alleging exactly the same conspiracy, but among completely different actors.

There is no basis for this new claim, which was apparently made only so that plaintiff can continue to make broad allegations of industry misconduct, spanning decades, that have no proper place here. Plaintiffs make no argument to support this claim, but again merely restate the allegations of their complaint to the effect that "the defendants" agreed to do this and "the defendants" agreed to do that. (Pls. Opp. at 10.)

Because plaintiffs have no fraud claim, they cannot have a claim for conspiracy to defraud. Moreover, because Brush Wellman Inc. is (and has been since 1981) the successor corporation to Brush Wellman Ceramics Inc. and Brush Wellman Ceramic Products Inc., there can be no claim for "conspiracy" among these three entities.

The alleged conspiracy -- originally pleaded as a conspiracy between Brush Wellman and Cabot -- cannot have occurred between Brush Wellman and its subsidiaries. Plaintiffs allege that the conspiracy began in 1951 and continued into the 1990s. (Am. Compl. ¶¶ 70(a - h).) But both Brush Wellman Ceramics Inc. and Brush Wellman Ceramic Products Inc. existed only briefly, were merged into Brush Wellman Inc., and ceased to exist in 1981.[3] There can certainly be no conspiracy between entities that do not even exist at the time.

Plaintiffs' amended conspiracy claim is in any case effectively mooted by operation of corporate law. Their allegations of conspiracy are based on the joint tortfeasor theory of conspiracy found in the Restatement (Second) of Torts § 876. As plaintiffs acknowledge, the "gist of a civil action of this sort is not the conspiracy, but the deceit or fraud causing damage to the plaintiff, the combination being charged merely for the purpose of fixing joint liability on the defendants." (Pls. Opp. at 9 (quoting New England Foundation Co. v. Reed, 209 Mass. 556, 560, 95 N.E. 935, 935 (1911)) (emphasis added).) The only purpose of this claim is thus to impose joint liability among Brush Wellman Inc., Brush Wellman Ceramics Inc., and Brush Wellman Ceramic Products Inc.

But because Brush Wellman Inc. is the corporate successor to both Brush Wellman Ceramics Inc. and Brush Wellman Ceramic Products Inc., Massachusetts law already imposes liability on Brush Wellman for the acts of its former subsidiaries. See Cargill, Inc. v. Beaver Coal & Oil Co., Inc., 424 Mass. 356, 676 N.E.2d 815 (1997) (describing Massachusetts' law of successor liability and recognizing the *de facto* merger doctrine). Thus even if plaintiff could

---

[3] Brush Wellman Ceramics Inc. and Brush Wellman Ceramic Products Inc. no longer exist. Both entities were dissolved in 1981. See Affidavit of Michael Hasychak and Supplemental Affidavit of Michael Hasychak, submitted in support of Brush Wellman's Motion to Drop Misjoined Parties.

prove some wrongful conduct by the subsidiaries -- and none is pleaded -- a "conspiracy" claim would serve no proper purpose, and should be dismissed.

## IV.    Massachusetts Law Does Not Recognize Medical Monitoring Claims

Plaintiffs implicitly acknowledge that Massachusetts has never recognized a medical monitoring claim; they argue only that some "principles which underlie medical monitoring" can be found in Massachusetts law. (Pls. Opp. at 15.) But the cases they rely on are almost all from out of state, and are inconsistent with settled Massachusetts law.

Massachusetts courts have repeatedly rejected attempts to recover for alleged asymptomatic exposures, and have expressly defined "injury" in exposure cases as physical harm. In re Massachusetts Asbestos Cases, 639 F.Supp 1, 3 (D. Mass. 1985) ("the first appearance of symptoms . . . constitutes the injury"). This Court should reject plaintiffs' call for a new medical monitoring cause of action.[4]

### A.    *Massachusetts Law Makes Clear That Recovery In Tort For Past Or Future Physical Injuries Requires Proof of Physical Harm*

Plaintiffs argue that this Court should follow Leardi v. Brown, 394 Mass. 151, 159-60, 474 N.E.2d 1094, 1101 (1985), a housing court case that interpreted a statutory amendment to M.G.L c. 93A. In Leardi, the Supreme Judicial Court interpreted "injury" broadly for purposes of recovery under the consumer protection statute in a matter involving an illegal clause in a residential lease. Brush Wellman does not dispute that a party may suffer some form of statutory "injury" due to an illegal lease, just as a party could suffer a contractual "injury" from the breach

---

[4] Under Massachusetts tort law medical monitoring costs may be recoverable as part of a plaintiff's money damages. See Anello v. Shaw Industries, Inc., Civ. No. 95-30234-FHF, 2000 U.S. Dist. LEXIS 6835, *21-22 (D. Mass. March 30, 2000). Here, however, plaintiffs ask the Court to recognize medical monitoring as a separate cause of action, distinct from any tort action ever recognized by any court of the Commonwealth. Plaintiffs' call for a new cause of action is a departure from the traditional Massachusetts tort principles discussed in Anello, where this Court recognized that monitoring damages could be awarded as a remedy for underlying physical harm.

of a contract, or an economic "injury" from an unfair trade practice. But in personal injury tort actions, Massachusetts courts have been clear that an "injury" is the manifestation of symptoms (i.e. physical harm), not a mere exposure. See Anderson v. W.R. Grace & Co., 628 F.Supp. 1219, 1232 (D. Mass. 1986).

Plaintiffs incorrectly assert that the Anderson case "relaxed the physical injury requirement." (Pls. Opp. at 14.) To the contrary, Anderson only reinforced that requirement.

The part of Anderson on which plaintiffs rely is irrelevant, because it concerns claims for negligent infliction of emotional distress. No such claims have been raised here. More importantly, the court held that even in an emotional distress case, the plaintiff must prove some "actual physical damage," which must be "manifested by objective symptomatology." 628 F. Supp. at 1226 (emphasis added). The Anderson plaintiffs had a wide variety of ailments, including "shortness of breath, decreased visual acuity, frequent waking, hoarseness, muscle aching, fatigue, chest pain, sore irritated dry throat, respiratory infections, stress incontinence, tingling, numbness, joint stiffness and aching, dry sensitive skin, rashes, cold sores, red burning eyes, headaches, diarrhea, vomiting, abdominal distress, post nasal discharge, nasal congestion, and nosebleeds." Id. at 1227 n.4.

No such actual present injuries are alleged here. In fact, plaintiffs admit that they have no "physical injury." (Pls. Opp. at 12.)

In the more relevant part of Anderson -- ignored by plaintiffs -- the court held that a mere "increased risk of future illness" is not compensable, and that a prospective plaintiff must "wait until the disease has manifested itself to sue." Id. at 1230-32. The court persuasively explained the main reason for this rule: "To award damages based on a mere mathematical probability

would significantly undercompensate those who actually do develop [illness] and would be a windfall to those who do not." Id. at 1232.

The plaintiffs here have no manifest disease. They assert only an "increased risk of future illness." Under Anderson, they have no claim.

Massachusetts law in this respect is the same as the law in other jurisdictions where federal courts have dismissed claims for medical monitoring by persons allegedly exposed to beryllium. Brush already cited Jones v. Brush Wellman Inc., 2000 U.S. Dist LEXIS 21897 (N.D. Ohio 2000) (Tennessee law). Just last week, the U.S. District Court for the Southern District of Mississippi dismissed medical monitoring claims that were asserted against Brush Wellman under Mississippi law. Paz v. Brush Engineered Materials Inc., et al., No. 1:04CV597 (S.D. Miss., January 7, 2005) (attached hereto as Exhibit A). The court wrote: "recognizing a medical monitoring claim would conflict with precedent establishing that a plaintiff allegedly exposed to a toxic or hazardous substance does not have a compensable injury until a disease caused by such exposure results." (See Exhibit A, Order at 9.) Massachusetts law is the same, and so should be the result here.

B.    ***The Latency of Harm Makes Medical Monitoring Claims Impossible to Control***

Plaintiffs argue that there is need for medical monitoring claims "because of the latent nature of the physical injury arising from exposure to toxic substances," and because the "50,000 hazardous waste sites nationwide" and "65,000 chemicals in commercial use" have put many people at risk. (Pls.' Opp. to Motion of Raytheon at 5.) This only proves the point that such a cause of action has tremendous potential for mischief. If the injury requirement were eliminated, a virtually limitless number of plaintiffs could bring medical monitoring claims, alleging mere exposures to one of these 50,000 hazardous waste sites or 65,000 chemicals.

CLI-1260115v1

8

It was for that reason that the United States Supreme Court specifically rejected claims for medical monitoring in Metro-North Commuter R.R. Co. v. Buckley, 521 U.S. 424 (1997). The Court was concerned that courts would be flooded with claims seeking "monitoring" or "surveillance" entitlements for every alleged "increased risk" and exposure to an allegedly harmful substance. Buckley, 521 U.S. at 442. Given the conditions of modern life, "tens of millions of individuals may have suffered exposure to substances that might justify some form of substance-exposure-related medical monitoring." Id.

Plaintiffs argue that because they have not requested "lump sum" damages, Buckley's concern about opening the floodgates of litigation is inapplicable here. (Pls.' Opp. to Motion of Raytheon at 15.) But the exact type of relief that plaintiffs request changes nothing -- the point is simply that if uninjured plaintiffs can sue, there will, without doubt, be many more plaintiffs. And those uninjured plaintiffs will drain the resources available to persons with injuries. See Duncan v. Northwest Airlines, Inc., 203 F.R.D. 601, 608 (W.D. Wash. 2001) (stating that Buckley's concerns remain "most salient" even though plaintiffs do not seek lump sum damages).

V.    **Conclusion**

For the foregoing reasons, and for the reasons set forth in defendants' opening memorandum, the Court should dismiss Counts V, VI, VII, VIII, and XIII in their entirety.

Dated:  January 14, 2005

Respectfully submitted,

By: _____

Alan M. Spiro
Federal Bar No. 475650
Edwards & Angell, LLP
101 Federal Street
Boston, MA 02110
Tel:    (617) 951-2204
Fax:    (617) 439-4170

Jeffery D. Ubersax
Jones Day
North Point
901 Lakeside Ave.
Cleveland, Ohio  44114-1190
Tel:    (216) 586-3939
Fax:    (216) 579-0212

Attorneys for Defendants Brush Wellman Inc.,
Brush Wellman Ceramics Inc., and Brush Wellman
Ceramic Products Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of January 2005, a true and correct copy of the foregoing REPLY OF DEFENDANTS BRUSH WELLMAN INC., BRUSH WELLMAN CERAMICS INC. AND BRUSH WELLMAN CERAMIC PRODUCTS INC. TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS was served via U.S. mail, first class postage prepaid, upon all counsel of record, as set forth below.

Alan M. Spiro
Attorney for Brush Wellman Inc.,
Brush Wellman Ceramics Inc. and
Brush Wellman Ceramic Products Inc.

Leo V. Boyle, Esq.
Bradley M. Henry, Esq.
Meehan, Boyle, Black & Fitzgerald, PC
Two Center Plaza
Suite 600
Boston, MA 02108
617-523-8300

Ruben Honik, Esq.
Sherrie J. Cohen, Esq.
Stephen Matanovic, Esq.
Golomb & Honik, P.C.
121 S. Broad Street
9th Floor
Philadelphia, PA 19107
215-985-9177

Attorneys for Plaintiffs

Ronald M. Jacobs, Esq.
James F. Kavanaugh, Jr., Esq.
Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP
Ten Post Office Square,
4th Floor
Boston, MA 02109
617-482-8200

Attorneys for Defendant Raytheon Co.

John C. Wyman
Murtha Cullina, LLP
20th Floor
99 High Street
Boston, MA 02110-2320
617-457-4041

Attorney for Defendants Kyocera America, Inc. and
Kyocera Industrial Ceramics Corp.

Robert P. Sharon, Esq.
Robert P. Sharon P.C.
225 Broadway
Suite 2600
New York, New York 10007
212-227-5550

William F. Ahern, Esq.
Clark, Hunt and Embry
55 Cambridge Parkway
Cambridge, MA 02142
617-494-1920

Attorneys for Defendant American
Beryllia Corp.

Robert M. A. Nadeau
Nadeau & Associates, PA
1332 Post Road, Suite 4A
Wells, Maine 04090
207-324-3500

Attorney for Defendant Hardric Laboratories, Inc.

- 2 -

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

GEORGE PAZ, ET AL.                                          §                                    **PLAINTIFFS**
                                                            §
v.                                                          §
                                                            §                         **CAUSE NO. 1:04CV597**
                                                            §
BRUSH ENGINEERED MATERIALS,                                 §
INC., ET AL.                                                §
                                                            §                                **DEFENDANTS**

## ORDER GRANTING MOTION TO DISMISS OF
## DEFENDANT BRUSH ENGINEERED MATERIALS, INC.

THE MATTER BEFORE THE COURT are 1) the Motion to Dismiss filed by Defendant
Brush Engineered Materials, Inc. [16]; 2) the Motion to Dismiss filed by Brush Engineered
Materials, Inc. ("BEMI") and Brush Wellman Inc. and joined in by The Boeing Company [14];
and 3) the Motion to Dismiss filed by Defendant Wess-Del, Inc. [22]. Plaintiffs have responded
to each of the Motions, and each of the Defendants have replied in support of their Motions.
After due consideration of the submissions and the relevant law, it is the Court's opinion that it
lacks personal jurisdiction over Defendants Brush Engineered Materials, Inc. and Wess-Del, Inc.
Further, as to the Defendants over which the Court has jurisdiction, the Court finds that the
Complaint fails to state a claim upon which relief can be granted. Accordingly, the Motions to
Dismiss should be granted.

DISCUSSION

Plaintiffs are employees or family members of employees of the John C. Stennis Space
Center in Stennis, Mississippi and the Canoga Park facility in Canoga Park, California. They
filed this lawsuit for themselves and others similarly situated as a "Class Action Complaint For
Medical Monitoring." They claim that they were exposed to respirable beryllium dust, fumes
and particulate matter, and the Defendants failed to warn them about the dangers of such

exposure. Plaintiffs state that the beryllium products at issue were processed and manufactured by Defendants Brush Wellman Inc. and BEMI, were then machined, assembled, and fabricated by Defendant Wess-Del, who in turn sold them to Defendant The Boeing Company, who used them at the Canoga Park facility in California and the Stennis Space Center in Mississippi. Plaintiffs seek the establishment of a medical monitoring trust fund to pay for diagnostic tests, and treatment in the event that the tests reveal disease or illness resulting from exposure.[1] Defendants BEMI and Wess-Del, Inc. have filed Motions to Dismiss pursuant to Fed.R.Civ.P. 12(b)(2) challenging the Court's personal jurisdiction. All Defendants object to what they assert is improper venue pursuant to Fed.R.Civ.P. 12(b)(3), and all seek dismissal pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim.

STANDARD FOR MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2):

When a defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proof. *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982). "It is not necessary for [the plaintiff] to 'establish personal jurisdiction by a preponderance of the evidence; prima facie evidence of personal jurisdiction is sufficient.'" *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000), *quoting Wyatt*, 686 F.2d at 280. The Court will accept the Plaintiffs' "uncontroverted allegations, and resolve in [its] favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Kelly*,

---

[1] Plaintiffs also include what appear to be claims of product liability, negligence and breach of warranty. However, they assert in their response to the Motions that they "are not seeking compensatory damages in this action, but only the establishment of a medical monitoring trust fund," and that these other claims are only "theories of liability" that are "tied to" the claim for medical monitoring. Accordingly, the Court will not treat these claims as separate from the medical monitoring claim.

-2-

213 F.3d at 854, *citing Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).

## PERSONAL JURISDICTION:

"A federal district court sitting in diversity may exercise personal jurisdiction only to the extent permitted a state court under applicable state law." *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997) (citations omitted). "'The state court or federal court sitting in diversity may assert jurisdiction if: (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the fourteenth amendment to the United States Constitution.'" *Allred*, 117 F.3d at 281 (citations omitted). Therefore, first, the law of Mississippi must provide for the assertion of such jurisdiction; and, second, the exercise of jurisdiction under Mississippi state law must comport with the dictates of the Fourteenth Amendment Due Process Clause. *Smith v. DeWalt Products Corp.*, 743 F.2d 277, 278 (1984). However, if Mississippi law does not provide for the assertion of personal jurisdiction over the defendant, it follows that the Court need not consider the due process issue. *Id.; Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir.1989).

Mississippi's long-arm statute provides in relevant part:

Any nonresident ... corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss.Code Ann. § 13-3-57.

-3-

The Plaintiffs rely solely on the "tort-prong" of Mississippi's long-arm statute to support their contention that personal jurisdiction over BEMI is proper. The statute's tort-prong provides for personal jurisdiction over any nonresident who commits a tort in whole or in part within the state of Mississippi against a resident or nonresident of the state. Miss.Code Ann. § 13-3-57; *Jobe v. ATR Marketing, Inc.* 87 F.3d 751, 753 (5th Cir.1996). The plaintiffs bear the burden of establishing the Court's jurisdiction over nonresident defendant BEMI. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.1994). In determining whether personal jurisdiction exists, the Court is not restricted to a review of the plaintiff's pleadings. It may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Colwell Realty Investments v. Triple T. Inns of Arizona*, 785 F.2d 1330 (5th Cir.1986).

In construing the tort-prong of Mississippi's long-arm statute, the Mississippi Supreme Court has held that personal jurisdiction over a defendant who allegedly committed a tort is proper if any of the elements of the tort--or any part of an element--takes place in Mississippi. *Smith v. Temco, Inc.*, 252 So.2d 212 (Miss.1971).

Plaintiffs claim that the Court may assert personal jurisdiction over BEMI, a foreign corporation with no contacts in Mississippi, because it is insufficiently separate from its subsidiary Brush Wellman, Inc., which does have contacts in Mississippi. The prerequisites for establishing personal jurisdiction over a corporation, based on the contacts of its subsidiary, are set out in *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154 (5th Cir.1983).

> [S]o long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other.... Generally, our cases demand proof of control by the parent over the internal

-4-

business operations and affairs of the subsidiary in order to fuse the two for
jurisdictional purposes.... **The degree of control exercised by the parent must
be greater than that normally associated with common ownership and
directorship....** All the relevant facts and circumstances surrounding the
operations of the parent and subsidiary must be examined to determine whether
two separate and distinct corporate entities exist.

*Id.* at 1160 (internal quotation marks and citations omitted)(emphasis added). *See also Access
Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 717 (5th Cir.1999) ("typically,
the corporate independence of companies defeats the assertion of jurisdiction over one by using
contacts with the other"); *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th
Cir.1999) ("Courts have long presumed the institutional independence of related corporations,
such as parent and subsidiary, when determining if one corporation's contacts with a forum can
be the basis of a related corporation's contacts"; presumption may be overcome by "clear
evidence"); *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 773-74 (5th Cir.1988) ("it is
well-settled that where ... a wholly owned subsidiary is operated as a distinct corporation, its
contacts with the forum cannot be imputed to the parent"); *Benton v. Cameco Corp.*, 375 F.3d
1070, 1081 (10th Cir. 2004) (A holding or parent company has a separate corporate existence and
is treated separately from the subsidiary in the absence of circumstances justifying disregard of
the corporate entity").

    *a.*    *Brush Engineered Materials, Inc.*

Defendant BEMI has submitted the affidavit of Michael C. Hasychak, its Vice-President,
Treasurer and Secretary.  Mr. Hasychak states that BEMI is a holding company incorporated
under the laws of the State of Ohio in February 2000, with its headquarters and principal place of
business in Cleveland, Ohio.  BEMI owns Brush Wellman, Inc. and six other subsidiaries.  BEMI

does not now, nor has it ever manufactured or sold any beryllium or beryllium-containing products. BEMI has never had an office, nor been licensed or registered to do business in Mississippi. BEMI has never owned property, maintained a bank account, had employees, advertised or solicited business in Mississippi. Mr. Hasychak further states that BEMI and Brush Wellman Inc. are separate entities which have only one director and four officers in common. Brush Wellman Inc. is separately and adequately capitalized. BEMI does not pay Brush Wellman Inc.'s expenses. This evidence tends to show that BEMI and Brush Wellman, Inc. are two separate and distinct entities.

In response, the Plaintiffs provide a copy of BEMI's Environmental Health & Safety Policy, which they allege shows that BEMI designs, manufactures, and distributes beryllium and beryllium-containing products. The one-page document has two sections; the first is a policy statement and the second consists of 11 principles in support of the policy statement. Plaintiffs contend that BEMI's implementation of the policy and procedures caused injury, and BEMI had knowledge that injury would result, thereby constituting a tort within Mississippi sufficient to bring BEMI within the jurisdiction of the Court. Plaintiffs cite *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619 (5th Cir. 1999) and *Wein Air v. Brandt*, 195 F.3d 208 (5th Cir. 1999) in support of this assertion. Reviewing those cases however, reveals that they involve circumstances unlike those in this case. For example, in the *Guidry* case, the defendants publicized false or misleading information about a product in broadcast and print media in the forum state. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619 (5th Cir. 1999). There is no similar contact between BEMI and Mississippi shown in this case. The court in *Wein Air* found that "[t]he prima facie evidence indicates that [the defendant] directed affirmative misrepresentations and omissions to the

-6-

plaintiff in Texas." *Wein Air v. Brandt*, 195 F.3d at 213. Once again, there is no such similar activity shown in regard to BEMI. The Court therefore concludes that the Plaintiffs have failed to overcome the presumption that BEMI is independent from any of its subsidiary companies which may have contacts with Mississippi. BEMI does not have sufficient contacts to allow the Court to assert personal jurisdiction over it in this case.

> b.    *Wess-Del, Inc.*

Defendant Wess-Del, Inc. has submitted the affidavit of David Kirst, its Chief Financial Officer. In contrast to the Plaintiffs' allegations that Wess-Del knew that it was delivering beryllium to Mississippi when it sold its machined parts to The Boeing Company, Mr. Kirst states that after reviewing all of the relevant sales records, it appears that no aspect of the sales took place in Mississippi. No delivery of any Wess-Del product was made in Mississippi. All of the products sold by Wess-Del to The Boeing Company reflect "ship to" addresses in the State of California. Wess-Del is a California corporation with its principal place of business in California. It has no facilities, employees, representative or agents in Mississippi and does not avail itself of the market in Mississippi. It is not licensed or authorized to do business in Mississippi, and in fact does not do any business in Mississippi.

To provide the evidence necessary to meet its burden of showing sufficient contacts to support personal jurisdiction over Wess-Del, the Plaintiffs attach a one-page sheet from BEMI's website, which shows the name "WessDel," among others. It is not clear what the significance of this document might be, but it clearly does not provide evidence of contacts between Defendant Wess-Del and the State of Mississippi. Wess-Del therefore does not have sufficient contacts to allow the Court to assert personal jurisdiction over it in this case.

-7-

<u>STANDARD FOR MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6):</u>

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996), *citing McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir.1992). "[T]he court may not look beyond the pleadings in ruling on the motion." *Baker*, 75 F.3d at 197.

Defendants contend that the Plaintiffs cannot state a claim for medical monitoring because such a cause of action does not exist in Mississippi. Plaintiffs have not directed the Court to any case law establishing such a cause of action in Mississippi. In the *Anglado v. Leaf River Forest Products Inc.* case cited by Plaintiffs, the Mississippi Supreme Court had nothing to say about a medical monitoring claim except: "plaintiffs conceded that the decision in [*Leaf River Forest Products v. Ferguson*, 662 So.2d 648 (Miss.1995)] foreclosed recovery for their claims for increased risk of future disease, emotional distress arising from a fear of future disease, and medical monitoring." *Anglado v. Leaf River Forest Products, Inc.* 716 So.2d 543, 546 (Miss.1998). This language does not indicate that the court recognized a claim for medical monitoring. Similarly, *Batchelder v. Kerr-McGee Corp*, 246 F.Supp.2d 525 (N.D.Miss. 2003) provides no support for Plaintiffs' position because the court in that case merely approved a class action settlement and determined attorneys fees - there was no adjudication of the underlying claims.

-8-

The Defendant notes that other states have both recognized[2] and rejected[3] medical monitoring claims. In Mississippi, recognizing a medical monitoring claim would conflict with precedent establishing that a plaintiff allegedly exposed to a toxic or hazardous substance does not have a compensable injury until a disease caused by such exposure results. *Ferguson*, 662 So.2d at 658 ("The Fergusons will be able to pursue a cause of action against the appellants if any disease caused by alleged exposure to dioxin manifests itself in the future. Their claim based on fear of future disease is at best, premature"). Similarly, the Plaintiffs in this case allege only prospective physical and economic harm. The Court therefore concludes that Plaintiffs have not stated a claim upon which relief can be granted.

IT IS THEREFORE ORDERED AND ADJUDGED, that for the reasons stated above, the Motion to Dismiss filed by Defendant Brush Engineered Materials, Inc. [16], the Motion to Dismiss filed by Brush Engineered Materials, Inc. ("BEMI") and Brush Wellman Inc. and joined in by The Boeing Company [14], and the Motion to Dismiss filed by Defendant Wess-Del, Inc. [22] are GRANTED.

SO ORDERED AND ADJUDGED this the 7th day of January 2005.

S/ LOUIS GUIROLA, JR.
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE

---

[2] *See, e.g., Theer v. Philip Carey Co.*, 628 A.2d 724, 733 (N.J. 1993); *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965 (Cal. 1993); and *Hansen v. Mountain Fuel Supply Co.* 858 P.2d 970 (Utah 1993).

[3] *See Wood v. Wyeth-Ayerst Labs*, 82 S.W.3d 849, 856 (Ky. 2002); *Hinton v. Monsanto Co.*, 813 So.2d 827 (Ala. 2001); *and Badillo v. American Brands, Inc.*, 16 P.3d 435 (Nev. 2001). *See also Metro-North Commuter R.R. Co. v. Buckley*, 521 U.S. 424 (1997).

-9-