UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Suzanne Genereux, et al. )
)
   Plaintiffs, )
)   Case No. 04-CV-12137 JLT
v. )
)
American Beryllia Corp., et al. )
)
   Defendants. )

**PLAINTIFFS' REPLY BRIEF IN OPPOSITION TO DEFENDANT BRUSH
WELLMAN INC.'S, BRUSH WELLMAN CERAMIC INC.'S AND
BRUSH WELLMAN CERAMIC PRODUCTS INC.'S MOTION TO DISMISS**

  Plaintiffs Suzanne Genereux, Barry Genereux, Angela Genereux, and Krista Genereux

hereby submit their Reply Brief in Opposition to the Motion to Dismiss of Defendants Brush

Wellman, Inc. ("Brush"), Brush Wellman Ceramics Inc. ("Brush Ceramics") and Brush

Wellman Ceramic Products Inc. ("Brush Ceramic Products") (collectively, "the Brush Wellman

defendants").

  The Brush Wellman defendants seek dismissal of Counts IV, V, VI, VII, VIII, XII and

XIII. In their original Opposition, the plaintiffs agreed to voluntarily dismiss the "ultrahazardous

activity" claims in Counts IV and XII. The Plaintiffs will also voluntarily dismiss Count VII - -

alleging conspiracy among the Brush defendants  - -  based on Brush's representation that both

Brush Ceramics and Brush Ceramic Products have "merged into Brush Wellman Inc." and that if

either of these two entities were responsible for plaintiff's alleged injuries "liability would fall

exclusively on the successor to these entities, Brush Wellman Inc., as a matter of law." Reply of

Defendant Brush Wellman Inc. to Plaintiffs' Opposition to Motion to Drop Misjoined Parties, p.

3.  Based on the foregoing representation of Brush Wellman Inc., the plaintiffs will voluntarily dismiss all claims against Brush Wellman Ceramics Inc. and Brush Wellman Ceramic Products Inc., as well as the conspiracy claim against Brush Wellman Inc. contained in Count VII. The remaining Counts all state claims upon which relief can be granted.

## I.  **ARGUMENT**

### A.  **Counts V and XIII Complied With The Chapter 93A Demand Letter Requirements.**

#### 1.  **The Demand Letter Complied With The Thirty-Day Notice Requirement**.

The Amended Complaint was filed more than thirty days after the plaintiffs served their demand letter on Brush. For purposes of the demand letter requirement, a litigant is entitled to include c. 93A claims in an Amended Complaint filed more than thirty days after sending a demand letter. "If the demand letter is sent but an action is commenced before the 30-day period has elapsed, it is subject to dismissal; however, it may be refiled after the period has expired." 35 Mass. Prac., Consumer Law § 4:52 (2d ed.). In other words, "even if the first suit could be treated as a suit under c. 93A, subject to dismissal because it was begun too soon, such a dismissal should not ordinarily bar a suit brought after the thirty days had run." *York v. Sullivan,* 369 Mass. 157, 165 (1975). Thirty days passed, the Amended Complaint was filed, and to dismiss "the c. 93A claim for failure timely to send a demand letter" and to require the plaintiff "to send yet another letter and file another action 30 days thereafter, would be a particularly 'fruitless ceremony.'" *Salkind v. Wang,* 1995 WL 170122 * 9 (D. Mass. 1995) (W. G. Young, D.J.)., citing *York v. Sullivan,* 369 Mass. at 163.

The Original Complaint included claims under G.L. c. 93A only against the non-Massachusetts defendants, including Brush. The demand letter requirement does not apply unless the defendant maintains a place of business or assets in the commonwealth. The c. 93A allegations were based on the fact that Brush does not maintain a place of business or assets in the commonwealth; whether it does business in Massachusetts is irrelevant to the c. 93A demand letter requirement. In any event, even if those claims were premature at the time of the filing of the Original Complaint, they were timely included in the Amended Complaint and to require the plaintiff "to send yet another letter and file another action 30 days thereafter, would be a particularly 'fruitless ceremony.'" *Salkind, infra,* 1995 WL 170122 at * 9.

Brush Wellman had thirty days to make a good faith offer, and, having failed to do so, the plaintiffs were entitled to include c. 93A allegations in the Amended Complaint. *Towne v. North End Isuzu, Inc.* 10 Mass.L.Rptr. 340, 1999 WL 674140 (Mass.Super.1999) (Hillman, J.); *Tarpey v. Crescent Ridge Dairy, Inc.*, 47 Mass.App.Ct. 380, 391 (1999); S*tark v. Patalano Ford Sales, Inc.*, 30 Mass.App.Ct. 194, 199 (1991); *Medeiros v. Woburn Nursing Center, Inc.*, 13 Mass.L.Rptr. 555, 2001 WL 1174141 (Mass.Super. 2001) (Murphy, J.); *Lilly v. Turboprop East, Inc.*, 2004 WL 540445 (E.D.Pa. 2004).

## 2.      **The Demand Letter Adequately Described The Unfair Or Deceptive Acts or Practices and the Resulting Harm.**

As stated in the original Opposition, the demand letter provided precise details as to the grounds for Brush's liability and the damages resulting from the plaintiffs' exposure to toxic beryllium. The letter was substantially more detailed than the demand letter discussed in *Zabilansky v. American Building Restoration Products, Inc.,* 2004 WL 2550458 * 14 (Mass.

Super. 2004) (W. I. Gershengorn, J.), which also involved allegations of health impairment and employment disability resulting from exposure to toxic chemicals, and which satisfied the c. 93A demand letter requirements. Brush Wellman complains that it cannot even tell from the letters whether Suzanne Genereux "really has beryllium disease." (Reply of Defendants Brush Wellman Inc., Brush Wellman Ceramics Inc. and Brush Wellman Ceramic Products Inc. To Plaintiffs' Opposition to Defendants' Motion to Dismiss, p. 3) (hereinafter "Defendants' Reply Brief"). Suzanne Genereux's debilitating beryllium disease was described in the demand letter, has resulted in continual and severe suffering to her every day, and will be proven in this litigation. The defendant's questioning of the veracity of the demand letter is not grounds for dismissing the c. 93A claims.

The c. 93A claims were "reasonably ascertainable" from the demand letter, *Fredericks v. Rosenblatt,* 40 Mass.App.Ct. 713, 717-18 (1996), and, therefore, should not be dismissed.

**B.    Count VI Adequately States A Claim For Fraudulent Concealment or Nondisclosure.**

As fully addressed in the original Opposition, Count VI adequately states a claim for fraudulent concealment or nondisclosure by alleging that Brush fraudulently concealed information about the risks associated with beryllium, while knowing that workers would be exposed to levels of beryllium capable of causing CBD.  A fraud claim is established where a party "made a false representation or 'uttered a half truth which may be tantamount to a falsehood.'"  *Id., quoting Kannavos v. Annino*, 356 Mass. 42, 47 (1969).

As stated in the Amended Complaint, the defendants "...actually knew...that an airborne concentration of beryllium that was substantially below the...permissible exposure levels of 2

4

micrograms of beryllium per cubic meter of air...would not protect all workers...[and yet]...concealed the true hazards...of airborne beryllium dust from those workers...who would be exposed to airborne beryllium dust, including the Plaintiffs."  Amended Complaint, ¶¶68-70. The defendants "disseminated false information ... when the Defendants...knew...that such attacks were entirely without merit or basis and were intended to advance false and misleading information to the scientific, industrial hygiene and public health community." *Id.*

Count VI alleged that the defendants attempted to conceal the dangers of their products by providing false information and/or uttering "half truths."  Therefore, the fraudulent concealment allegations adequately state a claim upon which relief can be granted.


### C.   The Medical Monitoring Claims State Claims Upon Which Relief Can Be Granted.

#### 1.   A Medical Monitoring Cause of Action is Consistent with Massachusetts Law, Is Supported by the Force of Logic, the Better Reasoned Authorities and Public Policy Imperatives.

Count VIII seeks relief for the family members of Suzanne Genereux, for the purpose of monitoring them and thereby promoting early intervention and treatment so that they may avoid the consequences of beryllium disease, which has already severely and permanently disabled Suzanne Genereux. Mrs. Genereux's husband and children have alleged that as "a proximate result of [their] exposure to Defendants' beryllium" they "have an increased risk of contracting beryllium sensitization and/or CBD" and that a "monitoring program exists which ascertains and informs of the presence of injury and aids in the treatment and thereby can prevent the greater harms which may not occur immediately, or for which there may be no noticeable symptoms, and

5

that may be treatable if proper screening is conducted and the health risks are diagnosed and treated before they occur or become worse." Amended Complaint, ¶¶ 80, 88. Count VIII states a claim upon which relief can be granted to Barry, Angela and Krista Genereux, even without a showing of present physical injury to them. That is "the view which ... seems best supported by the force of logic. . . the better-reasoned authorities" and "public policy imperatives." *See Ryan v. Royal Ins. Co. of America*, 916 F.2d 731,735, 739 (1st Cir. 1990).

Defendants' Reply Brief is but a rehash of their attack on settled medical monitoring jurisprudence, which is subscribed to by the majority of the courts nationwide that have addressed the issue. Defendants continue to betray a lack of understanding of the underlying goals of the court system which the medical monitoring cause of action so well serves: the public health interest, deterrence and justice. Defendants seek no less than a license from this Court to expose individuals to dangerous and deadly toxins, to cause these individuals who have been exposed - - and for whom experts would testify there is a reasonable certainty that they require diagnostic testing to detect the warning signs of illness arising from their tortious exposure - - to pay for annual beryllium testing during the latency period of chronic beryllium disease which may span many decades, and to bear no legal responsibility until years or decades after plaintiffs' tortious exposure should disease result. Such lack of legal responsibility is unjust, does not deter defendants from irresponsible discharge of dangerous and deadly toxins, and is adverse to the public health interest which would encourage individuals to detect and treat their injuries as soon as possible. *See, e.g., Ayers  v. Township of Jackson*, 525 A.2d 287, 312 (N.J. 1987) ("It is inequitable for an individual wrongly exposed to dangerous toxic chemicals

6

. . . to have to pay his own expenses when medical intervention is clearly reasonable and necessary."); *In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 852 (3d Cir. 1990). This Court should not grant defendants such a license.

A medical monitoring claim in a toxic tort case cannot be judged by the same standards as a personal injury claim. *See In re Paoli,* 916 F.2d at 850 (due to the latency of diseases caused by toxic exposure, toxic torts need not conform with the common law conception of an injury). Defendants would require plaintiffs to allege present physical injury, yet the very purpose of medical monitoring is to permit detection of the onset of physical injury and early diagnosis of toxic related medical conditions. Once a personal injury would arise, a plaintiff has a cause of action for that injury, subsequent medical testing is paid for by the tortfeasor should the plaintiff prevail, and thus a separate claim for medical monitoring is not needed at that point. The injury in a traditional personal injury action is a physical injury, while the injury in a medical monitoring action is the economic harm toxic tort plaintiffs presently suffer due to the cost of the medical testing needed for detection and early diagnosis of physical injury. *Id.*

Recognition of medical monitoring as a cause of action, without a showing of physical injury, is consistent with Massachusetts law. As defendants concede, this Court has already recognized medical monitoring, albeit as an item of damages. *See Anello v. Shaw Industries*, 2000 WL 1609831, *7 (D. Mass. 2000). Contrary to defendants' interpretation, nowhere in its opinion did this Court state in *Anello* that monitoring costs could be awarded only where underlying physical harm was present. Instead, *Anello* simply recognized medical monitoring as a form of damages, as have numerous courts throughout the nation. *See* Plaintiffs' Opposition to Motion to Dismiss of Raytheon, pp. 12-13.

The use by the Supreme Judicial Court in *Leardi v. Brown*, 394 Mass. 151, 159-160, 474 N.E.2d 1094, 1101 (1985), of the same Restatement definition of injury (denoting the invasion of any legally protected interest even when no harm is done), as that employed by courts throughout the nation which recognize medical monitoring as a cause of action, *see, e.g., Bower v. Westinghouse Electric Corp.*, 522 S.E.2d 424, 430 (W. Va. 1999), is another indication of the consistency of medical monitoring law with Massachusetts law.  Although the issues before the Court differed from those here, the Court based its definition of  "injury" on the "interpretation of well-defined words and phrases in the common law…" *Leardi*, 394 Mass. at 159.

This Court's willingness to recognize subcellular changes as physical injury in *Anderson v. W.R. Grace & Co.*, 628 F. Supp. 1219, 1228 (D. Mass. 1986), *aff'd sub nom. Anderson v. Beatrice Foods Co.*, 900 F.2d 388 (1st Cir.), *cert. denied*, 111 S. Ct. 233 (1990), which represented a relaxation of the physical injury requirement in a fear of cancer case, is a further indication that recognition of a medical monitoring cause of action, which is not a traditional personal injury action and for which personal injury should not be required, is consistent with Massachusetts law.

Defendants' continued attempt to confuse the instant cause of action for medical monitoring with the cause of action for increased risk of future harm is unavailing, and thus, contrary to defendants' contention, *Anderson* is not adverse to plaintiffs' claim.  *See* Defendants' Reply Brief, pp. 7-8.  Indeed, these causes of action are entirely distinct.  As *Paoli* instructs:

> An action for medical monitoring seeks to recover only the quantifiable costs of periodic medical examinations necessary to detect the onset of physical harm, whereas an enhanced risk claim seeks compensation for the anticipated harm itself, proportionately reduced to reflect the chance that it will not occur . . .

> *. . . The injury in an enhanced risk claim is the anticipated harm itself. The injury in a medical monitoring claim is the cost of the medical care that will, one hopes, detect that injury.* The former is inherently speculative because courts are forced to anticipate the probability of future injury. The latter is much less speculative because the issue for the jury is the less conjectural question of whether the plaintiff needs medical surveillance.

*Paoli*, 916 F.2d at 850-51 (emphasis added).

### 2.   Recognizing That Relief Can Be Granted To The Plaintiffs For The Cost of Medical Monitoring Will Not Unleash a Flood of Litigation.

Defendants' parade of horribles, should this Court conclude that the plaintiffs can be granted the relief of periodic medical monitoring or damages equivalent to the cost of such monitoring, is baseless. No flood of litigation has resulted in those jurisdictions which recognize medical monitoring claims. That is due to the high standard of proof and the typical limitation of damages to a court-supervised fund. First, a toxic tort plaintiff must prove, through expert testimony, that prospective testing and evaluation is necessary and reasonably certain to be required, beyond that which an individual should pursue in the absence of exposure. *See Bower*, 522 S.E.2d at 431. Second, the remedy of the medical monitoring cause of action may include limitations imposed by the Court. These limitations have been praised by the Supreme Court in *Metro-North Commuter Railroad Co. v. Buckley*, 521 U.S. 424, 440-41 (1997), which stated that it had raised the concern of unlimited liability in order to "explain why we consider the limitations and cautions to be important - and integral - parts of the state-court decisions," *id.* at 444, permitting medical monitoring. State courts have read *Buckley* similarly. *See Petito v. A.H. Robins Co.*, 750 So.2d at 106 ("The Court . . . acknowledged, however, that many of the courts

9

authorizing the recovery of costs for medical monitoring have imposed limitations on the remedy that address these policy concerns.").

Contrary to defendants' labels, *see* Defendants' Reply Brief, p. 9, Barry, Angela and Krista Genereux are not uninjured. Instead, as a result of their exposure to beryllium, their harm is the need to pay "the cost of the medical care that will, one hopes, detect [the physical] injury." *Paoli*, 916 F.2d at 850. Also, their claims are not simply exposure-as-injury claims. Exposure to a toxic substance is a necessary element, but many other elements are required, including proof of a defendant's wrongful conduct and the necessity, viability and helpfulness of prospective testing and evaluation, to state a cause of action for medical monitoring. *See* Plaintiffs Opposition to Raytheon's Motion to Dismiss, pp. 8, 17-18.

In sum, it is not unexpected that defendants would see no "necessity [in] addressing [the very] problems of toxic exposure," *see Paoli*, 916 F.2d at 850 n.22, which they have caused. However, public policy imperatives compel recognition of this cause of action and the majority of courts that have considered this issue have agreed. The only "mischief," *see* Defendants' Reply Brief, p. 8, at issue is the defendants' request for a license to cause harm without having to pay the consequences for decades, if at all. To paraphrase this Court in *Bergeson v. Franchi*, 783 F. Supp. 713, 717 (D. Mass. 1992), without permitting a medical monitoring cause of action, there is no other way to vindicate public policy.

## CONCLUSION

For the reasons addressed above, the plaintiffs respectfully request that Brush's motion to dismiss Counts V, VI, VIII and XIII be denied. Based on Brush's concession identified above, the plaintiffs will voluntarily dismiss Counts IV, VII and XII, and dismiss all claims against

Brush Wellman Ceramics Inc. and Brush Wellman Ceramic Products Inc. (while preserving all claims against Brush Wellman Inc. arising out of the conduct of Brush Wellman Ceramics Inc. and Brush Wellman Ceramic Products Inc.).

Respectfully submitted, this 28th day of January, 2005,
**MEEHAN, BOYLE, BLACK & FITZGERALD, P.C.**

/s/  Leo V. Boyle
_____
Leo V. Boyle (B.B.O. 052700)
Two Center Plaza, Suite 600
Boston, Massachusetts 02108
617.523.8300

AND

**GOLOMB & HONIK, P.C.**

/s/ Ruben Honik
_____
Ruben Honik
Sherrie J. Cohen
Stephan Matanovic
121 S. Broad Street, Ninth Floor
Philadelphia, PA 19107

## CERTIFICATE OF SERVICE

I, Bradley M. Henry, certify that on January 28, 2005, I served the foregoing Reply Brief in Opposition to the Motion to Dismiss of Defendants Brush Wellman, Inc.,  Brush Wellman Ceramics Inc. and Brush Wellman Ceramic Products Inc. by electronic filing and mailing an exact copy postage prepaid to counsel of record.

/s/ Bradley M. Henry
_____
Bradley M. Henry