## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Suzanne Genereux, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 04-cv-12137 JLT |
| | ) | |
| American Beryllia Corp., et al. | ) | |
| | ) | |
| Defendants. | ) | |

### SUPPLEMENTAL BRIEF IN SUPPORT OF
### DEFENDANT BRUSH WELLMAN INC.'S
### MOTION TO DISMISS COUNT VIII OF PLAINTIFFS' COMPLAINT

Defendant Brush Wellman Inc. ("Brush") submits this Supplemental Brief in support of Brush's motion to dismiss Count VIII ("Medical Monitoring") of Plaintiffs' Amended Complaint. Attached hereto as Exhibit A is the Order of the United States District Court for the Northern District of Georgia in Parker et al. v. Brush Wellman Inc. et al., No. 1:04-CV-0606-RWS (March 29, 2005), which was issued six weeks after oral argument on the motion to dismiss in this case.

The plaintiffs in Parker alleged that they were exposed to beryllium at Lockheed Martin Corporation's facility in Marietta, Georgia, and that these exposures had caused "subclinical, cellular, and subcellular damages" and increased their risk of future disease. Like several of the plaintiffs here, they sought medical monitoring.

The court rejected any and all tort claims based on alleged "subclinical" effects of chemical exposure, holding that under applicable Georgia tort law, an injury is not cognizable unless there are "contemporaneous physiological manifestations." (Slip op. at 13.) The court further rejected any claim for "medical monitoring" of asymptomatic plaintiffs:

> While a remedy permitting creation of medical monitoring funds has garnered support in several jurisdictions, no Georgia court has ever indicated an inclination to recognize such a remedy.  Moreover, several courts have recently rejected the creation of such funds as an available avenue of relief for persons exposed to hazardous agents who have not yet suffered manifest physiological injury, and the remedy remains a controversial one. . . . Again, it is not the function of a federal court to expand state tort doctrine in novel directions absent clear state authority suggesting the propriety of such an extension. . . . The Court does not read Georgia law as permitting the establishment of a medical monitoring fund with respect to persons who have not endured a cognizable tort injury.

(Id. at 27-28.)

For the same reasons, the Court should dismiss the "medical monitoring" claims here.  As Brush has shown in its earlier briefs, Massachusetts law does not permit, and in fact precludes, such claims by presently uninjured plaintiffs.

Respectfully submitted,

By: _____

Alan M. Spiro (Federal Bar No. 475650)
Edwards & Angell, LLP
101 Federal Street
Boston, MA 02110
Tel:    617.951.2204
Fax:    888.325.9124

Jeffery D. Ubersax
Jones Day
North Point
901 Lakeside Ave.
Cleveland, Ohio  44114-1190
Tel:    216.586.3939
Fax:    216.579.0212

Attorneys for Defendant Brush Wellman Inc.

_485053_1/

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of April, 2005, a true and correct copy of the foregoing SUPPLEMENTAL BRIEF OF DEFENDANT BRUSH WELLMAN INC. was served via U.S. mail, first class postage prepaid, upon all counsel of record, as set forth below.

Alan M. Spiro
Attorney for Brush Wellman Inc.

Leo V. Boyle, Esq.
Bradley M. Henry, Esq.
Meehan, Boyle, Black & Fitzgerald, PC
Two Center Plaza
Suite 600
Boston, MA 02108
617-523-8300

Ruben Honik, Esq.
Sherrie J. Cohen, Esq.
Stephen Matanovic, Esq.
Golomb & Honik, P.C.
121 S. Broad Street
9th Floor
Philadelphia, PA 19107
215-985-9177

Attorneys for Plaintiffs

Robert P. Sharon, Esq.
Robert P. Sharon P.C.
225 Broadway
Suite 2600
New York, New York 10007
212-227-5550

William F. Ahern, Esq.
Clark, Hunt and Embry
55 Cambridge Parkway
Cambridge, MA 02142
617-494-1920

Attorneys for Defendant American
Beryllia Corp.

Ronald M. Jacobs, Esq.
James F. Kavanaugh, Jr., Esq.
Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP
Ten Post Office Square,
4th Floor
Boston, MA 02109
617-482-8200

Attorneys for Defendant Raytheon Co.

John C. Wyman
Murtha Cullina, LLP
20th Floor
99 High Street
Boston, MA 02110-2320
617-457-4041

Attorney for Defendants Kyocera America, Inc. and
Kyocera Industrial Ceramics Corp.
Robert M. A. Nadeau
Nadeau & Associates, PA
1332 Post Road, Suite 4A
Wells, Maine 04090
207-324-3500

Attorney for Defendant Hardric Laboratories, Inc.

_485053_1/

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| NEAL PARKER; WILBERT CARLTON; STEPHEN KING; RAY BURNS; DEBORAH WATKINS; LEONARD PONDER; BARBARA KING; and PATRICIA BURNS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BRUSH WELLMAN, INC.; SCHMIEDE MACHINE & TOOL CORPORATION; THYSSENKRUPP MATERIALS NA, INC. d/b/a COPPER & BRASS SALES, INC.; AXSYS TECHNOLOGIES, INC.; ALCOA, INC.; McCANN AEROSPACE MACHINING CORPORATION; COBB TOOL, INC.; and LOCKHEED MARTIN CORPORATION,<br><br>Defendants. | CIVIL ACTION NO.<br>1:04-CV-0606-RWS |

AO 72A
(Rev.8/82)

## **ORDER**

This case comes before the Court on Defendant Alcoa, Inc.'s Motion to Dismiss for Failure to State a Claim, or in the Alternative, Motion for a More Definite Statement [5]; Defendant Lockheed Martin Corporation's Motion to Dismiss or, in the Alternative, for a More Definite Statement [8]; Defendant Lockheed Martin Corporation's Motion for Judgment on the Pleadings as to Plaintiff's Medical Monitoring, Strict Liability (Ultrahazardous Activity), Increased Risk and Fear Claims [17]; Defendant Alcoa Inc.'s Motion for Judgment on the Pleadings as to Plaintiffs' Claims for Medical Monitoring, Strict Liability (Ultra-Hazardous Activity), and Increased Risk and Fear [18]; Defendant Brush Wellman Inc.'s Motion for Judgment on the Pleadings Based on Plaintiffs' Lack of Any Cognizable Injury [22]; Defendant Axsys Technologies Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction [28]; Motion of Defendant McCann Aerospace Machining Corporation to Dismiss Plaintiffs' Complaint/Motion for More Definite Statement, or in the Alternative, Motion for Judgment on the Pleadings [31]; Schmiede Corporation's Motion to Dismiss or, in the Alternative, for a More Definite Statement [57]; and

2

Defendants' Unopposed Motion for Leave to Exceed Page Limits in their Joint Reply Brief [87].

As a preliminary matter, Defendants' Unopposed Motion for Leave to Exceed Page Limits in their Joint Reply Brief [87] is **GRANTED** *nunc pro tunc*. After reviewing the record and the parties' briefs, the Court addresses the remaining motions before it through the following Order.

### Background

Plaintiffs, certain current and former employees of Defendant Lockheed Martin Corporation ("Lockheed"),[1] as well as select members of those persons' families, initiated this putative class action in the Superior Court of Fulton County, Georgia in late January 2004. Two months later, Lockheed removed the case to federal court pursuant to 28 U.S.C. § 1442(a)(1).

In their Complaint, Plaintiffs allege, generally, that Defendants are all involved in some capacity in the manufacture and/or use of products containing beryllium. (Compl. ¶¶ 15-16.) Plaintiffs assert that they were exposed to a respirable form of the substance, either by virtue of their work at the Lockheed

---

[1]Lockheed is a leading designer and producer of advanced military aircraft.

3

facility in Marietta, Georgia, or through the work of family members at that

location who carried beryllium residue home on their skin, clothes, and

belongings. (Id. ¶ 17.)

According to Plaintiffs, beryllium is a toxic substance, exposure to which

can result in adverse effects ranging "from sub-clinical, cellular, and sub-cellular

damage, to acute and chronic lung disease, dermatologic disease and cancer."

(Compl. ¶ 19.)  Plaintiffs go on to claim that Defendants either knew or should

have known that beryllium had the propensity to cause such injuries, and that

their activities at Lockheed's Marietta facility would result in the Plaintiffs'

exposure to harmful quantities of the substance. (Id. ¶¶ 17-18.)  Further,

Plaintiffs allege:

> As a foreseeable, direct and proximate result of their
> exposure to the hazardous substance beryllium,
> Plaintiffs and other Lockheed workers and their
> families already have suffered and will suffer in the
> future personal injuries in the form of sub-clinical,
> cellular, and sub-cellular damages and some have
> suffered from acute and chronic lung disease,
> dermatologic disease, and chronic beryllium disease.

(Id. ¶ 22.)  Moreover, they assert that all such persons "have been placed at

substantially increased risk of catastrophic latent disease, such as chronic

4

beryllium disease and cancer" and "have suffered and will suffer in the future from fear, anxiety, and emotional upset as a result of their personal injuries and because they have been placed at substantially increased risk of catastrophic chronic disease." (Id. ¶¶ 23-24.)

Relying on the foregoing allegations, Plaintiffs assert claims for the establishment of a medical monitoring fund, as well for strict liability in tort, negligence, strict liability for abnormally dangerous and ultra-hazardous activities, fraudulent concealment and civil conspiracy, as well as for punitive damages and attorneys' fees.

## Discussion

Despite the considerable number of motions currently before the Court, the issues ripe for its consideration are actually quite limited. First, the Court must determine whether Plaintiffs' Complaint is so vague and ambiguous as to require a more definite statement. Second, it must evaluate the viability of certain aspects of Plaintiffs' claims, including whether the harmful effects enumerated in Plaintiffs' Complaint constitute cognizable "injuries" under Georgia law, and whether Plaintiffs' claims for medical monitoring and strict liability with respect to alleged ultra-hazardous activities state grounds for relief.

5

AO 72A
(Rev.8/82)

Finally, the Court must evaluate whether Defendant Axsys Technologies Inc. ("Axsys") is entitled to be dismissed from this lawsuit for lack of personal jurisdiction.  The Court considers each of these issues below.

## I.     Motions for More Definite Statement

Defendants Alcoa, Inc. ("Alcoa"), Lockheed Martin Corporation, McCann Aerospace Machining Corporation ("McCann"), and Schmiede Corporation ("Schmiede") each request that the Court either dismiss them from this action or, alternatively, compel a more definite statement from Plaintiffs due to the imprecise nature of Plaintiffs' pleading.  Guided by the principle that Rule 12(b)(6) dismissal is disfavored, and that it should be granted only in circumstances where it "appears beyond a doubt that the plaintiff can prove no set of facts" that would entitle him to relief, the Court declines to dismiss these Defendants from this lawsuit on grounds of indefinite pleading.  See Conley v. Gibson, 355 U.S. 41, 45, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).[2]  The question,

---

[2]Alcoa replied separately in support of its motion to dismiss, in which it had argued that Plaintiffs' failure to allege that any of its products caused Plaintiffs' exposure to beryllium warranted dismissal.   In that reply, Alcoa emphasizes that Plaintiffs' response brief identified Alcoa merely as a supplier of *aluminum* to Brush Wellman, Inc. ("Brush Wellman"), who in turn used that aluminum to create a beryllium-aluminum composite, AlBeMet, that was in turn allegedly used at Lockheed's Marietta facility.   The Court is inclined to agree with Alcoa that, if Plaintiffs' amended pleading does no more than

6

then, is whether Defendants' are entitled to a more definite statement under Rule 12(e).

Pursuant to Federal Rule of Civil Procedure 12(e), a party may move for a more definite statement "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading . . . ." Fed. R. Civ. P. 12(e). While the requirements of pleading under the Federal Rules are "liberal," and a litigant need not "allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim[,]" see Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001), a pleader must at least provide his opponent with "fair notice of what [his] claim is and the grounds upon which it rests." Conley, 355 U.S. at 47. Stated differently, a plaintiff should include in his pleading some brief factual description of the circumstances surrounding the acts or omissions upon which he bases his claim for relief. See Williams v. Lear Operations Corp., 73 F. Supp. 2d 1377, 1381 (N.D. Ga. 1999) (holding that

---

reiterate such allegations, Alcoa would be entitled to be dismissed from this action. Nevertheless, as Alcoa acknowledges in its papers, the focus of the Rule 12(b)(6) dismissal inquiry is on the *pleadings*, not the parties' briefs, and the Court will permit Plaintiffs to amend their Complaint to state a claim against them rather than dismissing the company based on assumptions stemming from language in a response brief.

7

plaintiff's failure to provide any factual description of "when, where or how" she suffered unlawful treatment rendered her pleading inadequate even under liberal notice pleading standards). In multiparty litigation, moreover, the Federal Rules do not permit a party to aggregate allegations against several defendants in a single, unspecific statement, but instead require the pleader to identify (albeit generally) the conduct of *each* defendant giving rise to his claims. See Veltmann v. Walpole Pharmacy, Inc., 928 F. Supp. 1161, 1164 (M.D. Fla. 1996).

In the instant case, Defendants bemoan several areas of imprecision in Plaintiffs' pleading. While many of Defendants' complaints appear to misapprehend the level of detail necessitated by the Federal Rules, the Court finds at least some of the omissions in Plaintiffs' pleading leave Defendants without "fair notice" of the claims being asserted against them.

First, the Court finds that the Complaint does not give each Defendant "fair notice" of the role *it* or *its* product is alleged to have played in causing Plaintiffs' injuries. Plaintiffs state broadly that Defendants were "manufacturers," "fabricators," "distributors," "seller[s]," "machiners," or "users" of beryllium-containing products sold to and used at the Lockheed

8

Marietta facility. (Compl. ¶¶ 15-16.) Moreover, they claim to have been exposed to respirable beryllium dust "as a . . . result of the sale and use of beryllium-containing products by the Defendants at the Lockheed Marietta facility." (Compl. ¶ 21.) Beyond these general averments, however, there are no factual allegations regarding whether Plaintiffs were exposed to *each* individual Defendant's beryllium-containing products, nor are there any allegations regarding the approximate times (*i.e.*, approximate date ranges) of alleged beryllium exposure. In the absence of such critical allegations, Defendants are left without "fair notice" of the factual basis underlying the claims that they must now attempt to defend. Cf. Roe, 253 F.3d at 683 ("it is . . . necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory' ") (quoting In re Plywood Antitrust Litig., 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)); Lee v. Celotex Corp., 764 F.2d 1489, 1491 (11th Cir. 1985) (in toxic-exposure case, plaintiff must show that he or she was directly exposed to a particular defendant's product); Lowie v. Raymark Indus., 676 F. Supp. 1214, 1216 (S.D. Ga. 1987) (under Georgia law, as interpreted by

9

Eleventh Circuit, plaintiff in toxic-exposure case "must show contact with specific products at ascertained times").

Second, the Complaint fails to segregate the Plaintiffs who are alleged to have endured only subclinical, cellular, and subcellular effects as a consequence of their beryllium exposure from those who have instead endured manifest physiological injury. As the Court concludes *infra*, the former effects do not constitute actionable "injuries" under applicable tort doctrine, and consequently, those Plaintiffs who rely on such effects to plead their case have failed to state a claim upon which relief may be granted. In order to perfect the record, Plaintiffs should amend their pleading to identify those persons who have suffered only such effects. Following such amendment, the Court will enter an Order dismissing the claims asserted by those persons.

In sum, Defendants Rule 12(e) motions are **GRANTED in part and DENIED in part**. Plaintiffs are **ORDERED**, within twenty (20) days from the date appearing on this Order, to amend their pleading: (1) to include factual allegations respecting whether Plaintiffs were exposed to each individual Defendant's beryllium-containing products; (2) to include approximate date ranges of the alleged exposure; and (3) to segregate out those Plaintiffs who

10

have endured only subclinical, cellular, and subcellular effects from those who have sustained actionable tort injuries. The motions are denied in all other respects.

## II.    Legal Viability of Plaintiffs' Claims

Defendants Lockheed, Alcoa, Brush Wellman, McCann, and Schmiede likewise challenge the viability of several aspects of Plaintiffs' claims. Specifically, they challenge whether the "harms" cited in Plaintiffs' Complaint constitute cognizable tort injuries under Georgia law, and argue that Plaintiffs' claims for medical monitoring and strict liability (ultra-hazardous activities) fail to state grounds for relief.

These issues come before the Court on Rule 12 motions to dismiss and motions for judgment on the pleadings. Consequently, the Court accepts as true the allegations set forth in the Complaint, and construes them in the light most favorable to the non-movants. Cooper v. Pate, 378 U.S. 546, 546, 84 S. Ct. 1733, 12 L. Ed. 2d 1030 (1964); Conner v. Tate, 130 F. Supp. 2d 1370, 1373 (N.D. Ga. 2001). The motions may be granted, moreover, only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

11

Nevertheless, when, under applicable law, the Court concludes that a particular

claim is not viable, it "must be dismissed, without regard to whether it is based

on an outlandish legal theory or on a close but ultimately unavailing one."

Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338

(1989).

### A.    Cognizable Injuries

#### 1.    Subclinical Effects

An overarching issue in this litigation is whether Plaintiffs who have

endured only "sub-clinical, cellular, and sub-cellular damage"[3] from alleged

beryllium exposure may rely on such effects as a physical "injury" sustaining

tort recovery.  Cf. Pickren v. Pickren, 593 S.E.2d 387, 388 (Ga. Ct. App. 2004)

(to recover in tort, party must have suffered injury to either person or property).

By definition, "subclinical" refers to a condition that is "[n]ot manifesting

characteristic clinical symptoms."  American Heritage College Dictionary 1350

(3d ed. 2000); see also Merriam-Webster Medical Dictionary (2002) (defining

---

[3]Herein, for ease of reference, the Court refers to "sub-clinical, cellular, and sub-cellular damage" as "subclinical" effects.  Although the Court appreciates that differences exist between effects that are "cellular," "subcellular," and "subclinical" in nature, it has found no case in which one was recognized as an injury and the other(s) not, and discerns no basis for treating the effects differently for purposes of the current analysis.

12

subclinical as "not detectable or producing effects that are not detectable by the usual clinical tests"). Defendants argue, and this Court agrees, that such a "subclinical" condition, lacking in any contemporaneous physiological manifestations, is not a cognizable "injury" under applicable tort law.

Plaintiffs expressly predicated their claims in this action on the laws of the State of Georgia, and Defendants have acknowledged the application of those laws to the claims presented in this case. Consequently, this Court will evaluate the viability of Plaintiffs' claims under Georgia law.

According to the Eleventh Circuit, the district court's task when it encounters a legal question governed by state law is to attempt to discern what the highest state court would do if faced with an identical question. See Chepstow Ltd. v. Hunt, 381 F.3d 1077, 1080 (11th Cir. 2004); KMS Rest. Corp. v. Wendy's Int'l, Inc., 361 F.3d 1321, 1325 (11th Cir. 2004). When the state supreme court has not specifically addressed an issue, however, the court is bound to apply the precedents of the state's intermediate appellate courts absent "some really persuasive indication" that the state supreme court would decide the issue differently. KMS Rest. Corp., 361 F.3d at 1325; see also

13

Arrow Exterminators, Inc. v. Zurich Am. Ins. Co., 136 F. Supp. 2d 1340, 1347 (N.D. Ga. 2001) (same).

In Georgia, the question of whether asymptomatic conditions or subclinical effects constitute cognizable injuries has not frequently made it before courts of appellate jurisdiction.  There is, however, one published opinion of the Georgia Court of Appeals in which the issue was addressed, and the question answered in the negative.  See Boyd v. Orkin Exterminating Co., 381 S.E.2d 295, 297-98 (Ga. Ct. App. 1989), overruled on unrelated grounds, Hanna v. McWilliams, 446 S.E.2d 741 (Ga. Ct. App. 1994).

In Boyd, homeowners sued a pest control company alleging that it negligently misapplied insecticide inside their residence, resulting in the exposure of themselves and their children to harmful levels of toxic substances.  381 S.E.2d at 296.  Indeed, the evidence at trial demonstrated the presence of toxin metabolites in the children's blood at concentrations up to twenty-six times higher than that typically found in the population.  Id. at 297.  A medical expert opined that the test results "demonstrated that the children had 'suffered an injury' and would require periodic monitoring over the ensuing years to determine whether they were developing any health problems associated with

14

exposure to toxic pesticides." Id. Notwithstanding this testimony, the trial

court granted the defendant directed verdict, stating that the presence of such

metabolites in the children's bloodstream did not constitute a cognizable

"injury" under Georgia law. Id. at 298. The Court of Appeals affirmed, and in

doing so, expressly rejected the "contention that the jury could have assessed

damages . . . based on expert testimony that the presence of elevated levels of

the [toxin] metabolite in the children's blood itself constituted 'injury.' " Id.[4]

---

[4]The Court of Appeals somewhat clouded the contours of its holding by stating that plaintiffs could not recover "[a]bsent any indication that the presence of these metabolites had caused or *would eventually cause* actual disease, pain, or impairment of some kind[.]" 381 S.E.2d at 298 (emphasis supplied). Read out of context, the italicized language could be understood as an indication that, had plaintiffs come forward with evidence that the presence of toxin metabolites increased the risk of disease to their children, such presence might have sufficed as an actionable "injury."

The next enumerated paragraph of the opinion, however, forecloses such a reading. There, the Court of Appeals expressly rejected the plaintiffs' argument that the lower court had erred by granting partial summary judgment to the defendant on plaintiffs' claims of "increased risk," *notwithstanding testimony* that the presence of the toxins would result in the elevation of the children's susceptibility to developing cancer. Id. at 298. It stated that even in those jurisdictions recognizing a claim for increased risk (a group of jurisdictions into which it did not purport to place Georgia), the claimant must establish to a "reasonable medical certainty" that the adverse consequences would occur. Id.

A fair reading of the opinion, then, illustrates the italicized language did not "open the door," so to speak, to tort claims predicated on subclinical effects in circumstances where those effects would tend to increase the risk of manifest impairment to the affected party. The Court of Appeals did not even so much as imply that its analysis (and rejection) of plaintiffs' "increased risk" arguments would have had any bearing on its previous conclusion that subclinical effects did not constitute cognizable "injuries" as a matter of law.

15

Given the <u>Boyd</u> court's apparent rejection of subclinical effects as actionable "injuries," and considering the lack of any Georgia Supreme Court authority suggesting the law in the State to be otherwise, <u>Boyd</u> appears to preclude Plaintiffs' reliance on subclinical effects as a cognizable "injury" in this case. See <u>Chepstow</u>, 381 F.3d at 1080 (absent state supreme court authority appearing to suggest a contrary result, federal court is bound to apply holding of state intermediate appellate court on issues of state law).[5]  However, even

_____

[5]Plaintiffs in their papers emphasize that Georgia requires only a "slight" injury to sustain tort recovery, and cite <u>Chambley v. Apple Restaurants, Inc.</u>, 504 S.E.2d 551 (Ga. Ct. App. 1998), as supporting the view that they have endured a cognizable injury in this case.  In <u>Chambley</u>, the Georgia Court of Appeals held that the plaintiff had suffered an "injury" sufficient to recover for emotional distress as a result of her eating a salad in which she discovered an unwrapped condom.  After eating a portion of the salad, she began suffering from gastric distress and psychological problems.

While <u>Chambley</u> does indeed appear to illustrate the flexibility of the "impact" element of Georgia's "impact rule" (a rule establishing a precondition to a plaintiff's recovery for negligently inflicted emotional distress), the Court does not read the case as helping to advance Plaintiffs' position here.  First, <u>Chambley</u> addressed a situation in which the plaintiff *did* manifest physiological symptoms in connection with the defendant's alleged tortious act, and the Court of Appeals was not called upon to determine whether "subclinical" effects were alone sufficient to sustain recovery in tort.  Second, the Court of Appeals in <u>Chambley</u> based its holding in large part on the implications of policies underlying the Georgia Food Act to the case before it, *i.e.*, the need to protect Georgians from the ingestion of adulterated food, and the impact of its holding on Georgia tort doctrine must accordingly be evaluated in light of the unique context in which the case arose.  See <u>Chambley</u>, 504 S.E.2d at 499-500 ("To encourage restaurants to avoid their statutory duty to consumers by serving adulterated food in blatant violation of the Georgia Food Act, then allowing restaurants to escape liability because the consumer's physical reaction appears to have been psychological in origin simply cannot be the law.").

16

absent the <u>Boyd</u> decision, this Court would be strongly disinclined, under the guise of applying Georgia law, to extend the parameters of state tort liability to include "injuries" of a purely subclinical nature.

The issue of whether the presence of subclinical effects constitute a cognizable injury is not one on which the law, from a national perspective, is well-settled. <u>Compare</u> <u>Schweitzer v. Consolidated Rail Corp.</u>, 758 F.2d 936, 942 (3rd Cir. 1985) (holding "that subclinical injury resulting from exposure to [toxins] is insufficient to constitute the actual loss or damage to plaintiff's interest required to sustain a cause of action under generally applicable principles of tort law"); <u>Laswell v. Brown</u>, 683 F.2d 261, 269 (8th Cir. 1982) (rejecting, under Federal Tort Claims Act, "expos[ure] to an unusually high risk of disease in genetically passed cellular damage" as cognizable injury); <u>with,</u> <u>Werlein v. United States</u>, 746 F. Supp. 887, 901 (D. Minn. 1990), <u>vacated in part</u> 793 F. Supp. 898 (1992) (holding that question of fact existed as to whether "chromosomal breakage[ ] and damage to the cardiovascular and immunal systems" caused by exposure to contaminated air and drinking water constituted injury); <u>Barth v. Firestone Tire & Rubber Co.</u>, 661 F. Supp. 193, 196 (N.D. Cal. 1987) (holding that plaintiff's allegations of injury to his immune system and

17

increased risk of cancer satisfied burden to allege injury, notwithstanding

plaintiff's failure to "allege any symptom of injury which can be clinically

diagnosed at th[e] time").[6]  As the foregoing discussion makes clear, moreover,

this Court has been unable to locate any Georgia authority that would appear to

suggest that such effects amount to a cognizable tort "injury."  A decision by

this Court permitting Plaintiffs to proceed on such a theory would therefore be

taking Georgia law in a new and controversial direction that neither that State's

legislature nor judiciary has indicated is appropriate.  Such is not the proper

function of a federal court.  See Cargill, Inc. v. Offshore Logistics, Inc., 615

F.2d 212, 215 (5th Cir. 1980) (it is up to state high court, and not federal court,

to change state law);[7] see also City of Philadelphia v. Beretta U.S.A. Corp., 277

---

[6]At one point in their papers, Plaintiffs suggest that the question of whether particular subcellular or subclinical effects amount to "injury" should be left for resolution by the finder of fact.  Although such an approach has some facial appeal, this Court believes that the fundamental, threshold question of whether non-manifesting physical conditions constitute actionable "injury" as a matter of tort doctrine is more accurately seen as one of law.  Allowing fact-finders to impose liability in some "subclinical" cases but not others would invite needless inconsistency into the tort system, and would likely produce arbitrary and irreconcilable results between cases.

[7]The U.S. Court of Appeals for the Eleventh Circuit adopted as binding precedent the decisions of the U.S. Court of Appeals for the Fifth Circuit handed down prior to September 30, 1981.  Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

18

AO 72A
(Rev.8/82)

F.3d 415, 421 (3rd Cir. 2002) ("it is not the role of a federal court to expand

state law in ways not foreshadowed by state precedent").[8]

Insofar as Defendants move to dismiss Plaintiffs' claims relying on

injuries that are "sub-clinical, cellular, or sub-cellular" in nature, their motions are

**GRANTED**. Plaintiffs are directed, in conformity with the Court's ruling

above, to amend their pleading to segregate out those Plaintiffs who have

endured only subclinical, cellular, and subcellular effects from those who have

sustained actionable tort injuries. Following such amendment, the Court will

enter an Order dismissing the claims asserted by the former subset of claimants.

    2.    Increased Risk, Emotional Distress

In their Complaint, Plaintiffs also assert that they "have been placed at

substantially increased risk of catastrophic latent disease, such as chronic

beryllium disease and cancer" and "have suffered and will suffer in the future

---

[8]Indeed, the Georgia courts themselves have seemed singularly reluctant to effect such sizable shifts in Georgia law through judicial decision, instead preferring to leave such issues for the legislature's consideration. See, e.g., Carter v. Glenn, 533 S.E.2d 109,115 (Ga. Ct. App. 2000) (fundamental alteration in Georgia law was for legislature to effect, not the courts); Evans v. Bibb Co., 342 S.E.2d 484, 486 (Ga. Ct. App. 1986) ("These inadequacies in our existing law, however, if they be such, cannot be supplied by the courts, and may only be corrected by the General Assembly.") (quoting Davis v. Atlanta Gas Light Co., 61 S.E.2d 510 (Ga. Ct. App. 1950)).

AO 72A
(Rev.8/82)

from fear, anxiety, and emotional upset as a result of their personal injuries and because they have been placed at substantially increased risk of catastrophic chronic disease." (Id. ¶¶ 23-24.) These alleged consequences of beryllium exposure are incorporated in most of Plaintiffs' claims as injuries for which they are entitled to recover in tort. Defendants, however, argue that neither set of effects constitute cognizable harms under Georgia law. This Court, with respect to those Plaintiffs who have suffered only subclinical effects (as opposed to manifest physiological symptoms), agrees.

As an initial matter, the Court observes that no Georgia court has adopted a theory of liability premised on the mere "increased risk" of suffering from a future disease or injury. Cf. Boyd, 381 S.E.2d at 298 (appearing to reject "increased risk" theory as grounds for recovery); O.C.G.A. § 51-12-8 ("If the damage incurred by the plaintiff is only the imaginary or possible result of a tortious act or if other and contingent circumstances preponderate in causing the injury, such damage is too remote to be the basis of recovery against the wrongdoer."). Indeed, Plaintiffs in their responsive papers appear to concede that a cause of action for increased risk is not independently viable, but rather,

20

suggest that their allegations of increased risk only serve to bolster their entitlement to recover damages related to emotional distress.

The question becomes, then, whether Plaintiffs have pled facts that would entitle them to recover for emotional distress as a result of their beryllium exposure. As it relates to those plaintiffs who have not yet endured manifest physiological injury, a careful review of Georgia law reveals that they have not.

In order to recover damages for negligently inflicted emotional distress under Georgia's "impact rule," a plaintiff must plead and prove (i) a physical impact to his person, (ii) that the impact caused "physical injury," and (iii) that such injury is the cause of the claimed emotional distress. <u>Lee v. State Farm Mut. Ins. Co.</u>, 533 S.E.2d 82, 85 (Ga. 2000). As discussed above, however, this Court does not perceive the presence of subclinical effects as a cognizable "injury" under Georgia law. Thus, Plaintiffs who are alleged to have endured only such effects fail to cross the threshold hurdle the Georgia courts have erected for recovery for negligently inflicted emotional distress.

Plaintiffs, while not seriously challenging these persons' failure to literally satisfy the requirements of Georgia's "impact rule," urge that two lines of cases reveal alternate or relaxed showings a plaintiff can make to sustain recovery for

21