UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Suzanne Genereux, et al.       ) | |
|                                  ) | |
|     Plaintiffs,               ) | |
|                                  ) | Civil Action No. |
| v.                                  ) | 04-CV-12137 JLT |
|                                  ) | |
| American Beryllia Corp., et al.     ) | |
|                                  ) | |
|     Defendants.             ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO CERTIFY QUESTION TO THE SUPREME JUDICIAL
COURT OF THE COMMONWEALTH OF MASSACHUSETTS**

Plaintiffs Suzanne Genereux, Barry Genereux, Angela Genereux, and Krista Genereux hereby submit this Memorandum in Support of their Motion To Certify Question To The Supreme Judicial Court of the Commonwealth of Massachusetts. The Supreme Judicial Court has not addressed the precise question of the viability of the cause of action for medical monitoring, and, therefore, the question is ripe for certification to the Supreme Judicial Court.

**I.      Statement of the Case**

This is a case involving take-home exposure of toxins, where Suzanne Genereux, a former employee of Raytheon working with toxic beryllium at Raytheon's plant in Waltham, Massachusetts, transported these toxins on her person from her workplace to her home, where she resides with her husband and children.  Plaintiffs in this matter asserted claims against Defendants arising out of the Defendants' use, release and failure to warn about the dangers of respirable beryllium, a toxin which may cause severe illness or death. Specifically, Defendants failed "to implement, install and maintain appropriate industrial hygiene controls, ventilation

controls and systems, and/or adequate air control and monitoring equipment" which resulted in the pollution and contamination of "the air at the Waltham plant and, in turn, the residences of ... workers, thereby exposing Plaintiff Suzanne Genereux and her family to the poisonous, toxic and/or hazardous effects of beryllium." See *Amended Complaint*, ¶¶ 86-87. In addition, Defendants "failed to properly and/or timely warn of these known dangers ..." *Id.,* ¶ 33. Plaintiffs seek the establishment of a medical monitoring trust fund due to the absolute certainty that they require diagnostic testing to detect the onset of any illness arising from their tortious exposure to the dangers of respirable beryllium dust, fumes and particulate matter. *See, generally, Amended Complaint*.

Defendants moved to dismiss many of Plaintiffs' claims, including the claim for medical monitoring. In their briefing to this Court, Plaintiffs argued that, although the Supreme Judicial Court of Massachusetts has not directly addressed the specific issue of whether a defendant that has failed to satisfy its duty of care may be liable for the costs of medical monitoring without a showing of present physical harm to those requiring such monitoring, such liability is consistent with principles of Massachusetts law generally and with the weight of authority in other jurisdictions. *See, e.g.*, Plaintiffs' Opposition to the Motion to Dismiss of Defendant Raytheon [29]. Following oral argument held on February 14, 2005, on May 12, 2005 this Court denied several of the Defendants' motions to dismiss, thereby allowing several of the Plaintiffs' claims to continue in this litigation, but also issued an Order dismissing without prejudice Plaintiffs' claims for medical monitoring. *See* May 12, 2005 Order [52]. The Court's May 12, 2005 Order relied on *Caputo v. Boston Edison Co.*,[1] a District Court case that involved a single plaintiff's

---

[1] *Caputo v. Boston Edison Co.,* 1990 WL 986494 (D. Mass. July 9, 1990).

claim for personal injuries, and which did not address a claim for medical monitoring. In *Caputo*, the plaintiff did not seek any medical monitoring costs, but, as a result of exposure to "excessive radiation" sought damages to compensate him for his "fear of cancer based upon an increased statistical likelihood that he will develop the disease in the future." In contrast, the medical monitoring claims in the present case do not seek any such "fear of harm" damages, but instead seek damages for the more specialized, narrower and more concrete cost of medical monitoring necessary to prevent serious harm.

Plaintiffs now move for certification of the issue of the viability of the cause of action of medical monitoring to the Supreme Judicial Court, because this issue remains without direct judicial precedent by the appellate courts of Massachusetts. Resolution of the question of medical monitoring by the Supreme Judicial Court will provide guidance both for present and future litigants, and will best conserve the resources of both this Court and of the Massachusetts state courts.

## II.   Standard of Review

Certification to the Supreme Judicial Court may be made pursuant to S.J.C. Rule 1:03, which, in relevant part, provides:

> This court may answer questions of law certified to it by ... a United States District Court ... when requested by the certifying court if there are involved in any proceeding before it questions of law of this State which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court.

Under Supreme Judicial Court Rule 1:03, the Supreme Judicial Court may answer questions of law certified to it by a United States District Court. Rule 1:03 Section 1. The Rule

may be invoked by order of the Federal Court upon its own motion or by motion of any party to the cause. Rule 1:03, Section 2. Rule 1:03 has been employed to obtain rulings from the Supreme Judicial Court regarding many important legal issues that had not previously been addressed. *See, e.g. The Medical Professional Mutual Ins. Co. v. Breon Laboratories, Inc.*, 141 F.3d 372 (1st Cir. 1998) (certifying to the Supreme Judicial Court the question of scope of the term "judgment" in the Contribution Among Joint Tortfeasors Act); *Kansallis Finance Ltd. v. Fern, et al.*, 40 F.3d 476 (1st Cir. 1994) (certifying issues of partnership law and vicarious liability to the Supreme Judicial Court); *Horta v. Sullivan*, 4 F.3d 2 (1st Cir. 1993) (certifying to the Supreme Judicial Court questions concerning the discretionary function exception to the Massachusetts Tort Claims Act); *Dynamic Machien Works, Inc. v. Machine & Electrical Consultants, Inc.*, 352 F. Supp.2d 83 (D. Mass. 2005) (Young, J.) (certifying questions regarding the application of the Massachusetts Uniform Commercial Code).

### III.  Argument

#### A.  This Court Should Certify the Question of the Existence of the Cause of Action for Medical Monitoring to the Supreme Judicial Court.

The question of the cause of action for medical monitoring is a recurring one. As noted in the parties' briefing, the issue has been decided differently by various courts in other states, although it has never been addressed by the courts of this Commonwealth. Importantly, most courts that have addressed the issue have recognized and endorsed the cause of action for medical monitoring.[2] Under the circumstances, it is appropriate that the question be certified to

---

[2]  *See Bourgeois v. A.P. Green Industries, Inc.*, 783 So.2d 1251 (La. 2001); *Petito v. A.H. Robins*, 750 So.2d 103, 107-08 (Fla. Ct. App. 2000); *Bower v. Westinghouse*, 522 S.E.2d 424, 426 (W. Va. 1999); *Redland Soccer Club, Inc. v. Dep't of the Army*, 548 Pa. 178, 696 A.2d 137, 145 (1997); *Potter v. Firestone Tire and Rubber Co.*, 6 Cal.4th 965, 25 Cal. Rptr.2d 550, 863 P.2d 795, 822-23 (1993) (*en banc*); *Hansen v. Mountain Fuel Supply*, 858 P.2d 970, 979-80 (Utah 1993); *Burns v. Jaquays Mining Corp.*, 156 Ariz. 375, 752 P.2d 28 (Ariz. Ct. App.1987);

the Supreme Judicial Court for determination.  Accordingly, Plaintiff requests that this Court certify the question of whether a defendant that has failed to satisfy its duty of care may be liable for the costs of medical monitoring without a showing of present physical harm to those requiring such monitoring:

> [A]n action for medical monitoring seeks to recover only the quantifiable costs of periodic medical examinations necessary to detect the onset of physical harm, whereas an enhanced risk claim seeks compensation for the anticipated harm itself, proportionately reduced to reflect the chance that it will not occur....
>
> ... *The injury in an enhanced risk claim is the anticipated harm itself. The injury in a medical monitoring claim is the cost of the medical care that will, one hopes, detect that injury.* The former is inherently speculative because courts are forced to anticipate the probability of future injury. The latter is much less speculative because the issue for the jury is the less conjectural question of whether the plaintiff needs medical surveillance.

*In re Paoli Railroad Yard PCB Litigation,* 916 F.2d 829, 850-51 (3d. Cir. 1990) (footnote omitted) (emphasis added).

The United States Department of Energy recognizes the medical necessity of such periodic lifetime testing, and provides lifetime medical monitoring to covered employees of beryllium companies - even employees who were not actually beryllium workers, such as office personnel:[3]

---

*Ayers v. Township of Jackson*, 106 N.J. 557, 525 A.2d 287 (1987); *see also Elam v. Alcolac, Inc.*, 765 S.W.2d 42, 209 (Mo. Ct. App.1988) (dictum); *Martin v. Shell,* 180 F. Supp.2d 313, 323 (D. Conn. 2002) (noting favorable citation by Connecticut Supreme Court); *Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109 (N.D.Ill.1998) (applying Illinois law); *Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp. 1515 (D.Kan.1995) (Kansas law); *Day v. NLO*, 851 F. Supp. 869 (S.D.Ohio 1994) (Ohio law); *Bocook v. Ashland Oil, Inc.*, 819 F. Supp. 530 (S.D.W.Va.1993) (Kentucky law); *Cook v. Rockwell Int'l Corp.*, 755 F. Supp. 1468 (D.Colo.1991) (Colorado law); *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829 (3d Cir.1990) (Pennsylvania law), *cert. denied sub nom. General Electric Co. v. Knight*, 499 U.S. 961, 11 S. Ct. 1584, 13 L.Ed.2d 649 (1991).

[3]  Such exposure is analogous to the take-home exposure to beryllium alleged by Plaintiffs herein.

> Early detection of a disease is of value if it leads to earlier treatment and a better prognosis for the individual being tested.  Screening for CBD with the BeLPT can provide earlier detection than is possible with other tests…
>
> ***
>
> Early identification and intervention are important for identifying workers at higher risk of exposure to beryllium, and for preventing and minimizing the effects of beryllium-induced disease.

64 F.R. at 68855, 68891.

The DOE's medical monitoring program requires testing every three years, following an initial thorough baseline examination.  *See* DOE Chronic Beryllium Disease Prevention Program[4] regulations, 10 CFR 850, *et seq.*;  64 F.R. 68854-01, 688892.  The DOE's medical monitoring program is more than simply an agency's policy decision.  The rules and regulations promulgated by the DOE comprise 150 pages of detailed medical and scientific findings, and clearly set forth the pressing need for ongoing medical testing for all persons exposed to beryllium. *See* 64 F.R. 68854, *et seq*.

**B.    Significant Developments Since the Court Issued Its May 12, 2005 Order Warrant Certification to the Supreme Judicial Court.**

Since the Court issued its May 12 Order, two significant developments have arisen.  First, Plaintiffs learned that Claire Balint, who was exposed to beryllium while working at the Raytheon plant, tested positive for beryllium sensitivity.[5]  Unlike other results of toxic exposure,

---

[4]  The DOE's beryllium worker program is promulgated pursuant to the DOE's authority under section 161 of the Atomic Energy Act of 1954, 42 U.S.C. §§2201(i)(3) and (p)§§; Section 19 of the Occupational Safety and health Act of 1970, 29 U.S.C. §668; and Executive Order 12196, "Occupational Safety and health programs for Federal Employees", 1980 WL 66738.

[5]  *See* Report of Lee S. Newman, M.D., containing results of BeLPT, dated 3-30-2005, attached hereto as **Exhibit "1."**  Mrs. Balint paid for this test herself.

chronic beryllium disease is immunologically mediated. That is, individuals such as Claire Balint who are exposed to beryllium, whether at work or through take-home exposure (as alleged by Plaintiffs herein), and who may have genetic markers of beryllium susceptibility, mount a beryllium-stimulated immune response upon exposure. It is well known that an abnormal physiological immune response to beryllium, such as that demonstrated in the blood of Claire Balint, is a necessary precursor to the development of chronic beryllium disease ("CBD").[6]

Second, a recently published article by Lee S. Newman, Margaret M. Mroz, Ronald Balkissoon, and Lisa A. Maier,[7] *Beryllium Sensitization Progresses to Chronic Beryllium Disease*: *A Longitudinal Study of Disease Risk*, 171 Am. J. Respir. Crit. Care Med. 54-60 (2005) (*see* **Exhibit "2"**), demonstrates that approximately six to eight percent *per year* of individuals with sensitization who are followed over time developed CBD. *Id.* at 54. Further, they found that *31% of sensitized individuals*, for the limited duration of this longitudinal study, *who had no evidence of CBD on initial lung biopsy developed CBD on subsequent clinical evaluation*.[8] *Id.* at

---

[6] This response can now been seen by the administration of the Beryllium Lymphocyte Proliferation Test ("BeLPT"), a biological assay that conclusively proves exposure and sensitivity to beryllium, a precursor to disease. However, no test that could be given at any one time would show every individual in the putative class who has or will ever become sensitized to beryllium. *See* 64 F.R. 68854-01, *et seq*. That is because the latency period for manifestation of beryllium sensitization often stretches nearly as long as that for development of chronic beryllium disease itself. In addition, no test could conclusively show who is not at risk, because any individual who tests negative, may later yet test positive for beryllium sensitization. *Id.* Indeed, anyone exposed to beryllium suffers a lifetime risk of contraction of chronic beryllium disease, regardless of the number of times their BeLPT test has returned negative.

[7] Dr. Lisa Maier, M.D., M.S.P.H., one of the foremost authorities on beryllium medicine in the world, authored the affidavit attached to plaintiff's memorandum of law. An occupational pulmonologist and Associate Professor at National Jewish Medical and Research Center in the Division of Environmental and Occupational Health Sciences in the Department of Medicine with a joint appointment at the University of Colorado at Denver and Health Science Center in the Department of Preventive Medicine and Biometrics, she is board certified in internal medicine, pulmonary medicine, critical care medicine and occupational medicine.

[8] Thus, a greater percentage of people go on to develop CBD over a longer period of time.

58 (emphasis added). It is likely that the majority of individuals with sensitization will eventually develop CBD. Dr. Maier and her colleagues believe that *most beryllium-sensitized workers will eventually develop CBD.* See Exhibit 2, at 54 (emphasis added). This Court should seek guidance from the Supreme Judicial Court as to whether a necessary and effective medical screening mechanism employing a simple blood test is cognizable, or should be cognizable under Massachusetts law.

Based upon the recently-published findings of Maier *et al.*, Claire Balint, who has already suffered an injury, is at a significant risk of developing CBD. A medical monitoring program, such as that sought by Plaintiffs Barry Genereux, Angela Genereux, and Krista Genereux, will allow Plaintiffs to assess their health status and to begin immediate treatment. Given the number of citizens of this Commonwealth who worked at the Raytheon plant and who were exposed to beryllium, either directly or from take-home exposure, the question of whether entities such as the Defendants in this case may be liable for the costs of medical monitoring without a showing of physical harm to those requiring such monitoring, is ripe for certification to the Supreme Judicial Court.

### IV. Proposed Certified Question

"The various state and federal courts addressing this issue have moved toward relative consensus on the elements necessary to establish a claim for medical monitoring." *Bower v. Westinghouse Electric Corp.*, 206 W. Va. 133, 141, 522 S.E.2d 424, 432 (W. Va. 1999). According to *Bower*, the elements the plaintiff must prove are that:

(1)     He or she has, relative to the general population, been significantly exposed, that is, "that the plaintiff's risk of being injured from the exposure is greater, in some way, than the risks all of us encounter in our everyday lives" *Redland Soccer Club v. Department of the Army*, 55 F.3d 827, 846 (3d Cir. 1995);

(2)     To a proven hazardous substance;

(3)     Through the tortious conduct of the defendant;

(4)     As a proximate result of the exposure, plaintiff has suffered an increased risk of contracting a serious latent disease relative to what would be the case in the absence of exposure, *Hansen v. Mountain Fuel Supply*, 858 P.2d 970, 979 (Utah 1993);

(5)     The increased risk of disease makes it reasonably necessary for the plaintiff to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of the exposure;

(6)     Monitoring procedures exist that make the early detection of disease possible.

Therefore, the Plaintiffs respectfully request that this Court certify the following question to the Supreme Judicial Court of the Commonwealth of Massachusetts:

Under Massachusetts law, based upon proof that

(1)     the plaintiff, relative to the general population, has been significantly exposed to a proven hazardous substance through the tortious conduct of the defendant;

(2)     as a proximate result of the exposure, the plaintiff has suffered an increased risk of contracting a serious latent disease relative to what would be the case in the absence of exposure; and,

(3)     the increased risk of disease makes it reasonably necessary for the plaintiff to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of the exposure and monitoring procedures exist that make the early detection of disease possible,

may the plaintiff recover the costs of medical monitoring?

WHEREFORE, Plaintiffs respectfully request that this Court grant their Motion and certify the above-referenced questions to the Supreme Judicial Court.

Respectfully submitted, this 19th day of August, 2005.

**MEEHAN, BOYLE, BLACK & FITZGERALD, P.C.**

/s/ Leo V. Boyle

_____
Leo V. Boyle (B.B.O. 052700)
Two Center Plaza, Suite 600
Boston, Massachusetts 02108
617.523.8300

OF COUNSEL (admitted *pro hac vice*):

**GOLOMB & HONIK, P.C.**

Ruben Honik
Sherrie J. Cohen
Stephan Matanovic
121 S. Broad Street, Ninth Floor
Philadelphia, PA 19107

**CERTIFICATE OF SERVICE**

I, Bradley M. Henry, certify that on this 19th day of August, 2005, I served the foregoing Memorandum in Support of their Motion to Certify Question to the Supreme Judicial Court of the Commonwealth of Massachusetts, by electronic filing and mailing an exact copy postage prepaid to counsel of record.

/s/ Bradley M. Henry
_____
Bradley M. Henry