UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Suzanne Genereux, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 04-cv-12137 JLT |
| ) | |
| American Beryllia Corp., et al. ) | |
| ) | |
| Defendants. ) | |

### AFFIDAVIT OF JEFFERY D. UBERSAX

Jeffery D. Ubersax, being first duly sworn, states as follows:

1. I am a partner in the Jones Day law firm, and counsel pro hac vice to defendant Brush Wellman Inc. in this case. I submit this affidavit in connection with Brush's opposition to Plaintiffs' Motion to Compel Disclosure and Production of Documents.

2. Attached as Exhibit 1 is a true and correct copy of a letter from plaintiffs' counsel, Bradley M. Henry, to my cocounsel Alan M. Spiro, dated December 6, 2005.

3. Attached as Exhibit 2 is a true and correct copy of a letter that I sent to Mr. Henry on December 12, 2005, in response to the December 6 letter.

4. Attached as Exhibit 3 is a true and correct copy of a letter from Mr. Henry to me dated December 15, 2005. The letter was received at my office by telecopy at 4:26 p.m.

5. Attached as Exhibit 4 is an e-mail that I sent to Mr. Henry that same evening. I was not aware at the time that Mr. Henry had already filed a motion to compel.

CLI-1364937v1

6.  Attached as Exhibit 5 is another e-mail that I sent to Mr. Henry on December 20, 2005 offering to provide copies of about 14,000 pages of documents from the depository that Brush may use to support its defenses in this case.

Sworn to and subscribed
before me this 23 day of December,
2005.

_____
Jeffery D. Ubersax

_____
Notary Public

AMY M. LOUCEK
N.K.A. AMY M. CAMARDA
Notary Public, State of Ohio, Cuy. Cty.
My commission expires May 1, 2006



# MEEHAN, BOYLE, BLACK & FITZGERALD, P.C.

COUNSELLORS AT LAW

TWO CENTER PLAZA

SUITE 600

BOSTON, MASSACHUSETTS 02108-1923

www.MBBF.COM

LEO V. BOYLE
PETER J. BLACK
WARREN D. FITZGERALD
JOHN CARNEVALE
LOORAM D. BOGDANOW
KAREN K. KINTUDEN
BRADLEY M. HENRY
PETER J. AINSWORTH

Direct Email: bhenry@mbbf.com

December 6, 2005

TELEPHONE
(617) 523-8300

FACSIMILE
(617) 523-0625

Info@mbbf.com

**VIA TELEFACSIMILE
and FIRST CLASS MAIL**

Alan M. Spiro, Esq.
Edwards & Angell
101 Federal St.
Boston, MA 02110

RE: *Genereux, et al. v. American Beryllia Corp., et al.*
USDC (MA) Civil Action No. 04-12137-JLT

Dear Alan:

I've missed you when I've called about defendant Brush Wellman, Inc.'s automatic disclosure of documents. As you are Brush's local counsel, I have not separately attempted to contact Mr. Ubersax but will do so if that is Brush's desire.

As my voice-mail messages have indicated, we are unable to determine from Brush's initial disclosures what may be contained in "Onsite [or Offsite] Elmore [or Tucson or St. Clair] Boxes" located at Brush's Document Depository in Cleveland. Moreover, our recollection of Judge Tauro's bench orders at the last conference is that documents were to be fully identified and produced in Massachusetts, not reserved for inspection at an out-of-state warehouse. Please let us know if Brush believes Judge Tauro's bench order indicated otherwise.

Finally, please accept my phone messages as requests for a Local Rule 7.1 discovery conference in anticipation of a motion to compel Brush to disclose and produce documents in the event we cannot resolve this issue in the interim.

Thank you.

Very truly yours,

Bradley M. Henry

c: Stephan Matanovic, Esq.

# JONES DAY

Exhibit 2

NORTH POINT • 901 LAKESIDE AVENUE • CLEVELAND, OHIO 44114-1190
TELEPHONE: 216-586-3939 • FACSIMILE: 216-579-0212

390491:dcs
CHI 1510016v1
190170.011128

December 12, 2005

By Telecopy and U.S. Mail

Bradley M. Henry, Esq.
Meehan, Boyle, Black & Fitzgerald, P.C.
Two Center Plaza
Suite 600
Boston, Massachusetts 02108

      Re: Genereux, et al. v. American Beryllia Corp., et al.
           USDC (MA) Civil Action No. 04-12137-JLT

Dear Brad:

    This is in response to your letter to Alan Spiro of December 6, 2005.

    Your complaint that you are "unable to determine" what is in the boxes identified in Brush's initial disclosure would easily be remedied by a visit to the depository. Brush met its discovery obligations by referring you to the depository, and exceeded those obligations by going through the index and finding boxes that appear to contain documents about Raytheon – a process that would impose no more burden on plaintiffs than it did on Brush.

    The depository was established a number of years ago to provide an efficient, cost-effective and convenient method of making available the voluminous number of documents that might pertain to beryllium litigation. The records are maintained in the depository in the manner in which they were kept in the usual course of business. (The names Elmore, St. Clair and Tucson are the locations of Brush facilities from which the documents were identified and put in the depository. The terms "on-site" and "off-site" reflect that not all of the boxes are physically maintained at the depository, because of space limitations; off-site boxes that you wish to inspect will, with reasonable notice, be on-site at the time of your visit.)

    The depository has been used by plaintiffs' attorneys across the country, in cases pending in both federal and state courts. The courts have rejected arguments that would require Brush to do the work of plaintiffs' counsel and search for documents at their request. In Klemka v. Brush Wellman Inc., for example, your co-counsel Mr. Honik sought to compel Brush to produce documents, and argued that it was not sufficient for Brush to refer him to the depository. The United States District Court for the District of New Jersey denied the motion, held that the depository met all of the requirements of FRCP 34, and noted that "Brush had facilitated future

CHI-1510016v1

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS
PITTSBURGH • SAN DIEGO • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Bradley M. Henry, Esq.
December 12, 2005
Page 2

searches of its records through creation of the depository and index." (A copy of the decision is attached hereto.)

As for Judge Tauro's remarks, I do not believe that they can fairly be interpreted as some kind of a ruling that in no instance may a defendant refer plaintiffs' counsel to a document depository. Brush's depository is not just a "warehouse", but an organized collection of documents, put together at great expense, exactly for the purpose of litigation discovery.

As an accommodation to plaintiffs, Brush is willing to copy and send to you at your expense those documents which Brush in its own search of the depository has to date identified as related specifically to Raytheon. If you wish to receive copies of those documents, please let me know. Of course, we cannot represent that these are all of the documents in the depository that refer or relate to Raytheon, but we are aware of no others, and to search for others would be no more of a burden for you than it would be for Brush.

Please call if you wish to discuss this. I hope that we will not be wasting time and energy on motion practice.

Very truly yours,

Jeffery D. Ubersax

Enclosure

cc:    Alan Spiro, Esq.
       Stephan Matanovic, Esq.

CHI-1510016v1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
RONALD J. HEDGES
UNITED STATES MAGISTRATE JUDGE

MARTIN LUTHER KING, JR.
FEDERAL BUILDING AND COURTHOUSE
50 WALNUT STREET
NEWARK, NJ 07101
973-645-3827

June 29, 2004

**LETTER-OPINION AND ORDER**
**ORIGINAL FILED WITH CLERK OF THE COURT**

Ruben Honik
Golomb & Honik
457 Haddonfield Rd.
Suite 710
Cherry Hill, NJ 08002

Marie H. Kramer
Daller Greenberg & Dietrich, LLP
457 Haddonfield Rd.
Cherry Hill, NJ 08020

      Re:    **Klemka, et al. v. Brush Wellman, Inc., et al.**
             **Civil Action No. 03-CV-3197 (WJM)**

Dear Counsel:

## INTRODUCTION

    This matter is before me on plaintiffs' motion (1) to compel defendant Brush Wellman ("Brush") to specify responsive documents, (2) to compel production of redacted medical documents, (3) to compel Brush to amend its privilege log, and (4) for appointment of a special master to conduct in camera inspection of purportedly privileged documents. I have considered the papers submitted in support of and in opposition to the motions. There was no oral argument. See Rule 78.

## BACKGROUND

    Plaintiffs seek damages for injuries allegedly sustained by plaintiff Thomas Klemka ("Klemka") as a result of exposure to beryllium dust, fumes, and particulate matter while he was

1

employed by Brush. Klemka was a machinist at Brush's Clinton, New Jersey plant in 1983 and 1984. He then worked for defendant Ellis Ceramtek, Inc., where Brush's beryllium products were used, in 1985 and 1986. In 2002, Klemka was diagnosed with chronic beryllium disease.

At issue is a discovery dispute. Plaintiffs contend that, in response to their documents request, Brush directed them to a depository of roughly one million documents. Plaintiffs also argue that Brush has invoked privilege for documents that either contain discoverable scientific information or demonstrate attorney-client conspiracy to commit fraud. Plaintiffs seek to compel Brush to amend its responses and privilege log and to produce redacted medical records. In the alternative, they seek appointment of a special master to conduct an in camera review of Brush's withheld documents, to determine whether privilege applies to these documents, and to consider whether any applicable privilege should be pierced by the crime-fraud exception.

Brush responds that reference to its document depository, which was created by it at great effort and expense, is consistent with Rule 34. Brush further maintains that its withheld documents are privileged, that there is no evidence of attorney-client fraud, and that appointment of a special master to conduct in camera inspections would duplicate the review performed in Faccio v. Brush Wellman in the District of Arizona.

## DISCUSSION

I.  *Plaintiffs' Motion to Compel Brush to Amend Its Responses to Plaintiffs' Requests for Production*

Plaintiffs seek to compel Brush to specify which documents are responsive to their document requests. Brush's referral to its massive document depository, plaintiffs argue, fails to comply with Rule 34. Brush counters that Rule 34 requires nothing further than its efforts to date.

Rule 34(b) states, in relevant part: "A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the requests." Thus, a responding party only has the obligation to organize and label documents if it presents the requested information in a form other than the form in which it maintains those documents in the usual course of business. In re G-I Holdings, Inc., 218 F.R.D. 428, 449 (D.N.J. 2003). A responding party's option of making its business records available is intended to "place the burden of research [on] the party who seeks the information." Advisory Committee Note to 1970 amendment to Rule 33(c);[1] see 7 Moore's Federal Practice § 33.105[1].

The option to make records available, however, is not without limits. While the plain language of Rule 34 does not require that a records search be equally burdensome for both

---

[1] This Note informs the analysis of Rule 34(b). See Advisory Committee Note to 1970 amendment to Rule 34(b).

2

parties to make the option available, as does Rule 33(d), courts have disallowed the use of unwieldy record-keeping to frustrate discovery. See Rhone-Poulenc Rorer Inc. v. The Home Indemnity Co., No. 88-9752, 1991 U.S. Dist. LEXIS 8304, at *5-6 (E.D. Pa. June 17, 1991); In re Richardson-Merrell, 97 F.R.D. 481, 483 (S.D. Ohio 1983); Kozlowski v. Sears, Roebuck & Co., 73 F.R.D. 73, 76 (D. Mass. 1976). A party "may not excuse itself from compliance with Rule 34 ... by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of documents an excessively burdensome and costly expedition." Rhone-Poulenc, 1991 U.S. Dist. LEXIS, at *5-6 (quoting Kozlowski, 73 F.R.D. at 76).

Brush has complied with Rule 34. Responding to the rebuke of a magistrate judge in the Eastern District of Tennessee, Brush exceeded its obligation to make its documents available for inspection by creating the document depository. Brush spent more than $1 million in legal fees to establish the depository, a process that required sixteen months of labor. (Haumann Decl. ¶ 2.) Brush created a 3,300-page index, which includes actual file names as originally maintained, to aid its and plaintiffs' searches of the depository. (Id. ¶ 7.) These documents have not, on this record, been presented in such a way that would trigger an obligation to organize and label them further. Instead, the documents appear to have been winnowed away from an unwieldy universe of information and presented in the exact form in which these are usually kept. (Id. ¶¶ 2-5.)[2] This renders plaintiffs' reliance on Alexander v. FBI, 194 F.R.D. 305, 313-14 (D.D.C. 2000), unavailing. There, the responding party merely searched an index of the documents contained in sixty boxes. 194 F.R.D. at 313. Here, Brush has expended substantial resources in examining what would appear to be millions of documents. Given the extraordinary number of documents involved in this litigation, and Brush's efforts, at least one court has found Brush's depository to comply generally with Rules 33 and 34. See Morgan v. Brush Wellman, Inc., No. 3:94-CV-369, at 6 (E.D. Tenn. Apr. 16, 1999) (unpublished opinion). I see no reason to depart from that holding.

Admittedly, this not a case that fits neatly into Rule 34's two-option framework for production of documents. See G-I Holdings, 218 F.R.D. at 449. To the contrary, neither option available to the responding party – namely, leaving plaintiffs to navigate a universe of documentation without aid, or specifically organizing and labeling every document request for every beryllium action – is realistic in light of the efficiency and fairness aims of the discovery rules. See Advisory Committee Note to 1946 amendment to Rule 26(b) ("The purpose of discovery is to allow a broad search for facts ... which may aid a party in the preparation or presentation of his case."); Cheney v. United States Dist. Court, No. 03-475, 2004 U.S. Dist. LEXIS 4576, at *47-48 (U.S. June 24, 2004) ("Broad discovery should be encouraged when it

---

[2]Plaintiffs submitted the affidavit of Joseph Urban, which makes in essence the legal argument that the documents in the depository were not produced in the manner in which they were maintained in the ordinary course of business. (Urban Decl. ¶9.) In addition to this statement being inappropriate under the local rules, see L. Civ. R. 7.2(a), it is insufficient to counter Brush's factual assertion to the contrary. (See Haumann Decl. ¶¶ 2-5.)

3

serves the salutary purpose of facilitating the prompt and fair resolution of concrete disputes.") (Stevens, J., concurring). Brush, responding both to the realities of mass litigation and judicial pressure, has created something of a hybrid, namely, a depository that organizes, labels, and makes documents available as they are maintained in the ordinary course of business. Given the facts, Brush's depository complies with Rule 34.

While I appreciate plaintiffs' submission of Mr. Urban's Declaration, which demonstrates that certain responsive documents were filed in a manner that rendered them virtually impossible to find by referring to the index, I am not persuaded at this time that plaintiffs should prevail on these grounds. First, it is to be expected in document retention of this magnitude that an index of the depository will be less than one hundred percent effective. This reality does not render the depository ipso facto violative of Rule 34. Second, there is no indication on the record that the handful of examples set forth in the affidavit are not duplicative or cumulative vis-a-vis the documents and information to which the index has directed the plaintiffs. Third, the discovery of these responsive documents evidences plaintiffs' ability to search the depository and discover relevant information. Mr. Urban has not testified that he searched purportedly unrelated boxes on a lark. He surely had a well-reasoned purpose for searching the boxes wherein he discovered the responsive documents. Notwithstanding my analysis, however, plaintiffs may, in the event they discover sufficiently numerous non-cumulative pieces of evidence in boxes to which the index does not direct them, move for attorneys fees and costs associated with the discovery of that information.

In summary, Brush has made its documents available for inspection in compliance with Rule 34. There is no evidence suggesting that its record-keeping is somehow inherently inhospitable to document inspection. To the contrary, Brush has facilitated future searches of its records through creation of the depository and index. Plaintiffs' motion to compel amended responses to document requests is DENIED.

II.   *Plaintiffs' Motion to Compel Redacted Medical Records*

In their documents request, plaintiffs sought documentation of physical examinations, blood test results, medical reports, and the like. Brush objected, inter alia, on privacy grounds. Plaintiffs now move to compel production of these documents, in redacted form if appropriate, reasoning that the information is "essential to demonstrate Brush's knowledge of the health of its employees and the health hazards it exposed them to." (Pls.' Br. at 6.) Brush responds that the records are irrelevant because no cases of chronic beryllium disease surfaced at the plant before Klemka ended his employment there. Brush further submits that privacy interests in any event prevail over the "attenuated benefit" of these records.[3] (Def.'s Br. at 10.)

---

[3]Brush also maintains that production of even redacted records will "result in the disclosure of confidential medical information belonging to non-parties," because the "employees are easily identifiable [and] plaintiffs and others could relate the confidential medical information to the specific individuals notwithstanding extensive redactions." (Def.'s

4

Insofar as Brush denies knowledge of the health hazards posed by beryllium exposure at its plant, any medical records that predate Klemka's departure are relevant. Nevertheless, these records are highly confidential and "perhaps the most private information about an employee within the possession of an employer." Getz v. Penn. Blindness & Visual Servs., No. 97-7541, 1998 U.S. Dist. LEXIS 20262, at *7 (E.D. Pa. Dec. 18, 1998). It is thus appropriate to balance these competing interests. See Miles v. Boeing Co., 154 F.R.D. 112, 115 (E.D. Pa. 1994) (balancing relevance with privacy interests).

Consequently, plaintiffs' request is GRANTED IN PART, subject to a protective order under Rule 26(c). Brush shall produce redacted medical records – for, and labeled, "attorneys' eyes only" – that are both responsive to plaintiffs' request and predate the end of Klemka's employment.

III. *Plaintiffs' Motion to Compel Brush to Add Omitted Documents to Its Privilege Log*

In a two-sentence argument, excluding citations, plaintiffs move to compel Brush to update its privilege log to include "case-specific litigation files and documents of in-house counsel and outside counsel engaged in the defense of beryllium litigation." (Pls.' Br. at 7.) Put differently, plaintiffs request that Brush search its case files for all beryllium litigation during the past several decades and log (almost certainly privileged) records that "might contain facts that would lead to the discovery of admissible evidence." (Id. (emphasis added).) In light of my ruling below on the issue of appointment of a special master, and given the indefinite universe of documents through which Brush would have to search,[4] plaintiffs' request is DENIED on grounds that it is unduly burdensome, unreasonably cumulative, and unlikely to lead to the discovery of admissible evidence. See Rule 26(b)(2).

IV. *Plaintiffs' Motion for Appointment of a Special Master to Conduct In Camera Inspection of Withheld Documents*

Rule 53(b) provides: "A reference to a [special] master shall be the exception and not the rule." With respect to issues decided by the district court, such reference "shall be made only upon a showing that some exceptional condition requires it."

Plaintiffs seek appointment of a special master to conduct an in camera inspection of the documents on Brush's privilege log, arguing that the exceptional conditions requiring such action include the crime-fraud exception to the attorney-client privilege and the scientific nature

---

Br. at 10.) Brush has not, however, submitted any evidence of this risk – it is merely an assertion in its brief – and I will not consider speculative risks that can in any event be ameliorated through judicious use of Rule 26(c).

[4]Brush submits that case files for just one of its attorneys, Jones Day, amount to nearly 1,500 boxes. (Faxon Decl. ¶ 6.)

5

of several of Brush's purportedly privileged documents.

> Before engaging in in camera review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person ... that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies. Once that decision is made, the decision whether to engage in in camera review rests in the sound discretion of the district court.

Haines v. Liggett Group Inc., 975 F.2d 81, 96 (3d Cir. 1992) (quoting United States v. Zolin, 491 U.S. 554, 572 (1989)) (internal citations and quotes omitted).

Appointment of a special master is not in order. The overwhelming majority of the documents have already been subjected to an in camera inspection in the Faccio action. That inspection did not result in the piercing of the privilege. There is thus no reason, let alone a "good faith" basis, to believe that a second in camera review of those documents will reveal evidence of attorney-client fraud or any other basis for inapplicability of privilege.[5] See Haines, 975 F.2d at 96. Concerning the six hundred or so documents added to the log since the Faccio review, it is similarly unlikely that the privilege would not be upheld. The notion that Brush's attorneys would suddenly commence a fraud with their client upon completion of the Faccio inspection strains credulity and lacks any support on the record.

Plaintiffs' motion for appointment of a special master is DENIED. Being collateral litigants to those in Faccio, plaintiffs are entitled to the fruits of discovery in that action. Accordingly, Brush shall produce all documents that the District of Arizona held were not privileged pursuant to the in camera review conducted there.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion to compel Brush to amend its responses is DENIED, plaintiffs' motion to compel redacted medical records is GRANTED IN PART, plaintiffs' motion to compel Brush to add case-specific documents to its log is DENIED, and plaintiffs' motion for appointment of a special master is DENIED.

---

[5] With respect to the scientific information plaintiffs argue destroys the privilege, there is no indication from Brush's log of an attempt to "sweep[] the technical data in under the privilege." Rohm & Haas Co. v. Brotech Corp., 815 F. Sup. 793, 797 (D. Del. 1993). To the contrary, the log shows attorney-client communications regarding scientific studies, reports, and other information. This is a toxic tort case. If plaintiffs' argument carried the day, the attorney-client privilege would be wholly abrogated for innumerable communications. That the Faccio inspection upheld the privilege is instructive. Also, plaintiffs' work product argument, namely, that documents prepared in anticipation of regulatory proceedings are not afforded immunity, was likewise rejected by the master in Faccio.

6

SO ORDERED.

                                              s/ Ronald J. Hedges
                                              United States Magistrate Judge

Copy: Judge William J. Martini

7

Exhibit 3

## MEEHAN, BOYLE, BLACK & FITZGERALD, P.C.

COUNSELLORS AT LAW
TWO CENTER PLAZA
SUITE 600
BOSTON, MASSACHUSETTS 02108-1922
www.MBBF.com

LEO V. BOYLE
PETER J. BLACK
WARREN R. FITZGERALD
JOHN CARROLL
MICHAEL B. BOGDANOW
KAREN R. RISTUBEN
BRADLEY M. HENRY
PETER J. AINSWORTH

Direct Email: bhenry@mbbf.com

December 15, 2005

TELEPHONE
(617) 523-8300

FACSIMILE
(617) 523-0325

INFO@MBBF.COM

**VIA TELEFACSIMILE
and FIRST CLASS MAIL**

Jeffrey D. Ubersax, Esq.
Jones Day
North Point - 901 Lakeside Avenue
Cleveland, OH 44114-1190

RE: *Genereux, et al. v. American Beryllia Corp., et al.*
USDC (MA) Civil Action No. 04-12137-JLT

Dear Mr. Ubersax:

In follow-up to our discussion yesterday, it is my understanding that the Brush Wellman defendants are now willing to photocopy and send to plaintiffs' counsel the approximately three inches of communications between Brush Wellman and Raytheon from the 65 boxes identified in Brush Wellman's October 31, 2005 disclosure. However, Brush Wellman is unwilling to make any representations about the accuracy or thoroughness of its search. Nevertheless, provided, as you stated, the charges are at usual commercial copying rates, plaintiffs' counsel will pay that expense. Please let us know when we may expect to receive the copies.

With respect to the remainder of the documents relevant to this matter, Brush Wellman maintains that the plaintiffs are in as good a position as the defendant to search for and review such documents at the document warehouse in Cleveland. As I explained yesterday, we do not agree and do not feel this position complies with Judge Tauro's Order of September 12, 2004. Therefore, we will file the necessary motion.

Thank you for your attention to this matter.

Very truly yours,

Bradley M. Henry

c: Stephan Matanovic, Esq.
Alan M. Spiro, Esq.

**Exhibit 4**



Jeffery D. Ubersax/JonesDay

12/15/2005 10:13 PM

To "Brad Henry" <bhenry@mbbf.com>

cc "Alan Spiro" <aspiro@ealaw.com>, "Stephan Matanovic" <smatanovic@golombhonik.com>, Jeffery Ubersax

bcc

Subject Re: Genereux

```
Thank you. Before you file your motion let me give some more consideration to
whether there might be some basis for resolving this. I'll get back to you
tomorrow or Monday.
JDU
Jones Day
216.586.7112 (office)
216.225.5892 (cell)
-------------------------
This email message, sent from my wireless device, contains information that
may be confidential, be protected by attorney-client or other applicable
privileges, or constitute non-public information. If you are not the intended
recipient of this message, please notify the sender and then delete it. Use,
dissemination, distribution, or reproduction of this message by unintended
recipients is not authorized and may be unlawful.


----- Original Message -----
From: "Brad Henry" [BHenry@mbbf.com]
Sent: 12/15/2005 05:38 PM
To: Jeffery Ubersax
Cc: <aspiro@ealaw.com>; <smatanovic@golombhonik.com>
Subject: RE: Genereux
```

Sure. As is his usual practice, Judge Tauro ordered all parties to make their automatic disclosures forthwith and to exchange copies of all relevant documents by October 31, 2005. When Ruben Honik expressed concern that beryllium litigation defendants frequently referred counsel to an out-of-state document warehouse, the Court indicated that all parties, in the first instance, should voluntarily produce copies of all documents believed to be relevant to the litigation and that, in the event discovery motions proved necessary, the Court would look with disfavor upon the party taking the most unreasonable position and, where appropriate, sanction non-complying parties.

-----Original Message-----
**From:** Jeffery D. Ubersax [mailto:jdubersax@JonesDay.com]
**Sent:** Thursday, December 15, 2005 5:22 PM
**To:** Brad Henry
**Cc:** aspiro@ealaw.com; smatanovic@golombhonik.com
**Subject:** RE: Genereux


Please give me a transcript of that "oral bench order" if you have it or if you do not your best recollection of the exact contents of that order.

JDU

Jones Day
216-586-7112 (office)
216-225-5892 (cell)
216-579-0212 (fax)

"Brad Henry" <BHenry@mbbf.com>

12/15/2005 05:13 PM

To "Jeffery D. Ubersax" <jdubersax@JonesDay.com>
cc <aspiro@ealaw.com>, <smatanovic@golombhonik.com>
Subject RE: Genereux

I am referring both to the oral bench order he issued at the September 12, 2005 at the Status Conference for the parties to exchange copies of all relevant documents and the written order that followed.

-----Original Message-----
**From:** Jeffery D. Ubersax [mailto:jdubersax@JonesDay.com]
**Sent:** Thursday, December 15, 2005 5:08 PM
**To:** Brad Henry
**Cc:** aspiro@ealaw.com; smatanovic@golombhonik.com
**Subject:** RE: Genereux

I have the written orders -- just wanted to make sure that you were not referring to some oral "order" from the bench.

JDU

Jones Day
216-586-7112 (office)
216-225-5892 (cell)
216-579-0212 (fax)

"Brad Henry" <BHenry@mbbf.com>

12/15/2005 04:56 PM

To "Jeffery D. Ubersax" <jdubersax@JonesDay.com>
cc <aspiro@ealaw.com>, <smatanovic@golombhonik.com>
Subject RE: Genereux

Sure. He issued a bench order at the Status Conference and then memorialized it with a written order later that day (Docket No. 64) saying that compliance with his Rule 26 Order was to be complete by 10/31/05. The Order was for all parties to exchange copies of all documents relevant to the case and included his usual parlance to "turn over your files."

-----Original Message-----
**From:** Jeffery D. Ubersax [mailto:jdubersax@JonesDay.com]
**Sent:** Thursday, December 15, 2005 4:48 PM
**To:** Brad Henry
**Cc:** aspiro@ealaw.com; smatanovic@golombhonik.com
**Subject:** Genereux


Brad: I received your letter of this date, which refers to "Judge Tauro's Order of September 12, 2004." Could you please clarify what "Order" this refers to?

Thanks.



JDU

Jones Day
216-586-7112 (office)
216-225-5892 (cell)
216-579-0212 (fax)


==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

CONFIDENTIALITY AND INADVERTENT DISCLOSURE NOTICE:  This
e-mail transmission may
contain confidential information belonging to the sender
which is legally privileged
and which is only intended for the use of the intended
recipient.  If you have
received this e-mail in error, such transmission is an
inadvertent disclosure, and
any copying, disclosure, distribution or dissemination of
this information or the
taking of any action based on the contents of this
communication is strictly
prohibited. Please notify me immediately of any inadvertent

Exhibit 5



Jeffery D. Ubersax/JonesDay
Extension 6-7112
12/20/2005 02:17 PM

To "Brad Henry" <BHenry@mbbf.com>
cc "Alan Spiro" <aspiro@ealaw.com>, "Stephan Matanovic" <smatanovic@golombhonik.com>
bcc rfaxon@jonesday.com; jramanghillis@jonesday.com
Subject RE: Genereux

Brad: in order to resolve this issue we will send you about 14,000 pages of documents if you will pay for those copies at the rate of 8 cents per page (charged by an outside vendor, IKON).  Rule 26(a)(1)(B) does not require Brush to produce actual copies of the documents that it may use to support its defenses, but we are willing to do so in order to avoid litigation over Judge Tauro's supposed "oral bench order". We can have these documents to you by the end of the week.

Please let me know if you are willing to withdraw the motion on this basis.


JDU

Jones Day
216-586-7112 (office)
216-225-5892 (cell)
216-579-0212 (fax)

"Brad Henry" <BHenry@mbbf.com>



"Brad Henry"
<BHenry@mbbf.com>

12/16/2005 02:04 PM

To "Jeffery D. Ubersax" <jdubersax@JonesDay.com>
cc "Alan Spiro" <aspiro@ealaw.com>, "Stephan Matanovic" <smatanovic@golombhonik.com>
Subject RE: Genereux


Jeff:  I've been at court all morning so I just received your e-mail from last night. Unfortunately, I filed the motion electronically at the end of the day yesterday (around 6:00 PM). But, we are always willing to discuss possible resolutions. Just let us know what you have in mind. Have a good weekend. Brad Henry

Bradley M. Henry
Meehan, Boyle, Black & Fitzgerald, P.C.
Two Center Plaza - Suite 600
Boston, Massachusetts 02108-1922 - USA

PH: 617-523-8300
FX: 617-523-0455
EM: BHenry@MBBF.com
-----Original Message-----
**From:** Jeffery D. Ubersax [mailto:jdubersax@JonesDay.com]
**Sent:** Thursday, December 15, 2005 10:14 PM
**To:** Brad Henry
**Cc:** Alan Spiro; Stephan Matanovic; Jeffery Ubersax