UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
RONALD J. HEDGES
UNITED STATES MAGISTRATE JUDGE

MARTIN LUTHER KING, JR.
FEDERAL BUILDING AND COURTHOUSE
50 WALNUT STREET
NEWARK, NJ 07101
973-645-3827

June 29, 2004

**LETTER-OPINION AND ORDER**
**ORIGINAL FILED WITH CLERK OF THE COURT**

Ruben Honik
Golomb & Honik
457 Haddonfield Rd.
Suite 710
Cherry Hill, NJ 08002

Marie H. Kramer
Daller Greenberg & Dietrich, LLP
457 Haddonfield Rd.
Cherry Hill, NJ 08020

Re:     **Klemka, et al. v. Brush Wellman, Inc., et al.**
         **Civil Action No. 03-CV-3197 (WJM)**

Dear Counsel:

## INTRODUCTION

This matter is before me on plaintiffs' motion (1) to compel defendant Brush Wellman ("Brush") to specify responsive documents, (2) to compel production of redacted medical documents, (3) to compel Brush to amend its privilege log, and (4) for appointment of a special master to conduct in camera inspection of purportedly privileged documents. I have considered the papers submitted in support of and in opposition to the motions. There was no oral argument. See Rule 78.

## BACKGROUND

Plaintiffs seek damages for injuries allegedly sustained by plaintiff Thomas Klemka ("Klemka") as a result of exposure to beryllium dust, fumes, and particulate matter while he was

1

Exhibit B

employed by Brush. Klemka was a machinist at Brush's Clinton, New Jersey plant in 1983 and 1984. He then worked for defendant Ellis Ceramtek, Inc., where Brush's beryllium products were used, in 1985 and 1986. In 2002, Klemka was diagnosed with chronic beryllium disease.

At issue is a discovery dispute. Plaintiffs contend that, in response to their documents request, Brush directed them to a depository of roughly one million documents. Plaintiffs also argue that Brush has invoked privilege for documents that either contain discoverable scientific information or demonstrate attorney-client conspiracy to commit fraud. Plaintiffs seek to compel Brush to amend its responses and privilege log and to produce redacted medical records. In the alternative, they seek appointment of a special master to conduct an in camera review of Brush's withheld documents, to determine whether privilege applies to these documents, and to consider whether any applicable privilege should be pierced by the crime-fraud exception.

Brush responds that reference to its document depository, which was created by it at great effort and expense, is consistent with Rule 34. Brush further maintains that its withheld documents are privileged, that there is no evidence of attorney-client fraud, and that appointment of a special master to conduct in camera inspections would duplicate the review performed in Faccio v. Brush Wellman in the District of Arizona.

## DISCUSSION

I.    *Plaintiffs' Motion to Compel Brush to Amend Its Responses to Plaintiffs' Requests for Production*

Plaintiffs seek to compel Brush to specify which documents are responsive to their document requests. Brush's referral to its massive document depository, plaintiffs argue, fails to comply with Rule 34. Brush counters that Rule 34 requires nothing further than its efforts to date.

Rule 34(b) states, in relevant part: "A party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the requests." Thus, a responding party only has the obligation to organize and label documents if it presents the requested information in a form other than the form in which it maintains those documents in the usual course of business. In re G-I Holdings, Inc., 218 F.R.D. 428, 449 (D.N.J. 2003). A responding party's option of making its business records available is intended to "place the burden of research [on] the party who seeks the information." Advisory Committee Note to 1970 amendment to Rule 33(c);[1] see 7 Moore's Federal Practice § 33.105[1].

The option to make records available, however, is not without limits. While the plain language of Rule 34 does not require that a records search be equally burdensome for both

---

[1]This Note informs the analysis of Rule 34(b). See Advisory Committee Note to 1970 amendment to Rule 34(b).

parties to make the option available, as does Rule 33(d), courts have disallowed the use of unwieldy record-keeping to frustrate discovery. See Rhone-Poulenc Rorer Inc. v. The Home Indemnity Co., No. 88-9752, 1991 U.S. Dist. LEXIS 8304, at *5-6 (E.D. Pa. June 17, 1991); In re Richardson-Merrell, 97 F.R.D. 481, 483 (S.D. Ohio 1983); Kozlowski v. Sears, Roebuck & Co., 73 F.R.D. 73, 76 (D. Mass. 1976). A party "may not excuse itself from compliance with Rule 34 ... by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of documents an excessively burdensome and costly expedition." Rhone-Poulenc, 1991 U.S. Dist. LEXIS, at *5-6 (quoting Kozlowski, 73 F.R.D. at 76).

Brush has complied with Rule 34. Responding to the rebuke of a magistrate judge in the Eastern District of Tennessee, Brush exceeded its obligation to make its documents available for inspection by creating the document depository. Brush spent more than $1 million in legal fees to establish the depository, a process that required sixteen months of labor. (Haumann Decl. ¶ 2.) Brush created a 3,300-page index, which includes actual file names as originally maintained, to aid its and plaintiffs' searches of the depository. (Id. ¶ 7.) These documents have not, on this record, been presented in such a way that would trigger an obligation to organize and label them further. Instead, the documents appear to have been winnowed away from an unwieldy universe of information and presented in the exact form in which these are usually kept. (Id. ¶¶ 2-5.)[2] This renders plaintiffs' reliance on Alexander v. FBI, 194 F.R.D. 305, 313-14 (D.D.C. 2000), unavailing. There, the responding party merely searched an index of the documents contained in sixty boxes. 194 F.R.D. at 313. Here, Brush has expended substantial resources in examining what would appear to be millions of documents. Given the extraordinary number of documents involved in this litigation, and Brush's efforts, at least one court has found Brush's depository to comply generally with Rules 33 and 34. See Morgan v. Brush Wellman, Inc., No. 3:94-CV-369, at 6 (E.D. Tenn. Apr. 16, 1999) (unpublished opinion). I see no reason to depart from that holding.

Admittedly, this not a case that fits neatly into Rule 34's two-option framework for production of documents. See G-I Holdings, 218 F.R.D. at 449. To the contrary, neither option available to the responding party – namely, leaving plaintiffs to navigate a universe of documentation without aid, or specifically organizing and labeling every document request for every beryllium action – is realistic in light of the efficiency and fairness aims of the discovery rules. See Advisory Committee Note to 1946 amendment to Rule 26(b) ("The purpose of discovery is to allow a broad search for facts ... which may aid a party in the preparation or presentation of his case."); Cheney v. United States Dist. Court, No. 03-475, 2004 U.S. Dist. LEXIS 4576, at *47-48 (U.S. June 24, 2004) ("Broad discovery should be encouraged when it

---

[2]Plaintiffs submitted the affidavit of Joseph Urban, which makes in essence the legal argument that the documents in the depository were not produced in the manner in which they were maintained in the ordinary course of business. (Urban Decl. ¶9.) In addition to this statement being inappropriate under the local rules, see L. Civ. R. 7.2(a), it is insufficient to counter Brush's factual assertion to the contrary. (See Haumann Decl. ¶¶ 2-5.)

serves the salutary purpose of facilitating the prompt and fair resolution of concrete disputes.")
(Stevens, J., concurring). Brush, responding both to the realities of mass litigation and judicial
pressure, has created something of a hybrid, namely, a depository that organizes, labels, and
makes documents available as they are maintained in the ordinary course of business. Given the
facts, Brush's depository complies with Rule 34.

While I appreciate plaintiffs' submission of Mr. Urban's Declaration, which
demonstrates that certain responsive documents were filed in a manner that rendered them
virtually impossible to find by referring to the index, I am not persuaded at this time that
plaintiffs should prevail on these grounds. First, it is to be expected in document retention of
this magnitude that an index of the depository will be less than one hundred percent effective.
This reality does not render the depository ipso facto violative of Rule 34. Second, there is no
indication on the record that the handful of examples set forth in the affidavit are not duplicative
or cumulative vis-a-vis the documents and information to which the index has directed the
plaintiffs. Third, the discovery of these responsive documents evidences plaintiffs' ability to
search the depository and discover relevant information. Mr. Urban has not testified that he
searched purportedly unrelated boxes on a lark. He surely had a well-reasoned purpose for
searching the boxes wherein he discovered the responsive documents. Notwithstanding my
analysis, however, plaintiffs may, in the event they discover sufficiently numerous non-
cumulative pieces of evidence in boxes to which the index does not direct them, move for
attorneys fees and costs associated with the discovery of that information.

In summary, Brush has made its documents available for inspection in compliance with
Rule 34. There is no evidence suggesting that its record-keeping is somehow inherently
inhospitable to document inspection. To the contrary, Brush has facilitated future searches of its
records through creation of the depository and index. Plaintiffs' motion to compel amended
responses to document requests is DENIED.

II.    *Plaintiffs' Motion to Compel Redacted Medical Records*

In their documents request, plaintiffs sought documentation of physical examinations,
blood test results, medical reports, and the like. Brush objected, inter alia, on privacy grounds.
Plaintiffs now move to compel production of these documents, in redacted form if appropriate,
reasoning that the information is "essential to demonstrate Brush's knowledge of the health of its
employees and the health hazards it exposed them to." (Pls.' Br. at 6.) Brush responds that the
records are irrelevant because no cases of chronic beryllium disease surfaced at the plant before
Klemka ended his employment there. Brush further submits that privacy interests in any event
prevail over the "attenuated benefit" of these records.[3] (Def.'s Br. at 10.)

_____

[3]Brush also maintains that production of even redacted records will "result in the
disclosure of confidential medical information belonging to non-parties," because the
"employees are easily identifiable [and] plaintiffs and others could relate the confidential
medical information to the specific individuals notwithstanding extensive redactions." (Def.'s

Insofar as Brush denies knowledge of the health hazards posed by beryllium exposure at its plant, any medical records that predate Klemka's departure are relevant. Nevertheless, these records are highly confidential and "perhaps the most private information about an employee within the possession of an employer." Getz v. Penn. Blindness & Visual Servs., No. 97-7541, 1998 U.S. Dist. LEXIS 20262, at *7 (E.D. Pa. Dec. 18, 1998). It is thus appropriate to balance these competing interests. See Miles v. Boeing Co., 154 F.R.D. 112, 115 (E.D. Pa. 1994) (balancing relevance with privacy interests).

Consequently, plaintiffs' request is GRANTED IN PART, subject to a protective order under Rule 26(c). Brush shall produce redacted medical records – for, and labeled, "attorneys' eyes only" -- that are both responsive to plaintiffs' request and predate the end of Klemka's employment.

III.    *Plaintiffs' Motion to Compel Brush to Add Omitted Documents to Its Privilege Log*

In a two-sentence argument, excluding citations, plaintiffs move to compel Brush to update its privilege log to include "case-specific litigation files and documents of in-house counsel and outside counsel engaged in the defense of beryllium litigation." (Pls.' Br. at 7.) Put differently, plaintiffs request that Brush search its case files for all beryllium litigation during the past several decades and log (almost certainly privileged) records that "might contain facts that would lead to the discovery of admissible evidence." (Id. (emphasis added).) In light of my ruling below on the issue of appointment of a special master, and given the indefinite universe of documents through which Brush would have to search,[4] plaintiffs' request is DENIED on grounds that it is unduly burdensome, unreasonably cumulative, and unlikely to lead to the discovery of admissible evidence. See Rule 26(b)(2).

IV.    *Plaintiffs' Motion for Appointment of a Special Master to Conduct In Camera Inspection of Withheld Documents*

Rule 53(b) provides: "A reference to a [special] master shall be the exception and not the rule." With respect to issues decided by the district court, such reference "shall be made only upon a showing that some exceptional condition requires it."

Plaintiffs seek appointment of a special master to conduct an in camera inspection of the documents on Brush's privilege log, arguing that the exceptional conditions requiring such action include the crime-fraud exception to the attorney-client privilege and the scientific nature

---

Br. at 10.) Brush has not, however, submitted any evidence of this risk – it is merely an assertion in its brief – and I will not consider speculative risks that can in any event be ameliorated through judicious use of Rule 26(c).

[4]Brush submits that case files for just one of its attorneys, Jones Day, amount to nearly 1,500 boxes. (Faxon Decl. ¶ 6.)

of several of Brush's purportedly privileged documents.

> Before engaging in in camera review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person ... that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies. Once that decision is made, the decision whether to engage in in camera review rests in the sound discretion of the district court.

Haines v. Liggett Group Inc., 975 F.2d 81, 96 (3d Cir. 1992) (quoting United States v. Zolin, 491 U.S. 554, 572 (1989)) (internal citations and quotes omitted).

Appointment of a special master is not in order. The overwhelming majority of the documents have already been subjected to an in camera inspection in the Faccio action. That inspection did not result in the piercing of the privilege. There is thus no reason, let alone a "good faith" basis, to believe that a second in camera review of those documents will reveal evidence of attorney-client fraud or any other basis for inapplicability of privilege.[5] See Haines, 975 F.2d at 96. Concerning the six hundred or so documents added to the log since the Faccio review, it is similarly unlikely that the privilege would not be upheld. The notion that Brush's attorneys would suddenly commence a fraud with their client upon completion of the Faccio inspection strains credulity and lacks any support on the record.

Plaintiffs' motion for appointment of a special master is DENIED. Being collateral litigants to those in Faccio, plaintiffs are entitled to the fruits of discovery in that action. Accordingly, Brush shall produce all documents that the District of Arizona held were not privileged pursuant to the in camera review conducted there.

## CONCLUSION

For the reasons set forth above, plaintiffs' motion to compel Brush to amend its responses is DENIED, plaintiffs' motion to compel redacted medical records is GRANTED IN PART, plaintiffs' motion to compel Brush to add case-specific documents to its log is DENIED, and plaintiffs' motion for appointment of a special master is DENIED.

---

[5] With respect to the scientific information plaintiffs argue destroys the privilege, there is no indication from Brush's log of an attempt to "sweep[] the technical data in under the privilege." Rohm & Haas Co. v. Brotech Corp., 815 F. Supp. 793, 797 (D. Del. 1993). To the contrary, the log shows attorney-client communications regarding scientific studies, reports, and other information. This is a toxic tort case. If plaintiffs' argument carried the day, the attorney-client privilege would be wholly abrogated for innumerable communications. That the Faccio inspection upheld the privilege is instructive. Also, plaintiffs' work product argument, namely, that documents prepared in anticipation of regulatory proceedings are not afforded immunity, was likewise rejected by the master in Faccio.

SO ORDERED.

s/ Ronald J. Hedges
United States Magistrate Judge

Copy: Judge William J. Martini