LEXSEE 2005 US DIST LEXIS 31614

VINCENT J. COPPOLA, et al., on behalf of themselves and all other similarly situated, Plaintiffs, - v - BEAR STEARNS & CO., INC., et al., Defendants.

Civil No. 1:02-CV-1581 (FJS/RFT)

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK

2005 U.S. Dist. LEXIS 31614

November 16, 2005, Decided

**COUNSEL:** [*1] For Vincent J. Coppola, on behalf of themselves and all other similarly situated., Michael Breslin, on behalf of themselves and all other similarly situated., Olin McDonald, on behalf of themselves and all other similarly situated., Plaintiffs: April M. Wilson, Michael D. Assaf, O'Connell, Aronowitz Law Firm - Albany Office, Albany, NY.

For Bear Stearns & Co., Inc., Bear Stearn Home Equity Trust, Bear Stearns International Limited, EMC Mortgage Corp., Defendants: Alan Jay Goldberg, Margaret Mary Cangilos-Ruiz, Whiteman, Osterman Law Firm - Albany Office, Albany, NY.

**JUDGES:** RANDOLPH F. TREECE, United States Magistrate Judge.

**OPINIONBY:** RANDOLPH F. TREECE

**OPINION:**

ORDER

This lawsuit may be reaching finality, with only one matter remaining that requires a court resolution. On October 17, 2005, the Honorable Frederick J. Scullin, Chief District Judge, granted the Defendants' Motion for Summary Judgment and further directed that a final judgment be issued in favor of the Defendants and the case be closed. Dkt. No. 90, Mem. Decision and Order, dated Oct. 17, 2005; Dkt. No. 91, Judgment, dated Oct. 17, 2005. n1 The final matter requiring court resolution, outside the appeal to the Second Circuit, [*2] concerns a motion requesting that this Court fix the amount of sanctions to be imposed upon Plaintiffs' counsel. Dkt. No. 64, Defs.' Mot. for Atty Fees, dated Mar. 7, 2005. Although the parties are very well acquainted with the facts of this Motion, it may behoove us to reiterate the more salient events and specific aspects of previous rulings to put this Motion in proper perspective.

n1 On November 11, 2005, Plaintiffs filed a Notice of Appeal with the Second Circuit. Dkt. No. 92.

On May 28, 2003, a Uniform Pretrial Scheduling Order was issued setting the discovery deadline as April 15, 2004, which would have given the parties nearly one year to complete discovery. Dkt. No. 9. The Court was then, as we are now, concerned with meeting the Civil Justice and Reform Act's mandate to be trial ready within eighteen months of the filing date. n2 Subsequently, on February 3, 2004, the parties submitted a stipulation (Dkt. No. 26) seeking to extend the discovery deadline an additional ninety (90) days, which was granted [*3] by this Court (Dkt. No. 27). This Court has always maintained an attitude of flexibility in terms of the discovery process in a case such as this. In clarifying an aspect of the February 3, 2004 Order, the Court further ruled on February 12, 2004, that "no further extensions will be considered without a showing of extraordinary cause." Dkt. No. 28, Order, dated Feb. 12, 2004. Nonetheless, the Plaintiffs made another request to extend the time to serve expert disclosure, which, likewise, was granted by the Court. Dkt. No. 30, Order, dated Apr. 13, 2004. Still, at that juncture, the discovery deadline remained as July 15, 2004.

Exhibit I

  

Case 1:04-cv-12137-JLT   Document 81-12   Filed 12/23/2005   Page 2 of 14

Page 2
2005 U.S. Dist. LEXIS 31614, *3

> n2 This case was filed on December 20, 2002; thus, the trial ready date, under normal conditions and calculations, would have been June 20, 2004.

Three months later, as the discovery deadline ominously loomed over this case, the Plaintiffs sought yet another extension. Dkt. No. 33 Pls.' Lt., dated June 29, 2004. This application was opposed by the Defendants (Dkt. No. 32), requiring the [*4] Court to hold a telephone conference in an attempt to resolve all outstanding issues. During the course of this telephonic conference, the Court was advised that after eighteen months of litigation, the Plaintiffs served their first round of discovery demands upon the Defendants on or about June 25, 2004. Under this scenario, weighing that the discovery deadline was July 15, 2004, and, by statute, the Defendants' would have thirty (30) days to respond to such demands, such belated service of these demands was truly untimely. The scenario created by Plaintiffs' tardy service of discovery demands would not have allowed the Defendants' the full duration to respond accordingly. Furthermore, as of that date, Plaintiffs had not responded to Defendants' Demand to Produce which was served several months prior. Upon hearing these facts from the parties, in the Court's view, Plaintiffs had not pursued discovery diligently and, consequently, the Court denied the request for an extension of the discovery deadline. Text Order, dated June 30, 2004. Unrelenting in their pursuit for an extension, Plaintiffs filed an Order to Show Cause upon the Defendants seeking why an order should not be granted [*5] reconsidering the June 30, 2004 Order and granting an extension of the discovery deadline another sixty (60) days. Dkt. No. 35. Concurrently, the Plaintiffs filed objections to the June 30, 2004 Order with Chief Judge Frederick J. Scullin. Dkt. No. 36.

With regard to the Order to Show Cause, oral arguments were heard on July 13, 2004. Upon the conclusion of oral argument and prior to the Court rendering a ruling, Plaintiffs' counsel confirmed, on the record, that they were modifying their Motion to request that the Court consider imposing sanctions against them, pursuant to FED. R. CIV. P. 16(f), in order to secure an extension of the discovery deadline and to avoid a manifest injustice to their class-action clients. n3 Dkt. No. 44, Minutes and Order, dated July 14, 2004 (hereinafter "Sanction Order"). Essentially, this was a Consent Decree. n4 Accepting the fact that a manifest injustice to the Plaintiff-Class would occur, the Court wrote,

> therefore, in order to prevent a manifest injustice to these Plaintiffs, and pursuant to FED. R. CIV. P. 16(f) (party's attorney's failure to obey a scheduling or pre-trial order), 37(b)(2), and the Court's inherent authority, the Court [*6] ruled as follows:
>
> (1) Plaintiffs' counsel shall pay to the Defendants' counsel reasonable attorney fees and costs for:
> (a) Opposing the June 29, 2004 request for an extension of the discovery deadline and participating in the hearing held on June 30, 2004;
> (b) Opposing the Order to Show Cause seeking Reconsideration and participating in the hearing held on July 13, 2004;
> (c) Participating in any further depositions permitted by this Ruling and the production of records and documents pursuant to Plaintiffs' permitted Rule 34 Demands for Production. Further, the Plaintiffs' counsel shall bear the cost for any Defendants' employee who is designated to assist in the production of records to satisfy permitted Rule 34 Demands for Production of Documents.

*Id.* at p. 2.

> n3 The Court found, in essence, that the failure to timely pursue discovery resulted in a manifest injustice to the Plaintiff-Class in effectively litigating this class action.
>
> n4 On the record, codified in the Minutes and Order, Plaintiffs agreed to withdraw their Motion of Objections. Dkt. No. 44 at p. 4. Such Motion of Objections was withdrawn on July 15, 2004. Dkt. No. 43.

[*7]

Based upon the foregoing, the Court amended the Uniform Pretrial Scheduling Order and extended discovery to November 12, 2004. *Id.* at 4. n5 The practical consequence of this Sanction Order is that the cost to be borne by the

  

Plaintiffs would be proportional to the degree with which they pursue discovery. Stated another way, in some respect, they had a strong hand in managing the amount of the cost to be assumed.

> n5 The Uniform Pretrial Scheduling Order would be amended once again and extended to February 28, 2005. Dkt. No. 57, Order, dated Dec. 16, 2004.

Lastly, the Court myopically gave the parties permission to work out the details as to what would constitute reasonable fees and costs, and when such fees would be paid. *Id.* at 2. This expectation proved to be too formidable for the parties and, obviously, the parties were not able to agree to any facet of the Sanction Order and now the Court will have to accost this ineluctable task. All of the foregoing sets the stage for the calculation of the [*8] amount of the Sanction Order.

## I. APPLICABLE LAW

In determining the amount of the sanction, this Court made it evidently pellucid, in the first instance, that it would be based upon **reasonable** attorney fees. *See Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). In order to determine what fee is reasonable, courts must calculate the "lodestar figure," which is arrived at by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. at 433; *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1997) (ruling that there is a strong presumption that the lodestar represents reasonable attorney fees). The number of hours expended for use in the lodestar calculation includes "the number of hours claimed . . . that are supported by time records . . . [and] are not excessive or duplicative." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998); *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983) (standing for the proposition [*9] that the requesting party should submit detailed time records that demonstrate "the date, the hours expended, and the nature of the work"); *see generally Kirsch v. Fleet Street, LTD.*, 148 F.3d 149 (2d Cir. 1998) (discussing the Second Circuit's general rules in awarding attorney fees).

The district court is imbued with broad discretion to independently review and assess the reasonableness of the claimed rates as well as hours worked. *Jones v. Amalgamated Warbasse Houses, Inc.*, 721 F.2d 881, 884 (2d Cir. 1983) (citation omitted). In this context, the Court can adjust the lodestar figure – upward or downward – based upon a host of factors. n6 *LeBlanc-Sternberg v. Fletcher*, 143 F.3d at 764; *Sheet Metal Div. of Capitol Dist. Sheet Metal, Roofing & Air Conditioning Contractors Ass'n, Inc. v. Local Union 38 of the Sheet Metal Workers Int'l Ass'n*, 63 F. Supp. 2d 211, 214 (N.D.N.Y. 1999). Therefore, in reviewing such fee application, the court should examine it carefully and, in the event the court concludes that the time spent was unreasonable, excessive, redundant, or otherwise unnecessary, the lodestar can be and should [*10] be adjusted accordingly. *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (citation omitted); *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997); *Auscape Int'l v. Nat'l Geographic Soc'y*, 2003 U.S. Dist. LEXIS 14512, 2003 WL 21976400, at *2 (S.D.N.Y. Aug. 19, 2003) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 179, 181 (2d Cir. 1987) (ruling that the court has the authority to make across-the-board percentage cuts)); *see also United States Football League v. Nat'l Football League*, 887 F.2d 408, 415 (2d Cir. 1989) (approving a percentage reduction of total fee award to account for vagueness in documentation of certain time entries). n7

> n6 Although not necessarily applicable to our Sanction Motion, in awarding attorney fees, there are many relevant facts a court should consider in adjusting submitted fees including: (1) time and labor required; (2) novelty and difficulty of the questions; (3) skill requisite to perform the legal service properly; (4) preclusion of employment by the attorney due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) amount involved and the results obtained; (9) experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley v. Eckerhart*, 461 U.S. at 439 n. 9 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (deriving factors from the AM. BAR ASSOC. CODE OF PROF. RESP., DISC. R. 2-106); *see also Sheet Metal Div. of Capitol Dist. Sheet Metal, Roofing & Air Conditioning Contractors Ass'n, Inc. v. Local Union 38 of the Sheet Metal Workers Intern. Ass'n*, 63 F. Supp. 2d at 211, 214 (N.D.N.Y. 1999).

[*11]

  

Case 1:04-cv-12137-JLT   Document 81-12   Filed 12/23/2005   Page 4 of 14

Page 4
2005 U.S. Dist. LEXIS 31614, *11

n7 "Authority supports reduction in the lodestar figure for overstaffing as well as for other forms of duplicative or inefficient work." *Seigal v. Merrick*, 619 F.2d 160, 165 n.9 (2d Cir. 1980). Illustrative of this authority, other courts have approved fee reductions in similar situations. *See TM Park Ave. v. Pataki*, 44 F. Supp. 2d 158, 169 (N.D.N.Y. 1999) (10% reduction to correct for insufficient detail in the submitted billing entries); *Mr. X v. New York State Dep't of Educ.*, 20 F. Supp. 2d 561, 564 (S.D.N.Y. 1998) (20% reduction to account for vague, incomplete, and duplicative time entries); *N.S.N. Int'l v. E.I. du Pont de Nemours & Co.*, 1996 U.S. Dist. LEXIS 4050, 1996 WL 154182, at *4 (S.D.N.Y. Apr. 3, 1996) (15% reduction for attorney conferences and vagueness of billing entries); *United States v. Gehl*, 1996 U.S. Dist. LEXIS 832, 1996 WL 31315, at *3 (N.D.N.Y. Jan. 23, 1996) (court reduced attorney's fees because "the work performed appears to be duplicative, and the time spent on a considerable portion of the services rendered excessive."); *Walker v. Coughlin*, 909 F. Supp. 872, 881 (W.D.N.Y. 1995) (15% reduction to reflect inadequate documentation and lower rate of compensation); *Carrero v. New York City Housing Auth.*, 685 F. Supp. 904, 908 (stating reductions will be made "where the attorneys essentially duplicated each other's efforts"), *aff'd*, 890 F.2d 569 (2d Cir. 1989).

[*12]

The hourly rate to be used "should be in 'line with those [rates] prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation.'" *Cruz v. Local Union No. 3 of the Int'l Bd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)) (alteration in original). The relevant community to which the court should look is the district in which the case was brought. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d at 181. The courts have "strayed from this rule only in the rare cases where the special expertise of non-local counsel was essential for the case [or] it was clearly shown that local counsel was unwilling to take the case." *Arbor Hill Concerned Citizen Neighborhood Ass'n. v. County of Albany*, 369 F.3d 91, 96 (2d Cir. 2004) (citation and internal quotation marks omitted). Furthermore, the rates used by the court should be "current rather than historic hourly rates." *Gierlinger v. Gleason*, 160 F.3d at 882 (quoting *Missouri v. Jenkins*, 491 U.S. 274, 284, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989)). The courts [*13] have been warned by the Second Circuit that when awarding attorney fees they should "keep an eye toward moderation, avoiding either the reality or the perception of awarding a windfall." *Auscape Int'l v. National Geographic Soc'y*, 2003 U.S. Dist. LEXIS 14512, 2003 WL 21976400, at *3 (citation and internal quotation marks omitted). This admonishment becomes more crystallized when courts elect to award attorney fees as opposed to selecting other forms of sanctions. Thus, "use of the lodestar amount . . . might lead some judge to impose an excessive sanction . . . [as it] might [also] inhibit other judges from ever selecting an attorney's fee as the appropriate sanction." *Eastway Constr. Corp. v. City of New York*, 821 F.2d 121, 122 (2d Cir. 1987).

The current prevailing hourly rates generally applied in this district are: $175.00 for attorneys with significant experience and numerous years of practice; $125.00 for associates with four or more years of experience; $100.00 for newly admitted attorneys; and $65.00 for paralegals. *DiSorbo v. City of Schenectady*, 2003 U.S. Dist. LEXIS 24049, 2003 WL 115009, at *2 (N.D.N.Y. Jan. 9, 2003) (Kahn, J.); *Baim v. Notto*, 316 F. Supp. 2d 113, 119 (N.D.N.Y. 2003) [*14] (Hurd J.); *Gatti v. Comty Action Agency of Greene County*, 263 F. Supp. 2d 496, 515 (N.D.N.Y. 2003) (Treece, M.J.); *Patterson v. Julian*, 250 F. Supp. 2d 36, 45 (N.D.N.Y. 2003) (Hurd, J); *Sheet Metal Div. of Capitol Dist. Sheet Metal, Roofing & Air Conditioning Contractors Ass'n, Inc. v. Local Union 38 of the Sheet Metal Workers Intern. Ass'n*, 63 F. Supp. 2d at 214-15 (McAvoy, C.J.); *TM Park Ave Assocs. v. Pataki*, 44 F. Supp. 2d 158, 167 (N.D.N.Y. 1999) (McAvoy, C.J.); *see generally New York State Teamsters Conference v. United Parcel Serv.*, 2004 U.S. Dist. LEXIS 3062, 2004 WL 437474, at *7 (N.D.N.Y. Feb. 27, 2004) (Scullin, C.J.). n8

n8 The above rates have been the prevailing rates in the Northern District of New York for more than a decade. Recently, however, United States Magistrate Judge David R. Homer revisited the issue of what constitutes current prevailing rates in this District. After a thorough analysis of the current market forces within the legal community within this District, Judge Homer concluded that the rates should be raised and that the appropriate current hourly rates should be $210.00 for experienced attorneys, $150.00 for associates with more than four years experience, $120.00 for associates with less than four years experience, and $80.00 for paralegals. *Arbor Hill Concerned Citizen Neighborhood Ass'n v. County of Albany*, 2005 U.S. Dist. LEXIS

  

Case 1:04-cv-12137-JLT   Document 81-12   Filed 12/23/2005   Page 5 of 14

Page 5
2005 U.S. Dist. LEXIS 31614, *14

4362, 2005 WL 670307, at *6 (N.D.N.Y. Mar. 22, 2005). Since the only matter the parties could agree upon was the hourly rate of $175.00 for the most experienced attorney, we accept that rate as setting the bar for all other fees. With that being a settled matter, the Court, for this application, will use those prevailing rates stated above.

[*15]

## II. DISCUSSION

Defendants seek $74,282.35 in attorney fees and disbursements as the sanctions against the Plaintiffs. n9 Dkt. No. 67, Defs.' Reply, Neil Levine, Esq., Aff., dated Mar. 28, 2005, at P59. The Defendants have provided the Court with categorical breakdowns for their fee application supported by interim billing summaries and detailed affidavits counting for every hour they allegedly devoted to discovery consistent with our July 14, 2004 Sanction Order. See Dkt. Nos. 64 & 67. Wielding a virtual line-item veto to each claim for attorney fees, the Plaintiffs have been rather precocious and extraordinarily comprehensive in delivering objections to this application. Not one stone has been left unturned and not one item escapes condemnation. Had only the Plaintiffs exercised such diligence during the discovery phase, no doubt this Motion would be unnecessary.

> n9 The initial Motion for Sanctions was seeking $75,358.60 in attorney's fees and costs. Dkt. No. 64. However, that amount has been modified downward due to adjustments made subsequent to the initial filing of this Motion. See Dkt. No. 67, Defs.' Reply, dated March 28, 2005, at P59.

[*16]

Plaintiffs begin by challenging the sufficiency of the financial details, such as time records, to support Defendants' attorney fees application. For them, not enough has been shown by either the interim billing forwarded to them by the Defendants or the affidavits submitted in support of this Motion. It is safe to presume Plaintiffs want this Court, and maybe them as well, to view the actual time sheets with every nuance reflected therein as opposed to accepting the detailed summary records (invoices) which list the dates, time, and the nature of the work. See Dkt. No. 64, Exs. Avoiding the need to spend an inordinate amount of time on this complaint, this challenge may be summarily dismissed in that this Court finds, in reviewing all of the information and exhibits provided to the Court by the Defendants, they have adequately and sufficiently provided plenty to decide this application. There is ample, detailed data that demonstrate sufficiently the date, time, and the nature of the work performed. *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d at 1142. They have at least met this burden.

### A. Hourly Rates

Neil Levine and Alan Goldberg [*17] have been representing the Defendants in tandem since the commencement of this action. What one did not know or do in reference to this case, the other possessed the knowledge and completed the task. Both are partners in the law firm of Whiteman, Osterman, and Hanna ("WOH") with possibly Levine being the more senior member of the firm. Although Levine may be the lead attorney on the case, this does not diminish the commanding role Goldberg has played throughout the defense of this litigation.

Without reservation, the Plaintiffs concede that Levine is entitled to the hourly rate of $175.00, which is the prevailing rate for experienced litigators within this District. But as to Goldberg, Plaintiffs contend, heedlessly, that he is only entitled to the rate of $125.00 per hour. Plaintiffs promote the notion that Attorney Goldberg lacks experience to command the $175.00, even though his normal billing hourly rate is $225.00. Attorney Goldberg has been practicing law for nearly fifteen years, has been a partner in this significant law firm since 1991, and has played an instrumental role in defending his clients in this action. His experience and knowledge of the law is comparable to [*18] the Plaintiffs' counsel, if not greater, and he is deserving of the same respect extended to Levine. Dkt. No. 67, Alan J. Goldberg, Esq., Aff., dated Mar. 28, 2005. n10 Therefore, Goldberg's hourly rate will be $175.00 as well. As a corollary to the hourly rate, Plaintiffs charge that possibly Levine's and Goldberg's work on this case has been duplicative and unnecessary. The fact that two partners are working concurrently on this case, similar to the counsel assignment for the Plaintiffs, does not equate to a duplication of effort. However, to the extent that this Court observes an inessential and inexcusable overlap in effort to represent their client, the fee will be excised accordingly.

  

Case 1:04-cv-12137-JLT   Document 81-12   Filed 12/23/2005   Page 6 of 14

Page 6
2005 U.S. Dist. LEXIS 31614, *18

n10 *See also* http://www.woh.com/woh/attorneys-detail.asp?ID=15 (last visited Nov. 14, 2005).

Next, Plaintiffs gainsay the $175.00/per hour rate given to John P. Calareso, Jr., and submit that he is only entitled to a rate of $100.00/per hour. Calareso is a 1998 graduate from Columbus School of Law at Catholic University, [*19] commenced working with WOH in 2001, and is a seventh year associate of the firm. Dkt. No. 67, John P. Calareso, Jr., Esq., Aff., dated Mar. 28, 2005. n11 Under other circumstances, Calareso may be entitled to the top rate of $175.00/per hour. The issue for the Court in determining Calareso's rate is not so much that he does not have the requisite experience to command the higher rate, though at the same time the Court does not accept the notion that he is only entitled to receive the recently admitted attorney rate of $100.00/per hour, but rather the matter of too many attorneys billing at the higher rate gives this Court pause and may be the controlling factor in setting his rate. Calareso has not assumed an essential role in representing the Defendants, much like Levine and Golberg, and from the information provided the Court gleans that Calareso played an ancillary role in collating the documents and performing research. To permit Calareso to receive the same rate as the top defense litigators on this case would be excessive, therefore, the Court will reduce Calareso's rate to $125.00/per hour, the District's rate for an attorney with four or more years experience.

n11 See also http://www.woh.com/woh/attorney-detail.asp?ID=33 (last visited Nov. 14, 2005).

[*20]

Tami Hartman, who has twelve years experience as a paralegal and has worked for WOH for eight years, is being billed at $85.00/per hour. Ms. Hartman's rate will be reduced to the applicable rate of $65.00/per hour. With regard to Defendants' employees who assisted in gathering, collating, and presenting their documents, the Court sets their rate at $40.00/per hour.

With regard to other attorneys, who are partners with WOH, especially Margaret Cangilos-Ruiz, and Cadwalder, Wickersham & Taft LLP ("CWT") attorneys who worked on this specific phase of discovery, the Court will set their rate at $175.00/per hour for partners and for associate's rate of $100.00/per hour accordingly. n12

n12 CWT has represented Defendant Bear Stearns in connection with a bankruptcy and matters related to National Finance Corporation (NFC), which includes NFC's 1999 misappropriation of certain funds from Bear Stearns. In October 2004, Bear Stearns asked CWT to review its files for documents responsive to the Plaintiffs' Document Requests. The two employees who assisted CWT in reviewing these documents were Barry J. Dichter, a partner of approximately twenty years and Jessica Clarke, an associate of less than four years. Dkt. No. 67, Barry J. Dichter, Esq., Decl., dated Mar. 28, 2005. The extent of their portion of the attorney fees will be considered below. *See infra* Part II.F.

[*21]

B. Opposing Discovery Extension and the Order to Show Cause.

As stated above, this Court granted reasonable attorney fees and costs for Defendants' efforts to oppose (1) the June 29, 2004 request for an extension of the discovery deadline and participating in the hearing held on June 30, 2004, and (2) the Order to Show Cause seeking reconsideration and participating in the hearing held on July 13, 2004. The general crux of Plaintiffs' attack on Defendants' billing for these matters involves duplicative and unnecessary billing. However, consistent with the findings stated above, this argument is unpersuasive, with the exception of Calareso's rate, which will be adjusted accordingly.

Thus, the Court finds the following regarding this task:

| ATTORNEY | HOURS | RATE | TOTAL |
|---|---|---|---|
| Neil Levine | 14.20 | $175.00 | $2,485.00 |
| Alan Goldberg | 38.80 | $175.00 | 6,790.00 |





2005 U.S. Dist. LEXIS 31614, *21

| ATTORNEY | HOURS | RATE | TOTAL |
|---|---|---|---|
| John Calareso | 9.30 | $ 125.00 | 1,162.50 |
| Magaret Cangilos-Ruiz, partner | .20 | $ 175.00 | 35.00 |
| Expenses | | | 15.00 |
| TOTAL (hours and expenses) | | | $ 10,487.50 |

C. Discovery Related Tasks during the period of August 12, 2004 and September 30, 2004.

To reiterate, the Court further granted [*22] attorney fees and cost related to "participating in any further depositions . . . and the production of records and documents pursuant to Plaintiffs' permitted Rule 34 Demands for Production. Further, the Plaintiffs' counsel shall bear the cost for any Defendants' employee who is designated to assist in the production of records to satisfy permitted Rule 34 Demands for Production of Documents." n13 The number of depositions were set at six. *See* Order, dated July 14, 2004.

n13 The austerity of the sanction would be proportional to the degree the Plaintiffs pursued discovery.

As permitted by the Sanction Order, the Defendants submitted to the Plaintiffs interim billing for the period of August 12, 2004 to September 30, 2004. Dkt. No. 64, Ex. E. Several objections are raised by the Plaintiffs as to the details supporting the billable hours and the nature of the work performed. First, Plaintiffs assail Defendants' charge of 8.3 hours "preparing to receive Plaintiffs' discovery demands." Dkt. No. 66, Pamela A. [*23] Nichols, Esq., Aff., dated Mar. 21, 2005, at P18. Such billing records do not have such a notation *per se*. What the Court does discern, however, is an effort on the part of the Defendants to commence review of documents, which may be the subject of discovery demands, for relevancy and put into place a logistical team to handle the forthcoming demands. The Court does not find this to be an uncommon practice inasmuch as they are preparing to respond expeditiously to the anticipated demands, especially considering the breadth of the records as they knew them to be. The same time commitment would have been expended if Defendants had waited until August 31, 2004, the date the Plaintiffs' Demands were received, and then commenced the same missions. Thus, this discrete matter does not pose an unreasonable request. Next, Plaintiffs overstate their observation that Defendants spent six hours just reviewing the Plaintiffs' Demands. It appears from both the affidavit and invoices that less than half of that time was employed reviewing the Demands. Plaintiffs' claims that Defendants should not have reviewed other NFC files, such as bankruptcy files, in order to yield responsive documents is [*24] without merit. In order to determine what would be a relevant response to the Plaintiffs' Document Request, a full court press remained vital, notwithstanding the eventual limitation of the scope of Plaintiffs' Demands. A full and complete response to those Demands would compel a review of all of Bear Stearns/NFC files in the possession of the Defendants.

Hence, the Court finds the following for this period:

| ATTORNEYS | HOURS | RATE | TOTAL |
|---|---|---|---|
| Neil Levine | 8.80 | $ 175 | $ 1,540.00 |
| Alan Goldberg | 29.40 | $ 175 | 5,145.00 |
| John Calareso | 3.60 | $ 125 | 450.00 |
| Tami Hartman | .80 | $ 65 | 52.00 |
| TOTAL (hours) | | | $ 7,187.00 |

D. Discovery during the period of October 1 through 30, 2004.

Plaintiffs disclaim that Defendants facetiously conducted an impermissible Rule 26 Review of their documents

  

Case 1:04-cv-12137-JLT   Document 81-12   Filed 12/23/2005   Page 8 of 14

Page 8
2005 U.S. Dist. LEXIS 31614, *24

under the rubric of the Sanction Order, wasting hundreds of hours of labor. They complain that Defendants are attempting to gain credit for something that they had already done or should have done completed to the July 14, 2004 Order.

This particular review revolves around thirteen (13) boxes of documents, which purportedly cover the entire Bear Stearns/NFC [*25] business relationship. Plaintiffs contend that Defendants' review of these documents should have occurred at the time when Defendants served their Rule 26 Initial Disclosures and prior to the Order to Show Cause; and for the Defendants to conduct such a review in response to the Plaintiffs' Rule 34 Demands is sanctionable in and of itself. FED. R. CIV. P. 26(a) & 34. Plaintiffs seem to suggest that the Defendants conspiratorially waited until the last moment to review these documents in order to enhance the attorney's fees. Regrettably, Plaintiffs' position is premised upon a faulty understanding of the initial disclosure requirements of FED. R. CIV. P. 26(a)(1)(B), among other things.

Rule 26(a)(1)(B) reads

> a party must, without awaiting a discovery request, provide the other parties a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment.

In terms of the Initial Disclosure, apparently the Defendants attempted to comply with this statutory obligation [*26] by serving upon the Plaintiffs in June 2003 a disclosure categorizing the documents and where such documents could be located rather than providing a copy of each document which would satisfy their disclosure responsibilities. Plaintiffs decry the fact that the Defendants are just now providing such Rule 26(a) documents, waiting until Plaintiffs served their Rule 34 Demand to comply. However, this precise objurgation is a problem the Plaintiffs created for themselves. For the first time, Plaintiffs made their Rule 34 Demand to Produce on August 31, 2004, which is a month subsequent to the July 14, 2004 Sanction Order. n14

> n14 This lawsuit was commenced in 2002. The initial Uniform Pretrial Scheduling Order was issued on May 28, 2003. Dkt. No. 9. And after several extensions of the discovery deadline, Plaintiffs attempted to serve their first Demand to Produce three weeks prior to the expiration of the discovery deadline, which neither comported with the District's Local Rules nor the Federal Rules. The Plaintiffs' first proper Document Request was not served until August 31, 2004.

[*27]
FED. R. CIV. P. 26(a)(1)(B) affords the disclosing party the option of either providing copies of the documents or describing by category and location all of the documents relevant to the case. FED. R. CIV. P. 26 advisory committee notes 1993 Amendment. n15 The disclosing party does not have to produce the actual documents until the other party wishes to obtain access to the documents by either a formal or informal discovery request. *Masquat v. Mentor Corp.*, 2000 WL 864166, at *2 (D. Kan. June 14, 2000) (finding that if a party provides a description or categorization of documents, it is incumbent upon the other party to obtain the documents desired by proceeding under Rule 34 or through informal requests); *Haifley v. Naylor*, 1996 U.S. Dist. LEXIS 14167, 1996 WL 539212, at *1-2 (D. Neb. July 9, 1996) (ruling that it is the disclosing parties option to produce the documents or describe by category).

> n15 This Federal Rules Advisory Committee Note on this issues reads as follows:
>
>> Unlike subparagraphs (C) and (D), subparagraph (B) does not require production of any documents. Of course, in cases involving few documents a disclosing party may prefer to provide copies of the documents rather than describe them, and the rule is written to afford this option to the disclosing party. If, as will be more typical, only the description is provided, the other parties are expected to obtain the documents desired by proceeding under Rule 34 or through informal requests. The disclosing party does not, by describing documents under subparagraph (B), waive its right to object to production on the basis of privilege or work product protection, or to assert that the documents are not sufficiently relevant to justify the burden or expense of production.

  

...

Case 1:04-cv-12137-JLT   Document 81-12   Filed 12/23/2005   Page 9 of 14

Page 9
2005 U.S. Dist. LEXIS 31614, *27

(quoted in *Haifley v. Naylor,* 1996 U.S. Dist. LEXIS 14167, 1996 WL 539212, at *2 (D. Neb. July 9, 1996)).

[*28]

The Court finds that *Silverman v. City of New York,* 2001 U.S. Dist. LEXIS 22537, 2001 WL 1776157 (W.D.N.Y. Nov. 19, 2001) is instructive. There, the defendant described all of the documents in its possession by category and location, however, Silverman did not make a formal demand for these documents. The court astutely noted that Silverman "could have — and indeed should have — requested [the critical document long ago . . . [and his] 'undue delay' in seeking production of this documents will not be countenanced." *Silverman,* 2001 U.S. Dist. LEXIS 22537, 2001 WL 1776157, at *6. The court's ultimate ruling that discovery was complete was in effect an acknowledgment that the plaintiff had forfeited his rightful claim to a document previously described by the defendant as being relevant. Here, Plaintiffs made neither a formal nor informal request for any documents.

Defendants are not out of bounds by conducting a review of documents they previously described in their June 2003 Initial Disclosure in order to determine what documents may comply with the Plaintiffs' August 2004 Demand. n16 At this later date, Defendants' review of these boxes was inescapable if they were to meet their obligation to provide [*29] adequately responsive documents and further uphold their responsibilities to their client. Even if Plaintiffs did not demand documents that revealed the entire Bear Stearn/NFC relationship, it remains painfully obvious that Defendants would have to preview the entire record of this business relationship in order to satisfactorily respond to the Plaintiffs' Demands. Likewise, the review of the bankruptcy file was appropriate, even if there was another partner who was better versed on the matter and could have shed insight on the file, and the fact that the bankruptcy records had previously been perfectly collated, paginated, and bound for review, probably by WOH's bankruptcy staff, is not revelatory on how much time Defendants should have spent reviewing them, as intimated by Plaintiffs. Therefore, these objections are without merit. n17

n16 The Court wishes to note that the Plaintiffs have improvidently and imprudently cited *Marchand v. Mercy Medical Center,* 22 F.3d 933, 936 (9th Cir. 1994) for the overly broad proposition that, "compliance with the Federal Rules requires more than a party performing **minimally acceptable conduct,**" in order to suggest that it was applicable to disclosure of documents under Rule 26(a)(1)(B). (Emphasis added). The Ninth Circuit in that case was addressing a more finite issue of admissions under Federal Rule 37(c)(2). In that case, one of the parties gave misleading answers to requests for admission that significantly affected the cost of Marchand's prosecution and contravened the goal of full discovery. The exact quote from *Marchand v. Mercy Medical* is that "parties may not view requests for admission as a mere procedural exercise requiring minimally acceptable conduct." *Id.* at 936.

[*30]

n17 To the extent that the October 2004 billing is applicable to the preparation for depositions, which depositions were billed in November 2004, or later, the Court will analyze that discovery component of this application during a later stage of this Order. *See infra* Part II.E.

The Court finds for this period the following:

| ATTORNEY | HOURS | RATE | TOTAL |
|---|---|---|---|
| Neil Levine | 3.30 | $ 175 | $ 577.50 |
| Alan Goldberg | 54.20 | $ 175 | 9,485.00 |
| John Calareso | 31.90 | $ 125 | 3,987.50 |
| Tami Hartman | 19.60 | $ 65 | 1,274.00 |
| Expenses for Copying | | | 2,058.75 |

  

Case 1:04-cv-12137-JLT   Document 81-12   Filed 12/23/2005   Page 10 of 14

Page 10
2005 U.S. Dist. LEXIS 31614, *30

| ATTORNEY | HOURS | RATE | TOTAL | |
|---|---|---|---|---|
| TOTAL (hours and expenses) | | | | $ 17,382.75 |

E. Depositions

Plaintiffs challenge the hours Defendants' attorneys spent preparing for, conducting, and traveling to and from depositions. In total, there are five depositions we will need to review. Not all of the depositions to be discussed occurred in November, but, at this juncture, we are best served discussing the depositions collectively now.

1. ADP and Small Depositions

From the record presented by the parties, it appears that ADP, an accounting concern, [*31] prepared NFC's payroll records. Levine Aff., at P46; Goldberg Aff., at PP19-22. Plaintiff noticed a representative from ADP for a deposition held on September 13, 2004, supposedly because the "Plaintiffs' multi-million damages claim hinged on a 12-inch high set of NFC payroll records for December 1999." Levine Aff., at P46. Plaintiffs chide the Defendants for spending more than 8.2 hours preparing for a deposition of the payroll company that lasted forty-seven (47) minutes. Nichols, Aff., at P27. On the other hand, Defendants wish to correct Plaintiffs on their counting of their hours, which they calculates to be five (5) hours of preparation spent reviewing expert reports, the records themselves, corresponding with Plaintiffs to confirm the deposition, and preparing an outline for the deposition. Although Attorney Goldberg may be faulted for being overly meticulous and methodical, we cannot say, however, that his time spent preparing for this deposition is unreasonable. And it is certainly no fault of his that the witness had a bare modicum of relevant knowledge and information to share with the parties. His obligation was to prepare to participate in a non-party deposition.

The [*32] only other exception taken as to the Small's deposition was the expenses incurred by the Defendants. Mr. Goldberg's travel, accommodation, and food expenses are truly modest for a deposition held in New York City. There isn't a hint of extravagance or liberality by these expenses. Plaintiffs' objections are without merit.

2. Sharp Deposition

From start to finish, from preparation to the completion of this videotaped non-party deposition of Jonathan Sharp, this discovery matter took approximately eighty (80) hours. Nichols Aff. at PP28-30; Levine Aff. at PP51-56. We will give the Defendants the benefit of the doubt that this was a complex witness with complicated issues to address and, yet, the Court finds it hard to embrace a total of eighty hours for this witness. Granted that other transcripts had to be viewed, four difficult memoranda had to be absorbed, loan documents required analysis, and outlines needed to be prepared, yet we find that the zeal to be perfect has led to an unreasonable accumulation of time and effort.

We have no reservation that Attorney Levine spent his travel time preparing for the deposition but we also find that it was duplicative of his previous preparation [*33] time. Therefore, the twenty hours of travel to and from Charlotte, North Carolina will be billed at half-time. Further, this deposition was adjourned by both parties, which lends itself to some repetition in preparing for the deposition. In this vein, the Court will reduce the preparation time an additional five (5) hours.

3. Friedman Deposition

The Plaintiffs' noticed Paul Friedman, a Defendants' employee, for a deposition which was conducted in New York City on or about December 22, 2004. Levine and Goldberg spent forty-seven (47) hours collectively preparing and defending this deposition. Once again the rigorous approach to these depositions, albeit laudable from a client's perspective, may contribute to an unreasonable application for attorney fees. Similarly, even though the time was employed wisely in preparation and work endeavors, the travel time between Albany and New York will be measured at half-time. Based upon this measurement, assuming eight (8) hours of travel, the hours will be cut to four (4). The time spent preparing Friedman for his deposition is reasonable. All other time spent on this deposition is deemed to be reasonable. *See* Levine Aff. at P57.

[*34] 4. Cedar Deposition

Both parties agree that Levine spent approximately twenty (20) hours preparing and conducting Phil Cedar's deposition, which was held in New York City. Nichols Aff. at P31; Levine Aff. at P58. Levine elaborates on the time he spent on this deposition:

  

Case 1:04-cv-12137-JLT   Document 81-12   Filed 12/23/2005   Page 11 of 14

Page 11
2005 U.S. Dist. LEXIS 31614, *34

I prepared an issues outline while on the train to New York City the day before the deposition, spent the afternoon preparing Cedar and conferred with Alan Goldberg that evening regarding issues from my prep session. (9.0 hours). I met Mr. Cedar the morning of his deposition to finish our preparation, defended Mr. Cedar's deposition and traveled back to Albany. (10.5).

Levine Aff. at P58.

With there being no indication of preparation for this deposition prior to the train ride to New York, the Court will give the Defendants full credit for that time. There does not appear to be any appearance of duplication of effort. However, Levine's return to Albany will be billed at half-time. The Court estimates the travel time to be four (4) hours, which will be reduced to two (2) hours.

With regard to the Plaintiffs' grievances regarding the Defendants' travel expenses, the Court finds them all to be reasonable [*35] sans one. Mr. Levine's one night stay in New York City in the amount of $642.46 is a tad exorbitant and will be cut in half.

F. CWT and Bear Stearns' Employee Charges.

Complying with the solicitation of their client, Bear Stearns, Barry Dichter, a partner, and Jessica Clarke, an associate, spent 2.85 hours and 10.85 hours, respectively, reviewing its files for documents responsive to the Documents Request in this matter. Dkt. No. 67, Barry Dichter, Esq., Decl., date Mar. 28, 2005, at PP3 & 7. For this application, Dichter is billed at $175.00 and Clarke at $100.00 respectively. There are two problems with this expense.

The first deals with language. When Dichter wrote in his declaration that "he was asked by Bear Stearns to review its files," we are not certain if Bear Stearns wanted CWT to review Bear Stearns' files or CWT's own, Bear Stearns files. In the former instance, if Bear Stearns wanted CWT to review Bear Stearn's file such chore is truly duplicative since Bear Stearn employees and WOH would be conducting the same project. On the other hand, if CWT was asked to review it own files, there still remains an element of duplication since WOH would be billing, and [*36] already has, for reviewing the exact same files. All of this reappraisal by so many parties was not contemplated by the Sanction Order. And, to discern what would be a proper level of review by CWT under either scenario is daunting and probably dubious. Ostensibly some review and consultation with CWT would be necessary considering their long term history with their client. Rather than reject their fee in its entirety, we find it fair and reasonable to cut in half both the partner's and associate's effort to collect, collate, and reexamine whatever records they reviewed. Therefore, Dichter's time is calculated at 1.4 hours and Clarke's time at 5.0 hours.

Defendants submit a bill for the document review by six Bear Stearns' employees whom, ironically, all happened to be lawyers. The Defendants billed each of them at the hourly rate of $175.00. The Court did not contemplate when it ruled that "Plaintiffs' counsel shall bear the cost for any Defendants' employee who is designated to assist in the production of records to satisfy permitted Rule 34 Demands for Production of Documents, "that such employees would be lawyers. Any assumption that such bevy of inside counsel would assume this [*37] role was ruminated by the Court is misplaced and clearly erroneous. The key phase in determining the charge for Defendants' employees is "designated to assist in the production of the record," and it is reasonable to believe that none of these attorneys were actually involved in the production of documents. Therefore, whatever endeavors these Bear Stearns' employee endured in performing document review will be compensated at the rate of $40.00 per hour. See supra Part II.A at p. 11.

G. Expenses

Lastly, the Plaintiffs take exception with Defendants' expenses. As noted above, the Court has already approved some of the expenses and made an adjustment for Levine's lodging expenses. See supra Part II.E.4 (Levine's hotel lodging on the Freidman deposition). Although the amount appears to be meager, the Westlaw research cost of $85.90 will not be allowed. *New York State Teamsters Conference Pension & Ret. Fund v. United Parcel Service, Inc.*, 2004 U.S. Dist. LEXIS 3062, 2004 WL 437474, at *6 (N.D.N.Y., Feb. 27, 2004) (citing *Upstate New York Bakery Drivers & Indus. Pension Fund v. Colony Liquor Distribs., Inc.*, 993 F. Supp. 146, 150 (N.D.N.Y. 1998) (computerized legal [*38] research costs are not recoverable).

We do agree with the Plaintiffs that they should not have to pay double for airline tickets to North Carolina. The original purchase was made prior to a settlement conference, which was initiated by the Defendants. Having that ticket

  

canceled was a risk they will have to assume. Therefore the Court will not allow the cost for the later airline ticket in the amount of $147.01. n18

> n18 The Court wishes to take this opportunity to make this point very clear. Attorney Nichols in the opening and closing of her affidavit goes to extraordinary length to relitigate the matter, which is quite frankly now law of the case, and to shift the blame of their dilemma upon others and even the Court. In concluding her affidavit, Nichols writes,
>> If one were to accept the position of the time required to conduct a portion of the discovery in this matter, advocated by the Defendants in their billing, then it is clear that the discovery schedule provide insufficient period for the Plaintiffs to have reasonably conducted discovery in this matter and should have been extended in the first place, thereby avoiding entirely the unseemliness in which counsels and parties now find themselves.
> Nichols Aff. at P40.

All of this predicament and all of the consternation rests upon the broad shoulders of Plaintiffs' attorneys. We will succinctly remind them of these facts. Plaintiffs counsel, along with the Defendants' counsel, submitted a case management plan and proposed the reasonable time they would need to complete discovery, which this Court adopted completely, but was obviously not met, by any stretch of the imagination, by Plaintiffs' counsel. Two more extensions of the Uniform Pretrial Scheduling were granted with the representation that discovery could be completed within both of those extended period, which once again, Plaintiffs' counsel failed to meet. The first extension had to deal with more time to file their expert report which was granted. The second extension was to give them more time to review a voluminous set of records. It was not until June 25, 2004, three weeks prior to the expiration of the third extended discovery deadline within the Uniform Pretrial Scheduling Order, July 15, 2004, that the Plaintiffs served for the first time their Rule 34 Demand for Disclosure, which is simply outrageous considering the representations made to the Court and the expected fluent conduct of pretrial litigation. *See* Dkt. No. 66, Pls.' Ex. (Plaintiffs' **First** Request for Production of Documents, dated Aug. 20, 2004). Moreover, Plaintiffs had not timely responded to the Defendants' properly served Demands. On June 30, 2004, this Court issued a Text Order compelling the Plaintiffs to respond to the Defendants' Demands to Produce on or before July 2, 2004. When Plaintiffs served their Responses, they were deemed woefully inadequate, and they were directed to resubmit them. At that juncture, hardly any depositions had been completed. Rather than a continuous fluidity of discovery throughout the pretrial litigation stage, we were confronted with a phonetic, last minute exercise to get caught up with the discovery schedule. In essence, the Plaintiffs ignored the Court's Orders or did not take them seriously, and, more importantly, did not timely seek court intervention to correct any difficulties they may have been experiencing. They waited until the hour of reckoning, which was much too late, and the Court would not have countenanced any further request to extend the discovery deadline. On July 12, 2004, in order to gain more time to conduct the discovery that they wanted, they asked that sanctions be imposed in lieu of their Motion for Reconsideration being denied to gain approximately another seven months of discovery. The only way that the parties could have avoided the "unseemliness" would have been to make any prudent effort to reasonable approach discovery with some diligence. Plaintiffs' *laissez-faire* approach to pretrial litigation is the only culprit, nothing else.

[*39]

H. November 1 through November 30, 2004

Following the Defendants' invoice, the Court finds the following:

| ATTORNEY | HOURS | RATE | TOTAL |
| --- | --- | --- | --- |
| Neil Levine | 7.9 | $ 175.00 | $ 1,382.50 |
| Alan Goldberg | 9.30 (11.30 less 2 hours for Small's deposition travel time back to | $ 175.00 | 1,627.50 |

  

2005 U.S. Dist. LEXIS 31614, *39

| ATTORNEY | HOURS | RATE | TOTAL |
|---|---|---|---|
|  | Albany) |  |  |
| Tami Hartman | 1.40 | $ 65.00 | 91.00 |
| Expenses |  |  | 1,130.67 |
| TOTAL (hours and expenses) |  |  | $ 4,231.67 |

I. December 1 through 30, 2004

Again, following the Defendants' invoices for this period, the Court finds the following:

| ATTORNEY | HOURS | RATE | TOTAL |
|---|---|---|---|
| Neil Levine | 70.60 (91.60 reduced by deposition travel and excessive discovery prep) | $ 175.00 | $ 12,355.00 |
| Alan Goldberg | 12.90 | $ 175.00 | 2,257.50 |
| Tami Hartman | 6.00 | $ 65.00 | 390.00 |
| Expenses | $ 734.01 ($ 1291.75 less airline ticket and half of the cost of NYC hotel room and $ 89.50 Westlaw) |  | 734.01 |
| TOTAL (hours and expenses) |  |  | $ 15,736.51 |

J. January 5 through January 31, 2005

Following the Defendants' invoice for this period, the Court finds the following:

| ATTORNEY | HOURS | RATE | TOTAL |
|---|---|---|---|
| Neil Levine | 18.50 (20.50 reduced by deposition travel | $ 175.00 | $ 3,237.50 |
| Alan Goldberg | 6.40 | $ 175.00 | 1,120.00 |
| Expenses |  |  | 226.53 |
| TOTAL (hours and expenses) |  |  | $ 4,584.03 |

[*40]

K. Other Charges

The Court finds the following:

| ATTORNEY | HOURS | RATE | TOTAL |
|---|---|---|---|

  

Case 1:04-cv-12137-JLT   Document 81-12   Filed 12/23/2005   Page 14 of 14

Page 14
2005 U.S. Dist. LEXIS 31614, *40

| ATTORNEY | HOURS | RATE | TOTAL | |
|---|---|---|---|---|
| Barry J. Dichter | 1.40 | $ 175.00 | | $ 245.00 |
| Jessica Clarke | 5.40 | $ 100.00 | | 540.00 |
| Bear Stearns Staff | 13.5 | 40.00 | | 540.00 |
| TOTAL (hours) | | | | $ 1,325.00 |

### III. CONCLUSION

The total adjusted attorney fees and expenses is $60,934.46. *See supra* Parts II.B-K. However, our analysis does not conclude here. The July 14, 2004 Order was not meant to reimburse the Defendants for time expended and expenses incurred nor serve as a fee-shifting mechanism. The intent of the Sanction Order was to maintain the integrity of the federal system. This Court has not lost sight of the instructions that when awarding attorney fees or imposing sanctions to keep an eye toward moderation. Nor have we lost sight that the use of attorney fees as one of "an array of sanctions" against egregious conduct need not be routinely awarded based upon the lodestar amount alone. *Eastway Const. Corp v. City of New York*, 821 F.2d 121, 122 (2d Cir. 1987). And, in the final analysis, it is within the Court's inherent discretion to determine the amount of the sanction, not adhering [*41] to any rigid formula. *Id.* at 123 (citations omitted). Consequently, the amount of the sanction shall be sufficient to deter any repetition of the sanctionable behavior. *Id.* Therefore, this Court finds that the amount of $50,000.00 shall serve that purpose.

Accordingly, it is hereby

**ORDERED,** that the amount of the sanction shall be $50,000.00; and it is further

**ORDERED,** that the law firm of O'Connell and Aronowitz shall pay the sum of $50,000.00 to the law firm of Whiteman, Osterman and Hanna within sixty (60) days of this Order as follows: (1) the first installment of $25,000.00 shall be paid within thirty (30) days of this Order and (2) the final installment of $25,000.00 shall be paid within sixty (60) days of this Order.

**IT IS SO ORDERED.**

Albany, New York
November 16, 2005

RANDOLPH F. TREECE

United States Magistrate Judge



