**Exhibit 8 to Statement of Undisputed Facts Filed in Support of Motion of American Beryllia, Inc. For Summary Judgment**

**CERTIFIED COPY OF AMENDED DISCLOSURE STATEMENT FOR AMENDED PLAN OF ORDERLY LIQUIDATION OF GENERAL CERAMICS, INC. AND EXHIBITS**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

I hereby certify that the foregoing
is a TRUE COPY of the original on
file in the office of the Clerk of
the United States Bankruptcy Court.

_____ Deputy

FILED
JAMES J. WALDRON
JUN 4 2001

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY _____ DEPUTY

-----------------------------------------------X

In re:                                          :

General Ceramics, Inc.,                         :

            Debtor.                             :

-----------------------------------------------X

Chapter 11

Case No. 99-33403 (RG)

---

**AMENDED DISCLOSURE STATEMENT FOR
AMENDED PLAN OF ORDERLY LIQUIDATION
OF GENERAL CERAMICS, INC.**

---

McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
Attorneys for General Ceramics, Inc.
RWH 2033

389

## ARTICLE III

## <u>TREATMENT OF CLASSES UNDER THE AMENDED PLAN</u>

The treatment of and consideration to be received by holders of Allowed Claims shall be pursuant to Article III of the Amended Plan. As set forth therein, the Disbursing Agent will endeavor to disburse to Creditors as much as possible from cash on hand, taking into consideration the amount of funds necessary to pay for liabilities of the bankruptcy estate. However, notwithstanding anything to the contrary herein, the Debtor reserves its right to delay any distribution to creditors pending any determination by the Court of the Debtor's tax liability under 11 U.S.C. §505.

Administrative Claimants shall be paid in full on the Effective Date, or if the Claim is disputed, within thirty (30) days of a Court Order fixing the amount of such Claim. The Debtor intends to establish a bar date with respect to the filing of Administrative Claims.

With respect to professional fees, professionals seeking payment of services for fees and expenses under this Class shall receive payment only to the extent such fees and services are permitted under the Bankruptcy Code. The Debtor reserves the right to object to such applications to the extent the requested relief is not permitted under the Bankruptcy Code. The exact amount of the professional fees that will be sought is presently unknown. However, pursuant to the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals entered by the Court on April 15, 1999, the Debtor is authorized to pay seventy-five percent (75%) of allowed fees to the professionals retained in this case. To date, the remaining twenty-five percent (25%) totals approximately $350,000 (the "Holdback"). Any claims for professional fees incurred prior to the Effective Date will be the subject of an application filed with the Bankruptcy Court within sixty (60) days after the Effective Date, or

shall forever be barred.  Any professional fees incurred after the Effective Date will be paid

directly by the Debtor and will not be subject to approval by the Court.

A.      The Classes.

Class I:  Priority Creditors.

All Creditors entitled to priority under 11 U.S.C. § 507 other than Administrative Claims

and Allowed Tax Claims shall be paid in accordance with the provisions and priorities of the

Bankruptcy Code.  Seventy-five percent (75%) of professional fees incurred to date have been

paid.  The Holdback totals approximately $350,000.  The Allowed Tax Claims total $55,000.

All claims of members of this Class shall be paid in full on the later of within ten (10) days of the

Effective Date, or the entry of an Order allowing such claim.  This Class is unimpaired.

Class II:  Claims of Tennessee Plaintiffs.

The Debtor will pay the Tennessee Plaintiffs Settlement Sum of $200,000 in full to the

Tennessee Plaintiffs within ten (10) days of the Effective Date.  Tennessee Counsel is currently

preparing the Tennessee Plaintiffs Settlement Agreement which will authorize the Tennessee

Counsel to distribute specific sums from the Tennessee Plaintiffs Settlement Sum to the

individual Tennessee Plaintiffs. This Class is unimpaired.

Class III:  EPA Claim.

Pursuant to the EPA Settlement Agreement, the EPA will be provided an allowed claim

of $275,000 which will be paid in full within ten (10) days of the Effective Date.  The Debtor

and the EPA are in the process of finalizing the EPA Settlement Agreement.  This Class is

unimpaired.

Class IV:  Unsecured Claims and Claims of the Supplemental Savings Plan Participants.

The Debtor has combined Allowed Unsecured Claims and the Allowed Claims of the

Supplemental Savings Plan Participants in Class IV because these claims are given similar

treatment under the Amended Plan. After payment in full to Administrative Claimants and Classes I, II and III, Allowed Unsecured Claims will be paid with the Allowed Claims of the Supplemental Savings Plan Participants within ten (10) days of the Effective Date on a pro rata basis until their claims are satisfied in full without interest. The identical treatment of these Claims is dependent on Court approval of the EPA Settlement Agreement. This Class is impaired.

Class V: Tokuyama Subrogation Claim.

The Tokuyama Subrogation Claim is the only claim in this Class and it shall be allowed in the amount of $11,307,786.89. Following payment in full without interest to Administrative Claimants and Classes I, II, III, and IV, remaining proceeds of liquidation, if any, will be distributed to Tokuyama Corporation for the Tokuyama Subrogation Claim. Provided that Administrative Claimants and Classes I, II, III, and IV have been paid in full without interest on their Allowed Claims, the Debtor will assign to Tokuyama Corporation any of the Debtor's right, title and interest in the Escrow Fund and the Laser Company Lawsuit and will release the Equipment Escrow to the Parent. This Class is impaired.

Class VI: Tokuyama Note Claim.

The claim of Tokuyama for loans to the Debtor and trade debt incurred prior to the commencement of this bankruptcy proceeding is the only claim in this Class and shall be allowed in the amount of $14,464,069.55. After payment in full to Administrative Claimants, and Classes I, II, III, IV, and V, remaining proceeds of liquidation, if any, will be distributed to Tokuyama for the Tokuyama Note Claim. This Class is impaired.

Class VII:  Equity Holders.

This Class consists of the interests of Holders of Old Equity Interests. The Old Equity Interests shall be cancelled and the Holders of Old Equity Interests shall not be entitled to, and shall not, receive or retain any property or interest in property in exchange for such Old Equity Interests.  The Holders of Old Equity Interests are deemed to have rejected the Amended Plan and are, therefore, not entitled to vote.

B.    Statement Pursuant to Local Rule 3016-2(b).

On February 8, 2000, the Debtor filed its Omnibus Motion (the "Omnibus Motion") to Reduce, Disallow, Expunge and/or Reclassify Certain Claims Filed Against the Debtor's Estate. With the exception of the PRP Claims, the PBGC Claim, claim no. 275 in the amount of $40,641.33, and certain claims filed by the Internal Revenue Service which total approximately $50,000, any claims excluded from the Omnibus Motion will either not be challenged or have already been challenged but have been resolved.  Thus, the Debtor does not anticipate objecting to any claims in any of the foregoing Classes.

## ARTICLE IV

## MEANS FOR IMPLEMENTATION OF THE AMENDED PLAN

The Debtor has invested any cash on hand and the proceeds from the sale of the California Assets in a United States Treasury Bill. As of May 16, 2001, the available funds total approximately $4,600,000. At the hearing on Confirmation, the Debtor shall request that the Court approve its selection of an individual who will act as Disbursing Agent under the Amended Plan.

No payments or distribution shall be made with respect to any portion of a Claim which is a Disputed Claim pending the resolution of such dispute by a Final Order. After the Confirmation Order is entered by the Bankruptcy Court, only the Debtor or the Disbursing Agent may object to the allowance of Claims with respect to which there is a dispute as to liability or amount. At this time, with the exception of Administrative Claims pursuant to Article III, the Debtor expects that these would be limited to any claims for rejection of executory contracts and unexpired leases. See also infra, ARTICLE VI. Unless otherwise provided herein or as ordered by the Bankruptcy Court, the Debtor shall have the later of sixty (60) days after the Confirmation Date or the date the Claim is filed with the Bankruptcy Court to file an objection to such claim.

Any Cash that is unclaimed for three (3) months after distribution thereof by mail to the latest mailing address by or for the holder of an Allowed Claim shall be distributed to the Parent on its Subrogation Claim. All distributions under the Amended Plan shall be made by the Disbursing Agent. The Disbursing Agent shall file the reports required by the applicable Local Rules and the United States Bankruptcy Rules.

From and after the Confirmation Date, the Disbursing Agent may apply to the Bankruptcy Court for an order providing such relief as is necessary to implement the provisions

of the Amended Plan.  Whenever any payment of a fraction would be required on a payment, the actual payment shall be rounded down.  Notwithstanding any other provision of the Amended Plan to the contrary, no payment will be made on account of an Allowed Claim where the amount of such payment would be less than $5.00.

## ARTICLE V

## PROVISIONS REGARDING CORPORATE
## GOVERNANCE AND MANAGEMENT OF THE DEBTOR

The Debtor shall be managed by the Disbursing Agent following entry of the Confirmation Order. The Disbursing Agent shall be compensated in accordance with the provisions in Article III of the Amended Plan governing payment to professionals. The Committee shall continue in effect until the Effective Date.

A.      Continued Corporate Existence; Dissolution of the Debtor

Pursuant to the Amended Plan, the Debtor shall continue to exist after the Effective Date in accordance with the laws of the State of New Jersey and pursuant to the certificate of incorporation and by-laws in effect prior to the Effective Date, except to the extent such certificate of incorporation and by-laws are amended under the Amended Plan, for the limited purposes of (i) distributing all of the assets of the Debtor's Estate and (ii) pursuing any Causes of Action which the Debtor may possess. As soon as practicable after the Disbursing Agent exhausts the assets of the Debtor in Possession's Estate by making the final distribution of Cash under the Amended Plan, the Disbursing Agent shall (i) effectuate the dissolution of the Debtor in accordance with the laws of the State of New Jersey and (ii) resign as the sole officer and sole director of the Debtor.

B.      Certificate of Incorporation and By-laws.

The certificate of incorporation and by-laws of the Debtor shall be amended as necessary to satisfy the provisions of the Amended Plan and the Bankruptcy Code. The certificate of incorporation of the Debtor shall be amended to, among other things: (i) include, pursuant to section1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities; and (ii) limit the activities of the Debtor to matters related to the

30

implementation of this Plan. The forms of the documents relating to the amended certificate of incorporation and by-laws shall be contained in the Plan Supplement and shall be filed with the Court as described in Article VI.F. of the Amended Plan.

C.    Directors and Officers; Effectuating Documents; Further Transactions.

From and after the Effective Date, the Disbursing Agent shall serve as the sole officer and sole director of the Debtor. The Disbursing Agent shall be authorized to execute, deliver, file or record such documents, instruments, releases and other agreements and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Amended Plan.

D.    Insurance.

The Disbursing Agent shall be authorized to obtain all reasonably necessary insurance coverage for himself, his agents, representatives, employees or independent contractors, and the Debtor, including, but not limited to, coverage with respect to (i) any property that is or may in the future become the property of the Debtor and (ii) the liabilities, duties and obligations of the Disbursing Agent and his agents, representatives, employees or independent contractors (in the form of an errors and omissions policy or otherwise), the latter of which insurance coverage may, at the sole option of the Disbursing Agent, remain in effect for a reasonable period (not to exceed seven years) after the dissolution of the Debtor.

E.    Securities to Be Issued or Canceled Pursuant to this Plan.

1.    New Equity Interests.

On the Effective Date, the Debtor will issue one share of New Equity Interests to the Disbursing Agent.

2.    <u>Cancellation and Surrender of Existing Securities and Agreements</u>.

On the Effective Date, the Old Equity Interests shall be canceled and shall have no further legal effect. The Holder of the Old Equity Interests shall surrender their existing stock certificates.

F.    <u>Plan Supplement</u>.

Forms of the documents relating to the amended certificate of incorporation and the amended by-laws shall be contained in the Plan Supplement which shall be filed with the Clerk of the Court no later than ten (10) days before the Effective Date. The Plan Supplement may be inspected in the officer of the Clerk of the Court during normal court hours. Holders of Claims or Equity Interests may obtain a copy of the Plan Supplement upon written request to the Debtor in Possession in accordance with Article IX.G. of the Amended Plan.

## ARTICLE VI

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All executory contracts and unexpired leases shall be rejected effective as of the date of the entry of the Confirmation Order, or such earlier time as an Order may be entered rejecting such executory contracts or unexpired leases. The Debtor estimates that these claims will not exceed $250,000. Any party wishing to assert a claim against the Debtor arising from such rejection shall file such claim with the Debtor within thirty (30) days of the rejection of such executory contract or unexpired lease.

## ARTICLE  VII

## CONFIRMATION PROCEDURE

The Bankruptcy Court will confirm the Amended Plan only if it finds that all of the requirements of Section 1129 of the Bankruptcy Code are met. Among the requirements for Confirmation of the Amended Plan are that the Amended Plan: (i) is accepted by all impaired Classes of Claims and Interests or, if rejected or deemed rejected by an impaired Class, "does not discriminate unfairly" and is "fair and equitable" as to any rejecting Class; (ii) is feasible; and (iii) is in the "best interest" of Creditors and Interest holders impaired under the Amended Plan.

A.    Confirmation Hearing.

Section 1129(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on Confirmation of the Amended Plan. The Confirmation Hearing has been scheduled for    , at    . The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjournment made at the Confirmation Hearing. At the Confirmation Hearing, the Bankruptcy Court will (i) determine whether the Amended Plan has been accepted by the requisite majorities of each

33

Voting Class, (ii) hear and determine all objections to the Amended Plan and to Confirmation of the Amended Plan, (iii) determine whether the Amended Plan meets the requirements of the Bankruptcy Code and has been proposed in good faith and (iv) confirm or refuse to confirm the plan.

B.     Acceptance

Each of the Voting Classes will be deemed to have accepted the Amended Plan if the Amended Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Claims of such Class (excluding certain Claims designated under Section 1126(e) of the Bankruptcy Code) that have voted to accept or reject the Amended Plan. A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that an acceptance or rejection was not solicited or procured or made in good faith or in accordance with the provisions of the Bankruptcy Code.

C.     Non-Acceptance and Cramdown.

If the Amended Plan is not accepted by the requisite votes received from each impaired Class, the Debtor will seek Confirmation of the Amended Plan pursuant to Section 1129(b) of the Bankruptcy Code.

D.     Fair and Equitable Tests.

Any Voting Class that fails to accept the Amended Plan will be deemed to have rejected the Amended Plan. Notwithstanding any rejection, the Bankruptcy Court may confirm the Amended Plan, and the Amended Plan will be binding upon all Classes, including the Classes rejecting the Amended Plan, if the Debtor demonstrates to the Bankruptcy Court that at least one impaired Class of Claims has accepted the Amended Plan and that the Amended Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each non-accepting Class. A plan does not discriminate unfairly if the legal rights of a dissenting class are treated in a manner

34

consistent with the treatment of classes whose legal rights are similar to those of the dissenting class and if no class receives more than it is entitled to for its claims or interests. The Bankruptcy Code establishes different "fair and equitable " tests for secured and unsecured creditors. There are no secured creditors in this case, but the "fair and equitable" test for unsecured creditors is either (i) each unsecured creditor in a non-accepting impaired class receives or retains under the plan property having a present value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive or retain property under the Amended Plan.

**THE DEBTOR BELIEVES THAT THE AMENDED PLAN DOES NOT DISCRIMINATE UNFAIRLY WITH RESPECT TO ANY CLASS AND IS FAIR AND EQUITABLE WITH RESPECT TO EACH IMPAIRED CLASS. THEREFORE, THE DEBTOR WILL SEEK CONFIRMATION OF THE AMENDED PLAN EVEN IF LESS THAN THE REQUISITE NUMBER OF FAVORABLE VOTES ARE OBTAINED FROM ANY VOTING CLASS.**

    E.    <u>Feasibility and Best Interest Tests</u>.

The Bankruptcy Code requires that in order to confirm the Amended Plan the Bankruptcy Court must find that confirmation of the Amended Plan is not likely to be followed by a further liquidation or the need for further financial reorganization of the Debtor (the "Feasibility Test"). For the Amended Plan to meet the Feasibility Test, the Bankruptcy Court must find that the Debtor will possess the resources and will be able to meet its obligations under the Amended Plan. In addition, the Bankruptcy Court must determine that the values of the distributions to be made under the Amended Plan to each Class will equal or exceed the values which would be allocated to such Class in a liquidation under Chapter 7 of the Bankruptcy Code (the "Best Interest Test"). The Best Interest Test with respect to each impaired Class requires that each

Holder of a Claim or Interest in such Class either (i) accept the Amended Plan or (ii) receive or

retain under the Amended Plan property of a value, as of the Effective Date, that is not less than

the value of such Holder would receive or retain if the Debtor was liquidated under Chapter 7 of

the Bankruptcy Code.

      F.    <u>Objections to Confirmation</u>.

Objections to confirmation must be in writing and specify in detail the name and

address of the objector, all grounds for the objection and the amount of the Claim or the Interest

in the Debtor held by the objector. Objections to confirmation of the Amended Plan are governed

by Bankruptcy Rule 9014. Any such objection must be filed with the Bankruptcy Court and

served upon each of the following so that it is received by them on or before 4:00 P.M. on or

before _____:

> Patricia A. Celano, Esq.
> McCarter & English, LLP
> Four Gateway Center
> 100 Mulberry Street
> Newark, New Jersey 07102
>
> Robert K. Malone, Esq.
> Drinker Biddle & Shanley LLP
> 500 Campus Drive
> Florham Park, New Jersey 07932
>
> Donald McMaster, Esq.
> Office of the United States Trustee
> United States Department of Justice
> One Newark Center
> Suite 2100
> Newark, New Jersey 07102
>
> Alan W. Kornberg, Esq.
> Paul, Weiss, Rifkind, Wharton & Garrison
> 1285 Avenue of the Americas
> New York, New York 10019-6064

**ARTICLE VIII**

**LIQUIDATION ANALYSIS**

When a debtor is attempting to reorganize, it is usual that a Amended Disclosure Statement contain a liquidation analysis. Such analysis provides creditors with an opportunity to compare the estimated amount that they would receive under a proposed reorganization plan with the amount they might receive under a liquidation. Since the Amended Plan is a liquidating plan, Creditors will not receive payment from ongoing and future business operations but, instead, from the proceeds from the orderly liquidation of the Debtor's California Assets and any other cash on hand. More specifically, the Debtor anticipates the distribution of its available funds of approximately $4,600,000 to the following Classes of Creditors in the following order:

Class I:        Priority Creditors

Other than Administrative Claims and Allowed Tax Claims, the Debtor is unaware of any claims at this time in this Class. To date, seventy-five percent (75%) of professional fees have been paid. The Holdback totals approximately $350,000. The Allowed Tax Claims total $55,000.

Class II:        Claims of Tennessee Plaintiffs

The Tennessee Plaintiffs Settlement Sum totals $200,000.

Class III:        EPA Claim

The EPA's allowed claims totals $275,000.

Class IV:        Unsecured Claims and Claims of the Supplemental Savings Plan
                 Participants

These claims total $2,107,000.

Class V:        Tokuyama Subrogation Claim

The Tokuyama Subrogation Claim totals $11,307,786.89.

Class VI:    Tokuyama Note Claim

The Tokuyama Note Claim totals $14,464,069.55.

Class VII:    Equity Holders

One Hundred percent (100%) of the stock of the Debtor is owned by Tokuyama

Corporation.  Equity Holders will not receive any distribution under the Amended Plan.


The Debtor believes that a liquidation under Chapter 7 would result in substantially

reduced recovery of funds by the estate because of additional administrative expenses involved

in the appointment of a trustee for the Debtor and attorneys and other professionals to assist such

trustees.  This appointment procedure will also delay payment to creditors for several months.

Further, it is likely that Claims and Interests in the Chapter 7 case may not be classified

according to the classifications provided in the Amended Plan, and that the Parent will not

subordinate its claims which exceed $25,000,000.  In the absence of a contrary determination by

the Bankruptcy Court, all pre-Chapter 11 unsecured creditors, including the Parent, would be

treated as one Class for the purposes of determining the potential distributions of the liquidation

proceeds resulting from the Chapter 7 case of the Debtor. The distributions from the liquidation

proceeds would be calculated ratably according to the amount of the aggregate Claims held by

each Creditor. Thus, if the Parent's claims were allowed, the result would be a significant

increase in the amount of unsecured debt and decrease in the available monies to be paid to

creditors. Accordingly, the Debtor believes that if Holders of Claims could or would receive

anything in a Chapter 7 liquidation, such Holders of Claims may be expected to receive

substantially smaller distributions pursuant to a Chapter 7 liquidation than under the Amended

Plan.

**ARTICLE IX**

**TAX CONSEQUENCES OF CONFIRMATION**

The following discussion summarizes some United States federal income tax consequences of the Amended Plan to the Debtor.  The analysis contained herein is based upon the Internal Revenue Code of 1986, as amended (the "IRC"), the Treasury Regulations promulgated and proposed thereunder (the "regulations"), judicial decisions and published administrative rulings and pronouncements of the Internal Revenue Service as in effect on the date hereof.  Legislative, judicial or administrative changes or interpretations hereafter enacted or promulgated could alter or modify the analysis and conclusions set forth below.  Any such changes or interpretations may be retroactive and could affect significantly the federal income tax consequences discussed below.  This summary does not address foreign, state or local income tax, or any estate or gift tax consequences of the Amended Plan, nor does it purport to address the federal income tax consequences of the Amended Plan to special classes of taxpayers (such as foreign companies, nonresident alien individuals, S corporations, banks, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, broker-dealers and tax-exempt organizations).  Accordingly, this summary should not be relied upon for purposes of determining the specific tax consequences of the Amended Plan with respect to a particular holder of a Claim or Equity Interest.

**THE TAX CONSEQUENCES TO HOLDERS OF CLAIMS OR EQUITY INTERESTS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER.  MOREOVER, THE TAX CONSEQUENCES OF CERTAIN ASPECTS OF THE AMENDED PLAN ARE UNCERTAIN DUE TO THE LACK OF APPLICABLE LEGAL PRECEDENT AND THE POSSIBILITY OF CHANGES IN THE LAW.  NO**

39

**RULING HAS BEEN APPLIED FOR OR OBTAINED FROM THE INTERNAL REVENUE SERVICE WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE AMENDED PLAN AND NO OPINION OF COUNSEL HAS BEEN REQUESTED OR OBTAINED BY THE DEBTOR WITH RESPECT THERETO. THIS DISCUSSION DOES NOT CONSITUTE TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED. THERE CAN BE NO ASSURANCE THAT THE INTERNAL REVENUE SERVICE WILL NOT CHALLENGE ANY OR ALL OF THE TAX CONSEQUENCES DESCRIBED HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE SUSTAINED. ACCORDINGLY, EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN OR OTHER TAX CONSEQUENCES OF THE AMENDED PLAN. THE DISCLOSURE OF TAX CONSEQUENCES TO THE DEBTOR IS INTENDED SOLELY FOR THE PURPOSE OF ALERTING READERS TO POSSIBLE TAX ISSUES THIS AMENDED PLAN MAY PRESENT TO THE DEBTOR. THE PROPONENT CANNOT AND DOES NOT REPRESENT THAT THE TAX CONSEQUENCES CONTAINED BELOW ARE THE ONLY TAX CONSEQUENCES OF THE AMENDED PLAN.**

Federal Income Tax Consequences to the Debtor.

If the Debtor had not filed its bankruptcy petition, General Ceramics, Inc. generally must include in gross income the amount of any cancellation of indebtedness ("COD") income that is realized during its taxable year. COD income is the difference between the amount of a taxpayer's indebtedness that is canceled and the amount or value of the consideration exchanged therefor. Because the Debtor is in a Chapter 11 bankruptcy proceeding, however, the Debtor may be able to utilize a special tax provision which excludes from COD income debts discharged

in a Chapter 11 case.  If such is the case, the Debtor will not be required to recognize COD

income, but must instead reduce certain tax attributes ("Tax Attributes") by the amount of

unrecognized COD income in the manner prescribed by the IRC section 108(b).  Tax Attributes

include net operating losses, capital losses and loss carryovers, certain tax credits and, subject to

certain limitations, the tax basis of property.

## ARTICLE X

## DISCHARGE AND INJUNCTION

A.    <u>Discharge of the Debtor</u>.  Pursuant to section 1141(d)(3) of the Bankruptcy Code,

confirmation of the Amended Plan will not discharge Claims against or Interests in the Debtor;

<u>provided, however</u>, that no holder of a Claim against or Interest in the Debtor may, on account of

such Claim or Interest seek or receive any payment or other distribution from, or seek recourse

against, the Debtor, its successors or its property.

Following the making of the final distribution under the Amended Plan and the

dissolution of the Debtor, neither the Estate nor the Debtor will have any remaining assets.

Accordingly, the distributions to be made pursuant to the Amended Plan will be the <u>only</u>

distributions that will be made to holders of Claims against or Interests in the Debtor.  As a

practical matter, therefore, although the Debtor will not be receiving a discharge under section

1141(d)(3) of the Bankruptcy Code, the only recovery to be afforded to holders of Claims against

and Interests in the Debtor will be the recovery afforded pursuant to the provisions of the

Amended Plan.

B.    <u>Injunction</u>.

Except as otherwise provided in the Amended Plan, the Confirmation Order shall

provide, among other things, that from and after the Confirmation Date all persons who have

held, hold or may hold Claims against or Interests in the Debtor are (i) permanently enjoined

from taking any of the following actions against the Estate or the Debtor, or any of Debtor's property on account of any such Claims or Interests and (ii) preliminarily enjoined from taking any of the following actions against the Debtor or its property on account of such Claims or Interests:  (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor, and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Amended Plan, provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of the Amended Plan.

## ARTICLE XI

### RECOMMENDATION

The Debtor recommends that Holders of Claims vote in favor of this Amended Plan. Creditors are receiving better economic treatment than they would receive in Chapter 7 liquidation and in a more expeditious manner. In the event this Amended Plan was not confirmed, the Bankruptcy Court may convert the proceeding to a liquidation under Chapter 7, in which event another layer of administrative claims would arise. In addition, Tokuyma Corporation may not be willing to subordinate its multi-million dollar claims to claims of other Creditors, thereby increasing the amount of unsecured claims and diluting the fund of money to be paid to Creditors. Prompt acceptance and confirmation of this Amended Plan will allow Creditors to begin receiving payments in a short period of time.

GENERAL CERAMICS, INC.

By: _Shuji McPawni_

Dated: May 25 2001

43

NWK2: 807913.05