**Exhibit A to Certified Copy of Amended Disclosure Statement for Amended Plan of Orderly Liquidation of General Ceramics, Inc.**

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

-------------------------------------------------X

In re:                              :       Chapter 11
                                :
General Ceramics, Inc.,             :       Case No. 99-33403 (RG)
                                :
    Debtor.        :
                                :
-------------------------------------------------X

## AMENDED PLAN OF ORDERLY LIQUIDATION OF
## GENERAL CERAMICS, INC.

McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
Attorneys for General Ceramics, Inc.
RWH 2033



# TABLE OF CONTENTS

Page No.

ARTICLE I
DEFINITIONS.................................................................................................1

ARTICLE II
CLASSIFICATION OF CLAIMS AND INTERESTS ...................................10
    A.  Class I:    Priority Creditors .........................................................10
    B.  Class II:   Claims of Tennessee Plaintiffs.................................10
    C.  Class III:  EPA Claim. .................................................................10
    D.  Class IV:  Unsecured Claims and Claims of the Supplemental
                     Savings Plan Participants...............................................10
    E.  Class V:    Tokuyama Subrogation Claim. ...............................10
    F.  Class VI:   Tokuyama Note Claim.............................................11
    G.  Class VII: Equity Holders .........................................................11

ARTICLE III
TREATMENT OF CLASSES UNDER THE AMENDED PLAN ...................12
    A.  Class I:    Priority Creditors .......................................................13
    B.  Class II:   Claims of Tennessee Plaintiffs.................................13
    C.  Class III:  EPA Claim. .................................................................13
    D.  Class IV:  Unsecured Claims and Claims of the Supplemental
                     Savings Plan Participants...............................................13
    E.  Class V:    Tokuyama Subrogation Claim. ...............................13
    F.  Class VI:   Tokuyama Note Claim.............................................14
    G.  Class VII: Equity Holders .........................................................14

ARTICLE IV
MEANS FOR IMPLEMENTATION OF THE AMENDED PLAN...............15
    A.  General Provisions .........................................................................15
    B.  Covenant Not to Sue; Releases ...................................................16
        (i) Covenant Not to Sue .....................................................16
        (ii) Releases.........................................................................16
    C.  Limitation of Liability...................................................................17
    D.  Preservation of Insurance.............................................................17

ARTICLE V
SETTLEMENT OF TOKUYAMA CLAIMS ..............................................18
    A.  Tokuyama Settlement .....................................................................18
    B.  Release Under the Amended Plan.................................................18

ARTICLE VI
PROVISIONS REGARDING CORPORATE
GOVERNANCE AND MANAGEMENT OF THE DEBTOR..........................................19
    A.  Continued Corporate Existence; Dissolution of the Debtor................19
    B.  Certificate of Incorporation and By-laws............................................19
    C.  Directors and Officers; Effectuating Documents; Further
        Transactions .....................................................................................20
    D.  Insurance ...........................................................................................20
    E.  Securities to be Issued or Canceled Pursuant to this Amended Plan ...20
        1.  New Equity Interests.................................................................20
        2.  Cancellation and Surrender of Existing Securities and
            Agreements .......................................................................21
    F.  Plan Supplement ................................................................................21

ARTICLE VII
EXECUTORY CONTRACTS AND UNEXPIRED LEASES.........................................22

ARTICLE VIII
EFFECTIVENESS OF THE AMENDED PLAN .............................................................23

ARTICLE IX
MISCELLANEOUS PROVISIONS.............................................................................24
    A.  Corporate Authority ..........................................................................24
    B.  No Distribution in Excess of Allowed Amount of Claim ...................24
    C.  Withholding Taxes. ...........................................................................24
    D.  Binding Effect of the Amended Plan. ................................................24
    E.  Modification of the Amended Plan. ...................................................24
    F.  Tax Provision....................................................................................25
    G.  Notices. .............................................................................................25
    H.  Headings............................................................................................25
    I.   Severability.......................................................................................25
    J.   Discharge of the Debtor ....................................................................26
    K.  Injunction..........................................................................................26

ARTICLE X
RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT.........................27

General Ceramics, Inc., the debtor and debtor-in-possession in the above Chapter 11 case, by and through its attorneys, McCarter & English, LLP, hereby proposes this Amended Plan of Orderly Liquidation, pursuant to the provisions of Chapter 11 of Title 11, United States Code, 11 U.S.C. §§ 101, et seq.

## ARTICLE I

## DEFINITIONS

Unless otherwise defined in this Amended Plan of Orderly Liquidation (the "Amended Plan"), all terms used herein shall have the meanings assigned to such terms under the United States Bankruptcy Code. For purposes of this Amended Plan the following terms (which appear in the Amended Plan as capitalized terms) shall have the meanings set forth below, and such meanings shall be equally applicable to the singular and plural form of the terms defined, unless otherwise stated.

(a)    "Administrative Claim" shall mean, and be the collective reference to, all costs and expenses of administration of the Orderly Liquidation Case with priority under Bankruptcy Code Section 507(a)(1), including, without limitation, costs and expenses allowed under Bankruptcy Code Section 503(b), the actual and necessary costs and expenses of preserving the Estate and the indebtedness or obligations incurred or assumed by the Debtor and any fees or charges assessed against the Estate under 28 U.S.C. §1930.

(b)    "Allowed Claim" shall mean a Claim which (i) has been scheduled by the Debtor pursuant to Bankruptcy Rule 1007 and is not scheduled as disputed, contingent or unliquidated, unless a timely objection to such Claim has been made; (ii) or is a Claim as to which a timely proof of Claim has been filed as of the Bar Date and no objection thereto, or application to equitably subordinate or otherwise limit recovery, has been made as provided herein or (iii) has

1

been allowed by a Final Order or by this Amended Plan. An Allowed Claim shall not include interest on the amount of any Claim.

(c)    "Allowed Tax Claim" shall mean an Allowed Claim under Section 507(a)(8) of the Bankruptcy Code.

(d)    "Allowed Unsecured Claim" shall mean any Allowed Claim which is neither entitled to priority under the Bankruptcy Code or order of the Bankruptcy Court, nor an Allowed Claim of the Tennessee Plaintiffs, nor the Allowed Claim of the EPA, nor an Allowed Claim of the Supplemental Savings Plan Participants, nor any Allowed Claim of Tokuyama Corporation, as otherwise specified herein.

(e)    "Amended Plan" shall mean this Amended Plan of Orderly Liquidation (as the same may be from time to time, modified or amended in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Amended Plan) and any documents incorporated herein by reference.

(f)    "Bankruptcy Code" shall mean Title 11 of the United States Code, 11 U.S.C. § 101 et seq.

(g)    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of New Jersey.

(h)    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure under Section 2075, Title 28, United States Code, which became effective August 1, 1983 and the Local Rules of Bankruptcy Procedure for the District of New Jersey which became effective on April 15, 1993, as the same shall from time to time be amended.

(i)    "Bar Date" shall mean September 7, 1999, the date fixed by the Bankruptcy Court by which all Entities asserting a Claim must file a Proof of Claim or Interest or be forever barred

from asserting such Claim or Interest against the Debtor or its property, and from voting on the Amended Plan and/or sharing in the distribution thereunder.

(j)    "Cash" shall mean cash equivalents, including but not limited to bank deposits, checks and similar items.

(k)    "Cause of Action" shall mean all rights, remedies, claims, actions, causes of action, avoiding powers, suits, proceedings, contracts, judgments, damages and demands whatsoever in law or in equity, whether pending or not, whether known or unknown, contingent or otherwise, presently of the Debtor.

(l)    "Class" shall mean any group of Holders of Claims or Interests designated as such under this Amended Plan.

(m)    "Confirmation" shall mean the execution by the Bankruptcy Court of an Order confirming the Amended Plan pursuant to Section 1129 of the Bankruptcy Code with regard to the Debtor.

(n)    "Confirmation Date" shall mean the date on which the Confirmation Order is executed by the Bankruptcy Court.

(o)    "Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Amended Plan with regard to the Debtor, pursuant to Section 1129 of the Bankruptcy Code, and approving the transactions contemplated herein.

(p)    "Creditor" shall mean any entity that is a Holder of a Claim against the Debtor that arose or is deemed to have arisen on or before the Confirmation Date, including, without limitation, Claims of the kind specified in Bankruptcy Code Sections 502(b), 502(h) or 502(i).

(q)    "Debtor" or "Debtor-in-Possession" shall mean General Ceramics, Inc., the debtor herein.

(r)    "Disbursing Agent" shall mean Walker, Truesdell, Radick & Associates and Hobart Truesdell, a principal thereof, who are charged with the obligation of distributing amounts, if any, to be paid to creditors in strict accordance with the Amended Plan of Orderly Liquidation as defined herein.

(s)    "Disputed Claim" shall mean a Claim against the Debtor to the extent that a Proof of Claim has been timely filed or deemed timely filed under applicable law; and, as to which an objection has been or may be timely filed, which objection, if timely filed, has not been withdrawn on or before any date fixed for filing such objections by the Amended Plan or order of the Bankruptcy Court, and has not been denied by a Final Order.

(t)    "Effective Date" shall mean the tenth (10th) calendar day after the latest to occur of each of the following: (a) entry of: (1) the Order for Confirmation (2) an Order approving the EPA Settlement Agreement (3) an Order approving the Tennessee Plaintiffs Settlement Agreement (4) an Order approving any agreement among the Debtor, The Pension Benefit Guaranty Corporation and/or Tokuyama Corporation for the assumption by Tokuyama Corporation of sponsorship of the General Ceramics, Inc. Pension Plan for Employees (5) Order approving an agreement, if any, for settlement of the PRP Claims or granting the Motion of the Official Committee of Unsecured Creditors to expunge the PRP Claims (6) Order approving any settlement with Raytheon Company regarding its claim against the estate or granting the Debtor's motion to expunge its claim and (b) (i) the occurrence of the Tokuyama Assumption Date or (ii) such date after entry of the Order for Confirmation agreed upon by the Debtor and the Official Committee of Unsecured Creditors.

(u)    "Entity" shall mean any individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, estate, entity, trust, trustee, unincorporated organization, government, governmental unit (as defined in section 101(27) of

4

the Bankruptcy Code), agency or political subdivision thereof, the United States Trustee or any other entity.

(v)    "EPA Claim" shall mean the Claim of the United States Environmental Protection Agency in the amount of $27,142,442.

(w)    "EPA Settlement Agreement" shall mean the settlement agreement between the Debtor and the EPA which provides, inter alia, that the EPA will be provided an allowed claim of $275,000 and that Tokuyama Corporation subordinate all of its claims to payment on the Allowed Unsecured Claims (excluding interest).

(x)    "Equipment Escrow" shall mean the $60,000 escrowed by the Debtor from the sale proceeds of the Debtor's California Assets pending resolution of ownership of certain equipment sold to General Ceramics, LLC.

(y)    "Escrow Fund" shall mean the $398,107.05 being held in escrow for thirteen (13) months from October 3, 2000 to November 3, 2001 by McCarter & English, LLP as escrow agent pursuant to §2.4 of the asset purchase agreement for the sale of the Debtor's New Jersey Assets.

(z)    "Estate" shall mean the estate created by Section 541 of the Bankruptcy Code upon the commencement of this Orderly Liquidation Case.

(aa)    "Executory Contract" shall mean any executory contract or unexpired lease subject to Section 365 of the Bankruptcy Code, between the Debtor and any other entity.

(bb)    "Filed" shall mean filed with the Bankruptcy Court in the Orderly Liquidation Case.

(cc)    "Final Order" shall mean an order or judgment of the Bankruptcy Court as entered on the docket that has not been reversed, stayed, modified or amended and as to which the time to appeal, petition for certiorari, or seek reargument or rehearing has run or as to which any right

to appeal, reargue, petition for certiorari or seek rehearing has been waived in writing in a manner satisfactory to the Debtor or, if an appeal, reargument, petition for certiorari, or rehearing thereof has been denied, and the time to take any further appeal or to seek certiorari or further reargument or rehearing has expired.

(dd)    "General Ceramics, Inc. Pension Plan for Employees" shall mean the pension plan of which the Debtor is currently the contributing sponsor but of which Tokuyama Corporation will assume sponsorship pursuant hereto.

(ee)    "Holder" shall mean the owner or holder of any Claim or Interest.

(ff)    "Interest" shall mean any share of preferred stock or common stock or other instrument evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire, sell or subscribe for any such interest.

(gg)    "Laser Company Lawsuit" shall mean, the adversary proceeding commenced by the Debtor on October 7, 1999 against McMahan Lasers Corporation bearing Adversary No. 99-3958.

(hh)    "New Equity Interests" shall mean one share of common stock of the Debtor, $1.00 par value, to be issued to the Disbursing Agent on the Effective Date.

(ii)    "Old Equity Interests" shall mean the legal, equitable and contractual rights resulting from being a Holder of an Interest in the Debtor prior to the Effective Date.

(jj)    "Orderly Liquidation Case" shall mean this Chapter 11 case of the Debtor.

(kk)    "Plan Supplement" shall mean the forms of documents specified in Article VI.F. of this Amended Plan.

(ll)    "Pro Rata" shall mean, as to any distribution provided for by the Amended Plan in respect of any Class of Claims, the allocation of the aggregate amount of such distribution to

any Class in accordance with that percentage of the total of Allowed Claims in such Class that is represented by the Allowed Claims receiving the distribution.

(mm)   "PRP Claims" shall mean the six claims filed against the Estate aggregating $135,734,000 seeking contribution from the Debtor for response costs incurred and to be incurred by the United States and by any private party at the Boarhead Farms, Bucks County, Pennsylvania Superfund Site.

(nn)   "Supplemental Savings Plan Participants" shall mean those Creditors who were employees of the Debtor who participated in the Debtor's Supplemental Savings Plan which was in addition to participation in the Debtor's 401-K Plan.

(oo)   "Tennessee Plaintiffs" shall mean, collectively the following Creditors who filed unsecured and unliquidated claims against the Estate aggregating $49,000,000 for damages for alleged injuries from chronic beryllium disease:

        Debra Joy Langley
        John Langley
        Kathleen Beatty
        Troy Murphy Morgan
        Karen McCarter
        Corky Dean McCarter
        Wilma D. Myers
        Richard Emory Myers, Sr.
        Genise Foster
        Gary S. Foster
        Rose Mary Hall
        Jerry Lynn Hall
        Craig E. Hall
        Patricia Grant
        James L. Grant
        Ann Orick; and
        Macy A. Orick

(pp)   "Tennessee Plaintiffs Settlement Sum" shall mean the amount of $200,000 which the Debtor will pay to the Tennessee Plaintiffs on their claims.

(qq)    "Tennessee Plaintiffs Settlement Agreement" shall mean the agreement between the Tennessee Plaintiffs and the Debtor for settlement of their claims.

(rr)    "Tokuyama Assumption Date" means the earliest date when each of the following has occurred:

    (1)    Tokuyama Corporation has executed an agreement in form and substance reasonably satisfactory to the Debtor assuming sponsorship (the "Tokuyama Assumption") of the General Ceramics, Inc. Pension Plan for Employees;

    (2)    Any entity required by law to approve the Tokuyama Assumption has given its approval;

    (3)    The Claim of the Pension Benefit Guaranty Corporation has been voluntarily withdrawn or expunged by the Bankruptcy Court following the Debtor's objection thereto; and

    (4)    Any required Court approval of the Tokuyama Assumption has been given.

(ss)    "Tokuyama Corporation" or the "Parent" shall mean the corporate parent of the Debtor which owns 100% of the stock of the Debtor.

(tt)    "Tokuyama Note Claim" shall mean the Claim of Tokuyama Corporation in the allowed amount of $14,464,069.55 for loans to the Debtor and trade debt incurred prior to the Orderly Liquidation Case.

(uu)    "Tokuyama Subrogation Claim" shall mean the Claim of The Sanwa Bank Limited, as filed by Tokuyama Corporation, as subrogee to The Sanwa Bank Limited, allowed in the amount of $11,307,786.89.

(vv)    "Tokuyama Settlement" shall mean the compromise and settlement between the

Debtor and Tokuyama to be effected in accordance with Article V hereof.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Allowed Tax Claims have not been classified under this Amended Plan. The classification of Claims is made for purposes of voting on and making Distributions under the Amended Plan and for ease of administration hereof. A Claim shall be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class.

A.      Class I: Priority Creditors.

This Class consists of the Allowed Claims of Priority Creditors.

B.      Class II: Claims of Tennessee Plaintiffs.

This Class consists of Allowed Claims of the Tennessee Plaintiffs.

C.      Class III: EPA Claim.

This Class consists of the Allowed Claim of the United States Environmental Protection Agency in the amount of $275,000.

D.      Class IV: Unsecured Claims and Claims of the Supplemental Savings Plan Participants.

This Class consists of all Allowed Unsecured Claims and Allowed Claims of Supplemental Savings Plan Participants.

E.      Class V: Tokuyama Subrogation Claim.

This Class consists of the Allowed Claim of Tokuyama Corporation, as Subrogee, to The Sanwa Bank Limited in the amount of $11,307,786.89.

F.     Class VI:  Tokuyama Note Claim.

This Class consists of the Allowed Claim of Tokuyama Corporation in the amount of $14,464,069.55 for loans to the Debtor and trade debt incurred prior to the Orderly Liquidation Case.

G.     Class VII:  Equity Holders.

This Class consists of the interests of Holders of Old Equity Interests.

## ARTICLE III

## <u>TREATMENT OF CLASSES UNDER THE AMENDED PLAN</u>

The treatment of and consideration to be received by Holders of Allowed Claims shall be pursuant to this Article III.  As set forth herein, the Disbursing Agent will endeavor to disburse to Creditors as much as possible from cash on hand, taking into consideration the amount of funds necessary to pay for liabilities of the Estate.  However, notwithstanding anything to the contrary herein, the Debtor reserves its right to delay any distribution to creditors pending any determination by the Court of the Debtor's tax liability under 11 U.S.C. §505.

Administrative Claimants shall be paid in full on the Effective Date, or if the Claim is disputed, within thirty (30) days of a Court Order fixing the amount of such Claim.  The Debtor intends to establish a bar date with respect to the filing of Administrative Claims.

With respect to professional fees, professionals seeking payment of services for fees and expenses under this Class shall receive payment only to the extent such fees and services are permitted under the Bankruptcy Code.  The Debtor reserves the right to object to such applications to the extent the requested relief is not permitted under the Bankruptcy Code.  The exact amount of the professional fees that will be sought is presently unknown.  However, pursuant to the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals entered by the Court on April 15, 1999, the Debtor is authorized to pay seventy-five percent (75%) of allowed fees to the professionals retained in this case.  To date, the remaining twenty-five percent (25%) totals approximately $350,000 (the "Holdback").  Any claims for professional fees incurred prior to the Effective Date will be the subject of an application filed with the Bankruptcy Court within sixty (60) days after the Effective Date, or shall forever be barred.  Any professional fees incurred after the Effective Date will be paid directly by the Debtor and will not be subject to approval by the Court.

A.    Class I:  Priority Creditors.

All Creditors entitled to priority under 11 U.S.C. § 507 other than Administrative Claims and Allowed Tax Claims shall be paid in accordance with the provisions and priorities of the Bankruptcy Code.  All claims of members of this Class shall be paid in full on the later of within ten (10) days of the Effective Date, or the entry of an Order allowing such claim.  This Class is unimpaired.

B.    Class II:  Claims of Tennessee Plaintiffs.

The Debtor will pay the Tennessee Plaintiffs Settlement Sum in full to the Tennessee Plaintiffs within ten (10) days of the Effective Date.  Tennessee Counsel is currently preparing the Tennessee Plaintiffs Settlement Agreement which will authorize the Tennessee Counsel to distribute specific sums from the Tennessee Plaintiffs Settlement Sum to the individual Tennessee Plaintiffs.  This Class is unimpaired.

C.    Class III:  EPA Claim.

Pursuant to the EPA Settlement Agreement, the EPA will be provided an allowed claim of $275,000 which will be paid in full within ten (10) days of the Effective Date.  This Class is unimpaired.

D.    Class IV:  Unsecured Claims and Claims of the Supplemental Savings Plan Participants.

After payment in full to Administrative Claimants and Classes I, II and III, Allowed Unsecured Claims will be paid with the Allowed Claims of the Supplemental Savings Plan Participants within ten (10) days of the Effective Date on a pro rata basis until their claims are satisfied in full without interest. This Class is impaired.

E.    Class V:  Tokuyama Subrogation Claim.

The Tokuyama Subrogation Claim is the only claim in this Class.  Following payment in full without interest to Administrative Claimants and Classes I, II, III, and IV, remaining

proceeds of liquidation, if any, will be distributed to Tokuyama Corporation for the Tokuyama Subrogation Claim. Provided that Administrative Claimants and Classes I, II, III and IV have been paid in full without interest on their Allowed Claims, the Debtor will assign to Tokuyama Corporation any of the Debtor's right, title and interest in the Escrow Fund and the Laser Company Lawsuit and will release the Equipment Escrow to the Parent. This Class is impaired.

     F.     Class VI: <u>Tokuyama Note Claim</u>.

The claim of Tokuyama for loans to the Debtor and trade debt incurred prior to the commencement of this bankruptcy proceeding is the only claim in this Class. After payment in full to Administrative Claimants, and Classes I, II, III, IV and V, remaining proceeds of liquidation, if any, will be distributed to Tokuyama for the Tokuyama Note Claim. This Class is impaired.

     G.     Class VII: <u>Equity Holders</u>.

The Old Equity Interests shall be cancelled and the Holders of Old Equity Interests shall not be entitled to, and shall not, receive or retain any property or interest in property in exchange for such Old Equity Interests. The Holders of Old Equity Interests are deemed to have rejected the Amended Plan and are, therefore, not entitled to vote.

**ARTICLE IV**

**MEANS FOR IMPLEMENTATION OF THE AMENDED PLAN**

A.    <u>General Provisions</u>.

The Debtor has invested any cash on hand and the proceeds from the sale of the California Assets in a United States Treasury Bill.  As of May 16, 2001, the available funds totalled approximately $4,600,000.  At the hearing on Confirmation, the Debtor shall request that the Court approve its selection of an individual who will act as Disbursing Agent under the Amended Plan.

No payments or distribution shall be made with respect to any portion of a Claim which is a Disputed Claim pending the resolution of such dispute by a Final Order.  After the Confirmation Order is entered by the Bankruptcy Court, only the Debtor or the Disbursing Agent may object to the allowance of Claims with respect to which there is a dispute as to liability or amount.  At this time, with the exception of Administrative Claims pursuant to Article III, the Debtor expects that these would be limited to any claims for rejection of executory contracts and unexpired leases.  <u>See also infra</u>, ARTICLE VII.  Unless otherwise provided herein or as ordered by the Bankruptcy Court, the Debtor shall have the later of sixty (60) days after the Confirmation Date or the date the Claim is filed with the Bankruptcy Court to file an objection to such claim. Any Cash that is unclaimed for three (3) months after distribution thereof by mail to the latest mailing address by or for the holder of an Allowed Claim shall be distributed to Tokuyama Corporation on its Subrogation Claim.  All distributions under the Amended Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall file the reports required by the applicable Local Rules and the United States Bankruptcy Rules.

From and after the Confirmation Date, the Disbursing Agent may apply to the Bankruptcy Court for an order providing such relief as is necessary to implement the provisions

15

of the Amended Plan. Whenever any payment of a fraction would be required on a payment, the actual payment shall be rounded down. Notwithstanding any other provision of the Amended Plan to the contrary, no payment will be made on account of an Allowed Claim where the amount of such payment would be less than $5.00.

B.    Covenant Not to Sue; Releases.

    (i) Covenant Not to Sue.

As of the Effective Date, and except as otherwise provided in this Amended Plan or the Confirmation Order, the Debtor and Debtor-in-Possession (a) shall be deemed to have covenanted with Tokuyama Corporation to waive and not to (x) sue or otherwise seek any recovery from Tokuyama Corporation, or its property, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence taking place on or before the Effective Date in any way relating to the Debtor, the Orderly Liquidation Case or the Amended Plan or (y) assert against Tokuyama Corporation, or its property any claim, obligation, right, cause of action, or assert in any case, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part upon any act or omission, transaction, or other occurrence taking place on or before the Effective Date in any way relating to the Debtor, the Orderly Liquidation Case or the Amended Plan and (b) are permanently enjoined, on and after the Effective Date, from commencing or continuing in any manner any action or other proceeding of any kind with respect to such claims, obligations, rights, cause of action, or liabilities released hereunder.

    (ii)    Releases.

As of the Effective Date, Tokuyama Corporation on the one hand, and the Debtor and Debtor-in-Possession on the other hand, hereby release each other and their respective officers,

directors, agents, financial advisors, attorneys, employees, and representatives and property from any and all claims, obligations, rights, causes of action, and liabilities which the Debtor and Tokuyama Corporation may be entitled to assert in any case, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, whether known or unknown, whether foreseen or unforeseen, existing or hereafter arising, based in whole or in part upon any act or omission, transaction, or other occurrence taking place on or before the Effective Date in any way relating to the Debtor, the Orderly Liquidation Case, or the Amended Plan, with the exception of the parties' obligations under this Amended Plan.

C.    Limitation of Liability.

Except as otherwise provided in the Amended Plan, the Debtor, the Debtor-in-Possession and their officers, directors, agents, financial advisors, attorneys, employees, and representatives shall not have or incur any liability to any Entity for any act or omission in connection with or arising out of the formulation, preparation, dissemination, prosecution, confirmation, consummation, discussion, implementation or administration of this Amended Plan, the Disclosure Statement, any contract, release, or other agreement or document created or entered into, the property to be distributed under the Amended Plan, or any other action taken or omitted to be taken in connection with this Chapter 11 case or this Amended Plan, except for gross negligence or willful misconduct.

D.    Preservation of Insurance.

Nothing provided herein shall diminish or impair the enforceability of any insurance policy that may cover Claims against Debtor (including, without limitation, its officer and directors) or any other person or entity.

# ARTICLE V

## SETTLEMENT OF TOKUYAMA CLAIMS

A.    <u>Tokuyama Settlement</u>.  The Tokuyama Settlement will be effective as of the Effective Date.  The terms of the Tokuyama Settlement are as follows:

(1)    The only rights of Tokuyama Corporation against the Debtor are those specifically provided in this Amended Plan; and

(2)    On the Effective Date, the Tokuyama Subrogation Claim shall be deemed an Allowed Unsecured Claim in Class V in the amount of $11,307,786.89; and

(3)    On the Effective Date, the Tokuyama Note Claim shall be deemed an Allowed Unsecured Claim in Class VI in the amount of $14,464,069.55; and

(4)    Tokuyama Corporation agrees to subordinate its Allowed Unsecured Claims as provided in this Amended Plan; and

(5)    Tokuyama Corporation shall assume sponsorship of the General Ceramics, Inc. Pension Plan for Employees and shall execute an agreement in form and substance reasonably satisfactory to the Debtor to implement the Tokuyama Assumption; and

(6)    Tokuyama Corporation shall obtain any necessary governmental approval of the Tokuyama Assumption; and

(7)    On the Effective Date, the Debtor shall release the Equipment Escrow to Tokuyama Corporation.

B.    <u>Release Under the Amended Plan</u>.  Tokuyama Corporation and the Debtor shall also exchange mutual general releases under Article IV (B)(ii) hereof.

**ARTICLE VI**
**PROVISIONS REGARDING CORPORATE**
**GOVERNANCE AND MANAGEMENT OF THE DEBTOR**

The Debtor shall be managed by the Disbursing Agent following entry of the

Confirmation Order.  The Disbursing Agent shall be compensated in accordance with the

provisions in Article III hereof governing payment to professionals.  The Committee shall

continue in effect until the Effective Date.

A.      Continued Corporate Existence; Dissolution of the Debtor.

The Debtor shall continue to exist after the Effective Date in accordance with the laws of

the State of New Jersey and pursuant to the certificate of incorporation and by-laws in effect

prior to the Effective Date, except to the extent such certificate of incorporation and by-laws are

amended under this Amended Plan, for the limited purposes of (i) distributing all of the assets of

the Debtor's Estate; and (ii) pursuing any Causes of Action which the Debtor may possess.  As

soon as practicable after the Disbursing Agent exhausts the assets of the Debtor in Possession's

Estate by making the final distribution of Cash under this Amended Plan, the Disbursing Agent

shall (i) effectuate the dissolution of the Debtor in accordance with the laws of the State of New

Jersey and (ii) resign as the sole officer and sole director of the Debtor.

B.      Certificate of Incorporation and By-laws.

The certificate of incorporation and by-laws of the Debtor shall be amended as necessary

to satisfy the provisions of this Amended Plan and the Bankruptcy Code.  The certificate of

incorporation of the Debtor shall be amended to, among other things: (i) include, pursuant to

section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting

equity securities, and (ii) limit the activities of the Debtor to matters related to the

implementation of this Amended Plan.  The forms of the documents relating to the amended

certificate of incorporation and by-laws shall be contained in the Plan Supplement and shall be filed with the Court as described in Article VI.F. of the Amended Plan.

C.    Directors and Officers; Effectuating Documents; Further Transactions.

From and after the Effective Date, the Disbursing Agent shall serve as the sole officer and sole director of the Debtor. The Disbursing Agent shall be authorized to execute, deliver, file or record such documents, instruments, releases and other agreements and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Amended Plan.

D.    Insurance.

The Disbursing Agent shall be authorized to obtain all reasonably necessary insurance coverage for himself, his agents, representatives, employees or independent contractors, and the Debtor, including, but not limited to, coverage with respect to (i) any property that is or may in the future become the property of the Debtor and (ii) the liabilities, duties and obligations of the Disbursing Agent and his agents, representatives, employees or independent contractors (in the form of an errors and omissions policy or otherwise), the latter of which insurance coverage may, at the sole option of the Disbursing Agent, remain in effect for a reasonable period (not to exceed seven years) after the dissolution of the Debtor.

E.    Securities to Be Issued or Canceled Pursuant to this Amended Plan.

1.    New Equity Interests.

On the Effective Date, the Debtor will issue one share of New Equity Interests to the Disbursing Agent.

2.    <u>Cancellation and Surrender of Existing Securities and Agreements</u>.

On the Effective Date, the Old Equity Interests shall be canceled and shall have no further legal effect.  The Holder of the Old Equity interests shall surrender their existing stock certificates.

F.    <u>Plan Supplement</u>.

Forms of the documents relating to the amended certificate of incorporation and the amended by-laws shall be contained in the Plan Supplement which shall be filed with the Clerk of the Court no later than ten (10) days before the Effective Date.  The Plan Supplement may be inspected in the officer of the Clerk of the Court during normal court hours.  Holders of Claims or Equity Interests may obtain a copy of the Plan Supplement upon written request to the Debtor in Possession in accordance with Article IX.G. of the Amended Plan.

## ARTICLE VII

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All executory contracts and unexpired leases shall be rejected effective as of the date of the entry of the Confirmation Order, or such earlier time as an Order may be entered rejecting such executory contracts or unexpired leases. The Debtor estimates that these claims will not exceed $250,000. Any party wishing to assert a claim against the Debtor arising from such rejection shall file such claim with the Debtor within thirty (30) days of the rejection of such executory contract or unexpired lease.

## ARTICLE VIII

## **EFFECTIVENESS OF THE AMENDED PLAN**

In the event that one or more of the conditions to the Effective Date as set forth in Article I (t) have not occurred on or before 120 days after the Confirmation Date, after notice of ten (10) business days to counsel to the Debtor and counsel to the Official Committee of Unsecured Creditors of such an alleged failure, Tokuyama Corporation may file an Application with the Court on ten days shortened notice to counsel to the Debtor and counsel to the Official Committee of Unsecured Creditors for an Order providing that: (a) the Confirmation Order is vacated, (b) the Amended Plan is null and void and of no further force and effect, (c) the Debtor and all holders of Claims and Equity Interests are restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (d) the Debtor's obligations with respect to the Claims and Equity Interests remain unchanged.  If such an Order is entered, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

## ARTICLE IX

## MISCELLANEOUS PROVISIONS

A.    <u>Corporate Authority</u>.  The entry of the Confirmation Order shall constitute a direction and authorization to and of the Debtor to take or cause to be taken any corporate action necessary or appropriate to consummate the provisions of this Amended Plan.

B.    <u>No Distribution in Excess of Allowed Amount of Claim</u>.  Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive on account of such Claim any distribution (of a value set forth herein or in the Disclosure Statement) in excess of the Allowed Amount of such Claim.

C.    <u>Withholding Taxes</u>.  Any federal, state or local withholding taxes or other amounts required to be withheld under any applicable law shall be deducted from any payments or other distributions hereunder or otherwise.  All holders of Claims shall be required to provide information to effectuate the withholding of such taxes.

D.    <u>Binding Effect of the Amended Plan</u>.  The provisions of this Amended Plan and the rights, benefits and obligations of any Entity named or referred to in this Amended Plan shall be binding upon, and will inure to the benefit of, such Entity's heirs, executors, administrators, successors, assigns, agents officers and directors.

E.    <u>Modification of the Amended Plan</u>.  Prior to the entry of the Confirmation Order, the Debtor reserves the right in accordance with the Bankruptcy Code, to amend or modify this Amended Plan, and after the entry of the Confirmation Order, the Debtor may, upon the written consent of the Official Committee of Unsecured Creditors, upon order of the Court, amend or modify this Amended Plan in accordance with section 1127 of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Amended Plan in such manner as may be necessary to carry out the purpose and intent of this Amended Plan.

F.    <u>Tax Provision</u>.  The issuance, transfer or exchange of a security, or the making, delivery or recording of a deed or other instrument or transfer under this Amended Plan shall constitute the issuance, transfer or exchange of a security or the making or delivery of an instrument of transfer within the meaning of section 1146(c) of the Bankruptcy Code, and shall not be taxed either to the Debtor's estate, as seller, or to the transferee or recipient thereof under any law imposing a stamp tax or similar tax.

G.    <u>Notices</u>.  All notices or requests to the Debtor in connection with this Amended Plan shall be in writing and will be deemed to have been given when received by first class mail, postage prepaid or by overnight courier addressed to:

> Patricia A. Celano, Esq.
> McCarter & English, LLP
> Four Gateway Center
> 100 Mulberry Street
> Newark, New Jersey 07102

All notices and requests to Entities holding any Claim or Interest in any class shall be sent to them at their last known address or to the last known address of their attorney of record who has filed a notice of appearance in this proceeding.  The party listed above or any successors thereto, and any such holder of a Claim or Interest may designate in writing any other address for purposes of this section, which designation will be effective upon receipt.

H.    <u>Headings</u>.  The headings used in this Amended Plan are inserted for convenience only and neither constitute a portion of this Amended Plan nor in any manner affect the provisions of this Amended Plan.

I.    <u>Severability</u>.  Should any provision in this Amended Plan be determined to be unenforceable, then, in that event, this Amended Plan shall be deemed modified to delete such provision, and such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions in this Amended Plan.

J.    <u>Discharge of the Debtor</u>.  Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of the Amended Plan will not discharge Claims against or Interests in the Debtor; <u>provided</u>, <u>however</u>, that no holder of a Claim against or Interest in the Debtor may, on account of such Claim or Interest seek or receive any payment or other distribution from, or seek recourse against, the Debtor, its successors or its property.

Following the making of the final distribution under the Amended Plan and the dissolution of the Debtor, neither the Estate nor the Debtor will have any remaining assets. Accordingly, the distributions to be made pursuant to the Amended Plan will be the <u>only</u> distributions that will be made to holders of Claims against or Interests in the Debtor.  As a practical matter, therefore, although the Debtor will not be receiving a discharge under section 1141(d)(3) of the Bankruptcy Code, the only recovery to be afforded to holders of Claims against and Interests in the Debtor will be the recovery afforded pursuant to the provisions of the Amended Plan.

K.    <u>Injunction</u>.

Except as otherwise provided in the Amended Plan, the Confirmation Order shall provide, among other things, that from and after the Confirmation Date all persons who have held, hold or may hold Claims against or Interests in the Debtor are (i) permanently enjoined from taking any of the following actions against the Estate or the Debtor, or any of Debtor's property on account of any such Claims or Interests and (ii) preliminarily enjoined from taking any of the following actions against the Debtor or its property on account of such Claims or Interests:  (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or

obligation due to the Debtor, and (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Amended Plan, provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of the Amended Plan.

## ARTICLE X

## RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

Following the Effective Date, the Bankruptcy Court will retain jurisdiction of the Orderly Liquidation Case for the following purposes:

A.    To hear and determine any and all pending applications for the rejection and disaffirmance, assumption or assignment of Executory Contracts, any objection to Claims resulting therefrom and the allowance of Claims resulting therefrom.

B.    To hear and determine any and all applications, adversary proceedings, applications, contested matters and other litigated matters pending on the Confirmation Date.

C.    To ensure that the distributions to Holders of Claims and Interests are accomplished as provided herein.

D.    To hear and determine any objections to Claims filed both before and after Confirmation of the Amended Plan, including any objections to the classification of any Claim or Interest and to allow or disallow any Disputed Claims in whole or in part.

E.     To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified or vacated.

F.     To hear and determine all applications for compensation of professionals and reimbursement of expenses except to the extent not required pursuant to the Amended Plan.

G.     To hear any application(s), if any, to modify the Amended Plan in accordance with Section 1127 of the Bankruptcy Code.

H.     To hear and determine disputes arising in connection with the Amended Plan or its implementation, including disputes arising under agreements, documents or instruments executed in connection with the Amended Plan.

I.     To construe and to take any action to enforce the Amended Plan and issue such orders as may be necessary for the implementation, execution and consummation of the Amended Plan.

J.     To take any action to resolve any disputes arising out of or relating to any Claim or any Interest; to hear and determine other issues presented by or arising under the Amended Plan; and to take any action to resolve any disputes of Creditors with respect to its Claim.

K.     To determine such other mattes and for such other purposes as may be provided in the Confirmation Order.

L.    To hear and determine issues relating to, and issue any necessary orders with respect to, any governmental or regulatory agency or instrumentality.

M.    To hear and determine any other matters not inconsistent with Chapter 11 of the Bankruptcy Code.

N.    To hear and determine any Cause of Action commenced against corporate officers of the Debtor.

GENERAL CERAMICS, INC.

By: _Shunji Matsuura_

Dated: May 25, 2001

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

_____ X

In re:                  :      Chapter 11

General Ceramics, Inc.,        :      Case No. 99-33403 (RG)

            Debtor.     :      Hon. Rosemary Gambardella

_____ X

## BALLOT FOR ACCEPTING OR REJECTING
## DEBTOR'S AMENDED PLAN OF ORDERLY LIQUIDATION

General Ceramics, Inc. (the "Debtor") has filed an Amended Plan of Orderly Liquidation (the "Amended Plan") dated May 25, 2001. The Court has approved an amended disclosure statement (the "Amended Disclosure Statement") with respect to the Amended Plan. The Amended Disclosure Statement provides information to assist you in deciding how to vote on your Ballot. If you do not have the Amended Disclosure Statement, you may obtain a copy from McCarter & English, LLP, Four Gateway Center, 100 Mulberry Street, Newark, New Jersey 07102, Attention: Patricia A. Celano, Esq., (973) 622-4444, (973) 624-7070 (fax). Court approval of the Amended Disclosure Statement does not indicate approval of the Amended Plan by the Court.

**You should review the Amended Disclosure Statement and the Amended Plan before you vote. You may wish to seek legal advice concerning the Amended Plan and your classification and treatment under the Amended Plan. Your claim has been placed in Class [] under the Amended Plan. If you hold claims in more than one class, you will receive a Ballot for each class in which you are entitled to vote.**

**If your Ballot is not received by McCarter & English, LLP, Four Gateway Center, 100 Mulberry Street, Newark, New Jersey 07102, Attention: Patricia A. Celano, Esq., on or before** _____ **and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Amended Plan.**

**If the Amended Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**

ACCEPTANCE OF REJECTION OF THE AMENDED PLAN

A.      If you are the holder of a Class IV Unsecured Claim or Claim of the Supplemental Savings Plan Participants complete this section.

The undersigned, the holder of an unsecured claim in the unpaid principal amount of $_____, hereby:

_____ Accepts the Amended Plan
_____ Rejects the Amended Plan

B.    <u>If you are the holder of the Class V Tokuyama Subrogation Claim complete this</u>
<u>section</u>.

The undersigned, the holder of the Tokuyama Subrogation Claim in the unpaid principal
amount of $\$$_____, hereby:

_____ Accepts the Amended Plan
_____ Rejects the Amended Plan

C.    <u>If you are the holder of the Class VI Tokuyama Note Claim complete this section</u>.

The undersigned, the holder of the Tokuyama Note Claim in the unpaid principal amount
of $\$$_____, hereby:

_____ Accepts the Amended Plan
_____ Rejects the Amended Plan


_____
Signature


Print Name:    _____
Title/Position (If Applicable) _____
Name of Creditor: _____
Address: _____
_____
Telephone: _____

2