UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUZANNE GENEREUX, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>AMERICAN BERYLLIA CORP., et al., )<br>)<br>Defendants )<br>_____) | Case No. 04-cv-12137 JLT |

### DEFENDANT HARDRIC LABORATORIES, INC.'S
### MOTION FOR RULE 11 SANCTIONS

Pursuant to Rules 11(b)(3) and 11(c)(1)(A) of the Federal Rules of Civil Procedure, Defendant Hardric Laboratories, Inc., through counsel, moves for Rule 11 sanctions against Plaintiffs' counsel on the grounds that counsel failed to perform an inquiry reasonable under the circumstances before suing Defendant Hardric in this case. Reasonable inquiry before suit would have established the absence of evidence to support any causal relationship between Defendant Hardric and Plaintiffs' alleged injuries. Extensive testimony from numerous deponents and thousands of documents confirm the absence of any evidence supporting a causal relationship.

This Motion is presented to the Court after providing notice to Plaintiffs' counsel in accordance with the 21-day safe harbor provisions of Rule 11(c)(1)(A) and is supported by the accompanying Memorandum of Law. Plaintiffs' counsel has failed to take advantage of the 21-day window of opportunity to avoid liability for violation of Rule 11 and the damages caused to Defendant Hardric thereby.

Wherefore, Defendant Hardric Laboratories, Inc. respectfully requests that this Court grant its Rule 11 Motion and award sanctions in the form of an order dismissing Plaintiffs' claims against Hardric, and granting a monetary award in the amount of Hardric's reasonable attorney fees and costs incurred in defending itself to date in this litigation, along with such other relief as the Court may deem appropriate.
.

                                                     Defendant, Hardric Laboratories Inc.,

Dated: October 5, 2006

                                                     _____
                                                   By:  Frances C. Lindemann, Esquire
                                                          Attorney for the Defendant
                                                          Pro Hac Vice
                                                          Maine Bar No. 7499
                                                          Nadeau & Associates P.A.
                                                          1332 Post Road
                                                          Wells, ME  04090
                                                          (207) 646-4000

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUZANNE GENEREUX, et al., )<br>)<br>  Plaintiffs, )<br>)<br>v. )<br>)<br>AMERICAN BERYLLIA CORP., et al., )<br>)<br>  Defendants )<br>_____) | Case No. 04-cv-12137 JLT |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
HARDRIC LABORATORIES, INC.'S MOTION FOR RULE 11 SANCTIONS**

Defendant Hardric Laboratories, Inc. moves for an award of sanctions against Plaintiffs' counsel and their law firms pursuant to Rules 11(b)(3) and 11(c)(1)(A) of the Federal Rules of Civil Procedure on the grounds that counsel failed to perform a reasonable inquiry under the circumstances before wrongfully suing Defendant Hardric as a defendant in this action. Minimal inquiry would have established that Defendant Hardric's products had no causal relationship to Plaintiffs' alleged injuries. Moreover, counsel violated Rule 11 by making allegations and factual contentions against Defendant Hardric that were without evidentiary support, which investigation and discovery were unlikely to provide and, in fact, did not provide.

Rule 11(b) of the Federal Rules of Civil Procedure provides, in relevant part, that:

> "By presenting to the court … a pleading … an attorney … is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances…(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery… ."

1

The Rule imposes "an affirmative duty to conduct a reasonable inquiry into the facts … the applicable standard is one of reasonableness under the circumstances." *Bus. Guides, Inc. v. Chromatic Communs. Enters.*, 498 U.S. 533, 551 (1991); *see also Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384 (1990). In other words, allegations in a pleading must be "well grounded in fact." *Nyer v. Winterthur International*, 290 F. 3d 456, 460 (1st Cir. 2002). "Before filing a complaint, an attorney has a duty to insure that the claims it is making are well founded and are not made in haste or without proper investigation." *Blue Cross Blue Shield of Alabama v. Stutz*, Civil Action No. 2:06cv269 (E.D. Va. June 2, 2006).

Rule 11(c) provides that, "[i]f, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may … impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Such sanctions are properly imposed where an attorney "fails to conduct an adequate investigation before filing [a] complaint." *Holgate v. Baldwin*, 425 F. 3d 671, 677 (9th Cir. 2005); *see also, Roger Edwards, LLC v. Fiddes & Son Ltd.*, 437 F. 3d 140 (1st. Cir. 2006)(sanctions affirmed where "highly dubious charges of fraud …[were] not effectively connected to any plausible showing of the necessary prejudice"); *Buonanoma v. Sierra Pacific Power Company*, Civil Action No. 03:-04-CV-0077-LRH(VPC) (U.S.D.C. D. Nev., June 6, 2006); *Hernandez v. Joliet Police Dept.,* 197 F.3d 256 (7th the Cir. 1999).

The Complaint in this case was filed in the Superior Court of the Commonwealth of Massachusetts on June 22, 2004. Hardric Laboratories was not named as a defendant. An Amended Complaint was filed on September 7, 2004 that omitted some defendants

and added Hardric Laboratories, among other entities.  The action was removed to the United States District Court for the District of Massachusetts on October 8, 2004.

The testimony of the Plaintiffs establishes that all claims in this case arise from an alleged occupational illness suffered by Suzanne Genereux as a result of her work assembling products with beryllium ceramic windows at the Raytheon Company's Waltham Plant from 1982 until approximately 1988.  Breathing respirable beryllium dust can cause chronic beryllium disease.  Without proper workplace protections, sandblasting beryllium ceramic windows, which was allegedly a major part of Mrs. Genereux's job at Raytheon's Waltham plant, can create respirable dust.

Based on Mrs. Genereux's testimony, from 1982 through approximately 1988, she worked doing sub-assembly of two projects in one lab at Raytheon's Waltham plant. She spent almost all of her time on the ARCO project that involved working with round beryllium ceramic windows.  *See* Deposition of Suzanne Genereux at pp. 224, 242, 255-258, attached as Exhibit A.  She also spent time assembling something she referred to as a "tall man" that included working with rectangular beryllium ceramic windows.  Her responsibilities on both projects allegedly included a significant amount of sandblasting that she alleges was done without proper workplace protections and therefore caused a large amount of respirable dust.  Id.  Apart from those two projects, the only work she did during that time period was occasional spot welding of "little pieces" of some material that she could not identify.  Mrs. Genereux did not claim and there is no evidence or suggestion that the little pieces she welded were or contained any form of beryllium metal, which is the only form of Beryllium produced by Hardric.  Id.

Based on the uncontroverted testimony of counsel's own clients, the Plaintiffs' alleged damages were caused by Mrs. Genereux's work with beryllium ceramic

3

windows. Plaintiffs' Counsel should have known this from their very first interview of Plaintiffs that producers of products of Beryllium metal, as opposed to Beryllium ceramic, like Hardric Industries, could not be liable for Plaintiffs' alleged injuries.

Beryllium ceramic, which is also known as beryllium oxide or beryllia, is a totally different material than beryllium metal. Beryllium ceramic is different in composition and requires completely different handling and machining from hard beryllium metal.

As Plaintiffs' counsel could have established beyond question with minimal inquiry, Defendant Hardric Laboratories did not work with beryllium ceramic at any time arguably relevant to this lawsuit. Defendant Hardric, a small custom shop, worked only with hard metals, including beryllium metal. Neither Mr.or Mrs. Genereux claim – and there is no other evidence - that Mrs. Genereux ever worked with or was exposed to any beryllium metal. The most preliminary investigation would have established that Hardric did not work with beryllium ceramic.

Moreover, there is no evidence that the Raytheon Waltham facility ever received any product from Defendant Hardric. The only dealings between Raytheon Waltham and Defendant Hardric were three instances in 1984 and 1985 in which Raytheon Division Purchasing Agent John Chartier ordered and paid for beryllium tubing from Brush-Wellman to be delivered to Defendant Hardric. *See* John Chartier Deposition Exhibit 19, attached as Exhibit B. There is no evidence that Defendant Hardric delivered the tubing or any product made from the tubing to Raytheon Waltham's facility. Although based in Waltham, Mr. Chartier testified that he did not just order for Waltham, but also for Raytheon's Northborough and Quincy facilities. *See* Deposition of John Chartier, p. 165, attached as Exhibit C. Mr. Chartier did not recall ever ordering Beryllium metal from

4

Hardric.  *Id*, at pp. 73-74, 188-190, attached as Exhibit C.  Mr. Chartier testified he did not even know what beryllium metal is.  *Id*, at p. 191, attached as Exhibit C.

A 1984 Brush-Wellman memorandum, entitled "TRIP REPORT-RAYTHEON-3/6/84," confirms the recollection of Hardric employees from that period that Hardric used the beryllium tubing paid for by Raytheon to make emitter rings that the Hardric employees recall being for the government's Aegis Project.  *See* Memorandum, John Chartier, Exhibit 18, attached as Exhibit D.  Apart from the fact that Mr. Chartier, who once again ordered for several plants, is listed as attending the sales meeting referenced in the memorandum, there is no evidence where the meeting took place or which Raytheon plant or division it was referring to.  Id.

There is no evidence establishing what Raytheon plant these emitter rings were made for, to whom they were delivered, or even which plant was involved with the Aegis Project.  Certainly, there is no evidence that these emitter rings were delivered to Raytheon's Waltham plant.

Moreover, even if the plaintiffs could establish that the emitter rings were delivered to the Waltham facility, which the plaintiffs cannot, such evidence would be only the first of three missing links required to support any conceivable causal connection between Defendant Hardric and the Plaintiffs' alleged injuries.

The second missing link is that there is no evidence that Mrs. Genereux ever came into contact with any of these emitter rings.  Again, not only is there no evidence of any contact, but we have the testimony of Mrs. Genereux's supervisor that there was never any beryllium metal in their lab.  Deposition of Al Broadbent at p. 114, attached at Exhibit H.  A senior engineer and health and safety manager also testified that Raytheon's Waltham plant did not work with beryllium metal.  *See* depositions of Frank

5

Ballint at p.182 attached as Exhibit E.  Mrs. Genereux herself denied ever working with any circular tubes in any way.  See Deposition of Suzanne Genereux, at pp. 260-261, attached as Exhibit A.

Finally, with regard to the third missing link, finished hard metal beryllium products, like those made by Hardric, are not dangerous unless machined or otherwise abraded without proper workplace protections.  In order to establish any possible causal connection between Defendant Hardric and the plaintiffs' alleged injuries, plaintiffs need to prove that Mrs. Genereux in fact machined or otherwise abraded emitter rings made by Hardric.  Again, not only is there no evidence even remotely suggesting such a thing, but there is unambiguous testimony establishing that no such machining or abrading of Hardric materials occurred.  Once again Mrs. Genereux's supervisor, Al Broadbent, testified that no one in their lab ever worked with beryllium metal.  Frank Ballint, a senior engineer who worked at Raytheon from 1982-1989 and who actually worked in the machine shop, testified that he was not aware of <u>any</u> <u>products</u> created at Raytheon Waltham that used beryllium metal.  See Deposition of Frank Ballint at pp. 47, 51, 101 and 182, attached as Exhibit D.  Safety manager James McCarthy, whose tenure at Raytheon Waltham spanned all periods relevant to this lawsuit, testified that he did not recall any encounters with beryllium metal or seeing any documentation specifying beryllium metal "as an actual material in use at the plant."  See Deposition of James L. McCarthy at p. 156, attached as Exhibit E.  Moreover, a 1989 letter from Brush Wellman responding to a request from Raytheon Waltham, along with an attachment listing beryllium metal machine shops, can only be interpreted as evidence that Raytheon's Waltham facility did not even have the capacity or equipment to work on beryllium.  See letter attached as Exhibit F.

Plaintiffs' counsel knew or certainly should have known from the outset of this litigation based on information from the Plaintiffs that their alleged injuries were caused by Mrs. Genereux's sandblasting and otherwise abrading of beryllium ceramic windows, and that there was no evidence that linked beryllium metal, much less Hardric's beryllium metal, to Plaintiffs' alleged injuries. Plaintiffs' counsel knew or with minimal inquiry should have known that the Defendant Hardric did not work with beryllium ceramic and that, therefore, Hardric's products did not have any causal relationship to the Plaintiffs' alleged injuries. In summary, Plaintiffs' counsel should have known that Hardric was not a proper defendant in this litigation. Defendant Hardric should never have been sued.

In paragraph 12 of its Amended Complaint, Plaintiffs claim that "Hardric is one of the world's leading manufacturers of beryllium containing products, including beryllium optics, ceramics and unusual metals." Established in 1954, Hardric is proud to have been a pioneer in creating extraordinary custom products using rare metals and to continue to be a small but elite custom shop doing extraordinary work, particularly with optics and for the military. With a staff of approximately a dozen engineers, Hardric does not claim to be and cannot accurately be described as one of the "world's leading manufacturers of beryllium containing products." Deposition of Peter Richard, at pp. 15, 140, attached as Exhibit G.

To the extent that they apply to Defendant Hardric, factual allegations in Amended Complaint paragraphs 12, 17, 20, 21, 28, 30-34, 36, 37-40, 43-51, 53-56, 58, 59, 62-64, 80, 84-90, 92, 94, 96, 98, and 100-102 are wholly without evidentiary support. Plaintiffs' counsel's assertion of these allegations violates Rule 11 and entitles Defendant Hardric to sanctions.

7

Rule 11(b) requires "an inquiry reasonable under the circumstances." Relevant circumstances in this case mandated a significant inquiry before naming Hardric as a defendant. Those circumstances include the fact that this is a complex toxic tort case raising complex medical and scientific issues that are extraordinarily expensive to litigate. At least two law firms and four attorneys are actively involved in representing the Plaintiffs. Apart from Defendant Hardric, each co-defendant has at least two attorneys assigned to defend the case. The case has required discovery to date including over a dozen depositions and reviews of thousands of documents. Moreover, Plaintiffs seek millions of dollars in damages.

The size and nature of Defendant Hardric's business raise the standard of reasonableness even higher. As Plaintiffs' counsel knew or should have known, Defendant Hardric is, once again, a small custom shop, with approximately a dozen engineers. Given its size, Defendant Hardric cannot afford liability insurance that would cover Plaintiffs' claims. Deposition of Peter Richard at 129, Exhibit G. Moreover, given the nature of Hardric's business, such insurance is not required, unless Hardric is wrongfully sued, as in this case.

Defendant Hardric has extraordinary safety procedures and protections in place to minimize any risk. Id. The beryllium products that Hardric creates for a limited number of sophisticated customers are finished smooth hard metal products. Id. They are made almost exclusively for government projects. Once its products leave its shop, Hardric does not expect them to be further worked on in any way that would create respirable dust. Id.

For violations of Rule 11(b), Rule 11(c) provides for the imposition of an "appropriate sanction." The circumstances of this case and the consequences of

8

Plaintiffs' counsel's actions on a small business doing critical work for our government call for extraordinary sanctions. Plaintiffs' counsel not only sued Hardric without the requisite evidentiary support to establish potential liability, but they repeatedly refused to dismiss Hardric, as discovery continually confirmed the absence of evidence connecting Hardric to Plaintiffs' alleged injuries. They refused repeated requests leading ultimately to the filing of this Motion only after providing Plaintiffs' counsel with another 21 day grace period to avoid liability for the damages caused. Under the unique circumstances of this case the only "appropriate" sanction is for Plaintiffs' counsel and their law firms to reimburse Defendant Hardric for reasonable attorneys fees and costs incurred to date in defending itself against the meritless claims against it.

Wherefore Defendant Hardric Laboratories Inc. respectfully requests that this Court grant its Rule 11 Motion and award sanctions in the amount of Hardric's reasonable attorney fees and costs incurred in defending itself to date in this litigation, and grant such other relief as may be appropriate.

Defendant, Hardric Laboratories Inc.,

Dated: November 14, 2006

_____

By:  Frances C. Lindemann, Esquire
     Attorney for the Defendant
     Pro Hac Vice
     Maine Bar No. 7499
     Nadeau & Associates P.A.
     1332 Post Road
     Wells, ME  04090
     (207) 646-4000

CERTIFICATE OF SERVICE

      I hereby certify that on November 14, 2006, I served the above Defendant Hardric Laboratories, Inc.'s Motion for Rule 11 Sanctions Initial Disclosure by mailing it by first class mail to the following counsel at the following addresses:

Leo V. Boyle, Esq.
Meehan, Boyle, Black & Fitzgerald, PC
Two Center Plaza, Suite 600
Boston, MA 02108

Ruben Honik, Esq.
Golomb & Honik
9th Floor
121 South Broad Street
Philadelphia, PA 19107

Jeffery D. Ubersax, Esq.
Murtha Cullina LLP
99 High Street, 20th Floor
Boston, MA 02110-2320

William F. Ahern, Jr., Esq.
Clark, Hunt & Embry
55 Cambridge Parkway
Cambridge, ME 02142

                                              _____
                                              Frances C. Lindemann, Esquire