**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SUZANNE GENEREUX, et al.                )<br>                                                              )<br>         Plaintiffs,                                 )<br>                                                              )   Case No. 04-CV-12137 JLT<br>v.                                                          )<br>                                                              )<br>AMERICAN BERYLLIA CORP., et al.,  )<br>                                                              )<br>         Defendants                              )<br>                                                              ) | |

**DEFENDANT HARDRIC LABORATORIES, INC.'S REPLY TO PLAINTIFFS'
RESPONSE AND OPPOSITION TO MOTION FOR RULE 11 SANCTIONS**

Defendant Hardric Laboratories, Inc. ("Hardric"), by its attorney, hereby replies to Plaintiffs' Opposition to Hardric's Motion for Rule 11 Sanctions.

**I.  Introduction**

The Defendant, Hardric, is a small corporation that specializes in machining custom parts for commercial and military applications.  Hardric was never a large or regular supplier of beryllium parts to Raytheon Waltham, a fact demonstrated by the Plaintiffs' own inability to provide any evidence that Hardric supplied any material to Raytheon Waltham but for twelve purchase orders, several of which are duplicates. Hardric only ever worked with beryllium metal at the times at issue in this suit.  Suzanne Genereux did not work with any beryllium metal, much less any Hardric products.

The Plaintiffs' claims against Hardric are not supported by the evidence. A reasonable inquiry into the facts and evidence of the case by the Plaintiffs should have verified the lack of evidence and the claims against Hardric should never have been

- 1 -

brought or should have been dropped long before the trial reached this stage.  Plaintiffs failure to do so constitute a violation of Rule 11.

## II.  Argument

The Plaintiffs note that "the District of Massachusetts . . . suggests that wrongdoing to the point of falsehood and intentional misrepresentation are required" to find a Rule 11 violation.  Plaintiff's Opposition at 3, *citing Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts, Inc.*, 753 F. Supp. 1007 (D. Mass. 1990.). That assertion is simply not supported by the case law.  In a later case, *Bay State Towing Company v. Barge American 21*, cited as one of the types of cases where the First Circuit has upheld sanctions in a case cited by Plaintiffs: *Navarro-Ayala v. Hernandez-Colon*, 3 F.3d 464 (1st Cir. 1993), sanctions were found without an outright falsehood.  *Bay State Towing Co.*, 899 F.2d 129.  In that case, the First Circuit affirmed a District Court order of sanctions where, in part, the party failed to check logs or find relevant witnesses in order to determine what the weather was on a particular day.  899 F.2d 129, 132. The case further suggests that a document does not have to be false in order to generate sanctions; it can be misleading or inadequately supported in order to justify sanctions, "we do not agree that one can escape Rule 11 sanctions in respect to a document that is basically false or misleading or inadequately supported simply by pointing to a separable, minor portion of that document that meets Rule 11's requirements."  899 F.2d 133, citing *Frantz v. U.S. Powerlifting Federation,* 836 F.2d 1063, 106 ("the inclusion of one sufficient (and adequately investigated) claim does not permit counsel to file a stream of unsubstantiated claims as riders.").  Nor is simple "bad faith" required, "bad faith is not required for an award of attorney's fees under . . . Rule 11." *Cruz v. Savage*, 896 F.2d 626, 634.

The First Circuit has also suggested that an attorney's or law firm's skill and resources should be taken into account for purposes of a Rule 11 motion. See *Muthig, et al. v. Brant Point Nantucket, Inc.*, et al., 838 F.2d 600, 605 ("The Muthigs' counsel is not an understaffed sole practitioner seeking to aid a client who has been hurt by the defendant but who is uncertain about the exact legal vehicle for redress, nor is he trying to make new law. Rather, counsel is associated with a major law firm with all the attendant resources."). The Plaintiffs state that "[t]he undersigned counsel have had considerable experience in bringing beryllium products liability litigation on behalf of many dozens of individuals in a variety of jurisdictions throughout the United States." Plaintiffs' Opposition at 4. Because of their skill and resources, they should have done more to confirm that Suzanne Genereux did indeed work with beryllium metal, and they should have confirmed that Hardric did indeed supply beryllium metal to Raytheon Waltham. All the evidence that Plaintiffs have proffered is those twelve purchase orders, bearing duplicate dates, amounts, and specifications. There is simply no other evidence.

Furthermore, in the District of Massachusetts, the duty to conduct a reasonable inquiry under Rule 11 does not stop when the Complaint is filed. "Attorneys are also subject to a continuing obligation to investigate their clients' claims throughout the proceeding, ensuring that any subsequent filings also meet the Rule 11 standard in light of the reasonable inquiry and improper purpose grounds for sanctions." *Cullen v. Darvin, et al.*, 132 B.R. 211, 215 (D. Mass. 1991), *citing Kale v. Combined Ins. Co. of America*, 861 F.2d 746, 758 (1st Cir. 1988). *See also Muthig*, 838 F.2d 600, 606 ("counsel should have known that the fraud claim was baseless by March, 1986, when he reiterated the claim in his opposition to Jordan's motion to dismiss.")

### A.     Suzanne Genereux Did Not Work with Hardric Products

The Plaintiffs' claims about Suzanne Genereux's work with beryllium metal are inadequately supported, and the Plaintiffs should have known that there was inadequate evidence to support those claims both at the time of filing, and also after discovery was conducted.

Plaintiffs claim that Ms. Genereux "was exposed to beryllium dust and particulate matter from both beryllium ceramic and metal, . . . the latter having been hand filed in the ordinary course of Mrs. Genereux's work day." Plaintiffs' Opposition at 2. Plaintiffs base this allegation on one section of Suzanne Genereux's deposition, characterized by Plaintiffs as "confirming" that she worked and abraded such metal. In fact, the deposition testimony states that she "believes" what she sandpapered was some sort of metal and that what she abraded with a Drommel tool "could have been" beryllium:

> Q.     And the diameter that you filed or sandpapered was made of a – of some kind of a metal; is that right?
> A.     **I believe so.**
> Q.     And do you know what the metal was?
> A.     **I really don't recall** at which time, you know, which piece I'm doing.

(Suzanne Genereux Depo., 64. Exh. A.)

> Q.     Did you sometimes use the Drommel tool on beryllium copper?
> A.     **Could have been**, yes.

(Id. at 65.) (emphasis added.)

Suzanne Genereux later testified that she didn't know what metals she worked with, and that she only welded metals.

> Q.     You said that those two projects [referring to the Tall Man and the ARCO window] were what you worked on primarily?
> A.     Right
> Q.     Can you recall any other projects?

> A. I'd be given small pieces and asked to weld, take this little piece and weld it on to that one, just spot weld it, you know. So you would go and you might weld 25 of them, and you didn't have anything to work with; you just welded them. It could have been used for somebody else to continue it on.
> Q. Was that beryllium?
> A. **I don't know.** I didn't get told anything except told exactly -- one person would show you how to do it, and then you would repeat the process for as many as there were.

(Id at 257-58.) (emphasis added.)

> Q. Did you sometimes have to sand or file beryllium copper?
>
> A. Occasionally.

(Id. at, 63.)

Although Suzanne Genereux claims that she sometimes sanded or filed beryllium copper, there is no evidence that Hardric ever supplied Beryllium copper to Raytheon. Moreover, Mrs. Genereux's supervisor says that she did not work with beryllium metal. Al Broadbent, Suzanne Genereux's supervisor, testified that the department that they were part of did not even work with beryllium metal.

> Q. Okay. So Department 3670 did not work with beryllium metal?
> A. No; no, not machining or anything like that. The only beryllium metal we had were beryllium tools because they're nonmagnetic, and when you're working with big magnets, if you use a magnetic tool, you go to tighten a nut or something and the wrench would stick to a magnet, so the nonmagnetic tools were used because they're nonmagnetic. But other than that, that's the only thing we used – beryllium."

(Broadbent Depo., 114, Exhibit B.)

Moreover, he testified that she did not use a file on the metal plating of the ARCO windows,

> A. And underneath the plating is metallizing and if you file though the metalizing, which you're not going to do because it's hard as rocks, you may as well throw your window away because you've just ruined it because the brazing material will not braze there. As a matter of fact, if you break through your

>   plating, you get a leak, a vacuum leak and that's no good.  So if Suzanne was using a bastard file -- a bastard file is very rough -- she'd ruin every window she ever made.

(Id. at 136-37.)  Francis Balint also testified that there was no work being performed at Raytheon Waltham on beryllium metal,

>   Q. Are you aware of any products that were being created while you were working at Raytheon that used beryllium -- hard beryllium metal?
>   A. No, not to my knowledge.

(F. Balint Depo., 182, Exh. D to Rule 11 Motion.)

The evidence is clear that Suzanne Genereux did not work with beryllium metal, and therefore never worked with any Hardric products.  The Plaintiffs never should have joined Hardric as a party in this action.

**B.    A Reasonable Investigation of the Purchase Orders Should have Shown that All but Four Refer to the Same Orders.**

Much like the failure to investigate logs that justified granting a Rule 11 Motion in *Bay State Towing Company*, the Plaintiffs' failure to investigate the purchase orders used as evidence as Hardric should be grounds for Rule 11 Sanctions.  *Bay State Towing Co.*, 899 F.2d 199. Had the Plaintiffs examined the purchase orders from Brush Wellman to Raytheon that reference Hardric at all, as they claim to have done, they would have found that several of the orders are duplicates or refer to the same order, and some refer to different orders on the same date. See Exhibit C.  Even a cursory examination of the order numbers shows that there appears to be no more than four different orders during the timeframe when Suzanne Genereux worked at Raytheon Waltham, not the at least twelve orders that Plaintiffs claim, and although the orders are billed to Raytheon Waltham, none of the orders are shipped to Raytheon Waltham.  There is, therefore, no

evidence of "sale of beryllium metal to Raytheon," as claimed by Plaintiffs.  See Opposition at 4.

The first group of purchase orders concern Customer Order No. 5308, entered on 10/10/03.  Documents Marked GEN-809 and GEN-810 in Exhibit C.  Both of the purchase orders reference an order of 13 beryllium tubes, requested during the week of 12/12/83.  GEN-809 is identical to GEN-810 in every way except that the document is marked "CHANGE NBR 01" in the top right of the purchase order, and the item description contains the additional entry "12/6/83 – CHANGED TO C.O.D. – CERTIFED CHECK."  Id.  These purchase orders clearly refer to the same order, not to two different orders.  In addition, these documents do not refer to Raytheon Waltham in any way.  The materials are both billed to and shipped to Hardric Laboratories.  See Id.

The next group of purchase orders are documents GEN-805, GEN-806, GEN-807, and GEN-808.  All four documents reference Customer Order No. 3169PM48833.  Two of these documents, both invoices, are identical in every way except for copy quality: GEN-806 and GEN-807, and actually seem to indicate that the order was cancelled ("NOTE: DO NOT PRODUCE.  MATERIAL WAS PRODUCTED ON S.D. FMA-229 WHICH WAS CANCELLED (HARDRIC").  See GEN-805-808, Exhibit C.  GEN-808 is an acknowledgement of the same order with the same date (03/07/84), containing the same note about cancellation.  See GEN-808, Exhibit C.  The final document in this set is merely an invoice for Federal Express charges related to Customer Order No. 3169PM48833, not for new parts.  See GEN-805, Exhibit C.  Although all of these documents have a "bill to" of  Raytheon Waltham, they are all "ship to" Hardric.  See GEN-805-8, Exhibit C.

The third group of documents, marked GEN-802, GEN-803, and GEN-804, all refer to Customer Order No. 3169PP-50716, and contains an Invoice and two Acknowledgements. The order date for all three documents is 04/24/84. See GEN-802, GEN-803, GEN-804, Exhibit C. The invoice is for forty-two Type II beryllium tubes. See GEN-802, Exhibit A. One acknowledgement contains the same information but is labeled "CHANGE NBR 01" in the top right corner, contains a reference to the Brush Wellman order number EMA687, and states "5/8/84 – CHANGED CUSTOMER P.O." in the description. See GEN-803, Exhibit C. Document GEN-804, the second acknowledgement, seems to refer to the same order. That document also has an order date of 04/24/84 and also refers to Brush Wellman EMA687, but references customer order 3169PM-50716. See GEN-804, Exhibit C. The materials in this order were, again, billed to Raytheon, and shipped to Hardric. See GEN-802-804, Exhibit C.

The next group of documents is GEN-799, GEN-800, and GEN-801. Again, this set contains one invoice, one acknowledgement, and one change, all billed to Raytheon Waltham and shipped to Hardric. See GEN-799-801, Exhibit C. All three documents refer to Customer Order No. 3169PN59770, and Brush Wellman order or waybill number EMB356, and were placed on 01/08/85. See GEN-799-801, Exhibit C. It is unclear how the Plaintiffs can claim that these three documents refer to different orders.

The final document is labeled BD 365576. This is an order placed on April 23, 1992. See BD 365576, Exhibit C. Suzanne Genereux was not even working at Raytheon Waltham in April of 1992. See Suzanne Genereux Depo., Exhibit A. Moreover, this acknowledgement is billed to Raytheon at Sudbury, not Raytheon Waltham. See BD 365576, Exhibit C.

The Plaintiffs did not make a reasonable inquiry into the evidence linking Hardric to this case. The evidence clearly shows no more than four orders between Hardric and Brush Wellman, only three of which are even billed to Raytheon Waltham. Not a single order can be shown to have been shipped to Raytheon Waltham. The fact that Brush Wellman may have shipped beryllium metal to Hardric and billed it to Raytheon is not enough to show that Hardric even supplied any material to Raytheon Waltham, much less that Suzanne Genereux worked with any Hardric material. The Plaintiffs could have determined this lack of evidence by merely examining the purchase orders and should not have joined Hardric in this case.

In addition to overestimating the number of purchase orders, Plaintiffs mischaracterized Peter Richard's testimony regarding those purchase orders in their Opposition Brief. The Plaintiffs state that Peter Richard "confirmed under oath" their assertions. What Peter Richard really testified to, as his words make clear, is that the documents "suggest" that there were some sort of transactions between Brush Wellman, Hardric, and Raytheon. He did not confirm any such shipments or sales because he clearly did not know:

> Q. Do you know if Brush Wellman drop shipped material to you for machining or processing or fabrication to be forwarded on to Raytheon?
> A. Do I know that, sir?
> Q. Yes.
> A. **I know what it says in these pieces of paper.**
> Q. And did the paper suggest to you that that very thing took place, that is, that material was drop shipped to your company for machining or fabrication or processing with the intent of it making its way to Raytheon?
> A. **It suggests that, yes.**

Deposition of 5/25/06, Peter Richard, 77:1-16, Exhibit E. (emphasis added).

Plaintiffs also state that Peter Richard "confirmed" sales of beryllium tube and rod to the Microwave and Power Tube Division at Waltham. He did not "confirm" such sales. He simply stated that one of the documents he was presented with related to that division:

> Q. Does this [referring to a purchase order stamped 364682] refresh your recollection about whether you might have machined Beryllium rod for Raytheon in the 1980's?
> A. **No**.
> Q. Do you agree that all of the purchase orders we've been looking for relate to the Microwave and Power Tube Division at Waltham?
> A. **That's what it says.**

(Id at 112.) (emphasis added.)

Peter Richard did not confirm any beryllium metal shipments to Raytheon Waltham. He merely acknowledged what he believed the purchase orders referenced above may mean when presented with them at trial. His testimony is not enough evidence to state that Hardric even supplied beryllium metal to Raytheon Waltham, much less to prove that it caused any harm to Suzanne Genereux.

### III. Conclusion

Counsel for the Plaintiffs failed to undertake a reasonable inquiry into the facts of the case, and have failed in their continuing duty to conduct a reasonable inquiry as the case has progressed. Suzanne Genereux did not work with beryllium metal. The only evidence of beryllium metal shipments to Raytheon Waltham by Hardric provides no evidence that the beryllium metal was ever shipped to Raytheon Waltham. For these and other reasons laid out above, the Defendant Hardric Laboratories, Inc.'s Motion for Rule 11 Sanctions should be granted.

Respectfully submitted this 18th day of December, 2006.

/s/ Frances C. Lindemann
Frances C. Lindemann, Esq.
Attorney for the Defendant
Pro Hac Vice
Maine Bar No. 7499
Nadeau & Associates, P.A.
1332 Post Road
Wells, ME 04090
(207) 646-4000

**CERTIFICATE OF SERVICE**

I, Frances C. Lindemann, certify that on December 18, 2006, I served the foregoing Hardric Laboratories, Inc.'s Reply to Plaintiffs' Opposition to Rule 11 Motion by electronic filing and follow-up mailing, via first class postage prepaid on December 18 2006, an exact copy postage prepaid to counsel of record.

/s/ Frances C. Lindemann
Frances C. Lindemann, Esq.