UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUZANNE GENEREUX and BARRY GENEREUX, w/h, Individually and as Parents and Natural Guardians of their minor children, ANGELA GENEREUX and KRISTA GENEREUX, Plaintiffs<br>v.<br><br>AMERICAN BERYLLIA CORP., BRUSH WELLMAN, INC., BRUSH WELLMAN CERAMICS, INC., BRUSH WELLMAN CERAMIC PRODUCTS INC., HARDRIC LABORATORIES, INC., KYOCERA AMERICA, INC., KYOCERA INDUSTRIAL CERAMICS CORP., and RAYTHEON CO., Defendants | NO: 04 CV 12137 JLT |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW
CONCERNING THE STATUTE OF LIMITATIONS AND
*TAYLOR V. AIRCO, INC., ET AL.*, DECIDED BY JUDGE PONSOR
ON AUGUST 29, 2007 AND PUBLISHED ON SEPTEMBER 10, 2007**

### I.   The Statute of Limitations

The statute of limitations and the application of the discovery rule is an important issue raised in defendants' Motions for Summary Judgment and Plaintiffs' response thereto and was the subject of considerable focus and attention by the Court during oral argument held on September 11, 2007. Plaintiffs believe the Court will be significantly assisted in the resolution of this issue by granting leave to allow the receipt and consideration of five documents that directly speak to whether the statute of limitations has been tolled.

Defendants have each argued that the statute of limitations began to run in this case on June 8, 2001 when the plaintiff first discussed with her physician, Dr. Ashley, the availability of a blood test to determine if she might be beryllium sensitized. Neither the medical note related to that office visit, June 8, 2001, nor the subsequent visit of June 19, 2001 when the blood was

drawn, nor the blood test result itself (BeLPT) were provided to the Court by plaintiffs in their previous submissions. The test result has never been provided to the Court. These two office notes and the June 23, 2001 test result of the BeLPT is attached hereto collectively as Exhibit "A". Also attached hereto are the relevant two pages of condensed testimony from Dr. Ashley regarding the office visits of June 8 and June 19, 2001 which led to the conduct of the BeLPT with results that were reported on or after June 23, 2001. These notes of testimony are attached hereto as Exhibit "B". Among other things, Dr. Ashley told his patient that he knew nothing about beryllium exposure, what the manifestations were, or how to test for it. He had no suspicion that his patient had beryllium disease or that she should be tested for it. Certainly there was no basis for plaintiff Suzanne Genereux to pursue a claim at that point.

The BeLPT result completed on June 23, 2001, mailed and received by plaintiff or her physician sometime thereafter, reports an abnormal lymphocyte transformation to beryllium sulfate. The parties concede that a single abnormal BELPT is not diagnostic for either beryllium sensitivity or beryllium disease. A lawsuit can never be brought on the basis of a single positive BeLPT. Nonetheless, the BeLPT test result of June 23, 2001 is the earliest conceivable instance in which plaintiff Suzanne Genereux could have formed any impression that her pulmonary symptoms might be medically related to her earlier beryllium exposure and thus actionable.

Plaintiffs filed the present lawsuit on June 22, 2004 within three (3) years of the BeLPT test result, the first clinical suggestion that plaintiff may have had an injury related to her exposure to beryllium (ultimate diagnosis did not occur until 2002 when plaintiff underwent transbronchial biopsy and lung lavage). Thus, even if one were to adopt the defendants' suggestion that the statute of limitations began to run in June 2001, instead of when the diagnosis

was finally made in 2002 after extensive additional testing, the trigger date could not be any earlier than June 23, when the first test result returned with an abnormal lymphocyte response.[1] Plaintiffs brought suit within three years of that date and the defendants' limitations argument must fail.

## II. Judge Ponsor's Decision In *Taylor v. Airco, Inc.* Crystalizes Why The Statute Of Limitations Defense Is Not Available In This Case

In *Taylor v. Airco, Inc., et al.,* C.A., No. 02-30014-MAP, 2007 U.S. Dist. LEXIS 64441 (D. Ma. 2007) Judge Ponsor granted defendant chemical manufacturers of vinyl chloride ("VC") summary judgment in a failure to warn product liability case involving a plaintiff who died from cancer related to claimed VC exposure. The plaintiff's decedent himself had worked for a company that manufactured VC and that company knew all of the risks and hazards of VC in a manner that was indistinguishable from the VC suppliers who were the defendants in the case. Viewing these facts through a "beryllium" prism, it is as if a beryllium worker at American Beryllia, a defendant in this case, sued Brush, another defendant in this case, for selling beryllium and not adequately warning about it. American Beryllia and Brush are co-equals in their knowledge of the dangers of beryllium. That has never been the case between Raytheon and its suppliers of beryllium, a fact that clearly distinguishes the *Taylor* decision and others like it relied upon by defendants for the sophisticated user and bulk supplier defenses.

The plaintiff's decedent in *Taylor* worked for Monsanto in a process that polymerized VC into PVC resin end-products. As a giant chemical company, Monsanto itself supplied most of the VC which it itself used in its polymerization process but occasionally sourced some of the

---

[1] Had Plaintiffs filed suit after that first blood test their claims would have been dismissed as unripe, just as they were in this case when their medical monitoring claims were dismissed. Massachusetts law requires a present injury before a claim can be said to exist.

needed VC from other chemical companies, including the DOW Chemical Company, Goodrich Corp., Goodyear Tire & Rubber Company, Honeywell International, Inc., Ollin Corp. and Union Carbide, all of whom were sued as defendants for having failed to adequately warn about the dangers of VC.  The ruling by Judge Ponsor in this case recognized that Monsanto, as a manufacturer of VC itself, was no less familiar with the risks and dangers of VC than the named defendants in that they were all manufacturers of this material, in that they all participated in trade association and trade group meetings that set the standards for handling VC, and because Monsanto was truly a sophisticated user who stood in a position virtually identical to the defendant suppliers of the toxic material who were sued in the case.

In stark contrast, Raytheon in our beryllium case was and remains a manufacturer of defense systems and radar equipment and has never manufactured beryllium products.  While Raytheon employed some quantities of beryllium containing products in its radar equipment, and while Raytheon was certainly generally concerned about its employee health and safety, Raytheon *relied upon* Brush and American Beryllia as its principal, almost exclusive, suppliers of this material to acquaint it with the methods to safely handle the material and insure the protection of its employees.  The thrust of this case is that Raytheon relied upon and incorporated wholly inadequate, often false and entirely misleading health and safety information from the Defendants in this case that ultimately served to harm its employees including, specifically, plaintiff Suzanne Genereux.  A jury must evaluate the adequacy of the communication between the Defendants herein and Raytheon which employed that communication in developing a health and safety plan for its employees.  That plan did not adequately protect employees because it relied upon the false and misleading communication of the risks and dangers by Defendants.

4

This question, in a context of both the sophisticated user and bulk supplier defense, cannot be determined as a matter of law.

### III. Conclusion

For the reasons set forth above, plaintiffs respectfully request leave of Court to supplement their briefing and exhibits in the manner set forth above.

Respectfully Submitted, this 13th day of September, 2007.

**MEEHAN, BOYLE, BLACK & FITZGERALD, P.C.**

*/s/ Leo V. Boyle*

Leo V. Boyle, (B.B.O. 052700)
Two Center Plaza, Suite 600
Boston, Massachusetts 02108
617-523-8300

**GOLOMB & HONIK, P.C.**
Ruben Honik
Stephan Matanovic
121 S. Broad Street, Ninth Floor
Philadelphia, PA 19107

**CERTIFICATE OF SERVICE**

I, Bradley M. Henry, certify that on September 13, 2007 I served the foregoing Plaintiffs' Supplemental Memorandum of Law Concerning *Taylor v. Airco, Inc., et al.*, C.A. No. 02-30014-MAP, 2007 U.S. District *Lexis* 64441, Decided by Judge Ponsor on August 29, 2007 and Published September 10, 2007 by electronic filing and mailing an exact copy postage prepaid to counsel of record.

*/s/ Bradley M. Henry*
_____
Bradley M. Henry