**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

Suzanne Genereux, et al.                )
                                         )    Case No. 04-cv-12137  JLT
         Plaintiffs,                     )
                                         )
v.                                       )
                                         )
American Beryllia Corp., et al.          )
                                         )
         Defendants.                     )


**RESPONSE OF DEFENDANT BRUSH WELLMAN INC.**
**TO PLAINTIFFS' SUPPLEMENTAL BRIEF**

I.     The Statute of Limitations Began Running By June 8, 2001 At The Latest

Having already briefed the statute of limitations issue twice -- first in an opposition brief,

and then in a surreply -- plaintiffs now take a third bite at this apple.  Their supplemental brief

includes no new facts or law; indeed, plaintiffs submit purported "additional" deposition

testimony and two documents that defendants had already put into the record.  (See Ashley Depo.

& Exh. 3 and 5, attached at Tab 1 to Defendant Brush Wellman Inc.'s Statement of Undisputed

Facts.)[1]  There is no real purpose for this filing other than once again to present an erroneous

argument that the statute does not begin to run until plaintiff has a diagnosis or at least some

positive medical test result.  That is simply not the law.

The Massachusetts cases are clear, as are the Pennsylvania cases on which plaintiffs

themselves relied.  In In re Mass. Diet Drug Litigation, 338 F. Supp. 2d 198, 207 (D. Mass.

2004), this Court stated: 'notice that a particular product . . . may have been a cause of harm to a

---

[1]     Plaintiffs correctly state that these documents were not "provided to the Court by
plaintiffs in their previous submissions," but omit that they were provided by defendants.  (Pl.
Supp. Mem. at 2.)

plaintiff creates a duty of inquiry and starts the running of the statute of limitations'" (quoting

Bowen v. Eli Lilly & Co., 557 N.E.2d 739, 743 (1990)); see also Vitalo v. Cabot Corp., 399 F.3d

536, 543 (3d Cir. 2005) (statute began to run once plaintiff was "on notice . . . that he needed to

investigate his health problem and its cause," two years before plaintiff's CBD diagnosis).  In

Diet Drug, the alleged harm was heart disease.  The Court indicated that if plaintiff was "on

notice of the need for an echocardiogram" to check for such disease, 338 F. Supp. at 207, that

would trigger the statute; there was no need for a positive test result, much less a diagnosis.  Mrs.

Genereux was clearly "on notice of the need for" a BeLPT more than three years before she sued.

We know that because she asked her doctor for the test.  She indicated to him that "she knew that

the one purpose of the test is to determine whether she might have been harmed by exposure to

beryllium."  (Ashley Depo. at 44, emphasis added.)

　　　In Debiec v. Cabot Corp., 352 F.3d 117, 132 (3d Cir. 2003), an alleged CBD case cited

by plaintiffs, the court stated that a "diagnosis of CBD was not necessary to start the statute

running" and that an "unrebutted suspicion" that plaintiff has CBD is "sufficient to start the

clock."

> Put another way, if a plaintiff had symptoms of lung disease, and
> had reason to believe the defendants' beryllium plant caused that
> injury -- whether the information was obtained from a doctor,
> medical study, government letter, or possibly a media story -- the
> statute of limitations began to run.

Id. at 141.  It is undisputed that no later than June 8, 2001, plaintiff had symptoms of lung

disease and an unrebutted suspicion or reason to believe, from several sources, that she might

have CBD.  That is why she brought to her doctor a pamphlet asking, "How Do I Find Out If I

Have Beryllium Disease?"  (Defendant Brush Wellman Inc.'s Statement of Undisputed Facts

¶ 97.)

Plaintiffs completely miss the point when they argue that "a lawsuit can never be brought on the basis of a single positive BeLPT." (Pl. Supp. Mem. at 2.)  Defendants do not argue that plaintiff had to bring suit by June 8 or June 23, 2001.  Rather, the point is that she was then on inquiry notice and had three more years to "investigate the cause of [her] injury" and decide whether to sue.  See In re Mass. Diet Drug Litig., 338 F. Supp. 2d at 207.

Plaintiffs also misstate defendants' argument when they say that "Defendants have each argued that the statute of limitations began to run in this case on June 8, 2001." (Pl. Supp. Mem. at 1.)  The argument is actually that the statute began to run no later than that date.  The Court could certainly find that the statute was triggered by Mrs. Genereux's earlier correspondence with Senator Reed's office, and/or by her contacts with the Department of Labor or National Jewish Medical and Research Center, all of which show that Mrs. Genereux had a suspicion of possible health effects from beryllium.  (See Defendant Brush Wellman Inc.'s Statement of Undisputed Facts ¶¶ 93-96.)

Plaintiffs' point that Dr. Ashley had "no suspicion that his patient might have beryllium disease" is irrelevant.  (Pl. Supp. Mem. at 2.)  What is relevant and indisputable is that Mrs. Genereux herself had that suspicion, that she presented her suspicion (and the "How Do I Find Out If I Have Beryllium Disease" pamphlet) to Dr. Ashley, and that he did nothing to rebut it.

II.    The Taylor Decision Supports Summary Judgment Here In Several Ways

Understandably, plaintiffs also try, but fail, to distinguish the new decision in Taylor v. Airco, Inc., C.A., No. 02-30014-MAP, 2007 U.S. Dist. LEXIS 64441 (D. Mass. 2007).  The true significance of that case is:

- It confirms that the sophisticated user defense is appropriately decided as a matter of law.  Id. at *42.

- It confirms that Raytheon, not Mrs. Genereux, is the user whose sophistication is at issue. Id. at *26-*29 (citing Morgan v. Brush Wellman, Inc., 165 F. Supp. 2d 704, 718 (E.D. Tenn. 2001));

- It bases summary judgment on "the high level of Monsanto's knowledge and experience and the virtual impossibility of the suppliers warning Monsanto's employees," id. at *31 -- both facts that are present here with Raytheon, too.

- It awards summary judgment on a fraud claim because the plaintiff, like Mrs. Genereux, "never saw or relied on" the suppliers' warnings. Id. at *37.

Plaintiffs try to distinguish Taylor on the ground that Monsanto was a "manufacturer of VC itself." (Pl. Supp. Mem. at 4.) But that is simply not a requirement of the defense. In none of the many other summary judgment cases cited by defendants on the sophisticated user/bulk supplier doctrine was the employer also a manufacturer of the material or substance that allegedly caused harm. That is strong but not necessary proof of sophistication. See, e.g., Morgan v. Brush Wellman, Inc., 165 F. Supp. 2d 704, 706-07 (E.D. Tenn. 2001) (granting summary judgment on failure to warn claims because plaintiffs' employer was a sophisticated user of product, even though it did not manufacture the product); Fisher v. Monsanto Co., 863 F. Supp. 285, 286 (W.D. Va. 1994) (same); Byrd v. Brush Wellman Inc., 753 F. Supp. 1403, 1403 (E.D. Tenn. 1990) (same); Goodbar v. Whitehead Bros., 591 F. Supp. 552, 554-55 (W.D. Va. 1984) (same), aff'd sub nom. Beale v. Hardy, 769 F.2d 213 (4th Cir. 1985).[2]

---

[2]    Accord Jones v. Flowserve FCD Corp., 73 Fed. Appx. 706, at *1 (5th Cir. 2003), cert. denied 541 U.S. 1009 (2004); Smith v. Walter C. Best, Inc., 927 F.2d 736, 737-38 (3d Cir. 1990); Ryntz v. Afrimet Indussa, Inc., 1989 WL 125243, at *1 (6th Cir. Oct. 23, 1989); Adams v. Union Carbide Corp., 737 F.2d 1453, 1454 (6th Cir. 1984); Irrer v. Milacron, Inc., 484 F. Supp. 2d 677, 678-79 (E.D. Mich. 2007); Bergfeld v. Unimin Corp., 226 F. Supp. 2d 970, 973-74 (N.D. Iowa 2002), aff'd 319 F.3d 350 (8th Cir. 2003); Newson v. Monsanto Co., 869 F. Supp. 1255,

Finally, plaintiffs' conclusory assertion that Raytheon "relied upon and incorporated wholly inadequate, often false and misleading health and safety information from the Defendants" (Pl. Supp. Mem. at 4) is unsupported in their memorandum, or in the record, by any evidence whatsoever.  That may be a good statement of what plaintiffs hoped to prove, but it is not what actually emerged in discovery.  In fact, the undisputed evidence shows that Raytheon had many sources of information about the risks of beryllium (including other suppliers, the U.S. government, and published literature); that it was "well aware of the pulmonary hazards of beryllium" more than 20 years before Mrs. Genereux appeared on the scene (see Defendant Brush Wellman Inc.'s Statement of Undisputed Facts ¶ 37); and that it did not follow or even show to its employees the warnings it received from the defendants (id. ¶¶ 81-82).

Plaintiffs' brief only underscores that summary judgment is proper.

### III.    Conclusion

The Court should grant Brush's motion for summary judgment on all counts of the Amended Complaint.


Dated:  September 17, 2007                 Respectfully submitted,


                                          By: _____
                                          Jeffery D. Ubersax
                                          Robert S. Faxon
                                          Jones Day
                                          901 Lakeside Ave.
                                          Cleveland, Ohio  44114-1190
                                          Tel:    (216) 586-3939

_____

(continued…)

1257 (E.D. Mich. 1994); Ditto v. Monsanto Co., 867 F. Supp. 585, 586-87 (N.D. Ohio 1993), aff'd 36 F.3d 1097 (6th Cir. 1994).

Fax:     (216) 579-0212

Alan M. Spiro (Fed. Bar No. 475650)
Edwards Angell Palmer & Dodge LLP
111 Huntington Avenue
Boston, MA 02199-7613
Tel:     (617) 239-0100
Fax:     (617) 227-4420

Attorneys for Defendant Brush Wellman Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of September, 2007, a true and correct copy

of the foregoing **RESPONSE OF DEFENDANT BRUSH WELLMAN INC. TO**

**PLAINTIFFS' SUPPLEMENTAL BRIEF** was served via electronic transmission and/or U.S.

mail, first class postage prepaid, upon the following:

Leo V. Boyle, Esq.
Meehan, Boyle, Black & Fitzgerald, PC
Two Center Plaza
Suite 600
Boston, MA 02108
617-523-8300

Attorney for Plaintiffs


Ruben Honik, Esq.
Stephan Matanovic, Esq.
Golomb & Honik, PC
121 S. Broad St., 9th fl.
Philadelphia, PA 19107

Attorney for Plaintiffs

William F. Ahern
Mandi Jo Hanneke
Clark, Hunt & Embry
55 Cambridge Parkway
Cambridge, MA 02142
617-494-1920

Attorney for Defendant American Beryllia
  Corp.

Robert Nadeau, Esq.
Frances Lindemann, Esq.
Nadeau & Associates
1332 Post Road, Suite 4A
Wells, Maine  04090
207-324-3500

Attorney for Defendant Hardric Laboratories, Inc.


Ronald M. Jacobs, Esq.
Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP
Ten Post Office Square, 4th Floor
Boston, MA  02109
617-482-8200

Attorneys for Defendant Raytheon


_____
Attorney for  Brush Wellman Inc.